Howard J. Weg (State Bar No. 91057)
hweg@pwkllp.com
David B. Shemano (State Bar No. 176020)
dshemano@pwkllp.com
Monsi Morales (State Bar No. 235520)
mmorales@pwkllp.com
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard, Suite 1450
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile: (310) 552-3101

and

Ali M.M. Mojdehi (State Bar No. 123846)
ali.m.m.mojdehi@bakernet.com
Christine E. Baur (State Bar No. 207811)
christine.e.baur@bakernet.com
BAKER & McKENZIE LLP
12544 High Bluff Drive, Third Floor
San Diego, CA  92130-3051
Telephone:  (858) 523-6200
Facsimile:  (858) 259-8290

Proposed Co-Counsel for Debtor Namco Capital Group, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Bk. Case No.:  2:08-bk-32333-BR |
| NAMCO CAPITAL GROUP, INC., | Chapter 11 |
| Debtor. | **DECLARATION OF EZRI NAMVAR IN SUPPORT OF FIRST DAY MOTIONS** |
| | **Hearing:**<br>Date:  February 4, 2009<br>Time:  10:00 a.m.<br>Place:  Courtroom 1668<br>          255 East Temple Street<br>          Los Angeles, CA |

I, Ezri Namvar, hereby declare as follows:

1.      I am over 18 years of age and, if called to testify, could and would testify truthfully to the facts and matters set forth herein. The facts and matters set forth herein are based upon my first-hand knowledge, unless otherwise specifically indicated.

2.      I make this declaration as an individual and debtor in the chapter 11 bankruptcy case of *In re Ezri Namvar*, Case No. 2:08-32349-BR, currently pending in this Court, and in my role as President, Chief Financial Officer, director and sole shareholder of Namco Capital Group, Inc. ("Namco"), a California corporation, and the debtor in the above-captioned chapter 11 bankruptcy case.

## GENERAL BACKGROUND

3.      I have been engaged in the business of real estate lending and investment through Namco and other entities for approximately 30 years.

4.      Through Namco and other entities, my real estate investment portfolio presently includes partial or whole interests or joint ventures in approximately 80 to 100 entities holding commercial, hotel, office, condominium, apartment and development projects that were estimated to be worth more than $1 billion, subject to aggregate secured and unsecured indebtedness of over $1 billion.

5.      In the ordinary course of business, Namco would borrow funds on a secured or unsecured basis from various individuals and entities (the "Noteholders") pursuant to promissory notes payable by Namco, and then would loan the borrowed funds to real estate projects throughout the United States (and a very few in Israel).  In the last five to seven years, most of the borrowed funds were loaned by Namco to real estate projects that are owned by various special purpose limited liability companies (the "LLCs") in which members of my family and/or I directly or indirectly hold some or all of the membership interests.

6.      In addition to the approximately $430 million owed by Namco to the Noteholders, there is separate indebtedness owed by the LLCs to the financial institutions that provided financing secured by the LLCs' real estate projects.

7.      In many cases, I executed a personal contingent guaranty in favor of a Noteholder on account of the borrowed funds.  I also typically executed a personal guaranty in favor of the financial institution that provided financing to a LLC secured by the real estate project owned by the LLC.  In

many cases, but not all, I am the manager of the LLC.

8.    The monthly interest payments on the notes were paid uninterrupted for over 29 years.

9.    According to Namco's books and records, Namco owes approximately $400 to $500 million in the aggregate to over 400 different creditors, which amount is exclusive of approximately $110 million owed to my family members.  I personally owe approximately $34 million to Namco.

10.    Within the past several years, I also invested approximately $50 million in Security Pacific Bancorp., the parent of Security Pacific Bank, a California state bank ("SPB"), including taxes on imputed income which was never realized (but paid because the parent corporation was an S corporation).  SPB failed on November 7, 2008, as a result of deterioration in the value of its loan portfolio and its failure to meet capital requirements.  SPB was closed by the California Department of Financial Institutions and the Federal Deposit Insurance Corporation was appointed receiver.

11.    Recently, the LLCs have failed to generate sufficient cash flow or sales to repay the loans they received from Namco.  As a result, Namco has been unable to continue making interest payments to the Noteholders and others.  Subsequently, many creditors have commenced lawsuits, issued foreclosure notices and engaged in other enforcement remedies.

12.    When I realized that Namco was going to be unable to make payments to creditors, I made exhaustive efforts to restructure the indebtedness to pay creditors, including negotiating sales of assets by the LLCs and exchanging discounted indebtedness of Namco for interests in assets owned directly or indirectly by me, the LLCs, or my family members.

13.    On November 5, 2008, I convened a meeting of the approximately 400 Namco Noteholders at which I provided a report concerning my and Namco's financial condition, stated the view that the return to creditors would be maximized outside of a formal bankruptcy proceeding, and proposed the general terms for an out-of-court restructuring plan to maximize the value of the assets for the benefit of creditors.

14.    After the November 5 meeting, I solicited the votes from the Noteholders to form an informal creditors' committee (the "Informal Committee") to represent the interests of the Noteholders with respect to the negotiation and implementation of a consensual plan.  By agreement, the Informal Committee was given the power to employ professionals as needed, with the fees and costs of such

professionals to be paid by Namco and myself.

15.     On December 22, 2008 (the "Petition Date"), Iraj Farhadian, the Farhadian Family Trust, Abraham Assil, Marc Ashghian, Wall Street Nevada LLC, The Sunset Trust, Mahnaz Sepehr, Kamran Raminfard and the Satrap Family Trust dated 7/28/88 (collectively, the "Petitioning Creditors") filed an involuntary chapter 11 petition against Namco, and certain of the Petitioning Creditors filed a separate involuntary chapter 11 petition against me (together, the "Involuntary Petitions").

