1  DAVID M. POITRAS P.C. (SBN 141309)
   THOMAS M. GEHER (SBN 130588)
2  JEFFER, MANGELS, BUTLER & MARMARO LLP
   1900 Avenue of the Stars, Seventh Floor
3  Los Angeles, California 90067
   Telephone:  (310) 203-8080
4  Facsimile:  (310) 203-0567
   E-Mail:    tgeher@jmbm.com
5
   Attorneys for Bradley D. Sharp, Chapter 11 Trustee for
6  Namco Capital Group, Inc.

7
                UNITED STATES BANKRUPTCY COURT
8
                CENTRAL DISTRICT OF CALIFORNIA
9
                     LOS ANGELES DIVISION
10
11  In re                          ) Case No. 2:08-bk-32333 BR
                                    )
12  NAMCO CAPITAL GROUP, INC.,      ) Chapter 11
                                    )
13          Debtor.                 ) **MOTION OF BRADLEY D. SHARP,**
                                    ) **CHAPTER 11 TRUSTEE FOR**
14                                  ) **NAMCO CAPITAL GROUP, INC.,**
                                    ) **FOR AN ORDER:**
15                                  ) **(1) APPROVING, AND AUTHORIZING**
                                    ) **THE EXECUTION OF AND**
16                                  ) **PERFORMANCE UNDER,** *SALE*
                                    ) *AGREEMENT*;
17                                  ) **(2) AUTHORIZING SALE OF INTERESTS**
                                    ) **IN PROMISSORY NOTE AND DEED OF**
18                                  ) **TRUST PURSUANT TO BANKRUPTCY**
                                    ) **CODE SECTION 363(f); AND**
19                                  ) **(3) APPROVING AND AUTHORIZING**
                                    ) **COMPROMISE OF CONTROVERSY;**
20                                  )
                                    ) **MEMORANDUM OF POINTS AND**
21                                  ) **AUTHORITIES; AND DECLARATION OF**
                                    ) **BRADLEY D. SHARP**
22                                  )
                                    ) **[DECLARATION OF KAMRAN BENJI IN**
23                                  ) **SUPPORT OF MOTION FILED CONCURRENTLY**
                                    ) **HEREWITH]**
24                                  )
                                    ) Hearing:
25                                  ) Date:       November 24, 2009
                                    ) Time:       10:00 a.m.
26                                  ) Courtroom: 1668
                                    )            255 E. Temple Street
27                                  )            Los Angeles, California 90012
                                    )
28  _____)

# **TABLE OF CONTENTS**

**Page**

I  STATEMENT OF FACTS .................................................................................. 5

II  THE PROPOSED TRANSACTION CONTEMPLATED BY THE SALE
AGREEMENT ................................................................................................. 7

III  THE SALE OF THE GOSHEN NOTE AND GOSHEN DEED OF TRUST
SHOULD BE APPROVED FREE AND CLEAR OF ALL LIENS, INTERESTS,
CLAIMS AND ENCUMBRANCES ................................................................... 8

    A.  The Sale Satisfies the Standards for Approval of a Sale Outside the Ordinary
Course of Business ............................................................................... 8

        1.  Sound Business Justification ....................................................... 9

        2.  Accurate and Reasonable Notice ................................................ 9

        3.  Adequate Price .......................................................................... 10

        4.  Good Faith ................................................................................ 10

    B.  The Sale of the Goshen Note and Goshen Deed of Trust Should be Approved Free
and Clear of all Liens, Claims, Interests and Encumbrances ................ 10

    C.  Lenmar, the Buyer, is Entitled to a "Good Faith" Finding .................... 11

IV  THIS COURT SHOULD EXERCISE ITS DISCRETION AND APPROVE THE
COMPROMISE BETWEEN THE TRUSTEE AND THE BENJI TRUST ..................... 11

V  THE COMPROMISE SHOULD BE APPROVED UNDER THE FOUR PART TEST
GOVERNING APPROVAL OF COMPROMISES ............................................... 13

    A.  Probability Of Success ......................................................................... 14

    B.  Cost, Complexity And Delay ................................................................ 14

    C.  Difficulty In Collection ........................................................................ 14

    D.  The Interest Of Creditors ..................................................................... 15

VI  CONCLUSION ............................................................................................. 15

DECLARATION OF BRADLEY D. SHARP ............................................................. 17

PRINTED ON
RECYCLED PAPER

6462837v3

i

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Case v. Los Angeles Lumber Products Company,*
  308 U.S. 106, 60 S. Ct. 1 (1939).................................................................12

*Cosoff v. Rodman, (In re W.T. Grant Company),*
  699 F.2d 599 (2nd Cir. 1983) ..................................................................13

*In re A&C Properties, Inc.,*
  784 F.2d 1377 (9th Cir. 1986) ................................................................14

*In re Bell & Beckwith,*
  93 B.R. 569 (Bankr. N.D. Ohio 1988).....................................................13

*In re Canyon Partnership,*
  55 B.R. 520 (Bankr. S. D. Cal. 1985)....................................................8, 9

*In re Copy Crafters Quickprinting, Inc.,*
  92 B.R. 973 (Bankr. N.D.N.Y. 1988) .....................................................8-9

*In re Equity Funding Corp.,*
  492 F.2d 793 (9th Cir. 1974) ...................................................................8

*In re Flight Trans. Corp. Securities Litigation,*
  730 F.2d 1128 (8th Cir. 1984) ...............................................................15

*In re Grant Broadcasting of Philadelphia, Inc.,*
  71 B.R. 390 (Bankr. E.D. Pa. 1987) ......................................................13

*In re Huntington Ltd.,*
  654 F.2d 578 (9th Cir. 1991) ...................................................................8

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.,*
  77 B.R. 15, 21 (Bankr. E.D. Pa. 1987) ....................................................8

