# EXHIBIT A

## SALE AGREEMENT

This Sale Agreement (the "Agreement") is made and entered into by and between (a) Bradley D. Sharp, the chapter 11 trustee ("Trustee") of Namco Capital Group Inc. ("Namco"), (b) Kamran Benji, as trustee of the Amended and Restated Kamran and Atoosa Benji 1993 Trust (the "Benji Trust") and (c) Lenmar Goshen, LLC, formerly known as Marmar Goshen, LLC ("Lenmar").

## R E C I T A L S

**A.**     In or about December, 2007, Lenmar purchased and acquired that real property commonly known as 11749 Goshen Avenue, Los Angeles, California (the "Goshen Property"), an eight (8) unit condominium building, from 26 Etehad, LLC.

**B.**     In connection with Lenmar's acquisition of the Goshen Property, Lenmar (i) took title to the Goshen Property subject to that "Deed of Trust" made by 26 Etehad, LLC, as trustor, in favor of United Commercial Bank ("UCB"), as beneficiary, and recorded on February 25, 2005, in the Los Angeles County Recorder's Office as Instrument No. 05-431852 (the "UCB Deed of Trust") and other matters of record, and (ii) pursuant to the direction of 26 Etehad, LLC, as seller, made, executed and delivered to Namco that (a) "All Inclusive Promissory Note" dated December 14, 2007, in the principal amount of $6,000,000 (which includes the principal amount owing to UCB under a promissory note in the principal sum of $4,380,000, which is secured by the UCB Deed of Trust) (the "Goshen Note") and that (b) "All Inclusive Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing," which was recorded on January 3, 2008, in the Los Angeles County Recorder's Office as Instrument No. 20080011090 (the "Goshen Deed of Trust").  The Goshen Deed of Trust, which secures the obligations under the Goshen Note, encumbers the Goshen Property.  The Goshen Note and the Goshen Deed of Trust are attached hereto as Exhibits 1 and 2, respectively.

1

6412528v3

**C.**    Prior to December 20, 2006, the Benji Trust loaned $923,251.67 to Namco. On or about December 20, 2007, Namco executed a promissory note in favor of the Benji Trust in the amount of $923,251.67 (the "Namco Promissory Note"). The Namco Promissory Note is attached hereto as Exhibit 3. The Namco Promissory Note is secured by a (i) pledge by Namco of Namco's right, title and interest in the Goshen Note and (ii) a collateral assignment of the Goshen Deed of Trust. On March 10, 2008, a "Collateral Assignment of Deed of Trust" was recorded in the Los Angeles County Recorder's Office as Instrument No. 20080407812 (the "Collateral Assignment"), which assigned the Goshen Deed of Trust to the Benji Trust as collateral and security for the Namco Promissory Note. The original of the Goshen Note was delivered to the Benji Trust (which currently holds that document) on February 19, 2008.

**D.**    In addition to the delivery of the original Goshen Note to the Benji Trust and the recordation of the Collateral Assignment, on or about April 2, 2008, Namco delivered to the Benji Trust an original Allonge of the Goshen Note (the "Allonge") and an Agreement (the "Supplemental Agreement") whereby Namco agreed that until the Namco Promissory Note is paid in full the Benji Trust has the absolute right to commence collection and foreclose on the Goshen Note. A copy of the Allonge and Supplemental Agreement are attached hereto as Exhibits 4 and 5, respectively.

**E.**    On December 22, 2008, certain creditors filed an Involuntary Petition against Namco. On January 29, 2009, the U.S. Bankruptcy Court (the "Court") entered an order for relief against Namco. On May 8, 2009, the Court entered an order appointing the Trustee.

**F.**    The Trustee has reviewed various documents produced by the Benji Trust including the Namco Promissory Note, the Goshen Note, the Goshen Deed of Trust, the Collateral Assignment, the Allonge and the Supplemental Agreement, and has determined that the Benji Trust has a perfected security interest in the Goshen Note. The Namco Bankruptcy Estate retains a beneficial interest in the Goshen Note.

Goshen Settlement Agr    21

6412528v3

G.    The Benji Trust contends that, as of July 16, 2009, Namco, pursuant to the terms of the Namco Promissory Note, owes the Benji Trust the sum of $1,002,259.79 plus attorney's fees and the continued accrual of interest. No payments have been made on account of the Namco Promissory Note since October, 2008.

H.    The Goshen Note is in default. No payments have been made on account of the Goshen Note since October, 2008.

I.    The Goshen Property has a value of approximately $5,570,000, and is encumbered by, among other things, (i) the UCB Deed of Trust and (ii) the Goshen Deed of Trust.

J.    On or about June 16, 2009, Lenmar filed, in Namco's bankruptcy case, a "Proof of Claim" in an "unknown amount" concerning and relating to its (i) acquisition of the Goshen Property and (ii) execution and delivery of the Goshen Note and Goshen Deed of Trust (the "Lenmar Proof of Claim").

## AGREEMENT

**NOW THEREFORE**, the Trustee, Lenmar and the Benji Trust each agree as follows:

1.    **Incorporation of Recitals**

Recitals A through J are incorporated into and made a part of this Agreement.

2.    **Approval of Sale Agreement**

**2.1.**    Except as set forth in section 2.2 below, no party shall have any rights, duties, or obligations under this Agreement and this Agreement will not be binding or effective unless and until the Bankruptcy Court having jurisdiction over Namco's chapter 11 bankruptcy case enters an order that, in substance (a) approves all of the terms of this Agreement, including the sale of Namco's, the Trustee's and the Benji Trust's right, title and interest in and to the Goshen Note and Goshen Deed of Trust to Lenmar free and clear of all liens, interests, claims and

3

6412528v3

encumbrances, including the liens, interests, claims and encumbrances of the Benji Trust, Namco,

26 Etehad, LLC, Hino 8, LLC, Kamran Benji, Atoosa Benji, and Ezri Namvar, and (b) authorizes

the parties to this Agreement to perform its terms (the "Approval Order").

       **2.2.**    The Trustee shall have the obligation to file a motion and take all actions

necessary to obtain the Approval Order.  If the Approval Order is not entered then the parties

shall be as they were before they signed this Agreement and this Agreement shall have no force or

effect.

       The Benji Trust and Lenmar agree to cooperate with and perform all acts

reasonably necessary to assist the Trustee to obtain the Approval Order.

    **3.**      **<u>Sale, Transfer and Delivery of the Goshen Note and Goshen Deed of
Trust</u>**

       **3.1.**    The Trustee and the Benji Trust agree to sell to Lenmar, and Lenmar

agrees to purchase from the Trustee and the Benji Trust, on the terms and conditions set forth

herein and pursuant to Bankruptcy Code § 363(f), all of the right, title and interest of the Trustee,

Namco and the Benji Trust in and to the Goshen Note and the Goshen Deed of Trust, free and

clear of any and all liens, interests, claims and encumbrances of every type and kind, including, but

not limited to, the liens, interests, claims and encumbrances, if any, of the Benji Trust, Namco, 26

Etehad, LLC, Hino 8, LLC, Kamran Benji, Atoosa Benji, and Ezri Namvar, for the sum of

$1,300,000.  Except for any representation or warranty expressly set forth herein, the parties

agree and acknowledge that the sale and transfer of the Trustee's, Namco's and the Benji Trust's

right, title and interest in and to the Goshen Note and the Goshen Deed of Trust is on an "AS IS,

WHERE IS" basis without any representations or warranties of any type or nature.

4

3.2.    Within eleven (11) days after entry of the Approval Order, Lenmar shall

pay to the Trustee, in immediately available funds, the sum of $1,300,000.

