1  JOSEPH A. EISENBERG P.C. (State Bar No. 52346)
   DAVID M. POITRAS P.C. (State Bar No. 141309)
2  THOMAS M. GEHER (State Bar No. 130588)
   CAROLINE R. DJANG (State Bar No. 216313)
3  JEFFER, MANGELS, BUTLER & MARMARO LLP
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California  90067-4308
   Telephone:    (310) 203-8080
5  Facsimile:    (310) 203-0567

6  Counsel for Bradley D. Sharp, Chapter 11 Trustee
   for Namco Capital Group, Inc.

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                 LOS ANGELES DIVISION

11

12  In re:                                Case Number.: 2:08-bk-32333-BR

13                                        Chapter 11
    NAMCO CAPITAL GROUP, INC., a California
14  corporation,                          **EX PARTE APPLICATION FOR ORDER
                                          SHORTENING TIME FOR HEARING ON
15              Debtor.                    MOTION OF CHAPTER 11 TRUSTEE
                                          BRADLEY D. SHARP, CHAPTER 11
16                                         TRUSTEE FOR THE ESTATE OF NAMCO
                                          CAPITAL GROUP, INC. FOR ORDER
17                                         APPROVING PROCEDURES IN
                                          CONNECTION WITH PROPOSED SALE
18                                         OF PROPERTY OF THE ESTATE;
                                          DECLARATION OF DAVID M. POITRAS**
19

20                                        **[No Hearing Required]**

21

22

23

24

25  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

26  **AND INTERESTED PARTIES:**

27

28

PRINTED ON
RECYCLED PAPER

6653786v1                                1

1    Bradley D. Sharp (the "Trustee"), Chapter 11 Trustee for the Estate of Namco Capital

2    Group, Inc., respectfully submits his *Ex Parte* Application (the "Application") for Order Shortening

3    Time for Hearing on the *Motion of Bradley D. Sharp (the "Trustee"), Chapter 11 Trustee for the*

4    *Estate of Namco Capital Group, Inc. ("Debtor" or "Namco") for an Order Approving Procedures in*

5    *Connection with Proposed Sale of Property of the Estate* (the "Procedures Motion").    This

6    Application is filed pursuant to 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 6004 and

7    Local Bankruptcy Rules 6004-1(b), and 9013-1 and 9075-1.[1]

8    In support of this Application, the Trustee respectfully represents as follows:

9

10    **I.**

11    **INTRODUCTION**

12    Subject to overbid and the approval of this Court, AJ Industrial Properties, LLC ("Buyer")

13    has agreed to purchase property of Debtor's estate (the "Sale") consisting of that certain real

14    property commonly known as 1929 Pico Boulevard, Los Angeles, California (the "Property") from

15    the Trustee, free and clear of all liens, claims, interests and encumbrances.    The purchase price for

16    the Property is $3,100,000.00, pursuant to the terms and conditions of that certain *Standard Offer,*

17    *Agreement and Escrow Instructions for Purchase of Real Estate*, dated November 24, 2009 (the

18    "Sale Agreement"), free and clear of all liens, claims, interests and encumbrances.    A copy of the

19    Sale Agreement is attached to the Declaration of Bradley D. Sharp as Exhibit "A," which

20    declaration is appended to the Procedures Motion.

21    In order to preserve Buyer's bid and value for the estate, and at the same time ensure that the

22    sale process is fair and orderly, the Trustee proposes that certain sale procedures, set forth in the

23    Procedures Motion be approved prior to the hearing to approve the Sale.    The Trustee respectfully

24

25

26    ———————————
    [1]    Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11
    U.S.C. §§ 101-1330 and the Federal Rules of Bankruptcy Procedure ("FRBP"), Rules 1001-9036, as in force after the

27    effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, and the
    Local Bankruptcy Rules for the Central District of California ("LBR").

28

PRINTED ON
RECYCLED PAPER

6653786v1

1    submits that the Court's approval of the sale procedures set forth in the Procedures Motion is

2    essential and in the best interests of Debtor's estate.

3

4                                                    **II.**

5                                        **RELIEF REQUESTED**

6         The Trustee requests that the Court set a hearing on the Procedures Motion on or about five

7    days' notice, pursuant to Local Bankruptcy Rule 6004-1(b)(1).

8

9                                                    **III.**

10   **CAUSE EXISTS FOR THE COURT TO GRANT THE APPLICATION**

11        Pursuant to Local Bankruptcy Rule 9075-1(b)(2), an application for order shortening time

12   must: (i) describe the nature of the relief requested in the underlying motion, identify the parties

13   affected by the relief requested in the motion, and state the reasons necessitating a hearing on

14   shortened time; and (ii) be supported by the declaration of one or more competent witnesses under

15   penalty of perjury that justifies the setting of a hearing on shortened time and establishes a prima

16   facie basis for the granting of the underlying motion.

17        All of the foregoing requirements are satisfied as demonstrated below:

18        (A)    State the relief requested

19

20        The Trustee requests in the Procedures Motion that the Court enter an order approving sale

21   procedures described therein.

22        (B)    Identify the parties affected by the relief requested in the Procedures Motion

23        The Trustee, Buyer, and potential bidders are affected by the relief requested in the

24   Procedures Motion.

25        (C)    State the reasons for necessitating a hearing on shortened time

26        In order for a hearing on the motion to approve the Sale to be held as soon as possible, the

27   approval of the Procedures Motion must first be approved by the Court.   In addition, Local

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

6653786v1

Bankruptcy Rule 6004-1(b)(1) permits the hearing of motion to establish procedures for the sale of the estate's assets on 5 days' notice to applicable parties.

    (D)    <u>Motion must be accompanied by the declaration of one or more competent witnesses under penalty of perjury that (i) justifies the setting of a hearing on shortened time and (ii) establishes a prima facie basis for the granting of the underlying motion</u>

The Declaration of David M. Poitras is annexed hereto. Briefly, the Procedures Motion should be granted on the merits because the proposed sale procedures are intended to increase the likelihood that the Trustee will receive the best offer for the Property. First, pre-approval of the bidding procedures will provide interested parties with notice of the specific bidding procedures authorized by this Court, and the opportunity to competitively bid for the Property. Second, pre-approval of the rules of the proposed sale will ensure fair comparability of competing bids. Third, by open solicitation of higher bids, the Trustee is making every effort to maximize the value of the Property for the estate and its creditors.

## IV.

## <u>CONCLUSION</u>

Based upon the foregoing, the Trustee respectfully requests that the Court approve the Application and permit the hearing on the Procedures Motion to be heard on or about five days' notice, or the first available Court date.

Date: December 16, 2009          JEFFER, MANGELS, BUTLER & MARMARO LLP


By: ___/s/ David M. Poitras___
     DAVID M. POITRAS P.C.
     Counsel for Bradley D. Sharp,
     Chapter 11 Trustee for Namco Capital Group, Inc.

PRINTED ON
RECYCLED PAPER

6653786v1

## DECLARATION OF DAVID M. POITRAS P.C.

I, DAVID M. POITRAS, hereby declare:

1.      I am an attorney at law duly licensed to practice in the State of California.  I am a partner in the law firm of Jeffer, Mangels, Butler & Marmaro LLP ("JMBM"), counsel for Bradley D. Sharp, Chapter 11 Trustee for the Estate of Namco Capital Group, Inc.

2.      I have personal knowledge of the facts set forth herein and, if called as a witness, would and could competently testify thereto.  I make this declaration in support of the Ex Parte *Application for Order Shortening Time for Hearing on Motion of Chapter 11 Trustee Bradley D. Sharp, Chapter 11 Trustee for the Estate of Namco Capital Group, Inc. for Order Approving Procedures in Connection with Proposed Sale of Property of the Estate.*

3.      Attached hereto as Exhibit "A" is a true and correct copy of the *Motion of Chapter 11 Trustee Bradley D. Sharp, Chapter 11 Trustee for the Estate of Namco Capital Group, Inc. for Order Approving Procedures in Connection with Proposed Sale of Property of the Estate* (the "Procedures Motion"), which is being concurrently filed herewith.

4.      Subject to overbid and the approval of this Court, AJ Industrial Properties, LLC ("Buyer") has agreed to purchase property of Debtor's estate (the "Sale") consisting of that certain real property commonly known as 1929 Pico Boulevard, Los Angeles, California (the "Property") from the Trustee, free and clear of all liens, claims, interests and encumbrances.  The purchase price for the Property is $3,100,000.00, pursuant to the terms and conditions of that certain *Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate*, dated November 24, 2009 (the "Sale Agreement"), a copy of which is appended to the Declaration of Bradley D. Sharp as Exhibit "A" to the Procedures Motion, free and clear of all liens, claims, interests and encumbrances.

5.      The Procedures Motion should be granted on the merits because the proposed sale procedures are intended to increase the likelihood that the Trustee will receive the best offer for the Property.  First, pre-approval of the bidding procedures will provide interested parties with notice of the specific bidding procedures authorized by this Court, and the opportunity to competitively bid for the Property.  Second, pre-approval of the rules of the proposed sale will ensure fair

1    comparability of competing bids.  Third, by open solicitation of higher bids, the Trustee is making

2    every effort to maximize the value of the Property for the estate and its creditors.

3        6.    In order for a hearing on the motion to approve the Sale to be held as soon as

4    possible, the approval of the Procedures Motion must first be approved by the Court.  In addition,

5    Local Bankruptcy Rule 6004-1(b)(1) permits the hearing of motion to establish procedures for the

6    sale of the estate's assets on 5 days' notice to applicable parties.

7        I declare under penalty of perjury under the laws of the United States of America that the

8    foregoing is true and correct and that this declaration is executed this 16th day of December, 2009

9    at Los Angeles, California.

10

11                                 /s/ David M. Poitras
                                   David M. Poitras

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

6653786v1

# EXHIBIT A

1  JOSEPH A. EISENBERG P.C. (State Bar No. 52346)
   DAVID M. POITRAS P.C. (State Bar No. 141309)
2  THOMAS M. GEHER (State Bar No. 130588)
   CAROLINE R. DJANG (State Bar No. 216313)
3  JEFFER, MANGELS, BUTLER & MARMARO LLP
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California 90067-4308
   Telephone:    (310) 203-8080
5  Facsimile:    (310) 203-0567

6  Counsel for Bradley D. Sharp, Chapter 11 Trustee
   for Namco Capital Group, Inc.

7

8                  **UNITED STATES BANKRUPTCY COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                       **LOS ANGELES DIVISION**

11

12  In re:                              | Case Number.: 2:08-bk-32333-BR

13                                       | Chapter 11
    NAMCO CAPITAL GROUP, INC., a California
14  corporation,                         | **NOTICE OF MOTION AND MOTION OF**
                                         | **CHAPTER 11 TRUSTEE BRADLEY D.**
15              Debtor.                   | **SHARP, CHAPTER 11 TRUSTEE FOR**
                                         | **THE ESTATE OF NAMCO CAPITAL**
16                                       | **GROUP, INC. FOR ORDER APPROVING**
                                         | **PROCEDURES IN CONNECTION WITH**
17                                       | **PROPOSED SALE OF PROPERTY OF**
                                         | **THE ESTATE; MEMORANDUM OF**
18                                       | **POINTS AND AUTHORITIES; AND**
                                         | **DECLARATION OF BRADLEY D. SHARP**
19

20                                       | Hearing:
21                                       | Date:        To be set
                                         | Time:        To be set
22                                       | Judge:       Courtroom 1668
                                         |              255 East Temple Street
23                                       |              Los Angeles, CA 90012

24

25

26  **TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE,**

27  **AND INTERESTED PARTIES:**

28

PRINTED ON
RECYCLED PAPER

6642374v1                                     1

JMBM Jeffer Mangels Butler & Marmaro LLP

1    **PLEASE TAKE NOTICE** that on [date] at [time] or as soon thereafter as the matter can be

2    heard, before the Honorable Barry Russell, United States Bankruptcy Judge, in Courtroom 1668,

3    located at 255 East Temple Street, Los Angeles, CA, the Bankruptcy Court will consider the *Motion*

4    *of Bradley D. Sharp (the "Trustee"), Chapter 11 Trustee for the Estate of Namco Capital Group,*

5    *Inc. ("Debtor" or "Namco") for an Order Approving Procedures in Connection with Proposed Sale*

6    *of Property of the Estate* (the "Motion").