16.     In discussions regarding the Involuntary Petitions, I again represented to the Informal Committee and the Petitioning Creditors that it is in the best interests of creditors for a restructuring plan to be negotiated outside of a formal bankruptcy proceeding because, among other reasons, an out-of-court workout would be significantly less expensive than a formal bankruptcy case.  Therefore, I requested that the Informal Committee and the Petitioning Creditors stipulate to a dismissal of the cases or, in the alternative, stipulate to an extension of time for Namco and I (collectively, the "Debtors") to respond to the Involuntary Petitions to allow me to continue to negotiate the terms of a restructuring plan acceptable to creditors.

17.     At the recommendation of the Informal Committee, and without objection from the Petitioning Creditors, Namco agreed to employ Crowe Horwath LLP ("Crowe"), which was serving as the Informal Committee's financial advisor, to serve as Namco's restructuring consultant, with Howard Grobstein ("Grobstein"), a partner at Crowe, being designated as Namco's Chief Restructuring Officer ("CRO").  I have agreed that, with respect to entities that I manage, I will consult with and take direction from the CRO.

18.     On or about January 13, 2009, I reached agreement with the Informal Committee on the terms of a consensual restructuring plan.  A true and correct copy of the Plan Term Sheet is attached hereto as Exhibit A and incorporated herein by this reference.  I believe that this restructuring plan provides the greatest opportunity to maximize value and to avoid costly and time-consuming litigation over the assets held in the names of my wife and children.

19.     I am informed that the Noteholders have overwhelmingly voted to support the plan.

20.     To facilitate the documentation of the plan, the Informal Committee agreed to enter into

a stipulation extending the time to respond to the Involuntary Petitions for approximately 45 days (the "Stipulation").  A true and correct copy of the Stipulation is attached hereto as Exhibit B and incorporated herein by this reference.  The Stipulation required the agreement of the Petitioning Creditors.  Originally, the Petitioning Creditors did not consent to the Stipulation and instead filed motions for the appointment of a trustee.  I am now informed that the Petitioning Creditors support the engagement of Grobstein as the CRO and oppose the appointment of a trustee.

21.     On January 28, 2009, Namco and I each filed a notice of consent to an order for relief under chapter 11 of the Bankruptcy Code.

**FACTS APPLICABLE TO APPLICATION TO EMPLOY CROWE HORWATH LLP**

22.     I acknowledge that the events of the past six months may have caused creditors to lose confidence in my ability to manage the real estate portfolio and maximize its value for the benefit of creditors.  Therefore, from the very beginning of the negotiation with the Informal Committee, I made clear not only my willingness to continue my efforts to maximize the value of the portfolio for the benefit of creditors, but also my willingness to turn over ultimate authority and control for operational and financial decisions to an independent third person in whom the Informal Committee could place its confidence for the benefit of creditors.

23.     Based on requests by the Informal Committee, Namco has agreed to engage Crowe as Namco's restructuring consultant, and Crowe will designate Grobstein as Namco's Chief Restructuring Officer ("CRO").  A copy of Crowe's engagement letter is attached hereto as Exhibit C and incorporated herein by this reference.  With respect to non-debtor entities that I manage, as an accommodation I have agreed to the requests of the Informal Committee that I consult with and take direction from the CRO.

24.     I have agreed that the daily decisions facing Namco should be made by the CRO and not by me as President.  I have not resigned as an officer of Namco and I continue to serve as an officer and as director.  I continue to perform all fiduciary duties required of a director of a corporation.  I have agreed, however, that with respect to my role as an officer of Namco, I will defer and report to the CRO.  I have also agreed that the CRO can only be terminated for cause and with the consent of the Committee.

25.     On behalf of the Informal Committee, Grobstein has been at Namco's offices on a daily basis for several weeks reviewing books, records, proposed transactions and other financial and operational information, and is now prepared to immediately begin serving as a Namco officer.  I believe it is critical that the Bankruptcy Court enter an Order as soon as possible authorizing the employment of Crowe and designation of Grobstein as Namco's CRO to provide certainty, continuity and stability with respect to Grobstein's authority and to assure interested parties that new management is in control of Namco as debtor in possession.

26.     Namco and I have requested and encouraged both the Informal Committee and Grobstein to investigate all of the completed and pending restructuring transactions that I negotiated.  In addition, upon appointment of an Official Committee of Unsecured Creditors (the "Committee"), Namco will stipulate to an order of the Bankruptcy Court ordering that the Committee have full power and authority to investigate and prosecute any and all actions against insiders and affiliates if deemed necessary.

27.     I believe that the appointment of a chapter 11 trustee will significantly increase the administrative cost of the cases and materially reduce the return to creditors.  For this reason, my commitment to the Plan Term Sheet and agreement to cooperate with the CRO in my personal case applies only if Grobstein is approved as the CRO and will not apply if a trustee is appointed.

28.     I believe that the engagement of Crowe and designation of Grobstein as the CRO pursuant to the terms of the Engagement Letter is in the best interests of both estates.

### FACTS APPLICABLE TO APPLICATIONS TO EMPLOY PEITZMAN, WEG & KEMPINSKY LLP AND BAKER & McKENZIE LLP

29.     Namco seeks authorization to employ Peitzman, Weg & Kempinsky LLP ("PWK") as general bankruptcy co-counsel.  In addition, Namco also seeks authorization to employ Baker & McKenzie ("Baker") as bankruptcy co-counsel to address any potential conflict issues and because Baker's additional resources will be available and utilized on matters that PWK does not handle in the administration of the cases.

30.     I am unaware of any actual conflict of interest between Namco and myself (other than an undisputed intercompany claim described below).  However, to the extent that any actual or potential conflict arises in the cases, I understand that PWK will represent me and Baker will represent Namco with respect to the matter that gives rise to the conflict.