*In re M Capital Corporation,*
  290 B.R. 743 (9th Cir. BAP 2003) .........................................................11

*In re Technology For Energy Corp.,*
  56 B.R. 307 (Bankr. E.D. Tenn. 1985) ...................................................13

*In re Thrifty Liquors, Inc.,*
  26 B.R. 26 (Bankr. D. Mass. 1982) ..........................................................9

PRINTED ON

RECYCLED PAPER

6462837v3

*In re Woodson*,
        839 F.2d 610 (9th Cir. 1988) .................................................................................. 12

*Langnes v. Green*,
        282 U.S. 531, 51 S. Ct. 243 (1931).......................................................................... 12

*Matter of WPRV-TV, Inc.*,
        143 B.R. 315 (D. P.R. 1991), aff'd in part, rev'd in part, 983 F.2d 336 (1st Cir. 1993) ....... 9

**CODES AND STATUTES**

11 U.S.C.
        § 363(b)(1) ..................................................................................................... 8, 9, 10
        § 363(m)........................................................................................................... 11, 15

Federal Rule of Bankruptcy Procedure
Rule 2002(a) .......................................................................................................... 9
        Rule 6004............................................................................................................ 9
        Rule 6004(a) ....................................................................................................... 9
        Rule 6004(g) ....................................................................................................... 15
        Rule 9019(a) ....................................................................................................... 12

10 *Collier on Bankruptcy*,
        paragraph 9019.01 at 9019-2 (15th Ed. Rev. 2007) .......................................... 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRINTED ON

RECYCLED PAPER

6462837v3

1    **TO BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE:**

2    Bradley D. Sharp, Chapter 11 Trustee of the bankruptcy estate of Namco Capital

3    Group, Inc. (the "Trustee"), hereby moves this Court for an order approving, and authorizing the

4    Trustee to execute and perform pursuant to, that *Sale Agreement* entered into between the Trustee,

5    Kamran Benji, Trustee of the Amended and Restated Kamran and Atoosa Benji 1993 Trust (the

6    "Benji Trust") and Lenmar Goshen, LLC, formerly known as Marmar Goshen, LLC ("Lenmar").

7    The *Sale Agreement* is attached to the declaration of Bradley D. Sharp ("Sharp Decl.") as Exhibit

8    "A."

9    As explained herein, the *Sale Agreement* encompasses a full and complete settlement

10    and resolution of all issues between the Trustee, Benji Trust and Lenmar concerning that (i) "All

11    Inclusive Promissory Note" dated December 14, 2007, in the principal amount of $6,000,000

12    executed by Lenmar in favor of Namco Capital Group, Inc. ("Namco") (the "Goshen Note")[1] and

13    (ii) "All Inclusive Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing,"

14    which was recorded on January 3, 2008, in the Los Angeles County Recorder's Office as Instrument

15    No. 20080011090 (the "Goshen Deed of Trust"). The Goshen Deed of Trust, which secures the

16    obligations under the Goshen Note, encumbers that real property commonly known as 11749

17    Goshen Avenue, Los Angeles, California (the "Goshen Property") and, along with the Goshen Note,

18    acts as collateral for the obligations owing by Namco to Benji Trust under that certain Promissory

19    Note in the principal sum of $923,251.67 executed by Namco in favor of Benji Trust (the "Namco

20    Promissory Note"). The *Sale Agreement* avoids the risks and costs associated with the various

21    claims of Benji Trust and Lenmar concerning and relating to the Goshen Note and Goshen Deed of

22    Trust and allows bankruptcy estate of Namco to obtain the sum of $300,000.

23    ────────────────────────

24    [1] As the Goshen Note is a "wrap note" and includes the senior obligation owing to United
Commercial Bank in the sum of $4,380,000, the interest of the Namco Estate in the Goshen Note is
approximately $1,600,000. Also, initially and as written, the Goshen Note also included a then

25    existing encumbrance/deed of trust in favor of Hino-8, LLC, but that deed of trust was reconveyed
and the underlying promissory note to Hino-8, LLC was assigned to the Benji Trust. See, Exhibit

26    "J" hereto which is a copy of the recorded reconveyance of Hino 8, LLC's former deed of trust
against the Goshen Property; the Trustee requests that this Court take judicial notice of the

27    reconveyance (Exhibit "J.") See also, Declaration of Kamran Benji filed concurrently herewith in
support of this Motion.

28

1    Pursuant to the terms of the *Sale Agreement*, the Trustee requests that this Court

2  enter an Order:

3    (i)    approving, and authorizing the Trustee's execution of and performance under,

4  the *Sale Agreement*, the material provisions of which require

5    (a) Lenmar to purchase from the Trustee and the Benji Trust, free and clear of

6  any and all liens, interests, claims, and encumbrances of every type and kind, including, but not

7  limited to, the liens, interests, claims, and encumbrances of Benji Trust, Namco, 26 Etehad, LLC,

8  Hino 8, LLC, Kamran and Atoosa Benji, and Ezri Namvar,[2] the right, title and interest of the

9  Trustee, Namco and Benji Trust in and to the Goshen Note and the Goshen Deed of Trust for the

10  sum of $1,300,000;[3]

11    (b) From the purchase price of $1,300,000 to be paid by Lenmar, the Trustee,

12  in full and final satisfaction of all obligations under the Namco Promissory Note, shall pay to Benji

13  Trust the sum of $1,000,000; and

14    (c) Lenmar shall withdraw, with prejudice, its proof of claim against Namco's

15  bankruptcy estate filed on or about June 16, 2009, in an "unknown amount."