Concurrently with Lenmar's payment and delivery of $1,300,000 to the

Trustee, as set forth above in this section 3.2, the Trustee and the Benji Trust shall (a) sell and

transfer to Lenmar all of Namco's, the Trustee's and the Benji Trust's right, title and interest in and

to the Goshen Note and the Goshen Deed of Trust, free and clear of all liens, interests, claims and

encumbrances, including, but not limited to, the liens, interests, claims and encumbrances of the

Benji Trust, Namco, 26 Etehad, LLC, Hino 8, LLC, Kamran Benji, Atoosa Benji, and Ezri

Namvar and (b) deliver to Lenmar (1) the original Goshen Note, (2) the Goshen Deed of Trust

and (3) a policy of insurance from First American Title Insurance Company concerning the

Goshen Deed of Trust which insures, subject to any standard exceptions, that the Goshen Deed of

Trust is a valid and perfected lien against the Goshen Property and is free and clear of all liens,

interests, claims and encumbrances.  The Benji Trust agrees to execute and deliver to Lenmar, at

no cost to the Benji Trust, any document prepared by Lenmar to extinguish any liens, interests,

claims and encumbrances of the Benji Trust in and to the Goshen Note and Goshen Deed of

Trust.  Additionally, the Trustee and the Benji Trust agree to execute and deliver to Lenmar, at no

cost to the Trustee and/or the Benji Trust, any document prepared by Lenmar which transfers to

Lenmar the right, title and interest of Namco, the Trustee and the Benji Trust in and to the

Goshen Note and Goshen Deed of Trust.

4.    **Allocation of Proceeds from the Goshen Note and Full Satisfaction of**

**Namco Promissory Note**

4.1.    Within seven (7) days after the Trustee's receipt of the sum of $1,300,000

from Lenmar, as set forth in section 3.2 above, (a) the Trustee shall pay to the Benji Trust the

sum of $1,000,000 in full and final satisfaction of the Namco Promissory Note and (b) the Benji

Trust, concurrently upon its receipt of $1,000,000 from the Trustee, as set forth above, shall

deliver to the Trustee the original of the Namco Promissory Note marked "CANCELLED AND

PAID IN FULL." The Benji Trust hereby agrees, represents and warrants that upon the receipt of

the sum of $1,000,000 from the Trustee, as set forth above, (a) the Namco Promissory Note is

paid in full, fully satisfied and cancelled and (b) the Benji Trust no longer has any claim against

Namco, the Trustee, the bankruptcy estate of Namco or Lenmar which concerns or relates to the

Namco Promissory Note, the Goshen Note, the Goshen Deed of Trust and the transactions and

occurrences surrounding the same and that no such claims have been, at any time, assigned by the

Benji Trust to any person or entity.

    4.2.    The $300,000 remaining from Lenmar's payment of $1,300,000 is the

property of Namco's bankruptcy estate free and clear of any claim, lien, interest or encumbrance

of the Benji Trust or Lenmar.

    5.    **Withdrawal of Lenmar Proof of Claim**

    Within eleven (11) days after receipt by Lenmar of the original Goshen Note and

the Goshen Deed of Trust, Lenmar shall file with the United States Bankruptcy Court having

jurisdiction over Namco's chapter 11 case a withdrawal, with prejudice, of the Lenmar Proof of

Claim. Lenmar hereby represents and warrants that it shall not assert or assign, and has not, at

any time, assigned, any claim against Namco, the Namco bankruptcy estate or the Trustee which

concerns or relates to the Goshen Note, the Goshen Deed of Trust, Lenmar's acquisition of the

Goshen Property and the Namco Promissory Note.

## 6.    Releases Between Lenmar and Benji Trust

**6.1**    Except for rights and obligations expressly created or retained herein, Lenmar, on behalf of itself, its members, agents, representatives, attorneys and accountants, hereby remises, releases, forever quitclaims and discharges the Benji Trust; and its trustees, beneficiaries, agents, attorneys, and accountants from all manner of actions, claims, debts, liabilities, demands, obligations, costs, expenses, attorneys fees, actions and causes of action, whether known or unknown, suspected or unsuspected.

**6.2**    Except for rights and obligations expressly created or retained herein, the Benji Trust, on behalf of itself, and its trustees, beneficiaries, agents, attorneys, and accountants, hereby remises, releases, forever quitclaims and discharges Lenmar and its members, agents, representatives, attorneys and accountants from all manner of actions, claims, debts, liabilities, demands, obligations, costs, expenses, attorneys fees, actions and causes of action, whether known or unknown, suspected or unsuspected.

**6.3**    The Benji Trust and Lenmar each acknowledge that there is a risk that subsequent to the execution of this Agreement, one or more of them will discover facts or will discover, suffer or incur claims and/or damages relating to the subject matter of this Agreement, which were unknown or unanticipated at the time this Agreement was executed, and which, if known on the date of this Agreement, may have materially affected their respective decisions to give the releases contained in this Agreement. Despite this knowledge and understanding, the Benji Trust and Lenmar each agrees that it is assuming the risk of such unknown and unanticipated facts and claims. Despite this knowledge and understanding, the Benji Trust and Lenmar agree that they are assuming the risk of such unknown and unanticipated facts and claims,

7

6412528v3

and in connection herewith, each hereby expressly waives any and all rights under Cal.Civ.Code
§1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR
> HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH
> IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED
> HIS OR HER SETTLEMENT WITH THE DEBTOR.

7.    **No Representations or Admissions**

Each party to this Agreement represents and warrants to each other party that,
except for the representations and warranties set forth in this Agreement, each party to this
Agreement acknowledges that he/it has relied solely upon his/its own judgment, belief and
knowledge of the existence, nature, and extent of each claim, demand, or cause of action that he/it
may have against the other party which is being resolved by this Agreement and that he/it has not
been influenced to any extent in entering into this Agreement by any representation or statement
regarding any such claim made by any other party to this Agreement (except as expressly set forth
in this Agreement).

8.    **Attorneys' Fees And Costs**

8.1.    Each party to this Agreement shall bear his/its own attorneys' fees,
expenses and costs incurred in connection with the preparation of this Agreement and any motion
to approve the Agreement.

8.2.    Nothing in this Agreement shall be interpreted or construed to waive or
release any right of the Trustee and/or of his professionals to seek compensation and
reimbursement from the Namco bankruptcy estate.

8

6412528v3

**8.3.** If any action or proceeding is brought concerning, relating to or for the enforcement or interpretation of this Agreement, or in connection with any dispute concerning this Agreement, the prevailing party shall be entitled to recover its/his actual attorney's fees and costs incurred in such action or proceeding in addition to any other relief to which the prevailing party may be entitled.

## 9.   Entire Agreement

**9.1.** This Agreement constitutes the entire understanding between the Trustee, Lenmar and the Benji Trust with respect to their rights concerning or relating to the Namco Promissory Note, the Goshen Property, the Goshen Deed of Trust and the Goshen Note. This Agreement supersedes and replaces in their entirety any and all prior negotiations or understandings, whether oral or written.

**9.2.** This Agreement has no terms other than those expressly set forth herein. Each party to this Agreement represents and warrants to each other party that he/it is not signing this Agreement in reliance upon any term, representation, or warranty other than those expressly set forth in this Agreement.

## 10.   Successors and Assigns

The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, agents, representatives, successors, and assigns.

## 11.   Additional Documents

Each party to this Agreement agrees to execute and deliver such additional documents and perform such further acts as may be reasonably necessary or appropriate to effectuate the purpose of this Agreement.

Goshen Settlement Agr   28

6412528v3

12.    **Governing Law; Jurisdiction**

12.1.  This Agreement shall be construed in accordance with and governed by the substantive laws of the State of California (without regard to California law concerning choice of law).