7         Subject to the approval of this Court, A&J Apartments, LLC ("Buyer") has agreed to

8    purchase property of Debtor's estate (the "Sale") consisting of that certain real property commonly

9    known as 1929 Pico Boulevard, Los Angeles, California (the "Property") from the Trustee, free and

10   clear of all liens, claims, interests and encumbrances.    The purchase price for the Property is

11   $3,100,000.00 (the "Purchase Price"), pursuant to the terms and conditions of that certain *Standard*

12   *Offer, Agreement and Escrow Instructions for Purchase of Real Estate*, dated November 24, 2009

13   (the "Sale Agreement"), a copy of which is appended to the attached Declaration of Bradley D.

14   Sharp ("Sharp Decl.") as Exhibit "A," free and clear of all liens, claims, interests and encumbrances.

15        Effective as of September 1, 2009, the Trustee has employed, with Court approval, Lee &

16   Associates, Los Angeles West, Inc. ("Broker") as commercial real estate brokers, to market the

17   Property for sale.    The Trustee and his professionals have contacted numerous potential buyers and

18   have provided various types of due diligence information to such parties and the Trustee and Broker

19   have encouraged potential overbidders to submit bids.

20        The Motion is based upon this notice of motion, the Motion itself, the Sharp Decl., the

21   pleadings and records on file in this case, and upon such other evidentiary matters as may be

22   presented to the Court regarding the Motion.

23        **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

24   any opposition to the Motion must be filed with the Bankruptcy Court and served on counsel for the

25   Trustee no later than 14 days before the date designated for hearing on the Motion.    Pursuant to

26   Local Bankruptcy Rule 9013-1(h), the failure to file and serve timely a response to the Motion may

27   be deemed by the Court to be consent to the granting of the Motion.    For further information

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

6642374v1

8

1    concerning the Motion, please contact the attorneys for the Trustee listed on the first page of this

2    notice.

3

4    Date:  December 16, 2009            JEFFER, MANGELS, BUTLER & MARMARO LLP

5

6                                    By:  ____/s/ David M. Poitras_____
                                         DAVID M. POITRAS P.C.
7                                        Counsel for Bradley D. Sharp,
                                         Chapter 11 Trustee for Namco Capital Group, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

6642374v1

3

9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the debtor's bankruptcy estate and is accordingly a core matter pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Sections 105(a), 363 and 365 of title 11, United States Code (the "Bankruptcy Code") and Rules 6004, 9006 and 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## II.

## INTRODUCTION

Subject to overbids, the Trustee seeks to sell the Property free and clear of liens, claims, interests and encumbrances to Buyer for the sum of $3,100,000. In order to preserve Buyer's bid and value for the estate, and at the same time ensure that the sale process is fair and orderly, the procedures proposed in this Motion should be approved. The Trustee respectfully submits that the Court's approval of the sale procedures set forth herein is essential and in the best interests of Debtor's estate.

## III.

## STATEMENT OF FACTS

A.      **General Case Background.**

On December 22, 2008 (the "Petition Date"), involuntary chapter 11 petitions were filed against Namco and its sole shareholder Ezri Namvar ("Namvar"). On January 29, 2009, orders for relief were entered in both the Namco bankruptcy case and the Namvar bankruptcy case.

On March 11, 2009, the Court entered an order approving the appointment of R. Todd Neilson as the chapter 11 trustee in the Namvar bankruptcy case.

On May 8, 2009, the Court entered an order approving the appointment of Bradley D. Sharp

JMBM Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

6642374v1

1    as the chapter 11 trustee in the Namco bankruptcy case.

2        As of the Petition Date, Namco was a California corporation, and Namvar was the President,

3    Chief Financial Officer, sole director and sole shareholder of Namco.

4        Prior to the Petition Date, Namco had been in business for approximately 20 years. Namco's

5    business model was relatively simple and straightforward - Namco would borrow money from

6    individuals ("Lender Funds"), most often members of the West Los Angeles Persian community

7    (hereinafter referred to as a "Namco Lender"), agree to pay such Namco Lender a fixed rate of

8    return, and Namco would then either lend those funds to third parties (hereinafter a "Borrower"), at

9    interest rates typically six percent or more higher than the cost of capital payable to the Namco

10    Lender, or invest such funds in various real estate projects. Most often, the funds provided by the

11    Namco Lenders were not earmarked for a specific purpose; rather, such funds were pooled by

12    Namco and lent to third parties as opportunities were presented.   Typically, the transactions

13    between Namco and a Namco Lender would be memorialized by way of an unsecured promissory

14    note from Namco to the Namco Lender ("Note" or "Notes"), although in some cases Namco secured

15    or attempted to secure the Notes in various ways, typically by assigning interests in third party

16    deeds of trust owned by Namco or affiliates of Namco. Namvar purportedly personally guaranteed

17    many of Namco's obligations to the Namco Lenders. So long as a Note was outstanding, Namco

18    typically paid such Namco Lender interest on a monthly basis. The loans that Namco made to

19    Borrowers were typically real estate loans secured by deeds of trust.

20        **B.**    **The Proposed Sale**

21        Subject to the approval of this Court, the Trustee seeks to sell, subject to overbid, the

22    Property to Buyer, pursuant to the terms and conditions of the Sale Agreement, on an "AS IS

23    WHERE IS" basis, and free and clear of liens, claims, interests and encumbrances, for an aggregate

24    Purchase Price of $3,100,000.00. The Trustee believes that, because of the efforts to market the

25    Property since September 1, 2009, the Sale represents the best and highest offer for the Property.

26        Buyer has delivered to Fidelity National Title Company (the "Escrow Holder") an initial

27    deposit of Fifty Thousand Dollars ($50,000.00). Within 5 business days after the contingencies

28    discussed in Paragraph 9.1(a) through (k) of the Sale Agreement are approved or waived, Buyer

PRINTED ON
RECYCLED PAPER

6642374v1

1    shall deposit with Escrow Holder the sum of Two Hundred Thousand Dollars ($200,000.00)

2    (together, with the initial $50,000.00 deposit, the "Deposit").

3         Buyer has conditioned the closing of the Sale upon a good faith finding under § 363(m) by

4    the Court.

5    **C.    Liens, Claims, Interests and Encumbrances on the Property**

6         Pursuant to the Property's preliminary title report obtained for the Sale, the Property is

7    encumbered by the following deeds of trust and assignments of beneficial interests thereof:

8         (i)    Deed of Trust[1] in the amount of $1,650,000.00 dated December 7, 2001 to Namco

9    Financial, Inc.

10        Partial assignments of the beneficial interest under said deed of trust from Namco

11   Financial Inc., were purportedly to the following:

12        (a)    M.M.P. Family Trust (31% beneficial interest)

13        (b)    Moosai Revocable Family Trust (31% beneficial interest)

14        (c)    Manouchehr Pirian (19% beneficial interest)

15        (d)    Maryam Pirian, as Trustee of MMP Family Trust (31% beneficial interest)

16        (e)    Mehrdad Naim (12% beneficial interest)

17        (f)    Mehrdad Naim (3.5% beneficial interest)

18        (g)    Joseph Pirian (6.5% beneficial interest)

19        (ii)   Deed of Trust in the amount of $2,000,000.00 dated June 25, 2008 to Namco

20   Financial Inc.

21        Partial assignments[2] of the beneficial interest under said deed of trust from the Debtor, were

22   purportedly made to the following:

23        (a)    Fereshteh Kohanim (20% beneficial interest)

---

24        [1]  A Notice of Default under the terms of said deed of trust has been recorded by American Trust Deed
25   Services Corporation on November 28, 2008.  As will be set forth in the Sale Motion, the Trustee disputes the validity
     of this Deed of Trust.
26
         [2]  As the Trustee has previously asserted in pleadings filed in connection with the *Motion for Relief from Stay*
27   filed by Fereshteh Kohanim and Soleiman Israel Naim (the "Transferees"), the Trustee disputes the validity of the
     purported transfers to the Transferees.  The Trustee is currently investigating the avoidability of such transfers.
28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

6542374v1

**12**

1    (b)    Soleiman Israel Naim[3] (80% beneficial interest)

2    In addition, the Property is subject to an attachment issued by the Los Angeles Superior

3    Court (Case No. BC398619) in connection with the case, *Abraham B. Assil, as trustee, etc. v.*

4    *Namco Capital Group, Inc., etc., et al.*

5    Thus, the total amount of all liens against the Property, as set forth in the preliminary title

6    reports, is $3,650,000.00, all of which are subject to *bona fide* dispute.

7

8    **IV.**

9    **PROPOSED SALE PROCEDURES AND OVERBID REQUIREMENTS**

10    Attached hereto as Exhibit A is the proposed Sale Agreement with Buyer. The Trustee and

11    Broker have evaluated the offers received by the Trustee, and in the exercise of his reasonable

12    business judgment, the Trustee has decided to accept Buyer's offer, subject to Bankruptcy Court

13    approval and overbid pursuant to the procedures set forth below and as ordered by the Court (the

14    "Sale Procedures"). A true and complete copy of the proposed bidding procedures are attached to

15    this Motion as Exhibit B.[4] The Sale Procedures for which approval is sought by this Motion are

16    summarized as follows:[5]

17    a.    Under the Bidding Procedures, only Qualified Overbidders may participate in the

18    sale process. Qualified Overbidders are those prospective bidders who deliver to the Trustee (i)

19    current financial statements or other financial information of the bidder or its equity holder(s)

20    demonstrating the bidder's financial capability to consummate the proposed sale, as determined by

21    the Trustee in his sole discretion, and (ii) a preliminary, non-binding proposal identifying the

22    purchase price range, the nature and extent of any due diligence it wishes to conduct, and financial

23    information demonstrating its ability to consummate the sale;

24    ---

    [3]    Soleiman Israel Naim has recorded a notice of a pending Court Action in Los Angeles Superior Court.
25
    [4]    Capitalized terms used herein and not defined herein shall have the meaning ascribed to such terms in the
26    Bidding Procedures attached to this Motion as Exhibit B.

27    [5]    The Bidding Procedures are only summarized herein and are qualified by the actual text as set forth in
    Exhibit B.
28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

6642374v1

**13**

b.      The Bidding Procedures further provide that in order for a bid to be a Qualified Overbid, such bid must be (i) by way of an executed copy of an asset purchase agreement: (a) acceptable in form to the Trustee (the "Overbid Asset Purchase Agreement"), (b) clearly marked to show any changes from the terms of the Sale Agreement, or (c) on the same or more favorable terms as the Sale Agreement; provided, however, the purchase price in such proposed Overbid Asset Purchase Agreement must be at least $3,250,000; (ii) accompanied by a good faith deposit in the amount of $250,000; (iii) accompanied by a financing commitment or other evidence of ability to consummate the transaction; and (iv) received by the Trustee prior to the Bid Deadline of [date]. By making a bid, a bidder shall be deemed to have agreed to keep its offer open until the earlier of (x) two business days after the Property has been disposed of pursuant to the Bidding Procedures, or (y) thirty days after the Sale Hearing;

c.      If Qualified Bids are received, the Trustee will conduct an auction (the "Auction") for the Property. Such Auction shall take place at the Bankruptcy Court on a date to be scheduled by the Court at the hearing on this Motion. Only a Qualified Overbidder who has submitted a Qualified Bid will be eligible to participate at the Auction. At such Auction, Buyer and Qualified Overbidders will be permitted to increase their bids;

d.      Upon conclusion of an Auction, the Trustee shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest and otherwise best offer (the "Successful Bid"). At the Sale Hearing, the Trustee shall present to the Bankruptcy Court for approval the Successful Bid and any backup bids. The Trustee may adopt rules for the bidding process that are not inconsistent with any of the provisions of the Bankruptcy Code, any Bankruptcy Court Order, or these Bidding Procedures;*

e.      Following a hearing approving the sale of the Property to a Successful Bidder, if such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, (a) it will forfeit its Good Faith Deposit to the

---

* The Trustee proposes incremental overbids of $25,000.