31.     As a result of investments made by Namco in entities that I owned or controlled, Namco holds an undisputed unsecured intercompany claim against me in the approximate amount of $34 million.  In addition to Namco's claim against me, I may have an undisputed unsecured claim of more than $100,000 against Namco for unpaid salary.  The actual amounts of these claims will be disclosed in the Namco's and my schedules when they are filed.

32.     Because I personally guaranteed a substantial portion of Namco's debts, Namco and I have many common creditors.  Namco and I have negotiated and intend to propose jointly plans of reorganization for the respective estates.  Under these circumstances, if each estate is required to employ separate counsel, the expense will be significantly increased with no corresponding benefit to creditors.

33.     I believe that the engagement of PWK as counsel to both Namco and my bankruptcy estates, and the engagement of Baker as counsel to the Namco estate, is in the best interests of both estates.

## FACTS APPLICABLE TO MOTION FOR JOINT ADMINISTRATION

34.     I own, directly or indirectly, one hundred percent of the outstanding voting securities of Namco.

35.     Namco and I will continue to operate, as we have in the past, as separate and distinct entities, and will continue to maintain separate books and records to reflect all intercompany and third-party transactions during the pendency of these chapter 11 cases. Namco and I do not propose at this point to take any action that would constitute substantive consolidation of our estates.

36.     Namco and I have many common creditors and intend to jointly propose plans of reorganization in our cases.

37.     I believe joint administration is in the best interests of both estates.

## FACTS APPLICABLE TO MOTION TO ESTABLISH NOTICE PROCEDURES

36.     Namco and I each are preparing the Schedules of Assets and Liabilities, Statement of Financial Affairs and related documents to be filed in these cases.  I expect that the separate master mailing matrixes for Namco and me will include over 600 entities, consisting of creditors, employees, affiliates and insiders.

37.     I believe the proposed notice procedures are in the best interests of both estates.

## FACTS APPLICABLE TO MOTION TO EXTEND DEADLINE TO FILE SCHEDULES

38.     While Namco and I maintain accurate books and records, the preparation of accurate schedules and statements for the very complex real estate investment portfolio and businesses for me and Namco will be extremely time-consuming and require key officers and employees to be diverted from business operations.

39.     Under the circumstances of these complex cases, I believe that gathering all of the necessary documentation and information and completing the schedules and statements (the "Schedules") for Namco and myself by February 12, 2009, simply is not a practical possibility.

40.     Howard Grobstein, Namco's proposed CRO, had no involvement with Namco prior to December 2008, when Crowe was first engaged as the financial advisor to the Informal Committee. Because Grobstein is relatively new to the real estate portfolio, I believe he will require adequate time to become completely informed concerning the books and records and other required information necessary for the preparation of the Schedules.

41.     I estimate that an extension of approximately 45 days, from February 12, 2009 to March 30, 2009, will provide sufficient time to prepare and file the Schedules in these cases.

42.     I believe that the requested extension is reasonable, that no parties will be prejudiced if such relief is granted, and the extension is in the best interests of both estates..

I declare that the foregoing is true and correct to the best of my knowledge.

Executed this 28th day of January, 2009 at Los Angeles, California.

Ezri Namvar

# EXHIBIT A

## TERM SHEET FOR THE REPAYMENT OF NAMCO NOTEHOLDERS

This term sheet sets forth the basic terms upon which Namco Capital Group, Inc. ("Namco") and Ezri Namvar ("Namvar") and the Informal Creditor Committee of Namco and Namvar, or its successor Official Creditors Committee (the "Committee") shall jointly negotiate and propose a plan or plans of reorganization.

1.      During the pendency of the chapter 11 cases, Howard Grobstein of Crowe Horwath LLP as the Chief Restructuring Officer ("CRO") will operate Namco as debtor in possession in accordance with the terms of the Stipulation between Alleged Debtors, Petitioning Creditors, and Informal Creditor Group to : (1) Extend Time to Respond to Involuntary Petition; and (2) Approve Appointment of Chief Restructuring Officer (the "Stipulation").

2.      The plan will provide that the Committee will have control of all of the assets Namco, together with substantially all of the assets of Namvar's wife and children which shall be contributed for the benefit of Namco creditors (subject to the exclusion of certain assets agreed upon by the parties prior to the proposal of the plan), to pay back the Namco noteholders.

3.      Namvar has represented to the Committee that he has guaranteed many of the Namco notes on a contingent basis and has also guaranteed substantial bank debt owed by separate limited liability companies on a contingent basis. Therefore, to maximize the distribution to Namco noteholders, it is in the interest of noteholders to be paid through Namco and not Namvar to the extent possible. Namco noteholders will share in the proceeds of Namvar's assets to the extent that their notes have been guaranteed by Namvar.

4.      Namco and Namvar will provide to the CRO and the Committee verified lists of (a) all assets and liabilities of Namco, Namvar, Namvar's wife and Namvar's children, and any entities owned or controlled by Namvar, Namvar's wife and Namvar's children, (b) all transfers of money or property by Namco, Namvar, Namvar's wife and Namvar's children, and any entities owned or controlled by Namvar, Namvar's wife and Namvar's children within one year prior to the Petition Date in accordance with the Stipulation.

5.      The Committee may negotiate a limited guaranty for the benefit of the Namco noteholders from one or more of Namvar's brothers and father in an amount and on terms mutually agreed upon. If a guaranty satisfactory to the Committee is not achieved, the Committee may exercise all available legal and equitable remedies against Namvar's brothers and father to recover sums owed to Namco and the Namco noteholders and/or cancel this agreement.

6.      Namvar has represented to the Committee that he has negotiated transactions with Namco noteholders to exchange their notes at a discount in exchange for interests in assets held by certain entities owned (in whole or in part) and/or controlled by Namvar or his family members. The CRO and the Informal Committee will investigate such transactions and determine if they should be challenged. Namco and Namvar may negotiate further transactions to reduce the outstanding secured and unsecured indebtedness of Namco but only under the direction, supervision and control of the CRO with the advice and consent the Informal Committee.