16    (ii) finding that Lenmar is a "good faith" purchaser and entitled to all of the benefits

17  of Bankruptcy Code § 363(m);

18    (iii) waiving the 10 day stay provided for in Rule 6004(g) of the Federal Rules of

19  Bankruptcy Procedure; and

20    (iv) approving the compromise between the Trustee and Benji Trust whereby .the

21  Trustee shall pay Benji Trust the sum of $1,000,000 in full and final satisfaction of all obligations

22  under the Namco Promissory Note.

23

24    [2] Any and all liens, interests, claims and encumbrances shall attach to the $1,300,000
purchase price in the same validity and enforceability as immediately prior to the proposed sale of
25  the Goshen Note and Goshen Deed of Trust.

26    [3] Thus, the Namco Estate is selling the Goshen Note and the Goshen Deed of Trust for an
approximate discount of $300,000.  Also, the Trustee, at the expense of the Namco bankruptcy
27  estate, will, per the terms of the *Sale Agreement*, pay for and provide Lenmar with a policy of
insurance concerning the Goshen Deed of Trust.

28

PRINTED ON

RECYCLED PAPER

6462837v3

3

1    The sale and transaction contemplated by the *Sale Agreement* is not subject to

2    overbids because (i) Lenmar, as the owner of the Goshen Property, desires to own and control the

3    Goshen Note and Goshen Deed of Trust and (ii) if there is an overbid, an overbidder cannot

4    withdraw the proof of claim filed by Lenmar and, if there were to be a successful overbidder, the

5    Namco Estate will then still have potential litigation concerning such proof of claim.

6    The Trustee contends that the terms and conditions of the *Sale Agreement* are fair,

7    reasonable, in the best interests of Namco's estate, creditors and shareholders and a proper exercise

8    of the Trustee's business judgment. Further, as the purchase price of $1,300,000 to be paid by

9    Lenmar to the Trustee exceeds all known liens, interests, claims and encumbrances against the

10   Goshen Note and Goshen Deed of Trust, the sale of the Goshen Note and Goshen Deed of Trust

11   should be ordered free and clear of any and all liens, interests, claims, and encumbrances of every

12   type and kind, including, but not limited to the liens, interests, claims, and encumbrances of Benji

13   Trust, Namco, 26 Etehad, LLC, Hino 8, LLC, Kamran and Atoosa Benji, and Ezri Namvar.

14   The Motion is based upon sections 105 and 363(b), (f) and (m) of the Bankruptcy

15   Code, Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure, Rules 6004-1 and 9013-

16   1 of the Local Bankruptcy Rules, that "Declaration of Kamran Benji in Support of Trustee's Motion

17   to Approve Sale of Interest in Goshen Promissory Note; Exhibits" filed concurrently herewith; the

18   Notice of Motion (the "Notice") filed and served concurrently herewith, the attached Memorandum

19   of Points and Authorities, the attached Sharp Decl., and such other and further evidence as may be

20   appropriately before the Court at the time of the hearing on the Motion.

21   Accordingly, the Trustee requests that this Court enter an order granting the Trustee's

22   Motion in full including, but not limited to, approving the *Sale Agreement*, finding Lenmar to be a

23   "good faith" purchaser and entitled to all of the benefits of Bankruptcy Code § 363(m) and

24   authorizing the Trustee to execute and perform pursuant to the *Sale Agreement*.

25   DATED:  November 3, 2009              JEFFER, MANGELS, BUTLER & MARMARO LLP

26

27                                        By: _____/s/ Thomas M. Geher_____
                                          THOMAS M. GEHER
                                          Attorneys for Bradley D. Sharp,
28                                        Chapter 11 Trustee for Namco Capital Group, Inc.

PRINTED ON
RECYCLED PAPER

6462837v3

4

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2      **I**

3      **STATEMENT OF FACTS**

4      In or about December, 2007, Lenmar purchased and acquired the Goshen Property,

5 an eight (8) unit condominium building, from 26 Etehad, LLC.

6      In connection with Lenmar's acquisition of the Goshen Property, Lenmar (i) took

7 title to the Goshen Property subject to that "Deed of Trust" made by 26 Etehad, LLC, as trustor, in

8 favor of United Commercial Bank ("UCB"), as beneficiary, and recorded on February 25, 2005, in

9 the Los Angeles County Recorder's Office as Instrument No. 05-431852 (the "UCB Deed of Trust")

10 and other matters of record, and (ii) pursuant to the direction of 26 Etehad, LLC, as seller, made,

11 executed and delivered to Namco the (a) Goshen Note, which is in the principal amount of

12 $6,000,000 (and includes the principal amount owing to UCB under a promissory note in the

13 principal sum of $4,380,000, which is secured by the UCB Deed of Trust)[4] and (b) the Goshen Deed

14 of Trust. The Goshen Deed of Trust, which secures the obligations under the Goshen Note,

15 encumbers the Goshen Property. The Goshen Note and the Goshen Deed of Trust are attached to

16 the Sharp Decl. as Exhibits "B" and "C," respectively.

17      Prior to December 20, 2006, the Benji Trust loaned $923,251.67 to Namco. On or

18 about December 20, 2007, Namco executed a promissory note in favor of the Benji Trust in the

19 amount of $923,251.67 (the "Namco Promissory Note"). The Namco Promissory Note is attached

20 to the Sharp Decl. as Exhibit "D." The Namco Promissory Note is secured by a (i) pledge by

21 Namco of Namco's right, title and interest in the Goshen Note and (ii) a collateral assignment of the

22 Goshen Deed of Trust. On March 10, 2008, a "Collateral Assignment of Deed of Trust" was

23 recorded in the Los Angeles County Recorder's Office as Instrument No. 20080407812 (the

24

---

25      [4] Thus, the interest of the Namco Estate in the Goshen Note is approximately $1,600,000.
Also, initially and as written, the Goshen Note also included a then existing encumbrance/deed of
26 trust in favor of Hino-8, LLC, but that deed of trust was reconveyed and the underlying promissory
note to Hino-8, LLC was assigned to the Benji Trust. See, Exhibit "J" hereto which is a copy of the
27 recorded reconveyance of Hino 8, LLC's former deed of trust against the Goshen Property; the
Trustee requests that this Court take judicial notice of the reconveyance (Exhibit "J.") See also,
Declaration of Kamran Benji filed concurrently herewith in support of this Motion.