12.2.  Each party to this Agreement consents to the personal jurisdiction and venue of the U.S. Bankruptcy Court for the hearing/trial, entry of findings, and entry of final orders and judgments with respect to any action or dispute arising out of or relating to this Agreement.  In the event that the U.S. Bankruptcy Court lacks or does not exercise jurisdiction over any such action or dispute, each party to this Agreement consents to the personal jurisdiction and venue of the Superior Court of the State of California for the County of Los Angeles and, to the extent not inconsistent with applicable law, to the personal jurisdiction and venue of the United States District Court for the Central District of California for the hearing/trial, entry of findings, and entry of final orders and judgments with respect to any dispute arising out of this Agreement.

13.    **Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, and facsimile or electronic signatures, when delivered, shall be deemed original signatures.

14.    **Authority To Sign**

Each person signing this Agreement on behalf of a party represents and warrants to the other party hereto that he/it has the requisite power and authority to execute and deliver

Goshen Settlement Agr    29

this Agreement on behalf of that party and that this Agreement, when so executed and delivered, will be a binding obligation of and enforceable against such party in accordance with its terms.

**15.**    **Notice**

Any notice, service, or demand under this Agreement must be given by e-mail, facsimile transmission, postage pre-paid first class mail, or Federal Express as follows:

**To the Trustee:**  Bradley D. Sharp, Chapter 11 Trustee, c/o Development Specialists, Inc., 333 S. Grand Avenue, Suite 4070, Los Angeles, CA 90071; Fax No. (213) 617-2718; email: bsharp @dsi.biz; **and** c/o Thomas M. Geher, Jeffer, Mangels, Butler & Marmaro LLP, 1900 Avenue of the Stars, 7th Floor, Los Angeles, CA 90067-4308, Fax No. (310) 203-0567, and e-mail: tgeher@jmbm.com.

**To the Benji Trust:** Kamran Benji, Trustee, 2016 E. 15th Street, Los Angeles, CA 90021, Fax No. (213) 749-3300, and e-mail: Kamran@bluearchinv.com **and** c/o Susan I. Montgomery, 1925 Century Park East, Suite 1150, Los Angeles, CA 90067, Fax No. (310) 556-8905, and e-mail: Susan@simontgomerylaw.com.

**To Lenmar:**  Leonard Rosenblatt, Lenmar Goshen, LLC, 429 South Robertson Boulevard, Beverly Hills, CA 90211; email: lenrosenblatt@yahoo.com **and** c/o Ronald Michelman, Michelman & Michelman, LLP, 20265 Ventura Boulevard, Suite D, Woodland Hills, CA 91364, Fax No. (818) 883-7377, and e-mail: ronaldmichelman@sbcglobal.net.

Any party may change the person to whom and/or address to which notice to that party shall be delivered by giving notice of such change in accordance with this section 15.

11

16.     **Headings**

The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

17.     **Amendments**

This Agreement may not be modified by any party by any oral representation made before or after the execution of this Agreement.  All modifications to this Agreement must be in writing and signed by the Trustee, Lenmar and Benji Trust.

18.     **Construction**

This Agreement shall not be construed against the party preparing it, but shall be construed as if the parties jointly prepared it.

19.     **Severability**

If any nonmaterial portion of this Agreement shall be held to be invalid or unenforceable, then that portion shall be deemed to have been severed out of this Agreement and the parties acknowledge that the balance of this Agreement shall be valid and enforceable.

20.     **Limitation on Third-Party Beneficiaries**

Nothing contained in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the parties hereto.

Dated:  September ____, 2009             THE AMENDED AND RESTATED KAMRAN
                                        AND ATOOSA BENJI 1993 TRUST


                                        By: _____
                                            Kamran Benji, Trustee

12

6412528v3

Dated:  September ___, 2009         NAMCO CAPITAL GROUP, INC.


By:_____
          Bradley D. Sharp,
Chapter 11 Trustee of the Bankruptcy Estate of
Namco Capital Group, Inc.


Dated:  September ___, 2009         LENMAR GOSHEN, LLC


By:_____
          Leonard Rosenblatt,
Manager of Lenmar Goshen, LLC



**APPROVED AS TO FORM**:

THE LAW OFFICE OF SUSAN I. MONTGOMERY


By: _____
      Susan I. Montgomery
Attorneys for The Kamran and Atoosa Benji Trust Dated 06/26/1993


JEFFER, MANGELS, BUTLER & MARMARO LLP


By: _____
        Thomas M. Geher
Attorneys for Bradley D. Sharp, Chapter 11 Trustee
of the Bankruptcy Estate Namco Capital Group, Inc.


MICHELMAN & MICHELMAN, LLP


By: _____
      Ronald Michelman
Attorneys for Lenmar Goshen, LLC

6412528v3

16.     **Headings**

The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the meaning hereof.

17.     **Amendments**

This Agreement may not be modified by any party by any oral representation made before or after the execution of this Agreement. All modifications to this Agreement must be in writing and signed by the Trustee, Lenmar and Benji Trust.

18.     **Construction**

This Agreement shall not be construed against the party preparing it, but shall be construed as if the parties jointly prepared it.

19.     **Severability**

If any nonmaterial portion of this Agreement shall be held to be invalid or unenforceable, then that portion shall be deemed to have been severed out of this Agreement and the parties acknowledge that the balance of this Agreement shall be valid and enforceable.

20.     **Limitation on Third-Party Beneficiaries**

Nothing contained in this Agreement is intended to confer any rights or remedies under or by reason of this Agreement on any person or entity other than the parties hereto.


Dated: September 25, 2009

THE AMENDED AND RESTATED KAMRAN
AND ATOOSA BENJI 1993 TRUST

By: _____
        Kamran Benji, Trustee

12

Goshen Settlement Agr

33

6412528v3

Dated:  September 2 7, 2009

NAMCO CAPITAL GROUP, INC.

By:_____
     Bradley D. Sharp,
Chapter 11 Trustee of the Bankruptcy Estate of
Namco Capital Group, Inc.

Dated:  September ___, 2009

LENMAR GOSHEN, LLC

By:_____
     Leonard Rosenblatt,
Manager of Lenmar Goshen, LLC

**<u>APPROVED AS TO FORM</u>**:

THE LAW OFFICE OF SUSAN I. MONTGOMERY

By: _____
    Susan I. Montgomery
Attorneys for The Kamran and Atoosa Benji Trust Dated 06/26/1993

JEFFER, MANGELS, BUTLER & MARMARO LLP

By: _____
    Thomas M. Geher
Attorneys for Bradley D. Sharp, Chapter 11 Trustee
of the Bankruptcy Estate Namco Capital Group, Inc.

MICHELMAN & MICHELMAN, LLP

By: _____
    Ronald Michelman
Attorneys for Lenmar Goshen, LLC

13

Goshen Settlement Agr

34

09/29/2009 14:33 FAX                                                           ☑001/001

Dated: September ___, 2009          NAMCO CAPITAL GROUP, INC.


                                    By:_____
                                          Bradley D. Sharp,
                                    Chapter 11 Trustee of the Bankruptcy Estate of
                                    Namco Capital Group, Inc.


Dated: September 29, 2009           LENMAR GOSHEN, LLC

                                    By: _____ manager
                                          Leonard Rosenblatt,
                                    Manager of Lenmar Goshen, LLC



**APPROVED AS TO FORM:**

THE LAW OFFICE OF SUSAN I. MONTGOMERY


By: _____
      Susan I. Montgomery
Attorneys for The Kamran and Atoosa Benji Trust Dated 06/26/1993


JEFFER, MANGELS, BUTLER & MARMARO LLP


By: _____
      Thomas M. Geher
Attorneys for Bradley D. Sharp, Chapter 11 Trustee
of the Bankruptcy Estate Namco Capital Group, Inc.