JMBM  Jeffer Mangels
Butler & Marmaro LLP

1    Trustee and the Trustee may pursue any and all of its options at law and in equity with respect to

2    such breach and (b) the next highest or otherwise best Qualified Bid, as disclosed at the Sale

3    Hearing, shall be deemed to be the Successful Bid and the Trustee shall be authorized to effectuate

4    such sale without further order of the Bankruptcy Court or (c) Trustee may reschedule the Auction

5    to a later date and time convenient to the Court; and

6          f.    In the event that an overbid occurs and Buyer is not the ultimate purchaser of the

7    Property, Buyer has required a break-up fee in an amount equal to 3% of the Purchase Price (i.e.

8    $93,000).

9    **V.**

10    **ARGUMENT**

11    A.    **The Sale Procedures Can Be Approved Under The Business Judgment**

12            **Standard**

13         A proposed use, sale or lease of property under Section 363(b) is appropriate if some

14    "articulated business justification" exists for the transaction.  *See, Institutional Creditors of*

15    *Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780

16    F.2d 1223, 1226 (5th Cir. 1986); *Stephens Indus., Inc. v. McClung (In re McClung)*, 789 F.2d 386,

17    390 (6th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter v. Sunwest*

18    *Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).

19         Applying § 363 of the Bankruptcy Code, numerous courts have approved overbid

20    procedures and break-up fees in advance of a debtor's sale motion.  *See, Doehring v. Crown Corp.,*

21    *(In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) (noting that district court required specified

22    minimum overbid amounts, deposits, and the form of purchase agreement to be used by bidders); *In*

23    *re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (noting that the

24    bankruptcy court had entered an order approving potential break-up fees and requiring that overbids

25    be made in specified minimum increments with deposits); *In re Table Talk, Inc.*, 53 B.R. 937, 939

26    (Bankr. D. Mass. 1985) (noting that § 363 requires notice and a hearing prior to the establishment of

27    bidding procedures).

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1  Courts have made clear that a debtor's business judgment is entitled to great deference with

2  respect to the procedures to be used in selling assets of the estate. *See, In re Integrated Resources,*

3  *Inc.*, 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that overbid procedures and break-up

4  fee arrangements that have been negotiated by a debtor-in-possession are to be reviewed according

5  to the deferential "business judgment" standard, under which such procedures and arrangements are

6  "presumptively valid"), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993); *In re 995 Fifth Ave. Assocs.*

7  *L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

8  In the present case, as discussed below, sound business justifications support the proposed

9  Sale Procedures.

**B.     The Proposed Sale Procedures Will Maximize The Likelihood of High Values**

   **For The Subject Property**

12  Generally, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the

13  "proffered purchase price is the highest and best offer." *In re Integrated Resource Inc.*, 135 B.R.

14  746, 750 (Bankr. S.D.N.Y.) *aff'd,* 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d

15  Cir. 1993); *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988).

16  To that end, courts uniformly recognize that procedures intended to enhance competitive

17  bidding are consistent with the goal of maximizing the value received by the estate and are

18  appropriate in the context of bankruptcy sales. *See, Integrated Resources,* 147 B.R. at 659 (such

19  procedures should "encourage bidding and maximize the value of the debtors assets"); *In re*

20  *Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) ("court-imposed rules for the

21  disposition of assets . . . [should] provide an adequate basis for comparison of offers, and provide

22  for a fair and efficient resolution of bankrupt estates"), *appeal dismissed,* 931 F. 2d 217 (2d Cir.

23  1991).

24  The proposed Sale Procedures are intended to increase the likelihood that the Trustee will

25  receive the best offer for the Property.  First, pre-approval of the bidding procedures will provide

26  interested parties with notice of the specific bidding procedures authorized by this Court, and the

27  opportunity to competitively bid for the Property.  Second, pre-approval of the rules of the proposed

28

1    sale will ensure fair comparability of competing bids. Third, by open solicitation of higher bids, the

2    Trustee is making every effort to maximize the value of the Property to the estate and its creditors.

3       In addition, good cause exists to approve the break-up fee requested by the Buyer, in the

4    event that an overbid occurs and Buyer is not the ultimate purchaser of the Property. In scrutinizing

5    break-up fees, bankruptcy courts typically employ a dynamic case-by-case approach developed for

6    analyzing break-up fees, whereby a court "...must take into consideration what is in the best

7    interests of the estate." *See In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830, 841 (Bankr. C.D.

8    Cal. 1991); *see also Lionel Corp., supra*, 722 F.2d at 1071 (standard for break-up fees is whether

9    the transaction will "further the diverse interests of the debtor, creditors and equity holders, alike.");

10    *In re Hupp Industries, Inc.*, 140 B.R. 191, 196 (Bankr. N.D. Ohio 1992) (the proposed break-up fee

11    must be carefully scrutinized to insure that the debtor's estate is not unduly burdened and that the

12    relative rights of the parties in interest are protected). Break-up fees outside of bankruptcy are

13    presumptively valid under the business judgment rule. *See Integrated Resources, Inc.*, 849 F.2d 570

14    (11th Cir. 1988).

15       The Trustee believes that the break-up fee (1) encouraged the making of Buyer's initial

16    "stalking horse" offer; (2) may discourage a bidding strategy designed to hold back competitive bids

17    until late in the process; (3) aided the Trustee in negotiating an initial bid that may be Buyer's

18    highest bid; (4) may establish a high floor early in the bidding process; and (5) has enhanced the

19    bidding process by creating momentum towards the consummation of a sale. Based upon the

20    foregoing, the Trustee respectfully requests that the Court approve the break-up fee as set forth

21    herein.

22       As discussed in detail below, each provision of the proposed Sale Procedures is supported

23    by sound business judgment:

24       1.    The Sale Procedures require that prospective purchasers submit to the Trustee by

25    5:00 p.m. on the fifth business day prior to the scheduled hearing date for the Trustee's Sale Motion,

26    satisfactory evidence of such purchaser's financial ability to perform and a $250,000 deposit in good

27    funds, which will be non-refundable if such bidder is the successful bidder at the Sale Hearing and

28    the sale does not close due to purchaser's default. These provisions give the Trustee time in

1  advance of the hearing to evaluate whether a bidder is financially capable of promptly closing a

2  proposed transaction.  Also, such provisions will give potential bidders the comfort that they will

3  not be engaging in a bidding war with parties who are not *bona fide* competitive bidders.

4      2.      The Sale Procedures provide that any party seeking to overbid the Buyer's bid must

5  bid an amount not less than $125,000 above the Buyer's offer, which is a total overbid of

6  approximately 4% of the Purchase Price.  In order for the estate to benefit in any material away

7  from an overbid, it is necessary to fix a minimum overbid in excess of the additional costs

8  associated therewith, such as increased broker's commissions, legal fees, interest and other costs.

9      3.      The Sale Procedures entitle Qualified Bidders to make further bids at the Sale

10  Hearing.  Affording parties the opportunity to increase their bids at the Sale Hearing undoubtedly

11  gives all Qualified Bidders a fair and final opportunity to make a higher and better bid.

## VI.

## CONCLUSION

15      For the reasons and based upon the arguments and authorities set forth above, the Trustee

16  respectfully requests that the Court enter its order approving the Sale Procedures and that it set a

17  hearing on the Sale Motion promptly thereafter.

Respectfully submitted,

Dated:  December 16, 2009        JEFFER, MANGELS, BUTLER & MARMARO LLP

By:  ____/s/ David M. Poitras____
DAVID M. POITRAS P.C.
Counsel for Bradley D. Sharp,
Chapter 11 Trustee for Namco Capital Group, Inc.

18

## <u>DECLARATION OF BRADLEY D. SHARP</u>

I, Bradley D. Sharp, declare as follows:

1.      I am the chapter 11 trustee (the "<u>Trustee</u>") for the bankruptcy estate of Namco Capital Group, Inc.  Each of the facts contained in this declaration is based upon my personal knowledge and, if called as a witness to do so, I could competently testify thereto.

2.      The Court entered the order approving my appointment as chapter 11 trustee in this case on May 8, 2009.

3.      I make this declaration in support of the *Motion of Bradley D. Sharp Chapter 11 Trustee for the Estate of Namco Capital Group, Inc. for an Order Approving Procedures in Connection with Proposed Sale of Property of the Estate* (the "<u>Motion</u>").

4.      The factual allegations in support of the Motion are set forth in Section III, on pages 4 to 7 of the Motion.  I have reviewed and discussed these facts with my counsel and based upon such review and discussions, including the review of certain of Namco's books and records, such factual recitations are true and correct to the best of my knowledge information and belief.

5.      Based upon such facts and the advice of my counsel as to the legal issues presented, I believe that it is in the best interests of the Namco estate for the Sale Procedures to be approved, for at least the following reasons:

a.      The Sale Procedures require that prospective purchasers submit to me by 5:00 p.m. on the fifth business day prior to the scheduled hearing date for the Sale Motion, satisfactory evidence of such purchaser's financial ability to perform and a $250,000 deposit in good funds, which will be non-refundable if such bidder is the successful bidder at the Sale Hearing and the sale does not close due to purchaser's default.  These provisions give me time in advance of the hearing to evaluate whether a bidder is financially capable of promptly closing a proposed transaction.  Also, such provisions will give potential bidders the comfort that they will not be engaging in a bidding war with parties who are not *bona fide* competitive bidders.

b.      The Sale Procedures provide that any party seeking to overbid the Buyer's bid must bid an amount not less than $125,000 above the Buyer's offer, which is a total overbid of approximately 4% of the Purchase Price.  In order for the estate to benefit in any material away

JMBM | Jeffer Mangels Butler & Marmaro LLP

1  from an overbid, it is necessary to fix a minimum overbid in excess of the additional costs

2  associated therewith, such as increased broker's commissions, legal fees, interest and other costs.

3      c.      The Sale Procedures entitle Qualified Bidders to make further bids at the Sale

4  Hearing. Affording parties the opportunity to increase their bids at the Sale Hearing undoubtedly

5  gives all Qualified Bidders a fair and final opportunity to make a higher and better bid.

6      6.      I believe that the break-up fee should be approved, because it (1) encouraged the

7  making of Buyer's initial "stalking horse" offer; (2) may discourage a bidding strategy designed to

8  hold back competitive bids until late in the process; (3) aided me in negotiating an initial bid that

9  may be Buyer's highest bid; (4) may establish a high floor early in the bidding process; and (5) has

10  enhanced the bidding process by creating momentum towards the consummation of a sale.

11      I declare under penalty of perjury under the laws of the United States of America that the

12  foregoing is true and correct and that this declaration is executed this _16th_ day of December, 2009

13  at Sacramento , California.