7.      Based upon available information, but subject to verification by the CRO, Namvar has represented to the Committee the following:  (a) Namco presently owes approximately $369 to $400 million to noteholders, inclusive of amounts owed by Namco Financial Exchange based upon 1031 exchanges, but excluding approximately $110 million owed to entities controlled by Namvar, Namvar's brothers or other Namvar family members; (b) approximately $196 million of the noteholder claims were secured upon issuance, are subject to the transactions referred to in paragraph 6 above or have security interests in assets held by certain entities owned and/or controlled by Namvar or his family members; (c)  if the transaction referred to in paragraph 6 are consummated, Namco's unsecured indebtedness will be reduced to approximately $172 million; (d) in Namvar's estimation, the remaining assets owned by Namco and Namvar's wife and children will have an equity value of approximately $139 million in an orderly, reasonable disposition available to pay Namco's unsecured indebtedness; and (e) based on the foregoing, Namco's secured creditors will be paid substantially in full and the unsecured creditors will receive a distribution of the remainder of the proceeds upon the disposition of the assets in accordance with the plan.  The Committee will investigate such representations and reserves the right to modify the terms of the plan if such representations are materially incorrect.

8.      The CRO and the Committee will investigate the assets and liabilities of Namco, Namvar, his wife and children, and the entities they own and/or control as well as the transactions that have taken place in the last year or such longer period as the Committee may determine.  The CRO and the Committee also may investigate, in their reasonable discretion, such other matters as the CRO and the Committee deem appropriate, including, without limitation, any avoidance or preference claims.  Namco and Namvar shall cooperate fully with such investigations and shall be required to make full and complete disclosure of all assets and liabilities under penalty of perjury before the plan is finalized.

9.      The parties agree to act in good faith to negotiate and execute a plan of reorganization containing the terms herein and conform to the applicable requirements of the bankruptcy code.



[Remainder of Page Left Intentionally Blank]

NAMCO CAPITAL GROUP, INC.

By: _____
    Ezri Namvar, President

_____
    EZRI NAMVAR

INFORMAL CREDITOR COMMITTEE
OF NAMCO AND NAMVAR.

By: _____
    Chair

# EXHIBIT B

1  Howard J. Weg  (State Bar No. 91057)
   hweg@pwkllp.com
2  David B. Shemano (State Bar No. 176020)
   dshemano@pwkllp.com
3  PEITZMAN, WEG & KEMPINSKY LLP
   10100 Santa Monica Blvd., Suite 1450
4  Los Angeles, CA  90067
   Telephone: (310) 552-3100
5  Telecopier: (310) 552-3101

6  Counsel for Alleged Debtors

7

8                    UNITED STATES BANKRUPTCY COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10                        LOS ANGELES DIVISION

11                                        | Bk. Case No.:  2:08-bk-32333-BR
      In re                               |
12                                        | Chapter 11
      NAMCO CAPITAL GROUP, INC.,          |
13                                        |
                    Alleged Debtor.       |
14                                        |
15                                        | Bk. Case No.: 2:08-bk-32349-BR
16                                        |
      In re                               | Chapter 11
17                                        |
      EZRI NAMVAR,                        | **STIPULATION BETWEEN**
18                                        | **ALLEGED DEBTORS,**
                    Alleged Debtor.       | **PETITIONING CREDITORS, AND**
19                                        | **INFORMAL CREDITOR GROUP,**
                                          | **TO: (1) EXTEND TIME TO**
20                                        | **RESPOND TO INVOLUNTARY**
                                          | **PETITIONS; AND, (2) APPROVE**
21                                        | **APPOINTMENT OF CHIEF**
                                          | **RESTRUCTURING OFFICER**
22                                        |
23                                        | **[NO HEARING REQUIRED]**

24

25        Namco Capital Group, Inc. ("Namco"), Ezri Namvar ("Namvar" and collectively with

26  Namco the "Alleged Debtors"), Iraj Farhadian, Farhadian Family Trust, Abraham Assil, Marc

27  Ashghian, Wall Street Nevada LLC, The Sunset Trust, Mahnaz Sepehr, Kamran Raminfard, and

28

Satrap Family Trust dated 7/28/1988 (collectively, the "Petitioning Creditors"), and the Informal Creditor Group of Namco and Namvar (the "Informal Committee"), hereby stipulate and agree as follows:

## RECITALS

1.      Namco is a California corporation.  Namvar is the President of Namco.

2.      Namco borrowed funds on a secured and unsecured basis from noteholders, including, without limitation, the Petitioning Creditors (collectively the "Noteholders").  Namvar executed a personal guarantee in favor of certain of the Noteholders.  Certain of the guarantees are presently contingent and certain are presently noncontingent.

3.      Namvar directly or indirectly holds interests in or manages limited liability companies, partnerships and other entities (collectively, "Entities").  The Entities, in turn, own and/or control interests in real estate assets ("Assets").  Some of the Entities borrowed money from Namco that was used, in whole or in part, to acquire and/or maintain the Assets.  The Alleged Debtors, Petitioning Creditors and the Informal Committee will investigate the Entities, including their real estate and other holdings, their relationships and transactions with the Alleged Debtors and other actions taken by the Entities.

4.      Namco has failed to make certain interest or principal payments to the Noteholders, thereby defaulting under such notes, and Namvar has defaulted under some of his guaranties.  Prior to the filing of the involuntary petitions, certain of the Noteholders, including some of the Petitioning Creditors, filed lawsuits against Namco, Namvar and related entities.