28

PRINTED ON
RECYCLED PAPER

6462837v3

1    "Collateral Assignment"), which assigned the Goshen Deed of Trust to the Benji Trust as collateral

2    and security for the Namco Promissory Note. The Collateral Assignment is attached to the Sharp

3    Decl. as Exhibit "E." The original of the Goshen Note was delivered to the Benji Trust (which

4    currently holds that document) on February 19, 2008 and, therefore, pursuant to the California

5    Commercial Code, Benji Trust holds a perfected security interest in the Goshen Note and the

6    Goshen Deed of Trust.

7            In addition to the delivery of the original Goshen Note to the Benji Trust and the

8    recordation of the Collateral Assignment, on or about April 2, 2008, Namco delivered to the Benji

9    Trust an original Allonge of the Goshen Note (the "Allonge") and an Agreement (the "Supplemental

10   Agreement") whereby Namco agreed that until the Namco Promissory Note is paid in full the Benji

11   Trust has the absolute right to commence collection and foreclose on the Goshen Note. A copy of

12   the Allonge and Supplemental Agreement are attached to the Sharp Decl. as Exhibits "F" and "G,"

13   respectively.

14           On December 22, 2008, certain creditors filed an Involuntary Petition against

15   Namco. On January 29, 2009, the U.S. Bankruptcy Court (the "Court") entered an order for relief

16   against Namco. On May 8, 2009, the Court entered an order appointing the Trustee.

17           The Trustee has reviewed various documents produced by the Benji Trust including

18   the Namco Promissory Note, the Goshen Note, the Goshen Deed of Trust, the Collateral

19   Assignment, the Allonge and the Supplemental Agreement, and has determined that the Benji Trust

20   has an unavoidable perfected security interest in the Goshen Note. The Namco Bankruptcy Estate

21   retains a beneficial interest in the Goshen Note.

22           The Benji Trust contends that, as of July 16, 2009, Namco, pursuant to the terms of

23   the Namco Promissory Note, owes the Benji Trust the sum of $1,002,259.79 plus attorney's fees

24   and the continued accrual of interest. No payments have been made on account of the Namco

25   Promissory Note since October, 2008.

26           The Goshen Note is in default. No payments have been made on account of the

27   Goshen Note since October, 2008.

28           Based upon the Trustee's review of an appraisal report prepared for the benefit of

PRINTED ON
RECYCLED PAPER

6462837v3

1    UCB and a Preliminary Title Report concerning the Goshen Property, the Goshen Property has a

2    value of approximately $5,570,000, and is encumbered by, among other things, (i) the UCB Deed of

3    Trust and (ii) the Goshen Deed of Trust. The Preliminary Title Report concerning the Goshen

4    Property is attached to the Sharp Decl. as Exhibit "H."

5            On or about June 16, 2009, Lenmar filed, in Namco's bankruptcy case, a "Proof of

6    Claim" in an "unknown amount" concerning and relating to its (i) acquisition of the Goshen

7    Property and (ii) execution and delivery of the Goshen Note and Goshen Deed of Trust (the

8    "Lenmar Proof of Claim"). The Lenmar Proof of Claim is attached to the Sharp Decl. as Exhibit

9    "I."

10

11                                    **II**

12            **THE PROPOSED TRANSACTION CONTEMPLATED**

13                    **BY THE SALE AGREEMENT**

14            The transaction contemplated by, and the material terms of, the *Sale Agreement* are:

15            (a)        Lenmar shall purchase from the Trustee and the Benji Trust, free and clear of

16    any and all liens, interests, claims, and encumbrances of every type and kind, including, but not

17    limited to, the liens, interests, claims, and encumbrances of Benji Trust, Namco, 26 Etehad, LLC,

18    Hino 8, LLC, Kamran and Atoosa Benji, and Ezri Namvar,[5] the right, title and interest of the

19    Trustee, Namco and Benji Trust in and to the Goshen Note and the Goshen Deed of Trust for the

20    sum of $1,300,000;[6]

21            (b)        From the purchase price of $1,300,000 to be paid by Lenmar to the Trustee,

22    the Trustee, in full and final satisfaction of all obligations under the Namco Promissory Note, shall

23    _____

24    [5] Any and all liens, interests, claims and encumbrances shall attach to the $1,300,000
      purchase price in the same validity and enforceability as immediately prior to the proposed sale of

25    the Goshen Note and Goshen Deed of Trust.

26    [6] The purchase price of $1,300,000 represents a discount of approximately $300,000. Also,
      the Trustee, at the expense of the Namco bankruptcy estate, will, per the terms of the *Sale*

27    *Agreement*, pay for and provide Lenmar with a policy of insurance concerning the Goshen Deed of
      Trust.

28

1    pay to Benji Trust the discounted sum of $1,000,000;

2         (c)    Lenmar shall withdraw, with prejudice, the Lenmar Proof of Claim;

3         (d)    The Benji Trust and Lenmar shall exchange mutual releases; and

4         (e)    The Benji Trust, upon receipt of $1,000,000 from the Trustee, as set forth in

5    the *Sale Agreement*, agrees, represents and warrants that it no longer has any claim against Namco,

6    the Trustee, the bankruptcy estate of Namco or Lenmar which concerns or relates to the Namco

7    Promissory Note, the Goshen Note, the Goshen Deed of Trust and the transactions and occurrences

8    surrounding the same and that no such claims have been, at any time, assigned by the Benji Trust to

9    any person or entity.