MICHELMAN & MICHELMAN, LLP


By: _____
      Ronald Michelman
Attorneys for Lenmar Goshen, LLC

13

Goshen Settlement Agr

6412528v3

35

Dated:  September ___, 2009          NAMCO CAPITAL GROUP, INC.


By:_____
　　　　　Bradley D. Sharp,
Chapter 11 Trustee of the Bankruptcy Estate of
Namco Capital Group, Inc.


Dated:  September ___, 2009          LENMAR GOSHEN, LLC


By:_____
　　　　　Leonard Rosenblatt,
Manager of Lenmar Goshen, LLC



**APPROVED AS TO FORM**:

THE LAW OFFICE OF SUSAN I. MONTGOMERY

By: _____
　　　　Susan I. Montgomery
Attorneys for The Kamran and Atoosa Beni Trust Dated 06/26/1993


JEFFER, MANGELS, BUTLER & MARMARO LLP


By: _____
　　　　Thomas M. Geher
Attorneys for Bradley D. Sharp, Chapter 11 Trustee
of the Bankruptcy Estate Namco Capital Group, Inc.


MICHELMAN & MICHELMAN, LLP


By: _____
　　　　Ronald Michelman
Attorneys for Lenmar Goshen, LLC

13

Goshen Settlement Agr

6412528v3

09/29/2009 14:33 FAX                                                          @001/001

Dated:  September ___, 2009          NAMCO CAPITAL GROUP, INC.

                                     By: _____
                                            Bradley D. Sharp,
                                     Chapter 11 Trustee of the Bankruptcy Estate of
                                     Namco Capital Group, Inc.


Dated:  September 29, 2009           LENMAR GOSHEN, LLC

                                     By: _____ manager
                                            Leonard Rosenblatt,
                                     Manager of Lenmar Goshen, LLC



APPROVED AS TO FORM:

THE LAW OFFICE OF SUSAN I. MONTGOMERY


By: _____
        Susan I. Montgomery
Attorneys for The Kamran and Atoosa Benji Trust Dated 06/28/1993


JEFFER, MANGELS, BUTLER & MARMARO LLP


By: _____
        Thomas M. Geher
Attorneys for Bradley D. Sharp, Chapter 11 Trustee
of the Bankruptcy Estate Namco Capital Group, Inc.


MICHELMAN & MICHELMAN, LLP


By: _____
        Ronald Michelman
Attorneys for Lenmar Goshen, LLC

                                     13

64129581

# EXHIBIT B

## ALL INCLUSIVE
## PROMISSORY NOTE

$6,000,000.00                    LOS ANGELES, CALIFORNIA                    December 14, 2007

FOR VALUE RECEIVED, MARMAR GOSHEN, LLC, a California limited liability company ("Borrower"), promises to pay to NAMCO CAPITAL GROUP, INC., a California corporation ("Lender"), or its order, at its office located at 12121 Wilshire Blvd., Suite 1400, Los Angeles, CA 90025, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Six Million Dollars ($6,000,000.00), together with interest which accrues on the outstanding principal balance from time to time, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this All Inclusive Promissory Note (this "Note").

**INTEREST RATE.** Interest on the outstanding principal balance of this Note shall be computed and calculated based upon a three hundred sixty (360) day year and actual days elapsed and shall accrue at the rate of Seven percent (7.00%) per annum, in accordance with and subject to the provisions set forth below (the "Note Rate"). The Note Rate is the interest rate charged by Lender to borrowers, but may not be Lender's lowest rates.

**ADVANCES.** This Note is NOT a revolving note, so amounts which are repaid hereunder may NOT be redrawn.

**PRINCIPAL AND INTEREST PAYMENTS.** Payments of interest only on the outstanding principal balance of this Note shall be due and payable in arrears on a monthly basis during the term of this Note. Such monthly payments of interest only shall be in the sums specified by Lender to Borrower from time to time. Payments on this Note shall be due and payable commencing on the first calendar day of the first full calendar month following the funding of this Note, and continuing on the first day of each successive calendar month thereafter until the Maturity Date (defined below). Upon the Maturity Date, the entire unpaid obligation (including all principal, accrued but unpaid interest, and other charges) outstanding under this Note, and any other and/or instruments which further evidence or secure the indebtedness evidenced by this Note (collectively, the "Loan Documents") shall become due and payable in full.

All payments due hereunder, including payments of principal and interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note. Payments for any month which is not a full calendar month shall be prorated on the basis of a thirty (30) day month, based on the actual number of days elapsed.

**PROVISIONS RE UNDERLYING NOTE.** The total principal amount of this Note includes the unpaid principal balance of those certain promissory notes which are identified in Schedule 1 attached hereto. The foregoing notes are referred to herein collectively as the "Underlying Notes".

Provided that Borrower is not in default under this Note or any of the Loan Documents, Lender shall make all payments of principal and interest under the Underlying Notes. Payments made by Borrower under this Note shall be used by Lender to make such payments with regard to the Underlying Notes, subject to the provisions set forth below. Upon Lender's receipt of such payments from Borrower, the monthly payments due and payable under the Underlying Notes shall be forwarded to the holder(s) thereof. Lender shall retain the monthly payments made by Borrower, less the portion of such monthly payments due and paid to the holders of the Underlying Notes. Lender shall have the right to establish any alternative collection and payment mechanism upon notice to Borrower; provided that such mechanisms result in no additional costs or expenses to Borrower or are otherwise not materially burdensome to

1

38

Borrower. Nothing contained herein shall be deemed to limit Borrower's obligation to pay any amounts called for in this Note. Borrower agrees and acknowledges that any payment to Lender which is not timely made may result in delays in payments to the holder(s) of the Underlying Notes, and may result in late charges and/or default interest and/or attorneys' and other fees and charges which may be imposed by Lender and/or holder(s) of the Underlying Notes, all of which Borrower will pay to Lender on demand. Borrower acknowledges that Lender may profit from the spread between the interest rate under this Note and the interest rates under the Underlying Notes, all of which profit will belong solely to Lender. Any negative spread will be borne by Lender. All principal payments made under the Underlying Notes shall accrue solely to the benefit of Lender. In the event that the Underlying Note(s) become due and payable, Borrower shall use its best efforts to cause the Underlying Note(s) to be promptly refinanced with one or more new loans, at Borrower's sole cost, on terms and conditions acceptable to Lender (as an example only, Borrower shall not agree to any increase in indebtedness or interest rate with regard to the then principal amount of the Underlying Note(s) in the event of a refinance without Lender's express written consent). Borrower shall take such steps as Lender may require so that the effective principal amount of this Note, and all accrued but unpaid interest and other charges, remains due and owing, pursuant to loan documents acceptable to Lender in its sole discretion, and continues to be secured by the same collateral, with the same relative lien priority, as exists as of the date of this Note and at the time of any refinancing.

Upon repayment of the First Deed of Trust Loan or the Second Deed of Trust Loan, the principal sum thereof paid by Lender will become part of the equity or balance of this Note (i.e., all benefit of the pay off will inure to the benefit of Lender under this Note).

**APPLICATION OF PAYMENTS.** All payments received by Lender from, or for the account of Borrower, due hereunder shall, subject to, and after giving effect to payments made under, the preceding paragraph, be applied by Lender, in its sole and absolute discretion, in the following manner, or in any other order or manner as Lender chooses:

        a.    First. To pay any and all interest due, owing and accrued under this Note;

        b.    Second. To pay any and all costs, advances, expenses or fees due, owing and payable to Lender, or paid or incurred by Lender, arising from or out of this Note, and the other Loan Documents; and

        c.    Third. Payment of the outstanding principal balance on this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, be binding and conclusive upon Borrower. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

**MATURITY DATE.** On Nov. 16, 2009 (the "Maturity Date"), the entire unpaid principal balance of this Note, and all unpaid accrued interest thereon, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate, as defined below.