14

15                          _/s/ Bradley D. Sharp_
                              Bradley D. Sharp
16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

6642374v1

14

**20**

# EXHIBIT A



## STANDARD OFFER, AGREEMENT AND ESCROW
## INSTRUCTIONS FOR PURCHASE OF REAL ESTATE
### (Non-Residential)
### AIR Commercial Real Estate Association

November 24, 2009
(Date for Reference Purposes)

1. **Buyer.**

   1.1 ~~A&J Apartments, LLC~~ AJ Industrial Properties, LLC ("Buyer")
   hereby offers to purchase the real property, hereinafter described, from the owner thereof ("Seller") (collectively, the "Parties" or individually, a "Party"),
   through an escrow ("Escrow") to close 30 or See Addendum #8.11   days after the waiver or expiration of the Buyer's Contingencies,
   ("Expected Closing Date") to be held by Fidelity National Title Company                                    ("Escrow
   Holder")                              whose                           address                           is
   915 Wilshire Blvd., Suite 2125, Los Angeles, CA 90017; Attn: Linda Kane
   , Phone No. (213) 452-7100 , Facsimile No. (213) 689-9330
   upon the terms and conditions set forth in this agreement ("Agreement"). Buyer shall have the right to assign Buyer's rights hereunder, but any such
   assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.

   1.2 The term "Date of Agreement" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this
   document ~~or a subsequent counteroffer thereto, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to~~
   ~~purchase, the Property upon terms accepted by both Parties.~~

2. **Property.**

   2.1 The real property ("Property") that is the subject of this offer consists of (insert a brief physical description) an approximate
   21,000 SF two-story building on approximately 31,000 SF of land

   is located in the City of Los Angeles                          , County of Los Angeles
   State of California                  , is commonly known by the street address of 1929 Pico Boulevard

   and is legally described as:

   (APN: 5136-022-027                      ).
   2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be
   completed or corrected to meet the requirements of Fidelity National Title Company
   ("Title Company"), which shall issue the title policy hereinafter described.
   2.3 The Property includes, at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to
   applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: electrical
   distribution systems (power panel, bus ducting, conduits, disconnects, lighting fixtures); telephone distribution systems (lines, jacks and connections
   only); space heaters; heating, ventilating, air conditioning equipment ("HVAC"); air lines; fire sprinkler systems; security and fire detection systems;
   carpets; window coverings; wall coverings; and delivered "as is where is"

   (collectively, the "Improvements").

   ~~2.4 The fire sprinkler monitor ☐ is owned by Seller and included in the Purchase Price, ☐ is leased by Seller, and Buyer will need to negotiate a~~
   ~~new lease with the fire monitoring company, ☐ ownership will be determined during Escrow, or ☐ there is no fire sprinkler monitor.~~
   2.5 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and

   all of
   which shall be removed by Seller prior to Closing.

3. **Purchase Price.**

   3.1 The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be $3,100,000.00        , payable as
   follows:

   (a)  Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash
        transaction, the Purchase Price):                                                    $3,100,000.00

   (Strike if not
   applicable)   ~~(b)   Amount of "New Loan" as defined in paragraph 6.1, if any:~~                         $_____

                 ~~(c)   Buyer take title to the Property subject to and/or assume the following existing deed(s) of~~
                 ~~trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):~~
                 ~~(i)   An Existing Note ("First Note") with an unpaid principal balance as of the~~
                 ~~Closing of approximately:~~                                                         $_____
                 ~~Said First Note is payable at $_____           per month,~~
   (Strike if not  ~~including interest at the rate of _____% per annum until paid (and/or the~~
   applicable)    ~~entire unpaid balance is due on _____~~

                 ~~(ii)  An Existing Note ("Second Note") with an unpaid principal balance as of the~~
                 ~~Closing of approximately:~~                                                        $_____
                 ~~Said Second Note is payable at $_____          per month,~~
                 ~~including interest at the rate of _____% per annum until paid (and/or the~~
                 ~~entire unpaid balance is due on _____~~
   (Strike if not  ~~(d)  Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the~~
   applicable)    ~~property, to secure the promissory note of Buyer to Seller described in paragraph 6~~
                 ~~("Purchase Money Note") in the amount of:~~                                        $_____

                 Total Purchase Price:                                                               $3,100,000.00

INITIALS                                    PAGE 1 OF 8                                                      INITIALS

3.2 If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer agrees to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

**4. Deposits.**

4.1 ☐ Buyer has delivered to Broker a check in the sum of $ _____ , payable to Escrow Holder or to be delivered by Broker to Escrow Holder within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☑ within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of **fifty thousand dollars ($50,000.00)**. If said check is not received by Escrow Holder within said time period then Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2 Additional deposits.

~~(a) Within 5 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of $ _____ to be applied to the Purchase Price at the Closing.~~

(b) Within 5 business days after the contingencies discussed in paragraph 9.1 (a) through (k) are approved or waived, Buyer shall deposit with Escrow Holder the additional sum of **$200,000.00** to be applied to the Purchase Price at the Closing.

4.3 Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "Deposit"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____ . NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

~~5. Financing Contingency. (Strike if not applicable)~~

~~5.1 This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend Buyer a sum equal to at least _____% of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If the Agreement provides for Seller to carry back junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of the disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.~~

~~5.2 Buyer hereby agrees to diligently pursue obtaining the New Loan. If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within _____ days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.~~

~~5.3 If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.~~

~~6. Seller Financing (Purchase Money Note). (Strike if not applicable)~~

~~6.1 If Seller approves Buyer's financials (see paragraph 6.5) the Purchase Money Note shall provide for interest on unpaid principal at the rate of _____% per annum, with principal and interest paid as follows:~~

~~_____~~
~~_____~~
~~_____~~
~~_____~~

~~The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate only to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2 The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (h)):~~

~~(a) Prepayment. Principal may be prepaid in whole or in part at any time without penalty, at the option of the Buyer.~~

~~(b) Late Charge. A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~(c) Due On Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense, prepare and record on Seller's behalf a request for notice of default and/or sale with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4 WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~6.5 Seller's obligation to provide financing is contingent upon Seller's reasonable approval of Buyer's financial condition. Buyer to provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of the disapproval of this contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition or if Buyer fails to deliver the required documentation then Seller may notify Escrow Holder in writing that Seller Financing will not be available, and Buyer shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate then this transaction shall be deemed to have been elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

**7. Real Estate Brokers.**

7.1 The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☐ _____ represents Seller exclusively ("Seller's Broker");

☐ _____ represents Buyer exclusively ("Buyer's Broker"); or

☑ **Lee & Associates - Los Angeles West, Inc.** _____ represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that Brokers are the procuring cause of this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date inserted for reference purposes at the top of page 1.

7.2 Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

**8. Escrow and Closing.**

8.1 Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not require any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions.

8.2 As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.3 and advise the Parties and Brokers, in writing, of the date ascertained.

PAGE 2 OF 8

_AC_
_V.Z_
INITIALS                                                                                    INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                          FORM OFA-7-6/07E

16

**23**

8.3  Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

8.4  Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

8.5  Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11)

8.6  Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (i), (m), and (o), 9.4, 9.5, 12, 13, 14, 16, 18, 20, 21,.22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

8.7  If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall be promptly refunded all funds deposited by Buyer with Escrow Holder, less any Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

8.8  The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions. See Addendum 8.11.

8.9  Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

8.10  If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

9.  Contingencies to Closing.

9.1  The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT. Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (i) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a)  Disclosure. Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR Commercial Real Estate Association ("AIR") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("Property Information Sheet") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b)  Physical Inspection. Buyer has 10 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c)  Hazardous Substance Conditions Report. Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and relevant adjoining properties. Any such report shall be paid for by Buyer. A "Hazardous Substance" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, render it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relevantly adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d)  Soil Inspection. Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soils report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days of the Date of Agreement.

(e)  Governmental Approvals. Buyer has 30 or _____ days from the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which have or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters.

(f)  Conditions of Title. Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or _____ days following the Date of Agreement. Buyer has 10 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g)  Survey. Buyer has 30 or _____ days from the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared to American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h)  Existing Leases and Tenancy Statements. Seller shall within 10 or _____ days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively, "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and subtenant of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate. If any tenant fails or refuses to provide an Estoppel Certificate then Seller shall complete and execute an Estoppel Certificate for that tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i)  Owner's Association. Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with a statement and transfer package from any owner's association servicing the Property. Such transfer package shall at a minimum include: copies of this association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 10 days from the receipt of such documents to satisfy itself with regard to the association.

(j)  Other Agreements. Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has 10 days from the receipt of said Other Agreements to satisfy itself with regard to such Agreements.

~~(k) Financing. If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.~~

~~(l) Existing Notes. If paragraph 3.1(c) has not been stricken, Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall promptly request from the holders of the Existing Notes a beneficiary statement ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid, and (2) the~~


INITIALS

PAGE 3 OF 8

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

17

24

nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days from the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to purchase the Property without acceleration or change in the terms of any Existing Notes or charges to Buyer except as otherwise provided in this Agreement or approved by Buyer, provided, however, Buyer shall pay the transfer fee referred to in paragraph 3.2 hereof.

(m) Personal Property. In the event that any personal property is included in the Purchase Price, Buyer has 10 or _____ days from the Date of Agreement to satisfy itself with regard to the title and condition of such personal property. Seller recommends that Buyer obtain a UCC-1 report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any liens or encumbrances affecting such personal property that it is aware of within 10 or _____ days of the Date of Agreement.

(n) Destruction, Damage or Loss. There shall not have occurred prior to the Closing, a destruction of, or damage or loss to, the Property or any portion thereof, from any cause whatsoever, which would cost more than $10,000.00 to repair or cure. If the cost of repair or cure is $10,000.00 or less, Seller shall repair or cure the loss prior to the Closing. Buyer shall have the option, within 10 days after receipt of written notice of a loss costing more than $10,000.00 to repair or cure, to either terminate this Agreement or to purchase the Property notwithstanding such loss, but without deduction or offset against the Purchase Price. If the cost to repair or cure is more than $10,000.00, and Buyer does not elect to terminate this Agreement, Buyer shall be entitled to any insurance proceeds applicable to such loss. Unless otherwise notified in writing, Escrow Holder shall assume no such destruction, damage or loss has occurred prior to Closing.

(o) Material Change. Buyer shall have 10 days following receipt of written notice of a Material Change within which to satisfy itself with regard to such change. "Material Change" shall mean a substantial adverse change in the use, occupancy, tenants, title, or condition of the Property that occurs after the date of this offer and prior to the Closing. Unless otherwise notified in writing, Escrow Holder shall assume that no Material Change has occurred prior to the Closing.

(p) Seller Performance. The delivery of all documents and the due performance by Seller of each and every undertaking and agreement to be performed by Seller under this Agreement.

(q) Brokerage Fee. Payment at the Closing of such brokerage fee as is specified in this Agreement or later written instructions to Escrow Holder executed by Seller and Brokers ("Brokerage Fee"). It is agreed by the Parties and Escrow Holder that Brokers are a third party beneficiary of this Agreement insofar as the Brokerage Fee is concerned, and that no change shall be made with respect to the payment of the Brokerage Fee specified in this Agreement, without the written consent of Brokers.

9.2   All of the contingencies specified in subparagraphs (a) through (m) of paragraph 9.1 are for the benefit of, and may be waived by, Buyer, and may be elsewhere herein referred to as "Buyer's Contingencies."

9.3   If any of Buyer's Contingencies or any other matter subject to Buyer's approval is disapproved as provided for herein in a timely manner ("Disapproved Item"), Seller shall have the right within 10 days following the receipt of notice of Buyer's disapproval to elect to cure such Disapproved Item prior to the Expected Closing Date ("Seller's Election"). Seller's failure to give to Buyer within such period, written notice of Seller's commitment to cure such Disapproved Item on or before the Expected Closing Date shall be conclusively presumed to be Seller's Election to not cure such Disapproved Item. If Seller elects, either by written notice or failure to give written notice, not to cure a Disapproved Item, Buyer shall have the right, within 10 days after Seller's Election to either accept title to the Property subject to such Disapproved Item, or to terminate this Agreement. Buyer's failure to notify Seller in writing of Buyer's election to accept title to the Property subject to the Disapproved Item without deduction or offset shall constitute Buyer's election to terminate this Agreement. Unless expressly provided otherwise herein, Seller's right to cure shall not apply to the remediation of Hazardous Substance Conditions or to the Financing Contingency. Unless the Parties mutually instruct otherwise, if the time periods for the satisfaction of contingencies or for Seller's and Buyer's elections would expire on a date after the Expected Closing Date, the Expected Closing Date shall be deemed extended for 3 business days following the expiration of: (a) the applicable contingency period(s), (b) the period within which the Seller may elect to cure the Disapproved Item, or (c) if Seller elects not to cure, the period within which Buyer may elect to proceed with this transaction, whichever is later.