5.      On November 5, 2008, Namco and Namvar convened a meeting of the Noteholders, provided a report concerning the financial condition of Namco and Namvar, and stated the view that the return to Noteholders would be maximized outside of a formal bankruptcy case.  Subsequent to the meeting, the Informal Committee was formed for the stated purpose of representing the interests of the Noteholders with respect to the negotiation for, and implementation of, an out of court workout.   The Informal Committee employed De Castro, West, Chodorow, Glickfeld & Nass, Inc.

("DWCGN"), as its counsel.  Pursuant to agreement with the Informal Committee, Namco provided DWCGN with a $10,000 retainer.

6.      Howard Grobstein ("Grobstein") of Crowe Horwath LLP ("CH") was engaged preliminarily as the financial advisor and forensic accountant for the Informal Committee.  Pursuant to agreement with the Informal Committee, Namco provided CH with a $10,000 retainer.  Soon thereafter, pursuant to agreement with the Informal Committee, Namco retained Grobstein as Chief Restructuring Officer with full power and authority over Namco and Namvar's assets.

7.      On December 22, 2008 (the "Petition Date"), the Petitioning Creditors filed an involuntary chapter 11 petition against Namco ("Namco Petition") and certain of the Petitioning Creditors filed a separate involuntary chapter 11 petition against Namvar (the "Namvar Petition," and collectively with the Namco Petition, the "Involuntary Petitions").  The deadline for the Alleged Debtors to respond to the Involuntary Petitions is January 15, 2009.  On January 7, 2008, the Petitioning Creditors filed a motion with the Court presiding over the case commenced by the filing of the Namco Petition seeking to transfer the Namvar Petition to the Bankruptcy Court presiding over the Namco Petition as the Bankruptcy Court with the lower numbered related case, in accordance with Local Rule of Bankruptcy Procedure 1073-1.  The Alleged Debtors do not object to the transfer, although they do strongly object to and disagree with everything stated in the declaration filed in support of the motion to transfer.  On January 9, 2009, on its own motion, the Bankruptcy Court presiding over Namvar Petition entered an order transferring that case to the Court presiding over the Namco Petition.

8.      In response to the Involuntary Petitions, the Alleged Debtors again have represented to the Informal Committee and the Petitioning Creditors that it is in the best interests of creditors for a plan to be negotiated outside of formal bankruptcy cases because the Alleged Debtors assert that, among other reasons, an out-of-court workout will be significantly less expensive than formal bankruptcy cases.  Therefore, the Alleged Debtors have requested that the Petitioning Creditors stipulate to a dismissal of the Involuntary Petitions or, in the alternative, stipulate to an extension of time for the Alleged Debtors to respond to the Involuntary Petitions to permit the Alleged Debtors to

negotiate the terms of an interim management agreement and plan for the repayment of creditors. The Alleged Debtors and the Informal Committee are in active negotiations over the terms of a consensual plan that would provide for the cooperation of the Entities, insiders and affiliates of the Alleged Debtors in participating in the plan and would avoid potentially time-consuming and costly disputes over their roles in these cases.

9.      The Petitioning Creditors are not prepared at this time to stipulate to a dismissal of the Involuntary Petitions.  However, subject to the terms of this stipulation, the Petitioning Creditors have agreed to stipulate to an extension of time for the Alleged Debtors to respond to the Involuntary Petitions to permit the parties time for further negotiations and investigation, based upon the terms and conditions set forth below.

**WHEREFORE**, based upon the foregoing facts, the parties hereto hereby agree as follows:

A.      The deadline for the Alleged Debtors to respond to the Involuntary Petition is extended to February 24, 2009  (the "Extended Deadline Date"), without waiver of the right to seek further extensions by Court order or mutual agreement between the Alleged Debtors and Petitioning Creditors and approval of the Court.  The Alleged Debtors accept service of the Involuntary Petitions and hereby agree that they have been properly and timely served with such petitions.  The Alleged Debtors waive the right to judgment pursuant to Bankruptcy Code § 303(i).  Following the Extended Deadline Date and upon the entry of an order for relief in the chapter 11 cases of the Alleged Debtors, the exclusive time in which the Alleged Debtors may file a chapter 11 plan or reorganization under section 1121(c) of the Bankruptcy Code shall be shortened by 60 days to permit an Official Creditors' Committee to file a proposed chapter 11 plan for one or both of the Alleged Debtors after 60 days following the entry of the order for relief in the chapter 11 cases.

B.      Upon entry of the order for relief, Namco will continue as a debtor in possession. Grobstein shall continue in office as Namco's Chief Restructuring Officer (the "CRO").  The CRO, with respect to Namco, shall have and exercise all of the powers and duties of the Chief Executive Officer of Namco, including, without limitation: collect, take possession of, and hold property of Namco; he shall also collect, take possession of, and hold property of Namvar; be accountable for all

property received; report to and consult with the Informal Committee; investigate the financial affairs of Namco, Namvar and other persons or entities he deems appropriate, including, without limitation, all insiders and affiliates of Namco and Namvar, as defined in the Bankruptcy Code, including the Entities and relatives of Namvar that directly or indirectly received transfers of money or property from Namco or Namvar or transferred money or property to Namco or Namvar; investigate, file and prosecute any and all actions that may be brought on behalf of Namco and/or Namvar; and retain professionals for Namco, including, without limitation, attorneys, accountants, appraisers or other professionals that he deems necessary and appropriate.

C.      Without limiting the generality of any of the foregoing, the CRO's engagement shall include the following terms and conditions: (a) the CRO shall have job responsibilities and authorities equivalent to and shall make all decisions that would otherwise be made by Namvar as President or by Namco's other officers, (b) the CRO shall have complete access to, and shall review, the Alleged Debtors' books, records and employees, (c) Namvar shall cooperate with and act at the direction of the CRO, including, without limitation, in connection with negotiations with creditors and other parties in interest, the CRO directing Namvar concerning any entity that Namvar manages or over which he has the binding power to direct, (d) in addition to the Retainer previously paid to CH, Namco shall pay CH a retainer in the amount of $50,000 for the services of the CRO and CH's monthly fees and expenses shall be paid promptly, (e) the CRO may use other personnel of CH to assist him in the performance of his duties to the extent necessary, (f) subject to execution of a standard confidentiality agreement by the applicable party, the CRO shall meet with and provide nonprivileged information to the Informal Committee and its professionals, the Petitioning Creditors and their professionals and other parties in interest, and (g) any dispute over the performance, fees or expenses of CH or the CRO shall be resolved upon motion to the Bankruptcy Court and notice to the other parties and parties requesting special notice.