10

11    **III**

12    **THE SALE OF THE GOSHEN NOTE AND GOSHEN DEED**

13    **OF TRUST SHOULD BE APPROVED FREE AND CLEAR OF ALL**

14    **LIENS, INTERESTS, CLAIMS AND ENCUMBRANCES**

15        A.   The Sale Satisfies the Standards for Approval of a Sale Outside the Ordinary

16    Course of Business.

17         Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee,

18    after notice and hearing, may . . . sell, other than in the ordinary course of business, property of the

19    estate." 11 U.S.C. § 363(b)(1).  The Ninth Circuit Court of Appeals has ruled in cases under the

20    Bankruptcy Act that a sale of a debtor's property should be approved if it is in the best interests of

21    the estate and creditors. *In re Huntington Ltd.*, 654 F.2d 578, 589 (9th Cir. 1991); *In re Equity*

22    *Funding Corp.*, 492 F.2d 793, 794 (9th Cir. 1974).  Whether such a transaction is in the best

23    interests of the estate is still a significant factor under the Bankruptcy Code. *In re Canyon*

24    *Partnership*, 55 B.R. 520, 526 (Bankr. S. D. Cal. 1985).

25         In evaluating the propriety of a sale of property of the estate, courts have evaluated

26    whether: (i) a "sound business purpose" justifies the sale; (ii) "accurate and reasonable notice" of

27    the sale was provided; (iii) "the price to be paid is adequate, i.e., fair and reasonable;" and (iv)

28    "good faith, i.e., the absence of any lucrative deals with insiders, is present." *In re Copy Crafters*

PRINTED ON
RECYCLED PAPER

6462837v3

1  *Quickprinting, Inc.*, 92 B.R. 973, 983 (Bankr. N.D.N.Y. 1988) and *In re Industrial Valley Refrig.*

2  *and Air Cond. Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). An examination of each of the

3  above four factors reveals that the sale contemplated by the *Sale Agreement* should be approved.

4                     1.    Sound Business Justification.

5         Application of the debtor in possession's or trustee's sound business judgment in the

6  use, sale or lease of property of the estate is subject to great judicial deference. *Matter of WPRV-*

7  *TV, Inc.*, 143 B.R. 315, 319 (D. P.R. 1991), aff'd in part, rev'd in part, 983 F.2d 336 (1st Cir. 1993);

8  *In re Thrifty Liquors, Inc.*, 26 B.R. 26, 28 (Bankr. D. Mass. 1982). The application of the business

9  judgment test affords the debtor in possession or trustee discretion in balancing the costs and

10 benefits of administering or disposing of estate assets according to the needs of the estate. See *In re*

11 *Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

12        Here, the sale of the Goshen Note and Goshen Deed of Trust will substantially

13 benefit Namco, its Estate and all creditors because: (a) Benji, the holder of the Namco Promissory

14 Note, which is secured by the Goshen Note and Goshen Deed of Trust, has agreed to a discounted

15 payoff of the Namco Promissory Note and will be paid and satisfied in full; (b) Namco's estate will

16 obtain the sum of $300,000; (c) the Lenmar Proof of Claim will be withdrawn with prejudice, and

17 (d) the parties to the *Sale Agreement* will avoid costly litigation concerning the rights and duties

18 under the Namco Promissory Note, Goshen Note and Goshen Deed of Trust.

19                     2.    Accurate and Reasonable Notice.

20        Pursuant to § 363(b)(1), a debtor in possession or trustee must give notice of any sale

21 of property of the estate. Most transactions not in the ordinary course of business are governed by

22 Federal Rule of Bankruptcy Procedure 6004. Rule 6004(a) refers, in turn, to Rule 2002(a), which

23 requires a twenty (20) day notice period for any "proposed use, sale, or lease of property of the

24 estate other than in the ordinary course of business, unless the court for cause shown, shortens the

25 time . . . ." F.R.B.P. 2002(a).

26        The Trustee, pursuant to that *Order Establishing Notice Procedures and Permitting*

27 *Service on Insured Depository Institutions by First Class Mail* (the "Limited Notice Order"),

28 entered on February 9, 2009, has served a Notice of the Motion on all parties entitled thereto as

1    established by the Limiting Notice Order.  As such, the Trustee has satisfied the requirements for

2    accurate and reasonable notice.

3                            3.    Adequate Price.

4            The Trustee contends that the $1,300,000 sale price for the Goshen Note and Goshen

5    Deed of Trust represents an adequate and fair price for such assets and such a price will generate

6    $300,000 for Namco's estate.  While the price of $1,300,000 represents a discount of approximately

7    $300,000, Lenmar, upon approval of the *Sale Agreement*, will also withdraw, with prejudice, the

8    Lenmar Proof of Claim and, therefore, the Namco Estate will avoid costly litigation with Lenmar.

9                            4.    Good Faith.

10           Finally, the sale contemplated by the *Sale Agreement* is proposed in good faith.  The

11   "good faith" requirement focuses principally on the element of special treatment of a debtor's

12   insiders in the sale transaction.  *Industrial Valley*, 77 B.R. at 21.  Here, Lenmar, the buyer, is not an

13   insider or affiliate of Namco, and the negotiations between the Trustee and Lenmar regarding the

14   proposed sale transaction were at arms-length and no collusion was involved.  Additionally, Lenmar

15   was honest and cooperative with the Trustee in the negotiation of the *Sale Agreement* and did not

16   seek to gain any advantage over any other interested party or chill any other previous bidding for

17   the Goshen Note and Goshen Deed of Trust.

18           B.    The Sale of the Goshen Note and Goshen Deed of Trust Should be Approved

19   Free and Clear of all Liens, Claims, Interests and Encumbrances.

20           Section 363(f) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee

21   may sell property . . . free and clear of any interest in such property of an entity other than the

22   estate, only if . . . (2) such entity consents; [or] (3) such interest is a lien and the price at which such

23   property is to be sold is greater than the aggregate value of all liens on such property; [or] (4) such

24   interest is in bona fide dispute  . . ."  11 U.S.C. § 363(f).