**UNPAID INTEREST, CHARGES AND COSTS.** Interest, late charges, costs or expenses that are not received by Lender within five (5) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

2

**HOLIDAY.** Whenever any payment to be made under this Note shall be due on a day other than a day on which Lender is open for business ("Business Day"), including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

**NO OFFSETS OR DEDUCTIONS.** Except as is otherwise expressly permitted herein, all payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled, by any Law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties, to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender under this Note, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever. (However, the foregoing shall not be applicable to the income taxes of Lender or other taxes imposed on the revenues of lenders generally.)

**DEFAULT.** Any one or more of the following events or occurrences shall constitute a default under this Note (hereinafter "Default"):

(i)    Lender does not receive a payment in the amount and within the time and manner as set forth herein, subject to applicable cure periods which are expressly set forth in this Note; or

(ii)    There shall be a default or event of default under any of the Loan Documents, which default is not remedied during any applicable cure period.

(iii)    Any representations or warranties made or agreed to be made in or pursuant to any of the Loan Documents shall be breached in any material respect or shall prove to be false or misleading in any material respect when made; or

(iv)    Any suit shall be filed against Borrower, which, if adversely determined, could substantially impair the ability of Borrower to perform any or all of its obligations under and by virtue of this Note or any of the other Loan Documents; unless Borrower's counsel furnishes to Lender its opinion, to the satisfaction of Lender and Lender's counsel, that, in its judgment Borrower is likely to prevail; or

(v)    A levy be made on the Interest (as such term is defined below) or any of the other collateral for this Note under any process or any lien creditor commences suit to enforce a judgment lien against the Interest or any of the other collateral and such levy or action shall not be bonded against by sureties deemed by Lender to be sufficient in its reasonable opinion and judgment and shall continue unstayed for thirty (30) days or more; or

(vi)    Borrower shall fail to pay its debts as they become due, or shall make an assignment for the benefit of its creditors, or shall admit, in writing, its inability to pay its debts as they become due, or shall file a petition under any chapter of the United States Bankruptcy Code or any similar law, now or hereafter existing, or shall become "insolvent" as that term is generally defined under the United States Bankruptcy Code, or shall in any involuntary bankruptcy case commenced against it file an answer admitting insolvency or inability to pay its debts as they become due, and shall fail to obtain a

3

40

dismissal of such case within sixty (60) calendar days after its commencement or shall convert the case from one chapter of the United States Bankruptcy Code to another chapter, or be the subject of an order for relief in such bankruptcy case, or be adjudged a bankrupt or insolvent, or shall have a custodian, trustee, or receiver appointed for, or have any court take jurisdiction of, its property, or any part thereof, in any voluntary or involuntary proceeding, including, but not limited to, those for the purpose of reorganization, arrangement, dissolution, or liquidation, and such custodian, trustee, or receiver shall not be discharged, or such jurisdiction shall not be relinquished, vacated, or stayed within thirty (30) days after the appointment; or

(vii)    Borrower shall be liquidated, dissolved, or fail to maintain its status as a corporation in good standing or there shall be a change in the entity form of Borrower; or

(viii)    Execution shall have been levied against the Interest or any of the other collateral or any lien creditor shall commence suit to enforce a judgment lien against the Interest or such collateral, and such action or suit shall not have been bonded or shall continue unstayed for a period of thirty (30) days or more; or

(ix)    The Property shall be the subject of an eminent domain or other proceeding, which results in a taking materially adverse to the security interest of Lender; or

(x)    Borrower commits a breach or default in the payment or performance of any other obligation of Borrower, or breaches any warranty or representation of Borrower under the provisions of any other instrument, agreement, guaranty, or document evidencing, supporting, or securing any other loan or credit extended by Lender to Borrower, including, but not limited to, any and all term loans or revolving credits, extended from time to time to Borrower; or

(xi)    Borrower or a guarantor, as applicable, shall voluntarily or by operation of law, sell, transfer, convey, lease, or encumber the Interest or collateral for this Note, or any interest therein, or any interest in Borrower, or shall contract for such sale, transfer, conveyance, or encumbrance without the prior written consent of Lender, which consent Lender may either give or withhold in its sole and absolute opinion and judgment; or

(xii)    There shall be any material adverse changes in Borrower's or any guarantor's financial condition, or with regard to the Interest, that, in the opinion of Lender, impairs the prospects of payment or performance by Borrower under this Note or any of the other Loan Documents, or Lender otherwise deems itself insecure; or

(xiii)    Any guarantor of this Note revokes or attempts to revoke its guaranty or any default occurs under the terms of the guaranty.

Upon the occurrence of a Default hereunder, Lender may, in their sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

**DEFAULT RATE.** From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to the lesser of five percent (5%) over the Note Rate, or the highest rate allowed by applicable law, whichever is lower.

**PREPAYMENT.** The principal amount of this Note may be prepaid in whole or in part during the term of this Note.

**LATE CHARGES.** Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within five (5) days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that ten percent (10%) of the amount of the delinquent payment (not including the principal payment due on the Maturity Date or that portion of principal that would be due as a result of acceleration of the Note), together with interest accruing on the entire principal balance of this Note at the Default Rate, as provided above, shall be the amount of damages which Lender are entitled to receive upon such breach, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender' monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of ten percent (10%) of the amount of the delinquent payment (in addition to interest at the Default Rate). The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

**SECURITY AND ACCELERATION.** This Note is guaranteed by Marvin Markowitz, an individual, Carlos Fonte, an individual, pursuant to an instrument entitled Continuing Guaranty. Further, this Note is secured by, among other things, Borrower's interest (the "Interest") in certain real property (the "Property") pursuant to a deed of trust which encumbers the Interest. Reference is made to such instruments for the specific provisions thereof, which include provisions for the acceleration of this Note under certain circumstances.

**COSTS AND EXPENSES.** Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with the enforcement of this Note, or any other Loan Documents, including, but not limited to, any and all attorney's fees and related costs when such costs or expenses are paid or incurred in connection with the enforcement of this Note, and the other Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note, or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, costs and expenses incurred in or in connection with any bankruptcy proceeding, in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender' rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, proofs of claim, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

**WAIVERS.** Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the

5

42

repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

**MAXIMUM LEGAL RATE.** The loan evidenced by this Note has been arranged by Equimax Mortgage & Loan, Inc., a licensed California real estate broker. Further, the loan proceeds will be used solely for business purposes. Accordingly, this Note and the other Loan Documents should be exempt from the California usury statutes. In any event, this Note and the other Loan Documents are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance of the Loan at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum rate of interest designated by applicable laws relating to payment of interest and usury (the "Maximum Amount"). If, by the terms of this Note or the other Loan Documents, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of the Maximum Amount, the Note Rate shall be deemed to be immediately reduced to the Maximum Amount and all previous payments in excess of the Maximum Amount shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the sums due under the loan, shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the loan until payment in full so that the rate or amount of interest on account of the loan does not exceed the Maximum Amount from time to time in effect and applicable to the loan for so long as the loan is outstanding.

**AMENDMENT; GOVERNING LAW.** This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the Laws of the United States of America and, to the extent not inconsistent therewith, the Laws of the State of California.

**AUTHORITY.** Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

**LENDER'S RIGHT TO TRANSFER.** Borrower acknowledges and agrees that Lender has the right to transfer, assign or hypothecate all or any part of the Note, to sell participations therein, and to substitute one or more new loans for all or any part of the Underlying Notes and/or this Note in favor of Lender, and/or to otherwise take such other action as Lender may deem appropriate or desirable in connection with the Note or the Underlying Notes; provided, however, that such transfer, assignment, hypothecation or participation shall be at no material expense to Borrower, and the principal amount and interest rate of this Note shall not be increased, nor shall the term hereof be shortened, without Borrower's consent. Borrower agrees that it shall cooperate fully with Lender in connection with this paragraph and shall provide such information and execute, and where appropriate, acknowledge, such documents as Lender or its assignee may require in connection therewith.