9.4   Buyer understands and agrees that until such time as all Buyer's Contingencies have been satisfied or waived, Seller and/or its agents may solicit, entertain and/or accept back-up offers to purchase the Property.

9.5   The Parties acknowledge that extensive local, state and Federal legislation establish broad liability upon owners and/or users of real property for the investigation and remediation of Hazardous Substances. The determination of the existence of a Hazardous Substance Condition and the evaluation of the impact of such a condition are highly technical and beyond the expertise of Brokers. The Parties acknowledge that they have been advised by Brokers to consult their own technical and legal experts with respect to the possible presence of Hazardous Substances on the Property or adjoining properties, and Buyer and Seller are not relying upon any investigation by or statement of Brokers with respect thereto. The Parties hereby assume all responsibility for the impact of such Hazardous Substances upon their respective interests herein.

10.   Documents Required at or Before Closing: See Addendum 8.6.

10.1   Five days prior to the Closing date Escrow Holder shall obtain an updated Title Commitment concerning the Property from the Title Company and provide copies thereof to each of the Parties.

10.2   Seller shall deliver to Escrow Holder in time for delivery to Buyer at the Closing:

(a) Grant or general warranty deed, duly executed and in recordable form, conveying fee title to the Property to Buyer.

(b) If applicable, the Beneficiary Statements concerning Existing Note(s).

(c) If applicable, the Existing Leases and Other Agreements together with duly executed assignments thereof by Seller and Buyer. The assignment of Existing Leases shall be on the most recent Assignment and Assumption of Lessor's Interest in Lease form published by the AIR or its equivalent.

(d) If applicable, Estoppel Certificates executed by Seller and/or the tenant(s) of the Property.

(e) An affidavit executed by Seller to the effect that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Internal Revenue Service such sum as is required by applicable Federal law with respect to purchases from foreign sellers.

(f) If the Property is located in California, an affidavit executed by Seller to the effect that Seller is not a "nonresident" within the meaning of California Revenue and Tax Code Section 18662 or successor statutes. If Seller does not provide such affidavit in form reasonably satisfactory to Buyer at least 3 business days prior to the Closing, Escrow Holder shall at the Closing deduct from Seller's proceeds and remit to the Franchise Tax Board such sum as is required by such statute.

(g) If applicable, a bill of sale, duly executed, conveying title to any included personal property to Buyer.

(h) If the Seller is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the sale of the Property.

10.3   Buyer shall deliver to Seller through Escrow:

(a) The cash portion of the Purchase Price and such additional sums as are required of Buyer under this Agreement shall be deposited by Buyer with Escrow Holder, by federal funds wire transfer, or any other method acceptable to Escrow Holder in immediately collectable funds, no later than 2:00 P.M. on the business day prior to the Expected Closing Date.

(b) If a Purchase Money Note and Purchase Money Deed of Trust are called for by this Agreement, the duly executed originals of those documents, the Purchase Money Deed of Trust being in recordable form, together with evidence of fire insurance on the improvements in the amount of the full replacement cost naming Seller as a mortgage loss payee, and a real estate tax service contract (at Buyer's expense), assuring Seller of notice of the status of payment of real property taxes during the life of the Purchase Money Note.

(c) The Assignment and Assumption of Lessor's Interest in Lease form specified in paragraph 10.2(c) above, duly executed by Buyer.

(d) Assumptions duly executed by Buyer of the obligations of Seller that accrue after Closing under any Other Agreements.

(e) If applicable, a written assumption duly executed by Buyer of the loan documents with respect to Existing Notes.

(f) If the Buyer is a corporation, a duly executed corporate resolution authorizing the execution of this Agreement and the purchase of the Property.

10.4   At Closing, Escrow Holder shall cause to be issued to Buyer a standard coverage (or ALTA extended, if elected pursuant to 9.1(g)) owner's form policy of title insurance effective as of the Closing, issued by the Title Company in the full amount of the Purchase Price, insuring title to the Property vested in Buyer, subject only to the exceptions approved by Buyer. In the event there is a Purchase Money Deed of Trust in this transaction, the policy of title insurance shall be a joint protection policy insuring both Buyer and Seller.
IMPORTANT: IN A PURCHASE OR EXCHANGE OF REAL PROPERTY, IT MAY BE ADVISABLE TO OBTAIN TITLE INSURANCE IN CONNECTION WITH THE CLOSE OF ESCROW SINCE THERE MAY BE PRIOR RECORDED LIENS AND ENCUMBRANCES WHICH AFFECT YOUR INTEREST IN THE PROPERTY BEING ACQUIRED. A NEW POLICY OF TITLE INSURANCE SHOULD BE OBTAINED IN ORDER TO ENSURE YOUR INTEREST IN THE PROPERTY THAT YOU ARE ACQUIRING.

11.   Prorations and Adjustments.

11.1   Taxes. Applicable real property taxes and special assessment bonds shall be prorated through Escrow as of the date of the Closing, based upon the latest tax bill available. The Parties agree to prorate as of the Closing any taxes assessed against the Property by supplemental bill levied by

INITIALS

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM OFA-7-6/07E

reason of events occurring prior to the Closing. Payment of the prorated amount shall be made promptly in cash upon receipt of a copy of any supplemental bill.

11.2 *Insurance.* **WARNING:** Any insurance which Seller may have maintained will terminate on the Closing. Buyer is advised to obtain appropriate insurance to cover the Property.

11.3 *Rentals, Interest and Expenses.* Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 *Security Deposit.* Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 *Post Closing Matters.* Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

~~11.6 *Variations in Existing Note Balances.* In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("Existing Note Variation"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.~~

~~11.7 *Variations in New Loan Balance.* In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 5.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.~~

~~11.8 *Owner's Association Fees.* Escrow Holder shall: (i) bring Seller's account with the association current and pay any delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up-front fees required by the association from Buyer's funds.~~

**12. Representations and Warranties of Seller and Disclaimers.**

~~12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and, are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:~~

~~(a) *Authority of Seller.* Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.~~

~~(b) *Maintenance During Escrow and Equipment Condition.* At Closing, Except as otherwise provided in paragraph 9.1(m) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.~~

~~(c) *Hazardous Substance/Storage Tanks.* Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence or prior existence of any above or below ground storage tank.~~

~~(d) *Compliance.* Seller has no knowledge of any appeal or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.~~

~~(e) *Changes in Agreements.* Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new lessee or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.~~

~~(f) *Possessory Rights.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.~~

~~(g) *Mechanics' Liens.* There are no unsatisfied mechanics' or materialmen's lien rights concerning the Property.~~

~~(h) *Actions, Suits or Proceedings.* Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.~~

~~(i) *Notice of Changes.* Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(n)) affecting the Property that becomes known to Seller prior to the Closing.~~

~~(j) *No Tenant Bankruptcy Proceedings.* Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.~~

~~(k) *No Seller Bankruptcy Proceedings.* Seller is not the subject of a bankruptcy, insolvency or probate proceeding.~~

~~(l) *Personal Property.* Seller has no knowledge that anyone will, at the Closing, have any right to possession of any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.~~

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party herein.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

**13. Possession.**

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

**14. Buyer's Entry.**

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property of and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

**15. Further Documents and Assurances.**

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, reasonably required by Escrow Holder or the Title Company.

**16. Attorneys' Fees.**

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

**17. Prior Agreements/Amendments.**

17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.

17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

**18. Broker's Rights.**

18.1 If this sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.

18.2 Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

**19. Notices.**

19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Agreement or by facsimile transmission.

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

INITIALS

FORM OFA-7-6/07E

19

**26**

19.2  Service of any such communication shall be deemed made on the date of actual receipt if personally delivered. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier that guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. Communications transmitted by facsimile transmission shall be deemed delivered upon telephonic confirmation of receipt (confirmation report from fax machine is sufficient), provided a copy is also delivered via delivery or mail. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

19.3  Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

20.  Duration of Offer.

~~20.1  If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of —_____ on the date of _____;  it shall be deemed automatically revoked.~~

~~20.2  The acceptance of this offer, or of any subsequent counter-offer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker hereto of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.~~

21.  LIQUIDATED DAMAGES. (This Liquidated Damages paragraph is applicable only if initialed by both Parties).
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT.  THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF _____ UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

_____                              _____
        Buyer Initials                                            Seller Initials

22.  ARBITRATION OF DISPUTES. (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)
22.1  ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. ANY SUCH CONTROVERSY SHALL BE ARBITRATED BY 3 ARBITRATORS WHO SHALL BE IMPARTIAL REAL ESTATE BROKERS WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THEY SHALL BE APPOINTED UNDER THE COMMERCIAL RULES. THE ARBITRATORS SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2  BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3  NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

_____                              _____
        Buyer Initials                                            Seller Initials

23.  Miscellaneous.
23.1  Binding Effect.  This Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2  Applicable Law.  This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located.

23.3  Time of Essence.  Time is of the essence of this Agreement.

23.4  Counterparts.  This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages on one of the counterparts, which shall then constitute the Agreement.

23.5  Waiver of Jury Trial.  THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6  Conflict.  Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

23.7  1031 Exchange.  Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initialing an exchange shall bear all costs of such exchange.

23.8  Days.  Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

24.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.
24.1  The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

_____                              _____
INITIALS                                                    INITIALS

PAGE 6 OF 8

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                              FORM OFA-7-6/07E

20

27

24.2   When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

~~(a) Seller's Agent. A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) To the Seller: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.~~

~~(b) Buyer's Agent. A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations: (1) To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.~~

(c)  Agent Representing Both Seller and Buyer. A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d)  Further Disclosures. Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3   Confidential Information. Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

25.  Construction of Agreement. In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

26.  Additional Provisions:
Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum consisting of paragraphs ___8.11, 9.6, 27-33___

through _____ . (If there are no additional provisions write "NONE".)

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1.      SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2.      RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

NOTE:
1.      THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2.      IF THE BUYER IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

| BROKER: | BUYER: |
| --- | --- |
| Lee & Associates - Los Angeles West, Inc. <br> a California Corporation | ~~AIJ Apartments, LLC~~  *AJ Industrial Properties, LLC* |
| | *K. Yz* |
| Attn: Patrick H. Ayau | By: |
| Title: Managing Principal | Date: |
| Address: 1508 17th Street | Name Printed: |
| Santa Monica, CA 90404 | Title: |
| Telephone:(310) 899-2700 | Telephone:( ) |
| Facsimile:(310) 899-2701 | Facsimile:( ) |
| Email:payau@leewestla.com | |
| Federal ID No. | |
| | By: |
| Broker/Agent DRE License #: 01222000 | Date: |
| | Name Printed: |
| | Title: |
| | Address: *9468 Daines Drive* |
| | *Temple City, CA 91780* |
| | Telephone:(626) *637-6155* |
| | Facsimile:(626) *872-6062* |
| | Email:aaron.chang@mac.com |
| | Federal ID No. ~~26-2122222~~ 27-1449461 |

**27.  Acceptance.**

27.1  Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions therein specified.