D.      The CRO can be terminated by Namco only for cause and with the prior written consent of the Informal Committee.  If Namco and the Informal Committee do not agree on the termination of the CRO, Namco or the Informal Committee may make a motion to the Bankruptcy

Court for an order authorizing the termination of the CRO for cause shown, upon notice to the parties to this Stipulation and parties requesting special notice.

E.    On or before February 15, 2009, the Alleged Debtors shall provide the CRO, under penalty of perjury, with full and complete written verified lists of (a) all assets and liabilities of Namco, Namvar, Namvar's wife and Namvar's children (other than the wife's and children's personal property with a value of less than $1,000 individually or $100,000 in the aggregate), and any entities owned or controlled by Namvar, Namvar's wife and Namvar's children, (b) all transfers of money or property by Namco, Namvar, Namvar's wife and Namvar's children (other than transfer by the wife or children less than $10,000 individually or $100,000 in the aggregate), and any entities owned or controlled by Namvar, Namvar's wife and Namvar's children within one year prior to the Petition Date. Namvar, Namvar's wife and Namvar's children shall start providing drafts of the lists described in this paragraph upon and following the execution of this Stipulation. Namvar shall cause the Entities that are managed by Namvar to cooperate with the CRO and to provide the CRO will lists of their assets and liabilities and all other information requested by the CRO with respect to the Entities. Subject to execution of a standard confidentiality agreement by the applicable party, the CRO shall meet with and provide any nonprivileged information described in this paragraph to the Informal Committee and its professionals, the Petitioning Creditors and their professionals and other parties in interest,

F.    Pending further Order of the Bankruptcy Court, from and after the Petition Date, neither Namco nor Namvar shall enter into any agreement, including, without limitation, any agreement for the transfer of any money or property or the payment, settlement or securing of an existing or prior obligation, on its own behalf or on behalf of any entity that an Alleged Debtor may manage, and the Alleged Debtors hereby are enjoined from the same, unless: (a) The proposed agreement has been approved in writing by the CRO and the Informal Committee; (b) parties in interest and parties requesting special notice receive written notice of the proposed agreement and do not serve a written objection on the Alleged Debtors and the Informal Committee within seven days of service of the notice; and (c) If a party timely serves a written objection to the proposed

agreement, the Alleged Debtors shall seek approval of the proposed transaction from the Bankruptcy Court pursuant to motion and hearing on notice to parties in interest and parties requesting special notice, including, without limitation the Petitioning Creditors and Informal Committee. Such motion shall be adjudicated pursuant to the standards set forth in sections 105 and 363(b) of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Transaction Approval Process").

G.      With respect to the pending transactions for the sale of the real property and improvements located at 12121 Wilshire Blvd., Los Angeles, California and for the sale of the Cal Neva Resort (the "Pending Transactions"), both of which were entered into prior to the Petition Date and are not governed by paragraph F above, the Alleged Debtors, the Informal Committee and the Petitioning Creditors shall use good faith efforts to obtain the agreement of the third parties involved in the Pending Transactions that the closing of the Pending Transactions shall be extended for approximately 45 days and be subject to consent of the Petitioning Creditors and Informal Committee or the approval of the Bankruptcy Court under the Transaction Approval Process. The Alleged Debtors shall cooperate in providing information to the CRO regarding the Pending Transactions. Notwithstanding the foregoing, nothing herein shall require the Alleged Debtors to breach any obligation with respect to the Pending Transactions. All rights and remedies of the Alleged Debtors, Informal Committee and the Petitioning Creditors with respect to the Pending Transactions are expressly reserved.

H.      In addition to the Retainer previously paid to DWCGN, Namco shall pay DWCGN a retainer in the amount of $25,000 for the services of DWCGN in representing the Informal Committee and DWCGN's monthly fees and expenses shall be paid promptly. Any dispute over the performance, fees or expenses of DWCGN shall be resolved upon motion to the Bankruptcy Court and notice to the other parties.

I.      Except as otherwise expressly provided in this Stipulation, nothing contained herein shall be construed to limit the rights of the Petitioning Creditors, the Informal Committee, the Alleged Debtors or any other party including, without limitation, seeking or opposing any relief from

the Bankruptcy Court.

J.      The Bankruptcy Court shall have jurisdiction to interpret and enforce this Stipulation upon motion by the Alleged Debtors, the Informal Committee or the Petitioning Creditors and notice to the other parties in interest and parties requesting special notice.

K.      The Board of Directors and shareholders of Namco have approved this Stipulation and all of its terms, including, without limitation, appointment of the CRO, and the signatories below have the full power and authority to enter into this Stipulation on behalf of the party on whose behalf this Stipulation is executed.

L.      The Alleged Debtors agree that, from and after the date hereof, upon the reasonable request of any of the other Parties hereto and without further consideration, the Alleged Debtors will execute and deliver to such other party such documents and further assurances and will take such other actions (without costs to such party) as such other party may reasonably request in order to carry out the purpose and intention of the Agreement, and the correction of errors and defects in any such documents.

M.      This Stipulation may be executed by the parties in counterparts, all of which together shall constitute one and the same instrument.

N.      This Stipulation and the Order thereon shall, unless the Bankruptcy Court orders otherwise, remain in effect unless and until: chapter 11 plans are confirmed and become effective in these cases; the CRO is terminated in accordance with this Stipulation and no replacement CRO is employed; these cases are dismissed; a trustee is appointed; or these cases are converted to cases under chapter 7 of the Bankruptcy Code.