25           Here, the sole perfected security interest against Namco's interests in the Goshen

26   Note and Goshen Deed of Trust is held by the Benji Trust.  The Preliminary Title Report (Exhibit

27   "H") discloses the Goshen Deed of Trust and that the only recorded assignment thereof is to the

28   Benji Trust, for collateral purposes only.  The Benji Trust has agreed that the Goshen Note and

1    Goshen Deed of Trust may be sold free and clear of its interests and lien for the sum of $1,300,000

2    pursuant to the terms of the *Sale Agreement*. Also, as the Benji Trust has agreed to accept the

3    discounted sum of $1,000,000 in full satisfaction of the Namco Promissory Note, the sales price of

4    $1,3000,000 exceeds the amount of the Benji Trust's lien. To the extent that any other person or

5    entity claims an interest in the Goshen Note and Goshen Deed of Trust, such interests are unknown

6    to the Trustee and are subject to a good faith dispute.

7          Accordingly, pursuant to Bankruptcy Code § 363(f), the Goshen Note and Goshen

8    Deed of Trust can be sold free and clear of all claims, liens, interest and encumbrances.

9          C.    Lenmar, the Buyer, is Entitled to a "Good Faith" Finding.

10          Section 363(m) of the Bankruptcy Code provides that a reversal or modification of a

11    sale order does not effect the validity of a sale to "an entity that purchased ... the property in good

12    faith."

13          "Typically, lack of good faith is shown by fraud, collusion between the purchaser

14    and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In*

15    *re M Capital Corporation*, 290 B.R. 743, 746 (9th Cir. BAP 2003).

16          Here, Lenmar is not an insider or affiliate of Namco. Also, the negotiations leading

17    to the *Sale Agreement* were at "arm's length," no collusion was involved, and Lenmar was fair and

18    honest in the negotiations and did not seek to take any unfair advantage of the Trustee, the Benji

19    Trust or any other potential bidder. Thus, Lenmar is a "good faith" purchaser and this Court should

20    so find.

21

22             **IV**

23        **THIS COURT SHOULD EXERCISE ITS DISCRETION**

24        **AND APPROVE THE COMPROMISE BETWEEN**

25        **THE TRUSTEE AND THE BENJI TRUST**

26          Here, the transaction contemplated by the *Sale Agreement* includes a compromise

27    between the Trustee and the Benji Trust whereby the Benji Trust shall accept the discounted sum of

28    $1,000,000 in full and final satisfaction of the Namco Promissory Note, notwithstanding that as of

1    July 16, 2009, Namco, pursuant to the terms of the Namco Promissory Note, owes the Benji Trust

2    the sum of $1,002,259.79 plus attorney's fees and the continued accrual of interest.  The Benji

3    Trust's agreement to compromise the amount due under the Namco Promissory Note is beneficial to

4    Namco's Estate in that such compromise allows the Namco Estate to retain the sum of $300,000

5    from the sale of the Goshen Note and Goshen Deed of Trust.

6             Compromises that satisfy the "reasonableness standard" should be approved.

7             Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after notice and

8    a hearing, the court may approve a compromise or settlement."  By its own terms, Bankruptcy Rule

9    9019(a) commits the approval or rejection of a compromise to the sound discretion of the

10   Bankruptcy Court.

11            Sound discretion is judicial power exercised fairly and equitably.  As the Supreme

12   Court writes:

13            the term "discretion" denotes the absence of a hard and fast rule . . . when
             invoked as a guide to judicial action, it means a sound discretion, that is to
14           say, a discretion exercised not arbitrarily or willfully, but with regard to
             what is right and equitable under the circumstances and the law, and
15           directed by the reasonableness and conscience of the judge to a just result.

16

17   *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247 (1931).  Correspondingly, the Ninth Circuit

18   has recognized that "the bankruptcy court has great latitude in approving settlements."  *In re

19   Woodson*, 839 F.2d 610, 620 (9th Cir. 1988).

20            In determining whether the proposed settlement is "right" in "law," "reason," and

21   "conscience," two principles should guide this Court.  First, compromises are "favored in

22   bankruptcy" 10 *Collier on Bankruptcy*, paragraph 9019.01 at 9019-2 (15th Ed. Rev. 2007), and "are

23   a normal part of the reorganization process."  *Case v. Los Angeles Lumber Products Company*, 308

24   U.S. 106, 130, 60 S.Ct. 1 (1939).

25            Second, settlements should be approved if they fall above the lowest point in the

26   continuum of reasonableness.  As the Court of Appeals for the Second Circuit states:

27            [The] responsibility of the bankruptcy judge and ours upon review, is not
             to decide the numerous questions of law and fact raised by the appellants
28           but rather to canvas the issues and see whether the settlement 'falls below
             the lowest point in the range of reasonableness.'

*Cosoff v. Rodman, (In re W.T. Grant Company)* 699 F.2d 599, 608 (2nd Cir. 1983). Thus, the question is not whether a better settlement might have been achieved, or a better result if litigation pursued. Instead, the Court should approve settlements which meet a minimal threshold of reasonableness. As one bankruptcy court has pointed out:

> In assessing a settlement agreement the court is not obliged to determine and rule upon disputed facts and questions of law. Instead, the court's duty is to "canvas the issues" and decide whether the settlement falls below the nadir in the range of reasonableness.

*In re Technology For Energy Corp.*, 56 B.R. 307, 311, 312 (Bankr. E.D. Tenn. 1985).