**LENDER'S RIGHT TO CURE.** Lender shall have the full right to cure any default under, or to pay any interest under or otherwise satisfy, any obligations under or with respect to the Underlying Notes, and if Lender pays any amounts in connection therewith or cures any default thereunder, or makes any other advance to or for the benefit of Borrower, whether under this Note, under any of the Loan Documents, or

6

43

otherwise, Lender may add any amounts so paid or advanced to the amounts evidenced by this Note and secured by the Loan Documents, and any and all such amounts shall be paid by Borrower to Lender upon demand, shall bear interest at the same rate specified to be paid on outstanding indebtedness under this Note, compounded monthly, until paid, and all such amounts shall be secured by the Loan Documents.

IN WITNESS WHEREOF, Borrower has executed this Note as of the day and year first above written.

"Borrower"

MARMAR GOSHEN, LLC,
a California limited liability company

By: _____

Its: _____

7

44

## SCHEDULE 1

## UNDERLYING NOTES

1. A Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | |
|---|---|
| Amount: | $4,380,000.00 |
| Dated: | February 7, 2005 |
| Trustor: | 26 Etehad, LLC, a California limited liability company |
| Trustee: | U.F. Service Corporation, a California corporation |
| Beneficiary: | United Commercial Bank, a California banking corporation |
| Loan No.: | 490000562-0 |
| Recorded: | February 25, 2005 as Instrument No. 05-431852, of Official Records. |

2. A Deed of Trust to secure an indebtedness in the amount shown below, and any other obligations secured thereby

| | |
|---|---|
| Amount: | $4,068,308.24 |
| Dated: | July 20, 2007 |
| Trustor: | 26 Etehad, LLC, a California limited liability company |
| Trustee: | Woodman Partners LLC, a California limited liability company |
| Beneficiary: | HINO-8 LLC, a California limited liability company |
| Loan No.: | not shown |
| Recorded: | August 8, 2007 as Instrument No. 20071862916, of Official Records. |

| 8

# EXHIBIT C

**This page is part of your document - DO NOT DISCARD**

 **20080011090**  Pages:
023

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/03/08 AT 08:00AM

Fee: 94.00
Tax: 0.00
Other: 0.00

Total: 94.00

**Title Company**

## TITLE(S) :



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.

**Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**

46

## CHICAGO TITLE-SUBDIVISION

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

Namco Capital Group, Inc.
12121 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025
Attn: Hamid Taba



01/03/08

**20080011090**

### ALL INCLUSIVE DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This All Inclusive Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective as of December 14, 2007, by MARMAR GOSHEN, LLC, a California limited liability company ("Trustor"), to CHICAGO TITLE INSURANCE COMPANY, as Trustee ("Trustee"), for the benefit of NAMCO CAPITAL GROUP, INC., a California corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.  TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

**GRANT IN TRUST:**

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property located in the County of Los Angeles, California, described as:

[SEE EXHIBIT "A" ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE]

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

### SEE EXHIBIT "B" ATTACHED

1

APN =
4265-010-172    47

71002078-X07

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:    Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in all goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations, settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited

2

thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property;

TOGETHER WITH:    All right, title and interest which Trustor now has or may later acquire in any and all rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all property located or to be located upon the above-described real property in which Trustor now has or may later acquire an interest. Said real property, buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are hereinafter referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described (in which Trustor now has or may later acquire an interest), now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) (in which Trustor now has or may later acquire an interest) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

**FOR THE PURPOSE OF SECURING:**

(1)    Payment of the sum of $6,000,000.00 together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain All Inclusive Promissory Note of even date herewith (the "Note") executed by Trustor, payable to Lender, or order (which includes within such amount the unpaid balance of certain promissory notes, as described in the Note, which are collectively referred to herein as the "Underlying Notes," and which are secured by a Deed of Trust, dated July 20, 2007, executed by 26 Etehad, LLC in favor of HINO-8 LLC, as recorded August 8, 2007 by Los Angeles County Recorder as Doc # 20071862916, and a Deed of Trust, dated February 7, 2005, executed by 26 Etehad, LLC in favor of United Commercial Bank, as recorded February 25, 2005, by Los Angeles County Recorder as Doc # 05-431852, which encumber the Property (together, the "Underlying Trust Deeds")) and all extensions, modifications or renewals thereof

(including, without limitation, any extension, modification, or renewal of the Note at a different rate of interest or on different terms);

     (2)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

     (3)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

     (4)    Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES:**

     (1)    PAYMENT AND PERFORMANCE BY TRUSTOR; TITLE: Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Land and Improvements in fee simple. Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

     (2)    PAYMENT BY TRUSTOR OF TAXES AND OTHER IMPOSITIONS: The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least five (5) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

     Subsequent to a default hereunder, at the request of Lender, made at any time, or otherwise or as provided by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums. In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph (2), Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize

and apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph (2). Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least fifteen (15) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender the latter may, without making any advance whatever, apply any sums held by it upon any obligation of Trustor secured hereby. Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the above Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, or (i) pay that amount or portion of such Taxes as render the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes, or (ii) in the event that Lender is prohibited from collecting such payment as provided in (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable.

(3)    TRUSTOR TO PAY GROUND RENTS AND OBLIGATIONS THAT ARE OR COULD RESULT IN LIENS ON THE PROPERTY: Trustor shall fully and faithfully, and timely, pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded. Trustor shall pay at or prior to maturity any and all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges

5

51

and liens for utilities provided to the Property. The foregoing provisions are subject to the provisions of the Note regarding payments with respect to the Underlying Notes.

(4)    TRUSTOR TO MAINTAIN INSURANCE: (a) Trustor shall maintain insurance covering the Property against loss or damage by fire, and other risks as shall from time to time be reasonably required by Lender as necessary to protect the security interest of Lender in the Property. The insurance shall be maintained with such companies, in such amounts, for such terms, and in form and content satisfactory to Lender, in Lender's reasonable opinion and judgment. Lender shall be named as the first loss payee under all of the insurance policies (subject only, if applicable, to the rights of the holders of the Underlying Notes), and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. Such policies of insurance shall include, without limitation, the following: (i) insurance against loss or damage to the Property (including contents) by fire or other risk embraced by coverage of the type known as the broad form or extended coverage (or special extended coverage) in the amount required by Lender, but in no event less than one hundred percent (100%) of the full replacement cost of the Improvements, Fixtures and Personalty included within the Property without deduction for depreciation of any kind or the unpaid balance of the Note, whichever is greater, (ii) insurance against the loss of rental value of the Property on a "rented or vacant basis," including business interruption insurance, arising out of the perils insured against pursuant to clause (i) above in the amount required by Lender, but in no event less than one (1) year's gross rental income and other revenues from the Property, and (iii) comprehensive public liability insurance against claims for personal injury, death, or property damage occurring on, in, or about the Property, or arising from or connected with the use, conduct, or operation of Trustor's business in the amount from time to time reasonably required by Lender, (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph (17), below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

(5)    INSURANCE PROCEEDS, CONDEMNATION PROCEEDS AND OTHER RECOVERIES: (a) All settlements, awards, damages and proceeds received by Trustor or any other person under any fire, earthquake or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). (b) All right, title and interest which Trustor now has or may later acquire in and to all causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph (5). Subsequent to a default hereunder, which is not remedied during any applicable cure

6

period, Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may reasonably request. (c) Subject to the further provisions of this paragraph (5), Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph (5), at the option of Lender, may (i) be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine; (ii) be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to its condition just prior to the loss, as determined by Lender; or (iii) any such amount may be divided in any manner among any such application, use or release. No such application, use or release of the Award shall cure or waive any default or invalidate any act done pursuant to any notice of such default, except to the extent such default is actually cured. Lender's rights under the provisions of this paragraph 5 may be subject to the rights of the holders of the Underlying Notes.