27.2  ~~Seller acknowledges that Brokers have been retained to locate a Buyer and are the procuring cause of the purchase and sale of the Property set forth in this Agreement. In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate Brokerage Fee in a sum equal to _____ % of the Purchase Price to be divided equally between Sellers Broker and Buyers Broker. This Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the account of Seller at the Closing.~~ Per the Employment Agreement with the U.S. Bankruptcy Court Case 2:08BK32333BR.

27.3  Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.

| BROKER: | SELLER: |
| --- | --- |
| SAME AS ABOVE. | Bradley D. Sharp Chapter 11 Trustee ATF <br> The Bankruptcy Estate of Namco Capital <br> Group, Inc. |
| Attn: | |
| Title: | By: |
| Address: | Date: |
| | Name Printed: |
| Telephone:( ) | Title: |
| Facsimile:( ) | Telephone:( ) |
| Email: | Facsimile:( ) |
| Federal ID No.: | |
| | By: |
| Broker/Agent DRE License #: | Date: |
| | Name Printed: |
| | Title: |
| | Address: 12121 Wilshire Blvd., Suite 200 |
| | Los Angeles, CA 90025 |
| | Telephone:(310) 820-8600 |
| | Facsimile:(310) 820-7373 |
| | Email: |
| | Federal ID No.: |

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you are utilizing the most current form:  AIR Commercial Real Estate Association,  800 W 6th Street, Suite 800, Los Angeles, CA 90017.  Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.

© Copyright 2003 By AIR Commercial Real Estate Association.
All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

PAGE 8 OF 8

INITIALS

INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFA-7-6/07E

22

**29**

THIS AMENDMENT TO THE STANDARD OFFER AGREEMENT AND ESCROW
INSTRUCTIONS FOR THE PURCHASE OF REAL ESTATE DATED NOVEMBER 24,
2009 (THE AGREEMENT) BY AND BETWEEN A&J APARTMENTS LLC
(HEREINAFTER THE BUYER) AND BRADLEY D. SHARP CHAPTER 11 TRUSTEE
FOR THE BANKRUPTCY ESTATE OF NAMCO CAPITAL GROUP, INC
(HEREINAFTER THE SELLER) SHALL GIVE FULL FORCE AND EFFECT TO THE
FOLLOWING ITEMS SET FORTH BELOW. TO THE EXTENT THERE ARE ANY
INCONSISTENCIES BETWEEN THIS AMENDMENT AND THE STANDARD OFFER
AGREEMENT AND ESCROW INSTRUCTIONS THEN THIS AMENDMENT SHALL
PREVAIL.

8.11   THE SALE SHALL OCCUR THE LATER OF THIRTY (30) DAYS AFTER THE
       CONTINGENCY  PERIOD OR BANKRUPTCY COURT APPROVAL OF THE
       SALE.

9.6    THE CONTINGENCY PERIOD SHALL BE FORTY FIVE (45) DAYS FROM THE
       MUTUAL EXECUTION AND DELIVERY OF ESCROW INSTRUCTIONS TO
       THE ESCROW HOLDER EXCEPT FOR ITEM 9.1 (F) WHICH SHALL BE AS
       STATED IN THE AGREEMENT.

27.    **BANKRUPTCY COURT APPROVAL CONTINGENCY**

       THIS PURCHASE OF REAL ESTATE IS SUBJECT TO AND CONDITIONED
       UPON APPROVAL OF THE UNITED STATES BANKRUPTCY COURT FOR
       THE CENTRAL DISTRICT OF CALIFORNIA, OR SUCH OTHER COURT OR
       TRIBUNAL AS HAS JURISDICTION OVER CASES FILED UNDER TITLE 11,
       UNITED STATES CODE. BUYER UNDERSTANDS THAT SELLER SHALL
       APPLY TO THE BANKRUPTCY COURT TO SELL THE PROPERTY TO BUYER
       ONCE ALL BUYERS' CONTINGENCIES ARE REMOVED OR SATISFIED.

       BUYER UNDERSTANDS AND IS AWARE THAT:

              THE BANKRUPTCY COURT MAY DISAPPROVE THIS TRANSACTION
              IF, IN THE COURTS' DETERMINATION, THE SALE FAILS TO MEET AT
              LEAST ONE OF THE  QUALIFYING PROVISIONS OF 11 USC
              SECTION 363 FOR A SALE OUT OF THE ORDINARY COURSE; OR

              THERE MAY BE AN OVERBID IN WHICH BUYER HEREIN IS NOT THE
              SUCCESSFUL OVERBIDDER, OR

              THE TRUSTEE MAY NOT SEEK TO OBTAIN A COURT ORDER TO
              APPROVE THIS SALE IF HE HAS DETERMINED IT WOULD NOT BE IN
              THE BEST INTEREST OF THE BANKRUPTCY ESTATE TO DO SO.

       IF ANY OF THE FOREGOING EVENTS SHALL OCCUR, SELLER SHALL
       HAVE NO LIABILITY TO BUYER AND BUYER'S PURCHASE ESCROW SHALL
       BE CANCELLED AND BUYER'S DEPOSIT RETURNED. SELLER SHALL HAVE
       NO LIABILITY TO BUYER IF THE BANKRUPTCY COURT DOES NOT
       APPROVE THIS SALE.

23

**30**

28.   **REPRESENTATIONS AND WARRANTIES**

All references (to the extent that such exist) as to Seller's representations, warranties, the Property's condition, its maintenance, availability of utilities, zoning, deed restrictions, special study areas, hazardous waste materials, and any other similar item stipulating or describing the condition of the Property in the Offer are deleted in their entirety with the substitution of the following new paragraphs which shall read as follows:

Buyer acknowledges that Seller has not acquired the Property for the purpose of maintaining same, but rather for the sole purpose of liquidating same.

Due to the unique nature of the Bankruptcy, Seller is unaware of the true condition of the Property.

Seller is unable to make, and shall not be required to make any representation or warranty whatsoever as to the physical condition of the Property, or as to the operative or proposed governmental laws and regulations, zoning, environmental, and land use laws and regulations, to which the Property may be subject.

As a standard matter of practice involving properties conveyed from Bankruptcy estates through court-appointed administrator, Seller's limited knowledge of the Property as the Trustee of a Bankruptcy estate does not permit Seller to sell the Property other than in its present **"AS IS"** condition, subject to all faults. Accordingly, the Property being sold hereunder is being sold **"AS IS AND WITH ALL FAULTS, WITH NO REPRESENTATIONS MADE BY SELLER"**.

<u>Personal Property:</u> The parties understand that some of the personal property presently found at the Property as of the date of this counter-offer, including some of the appliances, may belong to Debtor, or persons other than Seller and not to the Estate or Seller. It is presently unknown which personal property is owned by Debtor, or persons other than the Estate or Seller. Any personal property not owned by Seller is also excluded from this transaction. All other goods, fixtures, furnishings, and equipment now or hereafter attached to, installed, or placed in, on, or about the Property for use as a part of the Property or in conjunction with the use and occupancy of the Property, including, but not limited to, all apparatus, machinery, fittings, doors, windows, screenings, awnings, shades, blinds, carpets, floor coverings, draperies, gas and oil and electric burners and heaters, ducts, vents, hoods, flues and registers, hot water heaters, sinks, stoves, ovens, cabinets, drain boards, heating, cooling and air-conditioning equipment, fans, ventilators, wiring, panels, all lighting fixtures, sconces, globes and tubes, time clocks and other electrical equipment, and all plumbing and plumbing fixtures and equipment, sprinklers and sprinkler equipment, and all trees, plants, shrubs, and other landscaping, together with all of the Estate's right, title,

and interest (or equitable interest, if subject to a lease Agreement, conditional sale Agreement, or any other security interest) in such personal property shall be conveyed to Buyer without warranty or representation and are included in the purchase price.

Except for the limited scope of replacement in event of material casualty loss, there is no requirement for Seller to maintain the Property or any other items in or on the Property during the pendency of this transaction.

29. **MUTUAL WARRANTIES AND REPRESENTATION OF PARTIES**

The parties mutually represent and warrant each to the other as follows:

That, subject to the jurisdiction and approval of the United States Bankruptcy Court for the Central District of California and conditioned by the terms and provisions of the Order approving this transaction to be sought herein, each party has full right, power, legal capacity, and authority to enter into and perform its respective obligations under this Agreement, and no approvals or consents of any other persons or authorities are necessary in connection with this Agreement, and that the person or persons executing this Agreement on behalf of Buyer and Seller have full authority to do so.

30. **WARRANTIES OF SELLER**

Seller represents and warrants to Buyer as follows:

Seller represents and warrants that Seller is the duly appointed Trustee of the Bankruptcy Estate referenced herein.

Except for the foregoing representations and warranties contained herein and without limiting the provisions of Paragraph 6 above, Seller makes and shall be required to make, no representation or warranty, either express or implied, with respect to the Property, the physical condition of the Property, its present condition, or its fitness for any particular purpose; or the operative or proposed governmental laws and regulations, zoning, environmental, and land use laws and regulations, to which the Property may be subject.

31. **WARRANTIES OF BUYER**

Buyer represents and warrants to Seller as follows:

That Buyer's purchase of the Property shall be on the basis of Buyer's own independent review and investigation.

That Buyer has made or will make all factual, physical, and legal examinations, including the applicability and effect of all laws and regulations, and any other inquiries deemed necessary or material to Buyer's interest.

25

**32**

That Buyer is purchasing property in its "AS IS" condition, SUBJECT TO ALL FAULTS, and shall assume the risk that adverse matters may not have been disclosed by Buyer's investigation.

32.  **DISPUTES**

In the event of any dispute, claim, or controversy between the parties arising out of the sale of the Property, the Bankruptcy Court having jurisdiction over this bankruptcy Estate shall decide any such matter and all controversies or claims between the parties pursuant to Title 11 of the United States Code and the State of California, unless otherwise agreed to in writing by mutual Agreement of the parties herein. BUYER WAIVES THE RIGHT TO TRIAL BY JURY WITH REGARD TO ANY CLAIM AGAINST THE SELLER OR BROKER THAT IN ANY WAY RELATES TO THIS AGREEMENT OR TRANSACTION.

33. **ASSERTION OF DISAPPROVAL OF CONTINGENCIES:** All of Buyer's contingencies in this transaction shall be deemed approved unless Seller has received written notification of any disapproval on or before the time period(s) stated herein.

In Witness Hereof, both parties have agreed to this Amendment as of the time and date executed below.

A&J Apartments, LLC                          Bradley D. Sharp Chapter 11 Trustee
A California Limited Liability Company              ATF the Bankruptcy Estate of
                                                 Namco Capital Group INC

BY: _____        BY: _____

DATE: __12/9/09__                     DATE: _____

**33**

# EXHIBIT B

## Bidding Procedures

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the prospective sale (the "Sale") of the following real property of Bradley D. Sharp, Chapter 11 Trustee for the Estate of Namco Capital Group, Inc. (the "Seller"): (i) that certain real property commonly known as: 1929 Pico Boulevard, Los Angeles, California, legally described in Exhibit "A-1" attached hereto (the "Property"), (ii) all of Seller's rights appurtenant thereto.

Seller has currently entered into an agreement for the purchase and sale of the Property to AJ Industrial Properties, LLC or its designee ("AJ") (the "AJ Sale Agreement"). Seller will seek entry of an order by the United States Bankruptcy Court, among other things, authorizing and approving the Sale to AJ or to a Qualified Overbidder (as hereinafter defined) which the Bankruptcy Court may determine to have made the highest or otherwise best offer to purchase the Property (the "Successful Bidder").