Dated: January 14, 2009          PEITZMAN, WEG & KEMPINSKY LLP


By_____
    Howard J. Weg
    David B. Shemano
    Attorneys for the Alleged Debtors


Dated: January ___, 2009          CREIM MACIAS KOENIG & FREY LLP

19

By_____
     Sandford L. Frey
Attorneys for the Petitioning Creditors

Dated: January ___, 2009

DE CASTRO, WEST, CHODOROW, GLICKFELD &
NASS, INC.

By_____
     Michael S. Abrams
Attorneys for the Informal Creditor Group of Namco and
Namvar

AGREED:

NAMCO CAPITAL GROUP, INC.,
    ALLEGED DEBTOR

By:_____
    Ezri Namvar, President

EZRI NAMVAR, ALLEGED DEBTOR

_____

For the Committee:

20

EXHIBIT C



Crowe Horwath LLP
Member Horwath International

15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403
Tel 818.501.5200
Fax 818.501.7040
www.crowehorwath.com

January 28, 2009

Mr. Ezri Namvar
President and Director
Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400
Los Angeles,  CA  90025

Re:      Namco Capital Group, Inc.

Dear Ezri:

Subject to approval of the Bankruptcy Court, this letter sets forth our understanding of the financial advisory, accounting, consulting and restructuring services to be provided by Crowe Horwath LLP ("Crowe Horwath") to Namco Capital Croup, Inc. ("Namco").

SERVICES

Crowe Horwath will provide Namco with the services of a Chief Restructuring Officer ("CRO").  Howard B. Grobstein ("Grobstein"), a Partner of Crowe Horwath, will be the CRO subject to the following terms:

1.      Powers and Duties.  The CRO shall have all of the rights, powers and duties to direct and control the rights and powers of Namco as a debtor in possession that are applicable to an officer of Namco, including the rights and powers of Namco delineated in sections 1106, 1107 and 1108 of the Bankruptcy Code.  Without limitation, the CRO shall have the right, power and duty to:

a.      Enter into agreements on behalf of Namco;

b.      Assist in the preparation of a reorganization plan, cash flow forecasts, valuations and other plans and forecasts prepared for the Bankruptcy Court and/or creditors;

c.      Investigate the financial affairs of Namco, Ezri Namvar ("Namvar") and other persons or entities the CRO deems appropriate, including all insiders and affiliates of Namco and Namvar, all entities in which Namvar owns or controls any interest, and the entities

and individuals that directly or indirectly received transfers of money or property from Namco or Namvar or transferred money or property to Namco or Namvar;

d.     Investigate and cause Namco to file and prosecute any and all actions that may be brought on behalf of Namco and/or, subject to approval of the Bankruptcy Court, negotiate a stipulation providing an Official Committee of Unsecured Creditors (the "Committee") with the right to file and prosecute such actions;

e.     Subject to section 327 of the Bankruptcy Code, cause Namco to retain professionals, including attorneys, accountants, appraisers or other professionals that the CRO deems necessary and appropriate;

f.     Report to and consult with the Committee;

g.      Subject to execution of a standard confidentiality agreement by the applicable party, meet with and provide nonprivileged information to creditors and other parties in interest.

2.     Obligations of Namco.  The officers of Namco, including Namvar, shall fully cooperate with the CRO.  Without limitation:

a.     No officer of Namco shall enter into any agreement or transfer any asset of Namco without the prior written consent of the CRO;

b.     The CRO shall have complete access to Namco's premises, books, records and employees.

3.     Obligations of Namvar.  Namvar, in his personal capacity, shall fully cooperate with the CRO.  Without limitation, Namvar shall (a) cooperate with and act at the direction of the CRO concerning any entity that Namvar manages, owns an interest in or controls, and (b) notify the CRO of any proposed transfer, sale, pledge or encumbrance of which he is aware by any entity in which Namvar holds a direct or indirect minority interest.  Notwithstanding the foregoing, nothing in this agreement shall excuse or prevent Namvar from performing any duty required of Namvar as a director of Namco.

4.     Termination.  Until such time that Namco is no longer a chapter 11 debtor in possession (at which time the employment of the CRO shall be at-will), the CRO can be terminated by Namco only for cause and, if a Committee is appointed, with the prior written consent of the Committee.  If Namco believes cause exists for termination and the Committee disagrees, Namco may make a motion to the Bankruptcy Court for an order authorizing the termination of the CRO for cause shown.  The CRO may resign at any time effective upon 30 days' written notice to Namco, Namco's bankruptcy counsel, and counsel to the Committee and the appointment and taking of office of a replacement CRO for Namco.

Namco Capital Group, Inc.
January 28, 2009
Page 3

---

5.      <u>Compensation</u>.  Crowe Horwath shall be compensated for the CRO's services at the rate of $425 per hour.  Crowe Horwath has received a retainer of $150,000 that shall be applied to its invoices as they accrue.  Namco shall file an application to employ Crowe Horwath as a professional pursuant to section 327 of the Bankruptcy Code.  Crowe Horwath understands that application of the retainer and payment of compensation will be subject to the requirements of sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and the United States Trustee Guides and Notices, including the obligation to file interim and final fee applications.

6.      <u>Financial Advisory and Accounting Support</u>.  Crowe Horwath may assign other Crowe Horwath personnel to the matter to assist the CRO with respect to operational, financial and accounting matters as deemed necessary by the CRO in his reasonable discretion.  Crowe Horwath shall be compensated for such services at the personnel's standard hourly rates described below.


CONFLICTS OF INTEREST

Based upon an understanding of the parties to this matter, as you disclosed to us, we have completed an initial review of our files for evidence of conflicts of interest.  We are unaware that any exist.  If a potential conflict arises, we will bring this to your attention in writing as soon as possible.