> In determining whether to approve a trustee's proposed settlement, the court does not substitute its judgment for that of the trustee . . . instead, the court will, at the hearing on the proposed settlement, canvas the issues and see if the settlement falls below the lowest point in the range of reasonableness . . . the purpose of the hearing is not for the court to determine the numerous issues of law and fact raised by the objectors . . . what is being sought is not the resolution of issues, but rather the identification and clarification of the litigation issues so that the Court can make an informed decision on the reasonableness of the settlement.

*In re Bell & Beckwith*, 93 B.R. 569, 574-575 (Bankr. N.D. Ohio 1988).

The Trustee contends that the proposed compromise between the Trustee and the Benji Trust, which is set forth in the *Sale Agreement*, is fair, reasonable and in the best interests of Namco, its estate and creditors and should be approved.

**V**

## THE COMPROMISE SHOULD BE APPROVED UNDER THE
## FOUR PART TEST GOVERNING APPROVAL OF COMPROMISES

Decisional law regarding the exercise of the court's discretion in determining whether a compromise satisfies the reasonableness standard is "remarkably consistent in establishing that there are but four considerations which a court must address." *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390, 395 (Bankr. E.D. Pa. 1987). These considerations are:

1    (1)    the probability of success in the litigation;

2    (2)    the complexity of the litigation involved, and the expense, inconvenience and

3    delay necessarily attending it;

4    (3)    the likely difficulty in collection; and

5    (4)    the paramount interest of creditors.

6    *In re A&C Properties, Inc.*, 784 F.2d 1377, 1381 (9th Cir. 1986).  Each of these factors militate in

7    favor of approving the settlement.

8    **A.    Probability Of Success**

9    Here, the Trustee is not aware of any basis to avoid the Benji Trust's interests and

10    lien in and against the Goshen Note and Goshen Deed of Trust.  The Trustee also is not aware of

11    any basis to reduce the amount owed by Namco pursuant to the Namco Promissory Note, which is

12    secured by Namco's interests in the Goshen Note and Goshen Deed of Trust.  Thus, the Trustee has

13    no reasonable belief that he has any probability of success in (i) avoiding the Benji Trust's interests

14    in the Goshen Note and Goshen Deed of Trust or (ii) reducing the face amount owed under the

15    Namco Promissory Note.

16    Based upon the foregoing, the Trustee contends that the proposed settlement is in the

17    best interests of the estate and its creditors and should be approved.

18    **B.    Cost, Complexity And Delay**

19    The second factor that must be considered in evaluating the settlement is the

20    expense, complexity, inconvenience and delay caused by the litigation of the pending and

21    threatened litigation and contested matters.  As the Trustee would not commence any litigation

22    concerning the Benji Trust's interests in the Goshen Note and Goshen Deed of Trust, this issue of

23    expense, complexity, inconvenience and delay is not a relevant factor.

24    **C.    Difficulty In Collection**

25    Here, this is a not an important issue as Namco owes money to Benji Trust and the

26    Benji Trust has no liability to the Trustee relating to the Namco Promissory Note, Goshen Note and

27    the Goshen Deed of Trust.

28

PRINTED ON
RECYCLED PAPER

6462837v3

1

**D.    The Interest Of Creditors**

2    The final, but most significant, part of the analysis involves an evaluation of whether

3  the settlement is in the best interests of creditors. See generally, *In re Flight Trans. Corp. Securities*

4  *Litigation*, 730 F.2d 1128, 1135-1136 (8th Cir. 1984). Here, the proposed compromise will allow

5  the Trustee to pay a discounted sum to the Benji Trust in full and final satisfaction of Namco's

6  obligations under the Namco Promissory Note. This discounted payoff allows the Namco Estate to

7  retain, for the benefit of creditors, the sum of $300,000 from Lenmar's purchase price of $1,300,000

8  for the Goshen Note and Goshen Deed of Trust. Accordingly, the proposed compromise with the

9  Benji Trust is in the best interests of the Namco Estate and its creditors.

10    Based upon the above four factors, the Trustee submits that the proposed settlement

11  is fair, reasonable and in the best interests of Namco's estate.

12

13

**VI**

14

**CONCLUSION**

15    Based on the foregoing the Trustee requests that this Court enter an order:

16    (1)    approving, and authorizing the Trustee's execution of and performance under,

17  the *Sale Agreement*;

18    (2)    finding that Lenmar is a "good faith" purchaser and entitled to all of the

19  benefits of Bankruptcy Code § 363(m);

20    (3)    waiving the 10 day stay provided for in Rule 6004(g) of the Federal Rules of

21  Bankruptcy Procedure; and

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

PRINTED ON
RECYCLED PAPER

6462837v3

1              (4)     approving the compromise between the Trustee and Benji Trust whereby the

2  Trustee shall pay Benji Trust the sum of $1,000,000 in full and final satisfaction of all obligations

3  under the Namco Promissory Note.

4

5  Dated:    November 3, 2009          JEFFER, MANGELS, BUTLER & MARMARO LLP
                                  DAVID M. POITRAS

6                                  THOMAS M. GEHER

7                          By       */s/Thomas M. Geher*
                                   _____

8

9                                    Thomas M. Geher,
                                    Attorneys for Bradley D. Sharp, Chapter

10                                  11 Trustee for Namco Capital Group,
                                    Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

6462837v3

## DECLARATION OF BRADLEY D. SHARP

I, Bradley D. Sharp, declare:

1.    I am the chapter 11 trustee of the bankruptcy estate of Namco Capital Group, Inc. All facts stated herein are known by me to be true through my own personal knowledge, or from my activities as Namco's[7] trustee or from my review of various books and records of, and pleadings filed in the bankruptcy case of, Namco, and I would and could competently testify thereto in a court of law if called upon to do so.

2.    In or about December, 2007, Lenmar purchased and acquired the Goshen Property, an eight (8) unit condominium building, from 26 Etehad, LLC.