Trustor agrees to endorse in favor of Lender any Award which is made payable to Trustor or to Lender and Trustor and deliver same to Lender immediately upon receipt. Notwithstanding anything herein to the contrary, the amount collected under any fire or other insurance policy may be applied by Lender, first, to reimbursement of all costs of collection of the proceeds. Thereafter, the proceeds shall be applied to repair, replace, restore or construct the Property (hereafter collectively referred to as "Repair") to its physical condition immediately prior to the act or occurrence that caused the loss, damage or destruction, as the case may be, but only if (a) no default has occurred hereunder and is continuing and (b) the insurance proceeds (together with such additional funds as are required to be paid by Trustor pursuant to this paragraph), are sufficient for the Repair. Otherwise, at the election of Lender, in Lender's reasonable opinion and judgment, the proceeds may be applied to reduce the principal balance of the Note or any obligation secured hereby in such order as Lender may determine, whether or not then due, unless such application is prohibited by applicable law, or be released to Trustor. Such application or release shall not cure or waive any default, except to the extent such default is actually cured, invalidate any act done pursuant to any notice of such default or extend due dates of payments or modify any obligations of Trustor.

Should insurance proceeds be used for Repair, Lender may condition such application upon (a) evidence satisfactory to Lender, in Lender's discretion, that Trustor has sufficient additional funds on hand from its own financial resources as Lender reasonably determines are necessary to pay all costs of Repair; (b) delivery of plans and specifications, executed construction contracts, and cost breakdowns satisfactory to Lender, in its reasonable opinion and judgment; (c) establishment of a procedure satisfactory to Lender for lien waivers and disbursement of funds, disbursement being conditioned upon Lender having sufficient proceeds to pay the cost of Repair free of liens; and (d) evidence acceptable to Lender that the Property after completion will be in at least the same condition as existed prior to the damage, destruction or loss, as the case may be, and that there has been no material adverse change in the financial condition of Trustor since the date of this Deed of Trust. In the event Trustor does not comply with the foregoing conditions within sixty (60) days of the casualty, Lender may, at its option, use the proceeds to reduce the principal balance of the Note or pay any other obligation secured by this Deed of Trust.

(6)    MAINTENANCE AND PRESERVATION OF THE PROPERTY:

(a)    Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security

7

interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) except in the ordinary course of business or as is otherwise permitted hereunder, not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain, preserve and enhance its value, including, without limitation, keeping all plants, lawns and other landscaping in a good and thriving condition, and otherwise performing such appropriate upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in the manner and retains at all times the same appearance and condition, as exists as of the date of this Deed of Trust, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's reasonable security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem necessary or appropriate to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)    Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph (6), any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any Improvements, Fixtures or Personalty comprising the Property except as permitted pursuant to the written consent of Lender. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c)    Without limiting the generality of this paragraph (6), Trustor hereby warrants, represents and covenants to Lender that Trustor and the Property presently comply with, and will in the

8

future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition except where failure to so comply would not reasonably be expected to result in a material adverse effect. Trustor further warrants, represents and covenants that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are expressly described in Exhibit "B" attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants, represents and covenants to Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property, except as are permitted pursuant to Exhibit "B." Trustor further warrants, represents and covenants to Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)     If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Hazardous Substances Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or

9

performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of Trustor, unless expressly otherwise therein provided.

(e)     Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph (6). Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph (6), Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

(7)     LEGAL ACTIONS AND PAYMENT OF RELATED COSTS: Trustor shall appear in and defend any action or proceeding that may, in Lender's judgment, affect Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and reasonable attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust. Trustor will, upon demand by Lender, commence any action or proceeding reasonably required to protect or facilitate Lender's recovery of Awards under paragraph (5) of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and reasonable attorneys' fees that are incurred by Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, reasonable attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor, which approval shall not be unreasonably withheld. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

(8)     LENDER'S RIGHTS TO INSPECT THE PROPERTY: Subject to the rights of tenants occupying all or any portion of the Property, Lender and its agents, employees and contractors, may enter upon the Property during business hours to inspect the Property for any purpose relating to Lender's

10



rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph (6).

(9)    SUBSTITUTION OF TRUSTEE:  From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee.  Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation.  Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust.  An instrument recorded pursuant to the provisions of this paragraph (9) shall be conclusive proof of the proper substitution of such new Trustee.

(10)    MISCELLANEOUS POWERS OF LENDER AND TRUSTEE:  In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person:  reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

(11)    ASSIGNMENT AND COLLECTION OF RENTS:  (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph (14) of this Deed of Trust, being retained by Trustor.  (b) Upon any default by Trustor under paragraph (14) of this Deed of Trust which default is not remedied during any applicable cure period, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due.  Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor.  If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents.  All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and reasonable attorneys' fees incurred by Lender in connection with the receivership, and then to the Note and any other obligations secured by this Deed of Trust.  Lender and the receiver shall be liable to account only for those rents actually received.  (c) At any time, subsequent to a default hereunder, which default is not remedied during any applicable cure period, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property.  These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds.  These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made.  In the event of any conflict between the provisions of this paragraph (11) and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.

11

57

(12)    RECONVEYANCE OF THE PROPERTY: Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.

(13)    CHANGE OF LENDER'S RECORDS: In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a reasonable fee prescribed by Lender to so change its records.

**ACCELERATION AND DEFAULT:**

(14)    CONDITIONS UNDER WHICH LENDER MAY DECLARE A DEFAULT BY TRUSTOR: A default under this Deed of Trust shall occur in the event that: (a) Trustor fails to pay when due (including any applicable grace period): (i) any sum payable under the Note; or (ii) any sum the payment of which is required or secured by this Deed of Trust; (b) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust, which failure is not remedied during any applicable cure period; (c) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (d) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed by Trustor; or (e) there is an event of default under any other agreement, document or instrument which further evidences or secures the loan evidenced by the Note.

(15)    LENDER'S RIGHT TO REQUIRE IMMEDIATE PAYMENT IN FULL: In the event: (a) of a default under this Deed of Trust, or (b) Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases (other than in the ordinary course of business on fair market terms and conditions), the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of Lender's right to accelerate shall be effective unless it is in writing.

(16)    LENDER'S RIGHT TO PERFORM ACTS TRUSTOR FAILS TO PERFORM AND INDEMNIFICATION:

(a)    If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, which failure is not remedied during any applicable cure period, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor

12

58

from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and expenses, employ counsel, consultants, any other agents or independent contractors, and pay reasonable fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph (16), together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b)       Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against: (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, or any action or non-action by Trustor in connection with the Property or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action. The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

(17)     TRUSTEE'S RIGHTS AND DUTIES TO SELL THE PROPERTY: (a) In the event of a default under this Deed of Trust by Trustor, which default is not remedied during any applicable cure period, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust. Such notice shall be recorded in the office of the Recorder of the County where the Property is located. (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust. The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or any

13

59

of the rights, obligations or remedies of Trustee to Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

(18)    OTHER REMEDIES IF TRUSTOR DEFAULTS: (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

(19)    TRUSTOR'S OBLIGATIONS AND LENDER'S RIGHTS NOT WAIVED: By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare a default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude any other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

(20)    SUCCESSORS IN INTEREST: The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

(21)    STATEMENTS CONCERNING THE STATUS OF THE LOAN: From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status

14

60

of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

(22)    TRUSTEE'S OBLIGATIONS: The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is reasonably indemnified against loss, costs, liability and expense.