## The Bidding Process

Seller shall (i) determine whether any person is a Qualified Overbidder, (ii) coordinate the efforts of Qualified Overbidders in conducting their respective due diligence investigations regarding the Property, (iii) receive offers from Qualified Overbidders, and (iv) negotiate any offer made to purchase the Property (collectively, the "Bidding Process"). Any person who wishes to participate in the Bidding Process must be a Qualified Overbidder. Neither Seller nor its representatives shall be obligated to furnish any information of any kind whatsoever related to the Property to any person who is not a Qualified Overbidder. Seller shall have the right to adopt such other rules for the Bidding Process which, in its reasonable judgment, will better promote the goals of the Bidding Process and which are not inconsistent with any of the other provisions hereof or of any Bankruptcy Court order.

## Participation-Bid Requirements

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each person (a "Potential Bidder") must deliver (unless previously delivered) to Seller the following documents (the "Required Bid Documents"), unless Seller waives in writing any/all of these requirements:

(a)    An executed confidentiality agreement in form and substance satisfactory to Seller;

(b)    Current financial statements or other financial information of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Property, current financial statements or other financial information of the equity holder(s) of the Potential Bidder, or such other form of financial disclosure acceptable to Seller and its advisors, demonstrating such Potential Bidder's ability to close the proposed transaction;

(c)    A letter stating that the bidder's offer is irrevocable until the earlier of (x) two (2) business days after the Property has been disposed of pursuant to these Bidding Procedures, and (y) thirty (30) days after the Sale Hearing;

(d)    An executed copy of an asset purchase agreement: (i) acceptable in form to Seller (the "Overbid Asset Purchase Agreement"), (ii) clearly marked to show any changes from the terms of the AJ Sale Agreement, or (iii) on the same or more favorable terms as the AJ Sale Agreement; provided, however, the purchase price in such proposed Overbid Asset Purchase Agreement must be at least $3,250,000;

(e)    A good faith deposit (the "Good Faith Deposit") in the form of a certified check (or other form acceptable to Seller in its sole discretion) payable to the order of Seller (or such other party as Seller may determine to hold such funds in escrow) in an amount equal to $250,000; and

(f)    Written evidence of a commitment for financing or other evidence of ability to consummate the proposed transaction satisfactory to Seller in its sole discretion.

Seller will consider a bid only if the bid is on terms that are not conditioned on obtaining financing.

A Qualified Overbidder is a Potential Bidder that delivers the documents described in subparagraphs (a), (b), (c), (d), (e) and (f) above, whose financial information demonstrates the financial capability of the Potential Bidder to consummate the Sale, and that Seller determines is reasonably likely (based on the availability of financing, experience and other considerations) to submit a bona fide offer and to be able to consummate the Sale if selected as the Successful Bidder.

Within three (3) business days after a Potential Bidder delivers all of the materials required by subparagraphs (a), (b), (c), (d), (e) and (f) above, Seller shall determine, and shall notify the Potential Bidder in writing, whether the Potential Bidder is a Qualified Overbidder.

The A &J offer set forth in the AJ Sale Agreement and any overbid by AJ is also a "Qualified Bid" herein.

### Bid Protection

AJ shall be entitled to be paid a $93,000 termination fee if a higher or otherwise better offer from another bidder results in a closed sale to such other bidder and AJ was not in default of any of its obligations under the AJ Sale Agreement and was otherwise ready, willing and able to close a sale for the Property.

### Due Diligence

Seller may afford each Qualified Overbidder due diligence access to the Property. Seller will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access for such bidders. Seller shall not be obligated to furnish any due diligence information after the Bid Deadline (as defined herein). Neither Seller nor any of its affiliates (or any of their respective representatives) are obligated to furnish any information relating to the Property to any person except to a Qualified Overbidder who makes

6654103v1

an acceptable preliminary proposal. Bidders are advised to exercise their own discretion before relying on any information regarding the Property provided by anyone other than Seller or its representatives.

## Bid Deadline

A Qualified Overbidder that desires to make a bid shall deliver a written copy of its bid to Seller's counsel, David M. Poitras P.C. of Jeffer, Mangels, Butler & Marmaro LLP at 1900 Avenue of the Stars, Seventh Floor, Los Angeles, California 90067 (fax: 310-203-0567; email: dpoitras@jmbm.com) **on or before 5:00 p.m. on the fifth business day prior to the scheduled hearing date for the Trustee's Sale Motion.** Seller may extend such deadline in its sole discretion (such deadline, including such extension, the "Bid Deadline"). In addition to the above-referenced extension, Seller may extend the Bid Deadline once or successively, but it is not obligated to do so.

## "As Is, Where Is"

The sale of the Property shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by Seller, its agents or its bankruptcy estate except to the extent set forth in the Overbid Asset Purchase Agreement of the Successful Bidder as accepted by Seller and approved by the Bankruptcy Court. Except as otherwise provided in the AJ Sale Agreement or an Overbid Asset Purchase Agreement acceptable to Seller, and approval by the Bankruptcy Court, all Seller's right, title and interest in and to the Property shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests") in accordance with Sections 363 and 365 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the Sale of the Property.

Each bidder shall be deemed to acknowledge and represent it has had an opportunity to inspect and examine the Property and to conduct any and all due diligence regarding the Property prior to making its offer; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Property, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the AJ Sale Agreement or the Overbid Asset Purchase Agreement.

## Auction

After all Qualified Bids have been received, Seller may conduct an auction (the "Auction") for the Property if Qualified Bids have been received. Such Auction shall take place at the United States Bankruptcy Court for the Central District of California, Los Angeles Division, 255 East Temple Street, Los Angeles, California, Courtroom 1668 (the "Bankruptcy Court") on _____, ____, commencing at ___:___ _.m. Only a Qualified Overbidder who has submitted a Qualified Bid will be eligible to participate at the Auction. At such Auction, AJ and Qualified Overbidders will be permitted to increase their bids. Based upon the

6654103v1

terms of the Qualified Bids received, the level of interest expressed as to the Property and such other information as Seller determines is relevant, Seller, after reasonable efforts to consult with interested parties, Seller shall recommend and the Bankruptcy Court may conduct an Auction in the manner designed to result in the highest or otherwise best offer for the Property including, but not limited to (i) setting subsequent bid amounts in $25,000 increments or such other amounts as the Bankruptcy Court may order and (ii) providing for such additional procedural rules that Seller determines, subject to Bankruptcy Court approval, to be reasonable under the circumstances for conducting the Auction.

Upon conclusion of an Auction or, if Seller determines not to hold an Auction, then promptly following the Bid Deadline, Seller shall (i) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale and (ii) identify the highest and otherwise best offer (the "<u>Successful Bid</u>"). At the Sale Hearing, Seller shall present to the Bankruptcy Court for approval the Successful Bid and any backup bids. Subject to Bankruptcy Court approval, Seller may adopt rules for the bidding process that are not inconsistent with any of the provisions of the Bankruptcy Code, any Bankruptcy Court Order, or these Bidding Procedures.

### Acceptance of Qualified Bids

Seller presently intends to sell the Property to A &J or the highest or otherwise best Qualified Overbidder. Seller's presentation to the Bankruptcy Court for approval of a particular Qualified Bid does not constitute Sellers' acceptance of such bid. Seller will be deemed to have accepted a bid only when the bid has been approved by an order of the Bankruptcy Court.

### Sale Hearing

The Sale Hearing, shall take place at the Bankruptcy Court immediately following the Auction. The Sale Hearing may be adjourned or rescheduled without notice by an announcement of the adjourned date of a Sale Hearing. At such Sale Hearing, Seller shall present the Successful Bid to the Bankruptcy Court for approval.

Following a Sale Hearing approving the sale of the Property to a Successful Bidder, if such Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, (a) it will forfeit its Good Faith Deposit to Seller and Seller may pursue any and all of its options at law and in equity with respect to such breach and (b) the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, shall be deemed to be the Successful Bid and Seller shall be authorized to effectuate such sale without further order of the Bankruptcy Court or (c) Seller shall reschedule at a later date and time another auction for the Property.

### Return of Good Faith Deposit

Within five (5) business days after the entry by the Bankruptcy Court approving the sale of the Property to the Successful Bidder, any Good Faith Deposits submitted by Qualified Bidders shall be returned, along with interest accrued thereon, except for the Good Faith Deposit of the Successful Bidder (and except with respect to any Qualified Bidder willing to serve as a back-up bidder), in which case the Good Faith Deposit will be applied to the purchase price for the Property, and except with respect to any bidder that forfeits its Good Faith Deposit. In the event a back-up bidder is selected and agrees to be designated as such, that Qualified Bidder's Good Faith Deposit shall continue to be held until the time the sale to the Successful Bidder closes or the back-up bidder becomes the Successful Bidder, at which time the Good Faith Deposit will be applied to the purchase price.

### Modifications

Seller may (a) determine, in its business judgment, which Qualified Bid, if any, is the highest or otherwise best offer; and (b) reject at any time before the entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that, in Seller's reasonable discretion is (i) inadequate or insufficient, (ii) not in conformity with the conditions of sale, or (iii) contrary to the best interests of Seller, its estate and/or its creditors. At or before the Sale Hearing, Seller may impose such other terms and conditions as it may determine to be in the best interest of Seller's bankruptcy estate, its creditors and/or other parties in interest, provided that any such other terms or conditions are approved by the Bankruptcy Court.

6654103v1

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1900 Avenue of the Stars, Seventh Floor, Los Angeles, CA 90067-4308

The foregoing document described <u>NOTICE OF MOTION AND MOTION OF CHAPTER 11 TRUSTEE BRADLEY D. SHARP, CHAPTER 11 TRUSTEE FOR THE ESTATE OF NAMCO CAPITAL GROUP, INC. FOR ORDER APPROVING PROCEDURES IN CONNECTION WITH PROPOSED SALE OF PROPERTY OF THE ESTATE; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF BRADLEY D. SHARP</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>December 16, 2009</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒   Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL**   (indicate method for each person or entity served):
On <u>December 16, 2009</u>, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**[Served By Overnight Mail]**
Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple St., Suite 1660
Los Angeles, CA 90012

☒   Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 16, 2009 | Claudean Brandon | _(signature)_ |
|---|---|---|
| Date | Type Name | |

PRINTED ON
RECYCLED PAPER

6642374v1

**40**

# ADDITIONAL SERVICE INFORMATION

## I. TO BE SERVED BY NEF

- Simon Aron    saron@wrslawyers.com
- Raymond H Aver    ray@averlaw.com
- Robert D Bass    rbass@greenbass.com
- Christine E Baur    christine.e.baur@bakernet.com, tracey.l.angelopoulos@bakernet.com;anne.w.hamann@bakernet.com;ali.m.m.mojdehi@bakernet.com;jane.b.mackie@bakernet.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, michael.berger@bankruptcypower.com
- Stephen F Biegenzahn    efile@sfblaw.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Gillian N Brown    gbrown@pszjlaw.com, gbrown@pszjlaw.com
- Shirley Cho    scho@pszjlaw.com
- Russell Clementson    russell.clementson@usdoj.gov
- Alicia Clough    alicia.clough@kayescholer.com
- Yona Conzevoy    yconzevoy@dwclaw.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Richard K Diamond    rdiamond@dgdk.com
- Richard K Diamond    jlv@dgdk.com, rdiamond@ecf.epiqsystems.com
- Caroline Djang    crd@jmbm.com
- Joseph A Eisenberg    jae@jmbm.com
- Robert Esensten    resensten@wcclaw.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Alan W Forsley    awf@fredmanlieberman.com
- Heather Fowler    heather.fowler@lw.com, colleen.rico@lw.com
- Jon H Freis    jon@jhflaw.net
- Sandford Frey    Sfrey@cmkllp.com
- Vanessa B Fung    vfung@sobini.com
- Philip A Gasteier    pgasteier@rdwlawcorp.com
- Thomas M Geher    tmg@jmbm.com
- Barry S Glaser    bglaser@swjlaw.com
- Steven Glaser    sglaser@wwllp.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Jeffrey I Golden    jgolden@wgllp.com
- David Gould    dgould@davidgouldlaw.com
- Steven T Gubner    sgubner@ebg-law.com, ecf@ebg-law.com
- M Jonathan Hayes    jhayes@polarisnet.net
- Michael J Heyman    michael.heyman@klgates.com
- Eric P Israel    eisrael@dgdk.com
- Seymone Javaherian    sj@javlaw.com