We are accepting this engagement with your consent that we may accept any other engagement from an existing or new client, provided that the engagement is not 1) adverse to you and 2) substantially related to the subject matter of services we have provided to you and will not require disclosure of any confidential information.  This advance waiver of conflicts includes controversies in which we may be engaged by a client who is adverse to you.

WORKPAPERS AND WORK PRODUCT

Please note that it is our practice to retain e-mails, written drafts of reports or other correspondence between Crowe Horwath, you, and/or any third party working with you in connection with this case.  We also retain meeting notes and workpapers.  However, some versions of documents may be overwritten and not maintained in original form.

All workpapers or other documents used by us during the course of this engagement will be maintained in segregated files.  At the end of the engagement, you will have several options related to the documents or copies of documents that we do not need to retain in our files:  (a) have us return all such documents to you; (b) authorize us to destroy them, or (c) direct us to store all or selected workpapers or documents, in which case Namco will pay for storage.  At the end of the engagement, please contact us regarding your desired disposition of documents. We reserve the right to destroy or delete the documents if there are no instructions from you

Namco Capital Group, Inc.
January 28, 2009
Page 4

---

within ninety (90) days of the completion of our assignment.  If you want us to adopt a different policy or practice with respect to retention of documents please advise me in writing.

PROFESSIONAL STAFF

As set forth above, Crowe Horwath has designated Grobstein to serve as the CRO.  He will be assisted by additional professional staff and industry experts, as required.

Crowe Horwath and its Executives are licensed by various state boards of Accountancy, including the California State Board of Accountancy.  However, certain professional services may be provided by non-CPA Executives of the Firm.  In addition, certain professional services may, at times, be performed by independent consultants who are required to follow the firm's procedures regarding confidentiality of your financial information.

FEES

Fees for the services described above, which are adjusted at least annually, are based on the amount of time expended by our personnel at hourly rates for this type of work plus reasonable expenses as incurred.  Travel time between the hours of 8:00 a.m. and 6:00 p.m. will be billed at standard rates.  Hourly billing rates for our professionals are currently as follows:

| | | |
|---|---|---|
| HOWARD B. GROBSTEIN | | $ 425 |
| Other Executives | $ 275 - | $ 495 |
| Senior Managers and Managers | $ 175 - | $ 275 |
| Staff Consultants | $ 100 - | $ 175 |
| Paraprofessionals | $ 75 - | $ 100 |

Our billings for services requested and out-of-pocket expenses incurred will be submitted to you monthly or more frequently as matters dictate.  We will present our invoices in summary fashion, supported by details of time and expense activity.  As set forth above, we understand that our fees are subject to approval of the Bankruptcy Court.

RETAINER

We have previously received a retainer of $125,867.73 for services provided to the Informal Creditors' Committee.  To the extent the retainer is not exhausted, we have the right to apply the unused retainer to our fees in accordance with the United States Trustee Guidelines and Notices.

---

## LIMITATION OF LIABILITY

Namco agrees to indemnify and hold Grobstein, Crowe Horwath, and Crowe Horwath's Executives and employees harmless from all claims, including any third party claims or other liabilities, costs and expenses (including reasonable attorneys fees) incurred by reason of any action taken or omitted by us in good faith arising out of this engagement, except for matters judicially determined to be caused by the gross negligence or bad faith of Crowe Horwath.  In no event will Crowe Horwath be liable for more than actual damages, or for  punitive, multiple, enhanced, incidental or consequential damages, even if we have been advised of the possibility of such damages.  In any event, any liability of Crowe Horwath or its Executives or employees shall be limited to no more than the fees paid Crowe Horwath for this engagement.

## RESPONSE TO LEGAL PROCESS

If Crowe Horwath is requested by subpoena, other legal process, or other proceedings to produce documents pertaining to you, or to testify, you will reimburse Crowe Horwath for its professional time, plus out-of-pocket expenses, as well as reasonable attorneys' fees incurred in responding to such request.

## CHOICE OF LAWS AND FORUM AND JURY WAIVER

This agreement shall be governed by the internal laws of the State of California, without reference to choice-of-law principles thereof.  Any dispute with respect to this agreement or engagement shall be subject to the exclusive jurisdiction of the Bankruptcy Court for the Central District of California.  The parties agree to waive a jury in the event of litigation.

## AFFILIATION WITH HORWATH INTERNATIONAL

Crowe Horwath LLP is a member of Horwath International Association, a Swiss association (Horwath). Each member firm of Horwath is a separate and independent legal entity. Crowe Horwath LLP and its affiliates are not responsible or liable for any acts or omissions of Horwath or any other member of Horwath and specifically disclaim any and all responsibility or liability for acts or omissions of Horwath or any other member of Horwath. Horwath does not render any professional services and does not have an ownership or partnership interest in Crowe Horwath LLP. Horwath and its other member firms are not responsible or liable for any acts or omissions of Crowe Horwath LLP.

The above specifies the services we will perform and the terms of our engagement.  If at any time you have questions regarding our services, please communicate with David K. Gottlieb, Executive in Charge of the Bankruptcy and Insolvency Group, 818-501-5200 or david.gottlieb@crowehorwath.com.

Namco Capital Group, Inc.
January 28, 2009
Page 6

---

Please acknowledge your agreement with the terms of this letter by signing and dating the enclosed original in the space provided.  Please return a signed original of this letter for our files.

We appreciate the opportunity to work with you on this important engagement.


Very truly yours,

Crowe Horwath LLP



By:  _____
      HOWARD B. GROBSTEIN


**APPROVED AND ACCEPTED:**

Approved by: _____     Date: January 28, 2009
      NAMCO CAPITAL GROUP, INC.


Approved by: _____     Date: January 28, 2009
      EZRI NAMVAR