3.    In connection with Lenmar's acquisition of the Goshen Property, Lenmar (i) took title to the Goshen Property subject to that "Deed of Trust" made by 26 Etehad, LLC, as trustor, in favor of United Commercial Bank ("UCB"), as beneficiary, and recorded on February 25, 2005, in the Los Angeles County Recorder's Office as Instrument No. 05-431852 (the "UCB Deed of Trust") and other matters of record, and (ii) pursuant to the direction of 26 Etehad, LLC, as seller, made, executed and delivered to Namco the (a) Goshen Note, which is in the principal amount of $6,000,000 (and includes the principal amount owing to UCB under a promissory note in the principal sum of $4,380,000, which is secured by the UCB Deed of Trust) and (b) the Goshen Deed of Trust. The Goshen Deed of Trust, which secures the obligations under the Goshen Note, encumbers the Goshen Property. The Goshen Note and the Goshen Deed of Trust are attached hereto as Exhibits "B" and "C," respectively.

4.    Prior to December 20, 2006, the Benji Trust loaned $923,251.67 to Namco. On or about December 20, 2007, Namco executed a promissory note in favor of the Benji Trust in the amount of $923,251.67 (the "Namco Promissory Note"). The Namco Promissory Note is attached hereto as Exhibit "D." The Namco Promissory Note is secured by a (i) pledge by Namco

---

[7] All undefined terms herein shall have the same definitions as ascribed to them in the preceding Motion and Memorandum of Points and Authorities.

1  of Namco's right, title and interest in the Goshen Note and (ii) a collateral assignment of the Goshen

2  Deed of Trust. On March 10, 2008, a "Collateral Assignment of Deed of Trust" was recorded in the

3  Los Angeles County Recorder's Office as Instrument No. 200803100020028 (the "Collateral

4  Assignment"), which assigned the Goshen Deed of Trust to the Benji Trust as collateral and security

5  for the Namco Promissory Note. The Collateral Assignment is attached hereto as Exhibit "E."

6  Also, the original of the Goshen Note was delivered to the Benji Trust (which currently holds that

7  document) on February 19, 2008.

8         5.      In addition to the delivery of the original Goshen Note to the Benji Trust and

9  the recordation of the Collateral Assignment, on or about April 2, 2008, Namco delivered to the

10 Benji Trust an original Allonge of the Goshen Note (the "Allonge") and an Agreement (the

11 "Supplemental Agreement") whereby Namco agreed that until the Namco Promissory Note is paid

12 in full the Benji Trust has the absolute right to commence collection and foreclose on the Goshen

13 Note. A copy of the Allonge and Supplemental Agreement are attached hereto as Exhibits "F" and

14 "G," respectively.

15        6.      On December 22, 2008, certain creditors filed an Involuntary Petition against

16 Namco. On January 29, 2009, the U.S. Bankruptcy Court (the "Court") entered an order for relief

17 against Namco. On May 8, 2009, the Court entered an order appointing the Trustee.

18        7.      My counsel and I have reviewed various documents produced by the Benji

19 Trust including the Namco Promissory Note, the Goshen Note, the Goshen Deed of Trust, the

20 Collateral Assignment, the Allonge and the Supplemental Agreement, and have determined that the

21 Benji Trust has an unavoidable perfected security interest in the Goshen Note. The Namco

22 Bankruptcy Estate retains a beneficial interest in the Goshen Note.

23        8.      The Benji Trust contends that, as of July 16, 2009, Namco, pursuant to the

24 terms of the Namco Promissory Note, owes the Benji Trust the sum of $1,002,259.79 plus

25 attorney's fees and the continued accrual of interest. No payments have been made on account of

26 the Namco Promissory Note since October, 2008.

27        9.      The Goshen Note is in default. No payments have been made on account of

28 the Goshen Note since October, 2008.

PRINTED ON
RECYCLED PAPER

6462837v3

1           10.     Based upon a review of an appraisal report prepared for the benefit of UCB

2    and a Preliminary Title Report concerning the Goshen Property, I have determined that the Goshen

3    Property has a value of approximately $5,570,000, and is encumbered by, among other things, (i)

4    the UCB Deed of Trust and (ii) the Goshen Deed of Trust. The Preliminary Title Report concerning

5    the Goshen Property is attached hereto as Exhibit "H."

6           11.     On or about June 16, 2009, Lenmar filed, in Namco's bankruptcy case, a

7    "Proof of Claim" in an "unknown amount" concerning and relating to its (i) acquisition of the

8    Goshen Property and (ii) execution and delivery of the Goshen Note and Goshen Deed of Trust (the

9    "Lenmar Proof of Claim"). The Lenmar Proof of Claim is attached hereto as Exhibit "I."

10          12.     To liquidate Namco's interests in the Goshen Note and to satisfy the Namco

11   Promissory Note, I instructed my counsel to enter into negotiations with the Benji Trust and

12   Lenmar. These negotiations lead to the drafting and execution of the *Sale Agreement*, a copy of

13   which is attached hereto as Exhibit "A."

14          13.     Lenmar, the buyer of the Goshen Note and Goshen Deed of Trust, is not an

15   insider or affiliate of Namco, and my negotiations with Lenmar regarding the proposed sale

16   transaction set forth in the *Sale Agreement* were at arms-length and no collusion was involved.

17   Additionally, Lenmar was honest and cooperative with me in the negotiation of the *Sale Agreement*

18   and Lenmar did not seek to gain any advantage over any other interested party or chill any bidding

19   for the Goshen Note and Goshen Deed of Trust.

20          Executed on September *30*, 2009 at Los Angeles, California.

21          I declare under the penalty of perjury under the laws of the United States of America

22   that the foregoing is true and correct.

23

24

25                                                        BRADLEY D. SHARP

26

27

28

PRINTED ON
RECYCLED PAPER