(23)    OBLIGATIONS OF TRUSTOR ARE JOINT AND SEVERAL; GENDER AND NUMBER: If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(24)    NO OFFSETS: No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

(25)    GOVERNING LAW: The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

(26)    AGREEMENT CHANGED ONLY BY WRITING: This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

(27)    TIME: Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

(28)    NOTICE: Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth above, or to such other address as Trustor may designate by notice to Lender pursuant to the terms of paragraph (28)(c); (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender at the address shown at the top of the first page of this Deed of Trust, and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph (28)(c); and (c) except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing mailed, telegraphed, delivered, or sent by telex, facsimile, cable or other form of electronic written communication to the appropriate party at its respective address. Any notice given by telegram, telex, facsimile, cable or other form of electronic written communication must be confirmed within forty-eight (48) hours by letter mailed or delivered to the appropriate party at its respective address. If any notice is given by mail it will be effective when deposited in the mails with first-class or airmail postage prepaid; if given by telegraph or cable, when

15

delivered to the telegraph company with charges prepaid; if given by telex, facsimile or other form of electronic written communication, when sent; or if given by personal delivery, when delivered.

(29)    TITLES, CAPTIONS, AND HEADINGS: The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(30)    SEVERABILITY OF PROVISIONS: If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(31)    ACKNOWLEDGMENT OF TRUSTOR'S UNDERSTANDING OF DEED OF TRUST: The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

(32)    LENDER'S RELIANCE: The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

(33)    SECURITY AGREEMENT:

(a)    Security Interest and Fixture Filing. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements. Trustor shall deliver to Lender, in form and substance satisfactory to Lender, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default. Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d) This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph (28) above, subject to change as therein provided.

(34) SALE OF INTEREST: Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

(35) SEPARATE PROPERTY: Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

(36) BOOKS AND RECORDS: Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein. Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time and from time to time. Promptly upon request, Trustor shall furnish a rent schedule for the Property, certified by Trustor, showing the name of each tenant and, for each tenant, the space occupied, the expiration date of the lease or rental agreement, the rent payable and the rent paid, the security deposit held, and such other information regarding the leasing of the Property as Lender shall require.

(37) INSPECTION, APPRAISAL, AND ASSESSMENTS: Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, subject to the rights of tenants occupying all or any portion of the Property, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto; provided, however, environmental assessments shall only be performed subject to the Environmental Indemnity. All costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust. All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof. Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

(38) GUARANTOR ISSUES: To the extent that this Deed of Trust is deemed to constitute a guaranty for any purpose, or if Trustor is deemed for any purpose to be a surety, the provisions of this paragraph 38 will apply. Trustor acknowledges that Trustor may have certain rights under applicable law

17

63

which, if not waived by Trustor, might provide Trustor with defenses against Trustors' liability under this Deed of Trust. Among those rights, are certain rights of subrogation, reimbursement, indemnification and contribution, and rights provided in sections 2787 to 2855, inclusive, of the California Civil Code. Trustor waives all of Trustor's rights of subrogation, reimbursement, indemnification, and contribution, and any other rights and defenses that are or may become available to Trustor by reason of any or all of California Civil Code sections 2787 to 2855, inclusive, including, without limitation, Trustor's rights:

(a)    To require Lender to notify Trustor of any default by Borrower, provide Trustor with notice of any sale or other disposition of security for any obligations secured by this Deed of Trust, disclose information with respect to the obligations secured by this Deed of Trust, Borrower, or any other guarantor, co-signer or endorser, or with respect to any collateral;

(b)    That Trustor's obligation under this Deed of Trust must be commensurate with that of Borrower;

(c)    To be discharged based upon the absence of any liability of Borrower, at any time, by virtue of operation of law, or otherwise, or due to any other disability or defense of Borrower or any other Trustor, endorser or co-signer;

(d)    To be discharged if any of the terms, conditions or provisions of the obligations secured by this Deed of Trust are altered in any respect;

(e)    To be discharged upon acceptance by Lender of anything in partial satisfaction of the obligations secured by this Deed of Trust, and/or if Lender designates the portion of the obligations secured by this Deed of Trust to be satisfied;

(f)    To be discharged upon any modification of the obligations secured by this Deed of Trust or the release by Lender of Borrower or any other guarantor, endorser or co-signer;

(g)    To require Lender to proceed against Borrower, or any other guarantor, endorser, co-signer, or other person, or to pursue or refrain from pursuing any other remedy in Lender's power;

(h)    To receive the benefit of or participate in any and all security for repayment and/or performance of the obligations secured by this Deed of Trust;

(i)    To have any security for the obligations secured by this Deed of Trust first applied to satisfy or discharge the obligations secured by this Deed of Trust;

(j)    That any arbitration award rendered against Borrower not constitute an award against Trustor;

(k)    To be discharged based upon any failure by Lender to perfect or continue perfection of any lien, use due diligence to collect all or any part of any obligations secured by this Deed of Trust, or if recovery against Borrower becomes barred by any statute of limitations, or if Borrower is not liable for any deficiency after Lender realizes upon any collateral; and

(l)    To be discharged due to the release or discharge of any collateral for any obligations secured by this Deed of Trust or guaranty, or relating to the validity, value or enforceability of any collateral.

18

64

Trustor also waives all rights and defenses that Trustor may have because the Borrower's debt is secured by real property. This means, among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged or assigned by Borrower; (2) If Lender forecloses on any real property collateral pledged by the Borrower: (A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses directly or indirectly based upon Section 580a, 580b, 580d, or 726 of the California Code of Civil Procedure. Trustor also waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

(39)  ADDITIONAL PROVISIONS REGARDING UNDERLYING NOTES.  Trustor and Lender agree that in the event the proceeds of any condemnation award or settlement in lieu thereof, or the proceeds of any casualty insurance covering destructible improvements located upon said property, are applied by the holders of the Underlying Notes in reduction of the unpaid principal amount thereof, the unpaid principal balance of the Note secured hereby shall be reduced by an equivalent amount and be deemed applied to the last sums due under the Note. The parties acknowledge and agree that this Deed of Trust is subject and subordinate to the Underlying Trust Deeds (as the same may be modified, amended or supplemented from time to time).

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

("Trustor")

MARMAR GOSHEN, LLC,
a California limited liability company

By: _____
Its: _____

MARVIN MARKOVITZ

[ALL SIGNATURES MUST BE ACKNOWLEDGED]

19

65

STATE OF CALIFORNIA        )
                           ) ss
COUNTY OF *Los Angeles* )

On *Dec 26, 2007,* before me, *Edith Greenbaum*, a Notary Public in and for said County and State, personally appeared *Marvin Markowitz*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/ies, and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

EDITH GREENBAUM
Commission # 1542958
Notary Public - California
Los Angeles County
My Comm. Expires Jan 9, 2009

STATE OF CALIFORNIA        )
                           ) ss
COUNTY OF _____ )

On _____, before me, _____, a Notary Public in and for said County and State, personally appeared _____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/ies, and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

66

**EXHIBIT "A"**
**(Legal Description)**

LOT 1 OF TRACT NO. 60931, IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1328 PAGES 9 AND 10
OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

END OF LEGAL DESCRIPTION .

67

## EXHIBIT "B"
### (Permitted Toxic Materials)

Trustor shall not permit there to be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor (or the user) has licenses from the proper authority (if required by applicable law), such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph (6)(c) of the Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic and/or Hazardous Substances Indemnity (as defined below).

Notwithstanding any provisions to the contrary contained in this Exhibit "B" and paragraph (6)(c) of the Deed of Trust, in the event Trustor has executed any unsecured Hazardous Substances Indemnity Agreement ("Hazardous Substances Indemnity") in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Hazardous Substances Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Hazardous Substances Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Hazardous Substances Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of Trustor.