PRINTED ON
RECYCLED PAPER

6642374v1

**41**

1
- Ira Benjamin Katz    lkatz@katzlaw.net
2
- Alexandra Kazhokin    akazhokin@buchalter.com,
  rreeder@buchalter.com;ifs_filing@buchalter.com
3
- Stuart I Koenig    Skoenig@cmkllp.com
- Michael S Kogan    mkogan@ecjlaw.com
4
- John P Kreis    jkreis@attglobal.net
- Jeffrey A Krieger    jkrieger@ggfirm.com
5
- Duane Kumagai    dkumagai@rutterhobbs.com, calendar@rutterhobbs.com
- Steven N Kurtz    lgreenstein@laklawyers.com, rfeldon@laklawyers.com
6
- Pamela Labruyere    pamela@sgsslaw.com
7
- Jennifer Leland    jleland@pwkllp.com
- John T Madden    jmadden@wgllp.com
8
- Harris M Madnick    hmmadnick@reederlugreen.com
9
- William Malcolm    bill@mclaw.org
- Elmer D Martin    elmermartin@msn.com
10
- Daniel J McCarthy    dmccarthy@hillfarrer.com
- David W. Meadows    david@davidwmeadowslaw.com
11
- Hal M Mersel    mark.mersel@bryancave.com
- Elissa Miller    emiller@sulmeyerlaw.com
12
- Ali M Mojdehi    ali.m.m.mojdehi@bakernet.com,
  andrew.mcdermott@bakernet.com;cindy.zhou@bakernet.com
13
- Susan I Montgomery    susan@simontgomerylaw.com
- Monserrat Morales    mmorales@pwkllp.com
14
- Randall P Mroczynski    randym@cookseylaw.com
15
- Vicente Matias Murrell    murrell.vicente@pbgc.gov
- R. Todd Neilson    tneilson@ecf.epiqsystems.com, vdoran@lecg.com;sgreenan@lecg.com
16
- David Norouzi    david@norouzi.us
- Scott H Noskin    snoskin@mirmanbubman.com
17
- William Novotny    william.novotny@mwmf.com
- Walter K Oetzell    woetzell@dgdk.com
18
- Sam S Oh    sam.oh@limruger.com,
19
  alisia.dunbar@limruger.com;julie.yu@limruger.com;amy.lee@limruger.com
- Jenny Y Park Garner    jpark@sheppardmullin.com
20
- Penelope Parmes    pparmes@rutan.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
21
- Leo D Plotkin    lplotkin@lsl-la.com, dsmall@lsl-la.com
22
- David M Poitras    dpoitras@jmbm.com
- Samuel Price    sprice@donahoeyoung.com
23
- Uzzi O Raanan    uor@dgdk.com
- Christopher S Reeder    creeder@reederlugreen.com
24
- Jeremy E Rosenthal    jrosenthal@sidley.com
25
- Gregory M Salvato    gsalvato@pmcos.com, calendar@pmcos.com
- Bruce S Schildkraut    bruce.schildkraut@usdoj.gov
26
- Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
- David B Shemano    dshemano@pwkllp.com
27
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
28
- Ryan J Stonerock    rstonerock@wcclaw.com, amillman@wcclaw.com
- Nico N Tabibi    nico@tabibilaw.com

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

6642374v1

42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Sam Tabibian    sam.tabibian@gmail.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- David A Tilem    davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com;ldiaz@tilemlaw.com;dianach
  au@tilemlaw.com
- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Howard J Weg    hweg@pwkllp.com
- Michael H Weiss    mw@weissandspees.com,
  lm@weissandspees.com;jb@weissandspees.com
- Kimberly S Winick    kwinick@clarktrev.com
- Rebecca J Winthrop    winthropr@ballardspahr.com
- Beth Ann R Young    bry@lnbrb.com
- Afshin Youssefyeh    ady@adylaw.com

## II. **SERVED BY U.S. MAIL**

Ronald Michelman
Michelman & Michelman, LLP
20265 Ventura Blvd., Suite D
Woodland Hills, CA 91364

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

6642374v1

**43**

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

    1900 Avenue of the Stars, Seventh Floor, Los Angeles, CA 90067-4308

The foregoing document described <u>EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION OF CHAPTER 11 TRUSTEE BRADLEY D. SHARP, CHAPTER 11 TRUSTEE FOR THE ESTATE OF NAMCO CAPITAL GROUP, INC. FOR ORDER APPROVING PROCEDURES IN CONNECTION WITH PROPOSED SALE OF PROPERTY OF THE ESTATE; DECLARATION OF DAVID M. POITRAS</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On <u>December 16, 2009</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**  (indicate method for each person or entity served):
On <u>December 16, 2009</u>, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**[Served By Overnight Mail]**
Honorable Barry Russell
United States Bankruptcy Court
255 E. Temple St., Suite 1660
Los Angeles, CA 90012

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 16, 2009 | Claudean Brandon | *signature* |
|---|---|---|
| Date | Type Name | |

PRINTED ON
RECYCLED PAPER

6653786v1

# ADDITIONAL SERVICE INFORMATION

## I. **TO BE SERVED BY NEF**

- Simon Aron    saron@wrslawyers.com
- Raymond H Aver    ray@averlaw.com
- Robert D Bass    rbass@greenbass.com
- Christine E Baur    christine.e.baur@bakernet.com,
  tracey.l.angelopoulos@bakernet.com;anne.w.hamann@bakernet.com;ali.m.m.mojdehi@bakernet.com;jane.b.mackie@bakernet.com
- Michael Jay Berger    michael.berger@bankruptcypower.com,
  michael.berger@bankruptcypower.com
- Stephen F Biegenzahn    efile@sfblaw.com
- J Scott Bovitz    bovitz@bovitz-spitzer.com
- Gillian N Brown    gbrown@pszjlaw.com, gbrown@pszjlaw.com
- Shirley Cho    scho@pszjlaw.com
- Russell Clementson    russell.clementson@usdoj.gov
- Alicia Clough    alicia.clough@kayescholer.com
- Yona Conzevoy    yconzevoy@dwclaw.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com,
  calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Melissa Davis    mdavis@shbllp.com
- Daniel Denny    ddenny@gibsondunn.com
- Richard K Diamond    rdiamond@dgdk.com
- Richard K Diamond    jlv@dgdk.com, rdiamond@ecf.epiqsystems.com
- Caroline Djang    crd@jmbm.com
- Joseph A Eisenberg    jae@jmbm.com
- Robert Esensten    resensten@wcclaw.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Alan W Forsley    awf@fredmanlieberman.com
- Heather Fowler    heather.fowler@lw.com, colleen.rico@lw.com
- Jon H Freis    jon@jhflaw.net
- Sandford Frey    Sfrey@cmkllp.com
- Vanessa B Fung    vfung@sobini.com
- Philip A Gasteier    pgasteier@rdwlawcorp.com
- Thomas M Geher    tmg@jmbm.com
- Barry S Glaser    bglaser@swjlaw.com
- Steven Glaser    sglaser@wwllp.com
- Robert P Goe    kmurphy@goeforlaw.com,
  rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- Jeffrey I Golden    jgolden@wgllp.com
- David Gould    dgould@davidgouldlaw.com
- Steven T Gubner    sgubner@ebg-law.com, ecf@ebg-law.com
- M Jonathan Hayes    jhayes@polarisnet.net
- Michael J Heyman    michael.heyman@klgates.com
- Eric P Israel    eisrael@dgdk.com
- Seymone Javaherian    sj@javlaw.com

PRINTED ON
RECYCLED PAPER

6653786v1

- Ira Benjamin Katz    Ikatz@katzlaw.net
- Alexandra Kazhokin    akazhokin@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Stuart I Koenig    Skoenig@cmkllp.com
- Michael S Kogan    mkogan@ecjlaw.com
- John P Kreis    jkreis@attglobal.net
- Jeffrey A Krieger    jkrieger@ggfirm.com
- Duane Kumagai    dkumagai@rutterhobbs.com, calendar@rutterhobbs.com
- Steven N Kurtz    lgreenstein@laklawyers.com, rfeldon@laklawyers.com
- Pamela Labruyere    pamela@sgsslaw.com
- Jennifer Leland    jleland@pwkllp.com
- John T Madden    jmadden@wgllp.com
- Harris M Madnick    hmmadnick@reederlugreen.com
- William Malcolm    bill@mclaw.org
- Elmer D Martin    elmermartin@msn.com
- Daniel J McCarthy    dmccarthy@hillfarrer.com
- David W. Meadows    david@davidwmeadowslaw.com
- Hal M Mersel    mark.mersel@bryancave.com
- Elissa Miller    emiller@sulmeyerlaw.com
- Ali M Mojdehi    ali.m.m.mojdehi@bakernet.com, andrew.mcdermott@bakernet.com;cindy.zhou@bakernet.com
- Susan I Montgomery    susan@simontgomerylaw.com
- Monserrat Morales    mmorales@pwkllp.com
- Randall P Mroczynski    randym@cookseylaw.com
- Vicente Matias Murrell    murrell.vicente@pbgc.gov
- R. Todd Neilson    tneilson@ecf.epiqsystems.com, vdoran@lecg.com;sgreenan@lecg.com
- David Norouzi    david@norouzi.us
- Scott H Noskin    snoskin@mirmanbubman.com
- William Novotny    william.novotny@mwmf.com
- Walter K Oetzell    woetzell@dgdk.com
- Sam S Oh    sam.oh@limruger.com, alisia.dunbar@limruger.com;julie.yu@limruger.com;amy.lee@limruger.com
- Jenny Y Park Garner    jpark@sheppardmullin.com
- Penelope Parmes    pparmes@rutan.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
- Leo D Plotkin    lplotkin@lsl-la.com, dsmall@lsl-la.com
- David M Poitras    dpoitras@jmbm.com
- Samuel Price    sprice@donahoeyoung.com
- Uzzi O Raanan    uor@dgdk.com
- Christopher S Reeder    creeder@reederlugreen.com
- Jeremy E Rosenthal    jrosenthal@sidley.com
- Gregory M Salvato    gsalvato@pmcos.com, calendar@pmcos.com
- Bruce S Schildkraut    bruce.schildkraut@usdoj.gov
- Benjamin Seigel    bseigel@buchalter.com, IFS_filing@buchalter.com
- David B Shemano    dshemano@pwkllp.com
- Robyn B Sokol    ecf@ebg-law.com, rsokol@ebg-law.com
- Ryan J Stonerock    rstonerock@wcclaw.com, amillman@wcclaw.com
- Nico N Tabibi    nico@tabibilaw.com

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

6653786v1

- Sam Tabibian     sam.tabibian@gmail.com
- Derrick Talerico     dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- David A Tilem     davidtilem@tilemlaw.com,
  malissamurguia@tilemlaw.com;marcycarman@tilemlaw.com;ldiaz@tilemlaw.com;dianachau@tilemlaw.com
- Alan G Tippie     atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Howard J Weg     hweg@pwkllp.com
- Michael H Weiss     mw@weissandspees.com,
  lm@weissandspees.com;jb@weissandspees.com
- Kimberly S Winick     kwinick@clarktrev.com
- Rebecca J Winthrop     winthropr@ballardspahr.com
- Beth Ann R Young     bry@lnbrb.com
- Afshin Youssefyeh     ady@adylaw.com

## II. **SERVED BY U.S. MAIL**

Ronald Michelman
Michelman & Michelman, LLP
20265 Ventura Blvd., Suite D
Woodland Hills, CA 91364