William N. Lobel (State Bar No. 093202)
Mike D. Neue (State Bar No. 179303)
THE LOBEL FIRM, LLP
840 Newport Center Drive, Suite 750
Newport Beach, California 92660
Telephone: (949) 999-2860
Facsimile: (949) 999-2870

Stuart I. Koenig (State Bar No. 102764)
CREIM MACIAS KOENIG & FREY LLP
633 West Fifth Street, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 614-1944
Facsimile: (213) 614-1961

Attorneys for the Official Committee of
Unsecured Creditors for NAMCO CAPITAL GROUP, INC.

Leonard M. Shulman (State Bar No. 126349)
Melissa Davis (State Bar No. 245521)
SHULMAN, HODGES & BASTIAN, LLP
8105 Irvine Center Drive, Suite 600
Irvine, CA 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000

Attorneys for the Official Committee of
Unsecured Creditors for EZRI NAMVAR

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### [LOS ANGELES DIVISION]

| | |
|---|---|
| In re<br><br>NAMCO CAPITAL GROUP, INC., a California corporation,<br><br>    Debtor and Debtor in Possession. | **CASE NO.: 2:08-bk-32333-BR**<br><br>**Chapter 11 Case**<br><br>**DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR NAMCO CAPITAL GROUP, INC. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR EZRI NAMVAR**<br><br>**DATE:**<br>**TIME:**  [TO BE SET]<br>**PLACE:** |

# TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| ARTICLE I | INTRODUCTION | 1 |
| ARTICLE II | DEFINITIONS AND RULES OF CONSTRUCTION | 2 |
| 2.1 | Specific Definitions | 2 |
| 2.2 | Rules Of Interpretation | 14 |
| ARTICLE III | CONFIRMATION DEADLINES | 15 |
| 3.1 | The Purpose Of This Document | 15 |
| 3.2 | Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing | 17 |
| 3.3 | Disclaimer | 18 |
| ARTICLE IV | BACKGROUND FACTS | 19 |
| 4.1 | Introduction | 21 |
| 4.2 | Namco | 22 |
| 4.3 | The Namvar Related Entities | 25 |
| 4.4 | Namco's Assets | 28 |
| 4.5 | Namco's Liabilities | 29 |
| 4.6 | Events Leading To Chapter 11 Filing | 29 |
| 4.7 | Material Events During Namco and Namvar Chapter 11 Cases | 30 |
| 4.8 | Employment of Professionals | 43 |
| 4.8 | The Proposed Inter-estate Settlement Between The Estates | 44 |
| ARTICLE V | SUMMARY OF THE PLAN OF REORGANIZATION | 48 |
| 5.1 | Summary of the Plan | 44 |
| 5.2 | Unclassified Claims Under The Plan.  Manner of Classification of Claims. | 50 |
| 5.3 | Manner of Classification of Claims | 50 |
| 5.4 | Classification of Claims | 51 |
| 5.5 | Treatment of Classified Claims Under The Plan | 54 |
| ARTICLE VI | CONFIRMATION PROCEDURES | 54 |
| 6.1. | Introduction | 54 |
| 6.2. | Who May Vote or Object to Confirmation of the Plan | 54 |
| 6.3. | Who may Vote to Accept or Reject the Plan | 54 |
| 6.4. | What is an Allowed Claim or Interest for Voting Purposes | 54 |
| 6.5. | What is an Impaired Claim | 55 |
| 6.6. | Who is not Entitled to Vote | 55 |
| 6.7. | Votes Necessary to Confirm the Plan | 55 |
| 6.8. | Votes Necessary for a Class to Accept the Plan | 55 |
| 6.9. | Treatment of Non-accepting Classes | 55 |
| 6.10. | The Confirmation Hearing | 56 |
| 6.11. | Confirmation | 56 |
| 6.12. | Acceptance | 56 |
| 6.13. | Best Interest Test | 56 |
| 6.14. | Liquidation Analysis | 59 |
| 6.15. | Feasibility | |
| ARTICLE VII | IMPLEMENTATION OF THE PLAN AND | 61 |
| | EXECUTION OF ITS TERMS | 61 |
| 7.1. | Removal of Namco Trustee | 61 |
| 7.2. | Transfer of Assets | 62 |
| 7.3. | Corporate Governance. | 64 |
| 7.4. | Approval of Inter-estate Settlement | 65 |

| | | |
|---|---|---|
| 7.5. | Plan Distribution System | 65 |
| 7.6. | Special Litigation Master. | 67 |
| 7.7. | Claims Estimation Rights | 67 |
| 7.8. | Loans Between Reorganized Namco and NLTCo. | 68 |
| 7.9. | Books and Records. | 68 |
| 7.10. | Limitations on Liability. | 68 |
| 7.11. | Exemption from Certain Transfer Taxes. | 69 |
| 7.12. | Hardship Distributions. | 71 |
| 7.13. | Tax Consequence of Plan. | 75 |

ARTICLE VIII POST-CONFIRMATION OBJECTIONS; ESTIMATION OF CLAIMS   75

| | | |
|---|---|---|
| 8.1 | Objections To Claims | 75 |
| 8.2 | Claim Objection Deadline | 76 |
| 8.3 | Estimation of Disputed Claims | 76 |

ARTICLE IX   EXECUTORY CONTRACTS AND UNEXPIRED LEASES   76

| | | |
|---|---|---|
| 9.1 | Executory Contracts and Unexpired Leases to be Assumed | 76 |
| 9.2 | Cure Amounts | 77 |
| 9.3 | Rejection of All Other Executory Contracts | 77 |
| 9.4 | No Effect on Insurance | 77 |

ARTICLE X   CONDITIONS TO CONSUMMATION OF THE PLAN   77

| | | |
|---|---|---|
| 10.1 | Conditions To Consummation | 78 |
| 10.2 | Waiver of Conditions | 78 |

ARTICLE XI   EFFECT OF CONFIRMATION OF THE PLAN   78

| | | |
|---|---|---|
| 11.1 | Jurisdiction of Bankruptcy Court | 78 |
| 11.2 | Binding Effect | 78 |
| 11.3 | Exculpation | 78 |

ARTICLE XII JURISDICTION   80

| | | |
|---|---|---|
| 12.1 | Retention of Jurisdiction | 80 |
| 12.2 | Failure of the Bankruptcy Court to Exercise Jurisdiction | 80 |

ARTICLE XIII MODIFICATION; MISCELLANEOUS   81

| | | |
|---|---|---|
| 13.1 | Binding Effect of Plan | 81 |
| 13.2 | Withdrawal of this Plan | 81 |
| 13.3 | Plan Modification | 81 |
| 13.4 | Inconsistency | 81 |
| 13.5 | Headings Do Not Control | 81 |
| 13.6 | No Transfer Taxes | 81 |
| 13.7 | Taking Action | 82 |
| 13.8 | Limitation of Liability | 82 |
| 13.9 | United States Trustee's Fees | 82 |
| 13.10 | Governing Law | 82 |
| 13.11 | Notice | 82 |
| 13.12 | Filing of Additional Documents. | 83 |
| 13.13 | No Attorneys' Fees | 83 |
| 13.14 | Successors and Assigns | 83 |
| 13.15 | Preservation of Rights of Setoff | 83 |
| 13.16 | Defenses with Respect to Claims | 84 |
| 13.17 | No Injunctive Relief | 84 |
| 13.18 | No Admissions | |

# DISCLOSURE STATEMENT TO

## ACCOMPANY PLAN OF REORGANIZATION

The Official Committee of Unsecured Creditors (the "Namco Committee") for Namco Capital Group, Inc., the debtor in this Chapter 11 case ("Namco"), and the Official Committee of Unsecured Creditors (the "Namvar Committee") for Ezri Namvar, the debtor in a related Chapter 11 case ("Namvar") (together the "Committees" or "Plan Proponents") hereby provide all creditors and parties-in-interest the within Disclosure Statement in support of the Committees' Plan of Reorganization (the "Plan") pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## INTRODUCTION

On January 29, 2009 the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") entered an order granting an involuntary Chapter 11 petition filed against Namco on December 22, 2008. On May 8, 2009, the Bankruptcy Court entered an order approving the appointment of Bradley D. Sharp as the Chapter 11 trustee in the Namco's case and on February 13, 2009, the Office of the U.S. Trustee appointed the Namco Committee to represent the interests of the holders of unsecured claims in Namco Case, pursuant to 11 U.S.C. § 1102(a)(1).

Namco is wholly owned by Ezri Namvar ("Ezri" or "Namvar"). On January 29, 2009, the Bankruptcy Court entered an order granting an involuntary Chapter 11 petition filed against Namvar on December 22, 2008. R. Todd Nielson was appointed as the chapter 11 trustee in the Namvar Bankruptcy case pursuant to an order entered on March 11, 2009. The Office of the U.S. Trustee has appointed the Namvar Committee to represent the interests of the holders of unsecured claims in the Namvar Case, pursuant to 11 U.S.C. § 1102(a)(1) of the Bankruptcy Code.

The Committees are the proponents of the Plan filed concurrently herewith. **THE DOCUMENT THAT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ACCOMPANYING PLAN.**

The Committees believe that the Plan offers Creditors the ability to obtain the most favorable recovery possible on their claims, under the circumstances, and that acceptance of the

1    Plan is in the best interests of all Creditors and parties-in-interest, and that any other alternative

2    would result in unnecessary delay, uncertainty, and expense to the Namco Estate.  The Plan

3    Proponents, therefore, recommend that all eligible creditors entitled to vote on the Plan cast their

4    ballots to accept the Plan.

5          NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE DISCLOSURE

6    STATEMENT OR PLAN, NO DISTRIBUTION WILL BE MADE AND NO RIGHTS WILL BE

7    RETAINED ON ACCOUNT OF ANY CLAIM OR INTEREST THAT IS NOT AN ALLOWED

8    CLAIM OR INTEREST.

9                              **ARTICLE II**

10                **DEFINITIONS AND RULES OF CONSTRUCTION**

11          2.1    **Specific Definitions.** The definitions provided in this Section shall apply to both the

12   Plan and this Disclosure Statement:

13          2.1.1   "**Accounts Receivable**" means Recovery Rights based upon loans made by

14   Namco to third parties prior to the Petition Date.

15          2.1.2   "**Administrative Claim**" means any right to payment constituting a cost or

16   expense of administration of the Case of a kind specified under section 503(b) of the Bankruptcy

17   Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code,

18   including, without limitation, any actual and necessary costs and expenses of preserving the

19   Debtor's estate, any actual and necessary costs and expenses of operating the Debtor's business,

20   any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct

21   of their business, including, without limitation, for the acquisition or lease of property or an interest

22   in property or the rendition of services, all compensation and reimbursement of expenses to the

23   extent awarded by the Bankruptcy Court under sections 330, 331 or 503 of the Bankruptcy Code,

24   any fees or charges assessed against the Debtor' estate under section 1930 of chapter 123 of title 28

25   of the United States Code and any Claim for goods delivered to the Debtor' within twenty (20)

26   days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the

27   Bankruptcy Code.

28

1          2.1.3   "**Allowed Administrative Claim**" means all or that portion of an

2    Administrative Claim which is an Allowed Claim.

3          2.1.4   "**Allowed Priority Claim**" means all or that portion of a Priority Claim

4    which is an Allowed Claim.

5          2.1.5   "**Allowed Priority Tax Claim**" means all or that portion of a Priority Tax

6    Claim which is an Allowed Claim.

7          2.1.6   "**Allowed Secured Claim**" means all or that portion of a Secured Claim

8    which is an Allowed Claim.

9          2.1.7   "**Allowed Unsecured Claim**" means all or that portion of an Unsecured

10   Claim which is an Allowed Claim.

11         2.1.8   "**Allowed**" means, with reference to any Claim, (a) any Claim against the

12   Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by

13   the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount

14   and not disputed or contingent, and with respect to which no contrary proof of claim has been filed,

15   (b) any Claim specifically allowed under the Plan, (c) any Claim that is not a Disputed Claim by

16   the Claims Objection Deadline or (d) any Claim, the amount or existence of which, if it is a

17   Disputed Claim, (i) has been determined by a Final Order of a court of competent jurisdiction other

18   than the Bankruptcy Court, or (ii) has been allowed by Final Order of the Bankruptcy Court;

19   provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the

20   Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims"

21   hereunder.

22         2.1.9   "**Assumed Contract List**" means the list included in the Plan Supplement

23   listing the executory contracts and unexpired leases to be assumed by Reorganized Namco.

24         2.1.10  "**Ballot**" means each of the ballot forms distributed with the Disclosure

25   Statement to each holder of an impaired Claim (other than to holders not entitled to vote on the

26   Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

27         2.1.11  "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§

28   101 et seq., as in effect on the date hereof.

1    2.1.12 **"Bankruptcy Court"** means the United States Bankruptcy Court for the

2    Central District of California, Santa Ana Division.

3    2.1.13 **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as

4    promulgated by the United States Supreme Court under section 2075 of title 28 of the United States

5    Code, and local rules of the Bankruptcy Court, as the context may require.

6    2.1.14 **"Bankruptcy Trustees"** means Bradley Sharp as the trustee of the Namco

7    Estate and R. Todd Neilson as the Trustee of the Namvar Estate.

8    2.1.15 **"Beshmada"** means Beshmada LLC, a California limited liability company.

9    2.1.16 **"Beshmada Case"** means the Chapter 11 case of Beshmada that is currently

10   pending before the Bankruptcy Court.

11   2.1.17 **"Beshmada Estate"** means the Chapter 11 estate of Beshmada.

12   2.1.18 **"Beshmada of Delaware"** means Beshmada of Delaware, LLC, a Delaware

13   limited liability company.

14   2.1.19 **"Beshmada of Delaware Case"** means the Chapter 11 case of Beshmada of

15   Delaware that is pending before the Bankruptcy Court.

16   2.1.20 **"Beshmada of Delaware Estate"** means the Chapter 11 estate of Beshmada

17   of Delaware.

18   2.1.21 **"Business Day"** means any day other than a Saturday, a Sunday or a "legal

19   holiday" (as defined in Bankruptcy Rule 9006(a)).

20   2.1.22 **"Cash"** means lawful currency of the United States and equivalents thereof,

21   including, but not limited to: bank deposits, wire transfers, checks, and other similar items.

22   2.1.23 **"Claim"** or **"Claims"** as defined in the Bankruptcy Code, section 101(5)(A)

23   and (B), means (a) any right to payment, whether or not such right is reduced to judgment,

24   liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

25   equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance

26   if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is

27   reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or

28   unsecured.

1       2.1.24 "**Claim Deadline**" means November 13, 2009, with respect to all Claims.

2       2.1.25 "**Claim Objection Deadline**" means (a) 240 days after the Effective Date,

3  unless extended by an order of the Bankruptcy Court, or (b) 30 days after the deadline for filing a

4  request for the payment of an Administrative Claim established in Article III.C of the Plan.

5       2.1.26 "**Class**" means a group of Claims or Interests classified together in a class

6  designated in Article IV of the Plan.

7       2.1.27 "**Committees**" means the Namco Committee and the Namvar Committee,

8  the Plan Proponents.

9       2.1.28 "**Confirmation Date**" means the date of entry of the Confirmation Order.

10       2.1.29 "**Confirmation Hearing**" means the hearing to consider confirmation of the

11  Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from

12  time to time.

13       2.1.30 "**Confirmation Order**" means the order of the Bankruptcy Court confirming

14  the Plan pursuant to section 1129 of the Bankruptcy Code.

15       2.1.31 "**Creditor**" means any holder of a Claim, as defined by the Bankruptcy

16  Code, section 101(10).

17       2.1.32 "**Debtor**" means Namco Capital Group, Inc., the Chapter 11 debtor.

18       2.1.33 "**Dimes**" means Dimes LLC, a California limited liability company.

19       2.1.34 "**Dimes Case**" means the Chapter 11 case of Dimes, LLC that is pending

20  before the Bankruptcy Court.

21       2.1.35 "**Dimes Estate**" means the Chapter 11 estate of Dimes, LLC.

22       2.1.36 "**Disclosure Statement**" means the "Disclosure Statement To Accompany

23  Plan Of Reorganization Filed By The Official Committee Of Unsecured Creditors For Namco

24  Capital Group, Inc. And Official Committee Of Unsecured Creditors for Ezri Namvar" (and all

25  exhibits and attachments thereto or referenced therein) that relates to the Plan, as such Disclosure

26  Statement may be amended, modified or supplemented.

27       2.1.37 "**Disputed Claim**" means, with reference to any Claim, (a) any Claim, (i)

28  proof of which was not timely or properly filed by the Claim Deadline and that has been or

hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) that is not listed in the Schedules; or (b) any Claim as to which the Debtor or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim.

2.1.38 **"Distributable Funds"** means all Cash from the Namco Allocation received in the prior quarter, less payments made to, or reserves set aside for the following: (i) Allowed Administrative Claims; (ii) Allowed Priority Tax Claims; (iii) Allowed Postpetition Tax Claims; (iv) Allowed Class 1, 2 and 3 Claims (to the extent any such Claims are to be satisfied with Cash rather than a return of the Collateral securing such Claims); (v) Allowed Class 4 Claims; (vi) disputed claims; and (vii) all expenses.

2.1.39 **"Effective Date"** means the first Business Day that is at least sixty (60) days after the Confirmation Date, or such earlier or later date as the Plan Proponents select, but in no event shall such date be later than one year after the Effective Date.

2.1.40 **"Entity"** means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereof.

2.1.41 **"Estate"** means the estate created by section 541(a) of the Bankruptcy Code upon the Petition Date.

2.1.42 **"Excluded Assets"** means any assets of the Namvar Estate that are not transferred to NLTCo on the Effective Date.

2.1.43 **"Final Claim Order"** means a Final Order regarding an objection to and/or allowance of a Claim.

2.1.44 **"Final Confirmation Order"** means a Final Order confirming the Plan.

2.1.45 **"Final Order"** means an order or judgment of the Bankruptcy Court other than a Confirmation Order, the operation or effect of which has not been stayed, which has become Final.

2.1.46 **"Final"** means: the later of (i) the date of final affirmance on an appeal of a judgment or order, the expiration of the time for a petition for or a denial of a writ of certiorari to review a judgment or order and, if certiorari is granted, the date of final affirmance of a judgment or order following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from a judgment or order or the final dismissal of any proceeding on certiorari to review a judgment or order; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from a judgment or order.

2.1.47 **"General Unsecured Claims"** means those Claims included in Class 5 of the Plan.

2.1.48 **"Governmental Unit"** has the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

2.1.49 **"Insider"** as defined in section 101(31) of the Bankruptcy Code, means (a) a relative of the Debtor or of a general partner of the Debtor; (b) a partnership in which the Debtor is a general partner; (c) a general partner of the Debtor; or (d) a corporation of which the Debtor is a director, officer, or person in control.

2.1.50 **"Interest Holder"** means the Ezri Namvar, or the Namvar Estate, as the holder of the all of the common stock of Namco.

2.1.51 **"Inter-estate Settlement"** means the settlement reached by and between the Namco Committee and the Namvar Committee regarding the allocation of funds obtained from the property of the Estates among the creditors of the Estates.

2.1.52 **"Namco"** means Namco Capital Group, Inc., a California corporation and the Debtor in this Chapter 11 case.

2.1.53 **"Namco Allocation"** means eighty-five percent (85%) of the Net Collections recovered by Reorganized Namco and eighty-five percent (85%) of the Net Collections recovered by NLTCo.

1    2.1.54 "**Namco Case**" means the Chapter 11 case of Namco pending before the

2  United States Bankruptcy Court for the Central District of California.

3    2.1.55 "**Namco Committee**" means the official committee for unsecured creditors

4  appointed to serve in the Namco Case, whose members are Abraham B. Assil, as Trustee of the

5  Abraham B. Assil Trust, Benjamin B. Efraim, as Trustee of the Far-Hadian Family Trust, and

6  Heide Kurtz, Chapter 7 Trustee for Namco Financial Exchange Corporation.

7    2.1.56 "**Namco Distribution Account**" means the account into which all

8  Distributable Funds will be deposited and disbursed.

9    2.1.57 "**Namco Equity Interests**" means the equity interests that Namco held in the

10  Namco Related Entities as of the Petition Date.

11    2.1.58 "**Namco Estate**" means the Chapter 11 estate of Namco.

12    2.1.59 "**Namco Plan**" means the Plan of Reorganization filed by the Committees in

13  the Namco Case.

14    2.1.60 "**Namco Trustee**" means Bradley D. Sharp, the duly appointed and acting

15  Chapter 11 Trustee in the Namco Case.

16    2.1.61 "**Namvar**" means Ezri Namvar, the debtor in the Namvar Case.

17    2.1.62 "**Namvar Allocation**" means fifteen percent (15%) of the Net Collections

18  recovered by NLTCo and fifteen percent (15%) of the Net Collections recovered by Reorganized

19  Namco.

20    2.1.63 "**Namvar Case**" means the Chapter 11 case of Namvar pending in the

21  United States Bankruptcy Court for the Central District of California.

22    2.1.64 "**Namvar Committee**" means the official committee for unsecured creditors

23  appointed in the Namvar Case, whose members are Mansoor Alyeshmerni, Marc Asheghian, Elliot

24  Sharaby, Hersei Babajoni and Cathay Bank.

25    2.1.65 "**Namvar Debtor Entities**" means the Namvar Related Entities who are

26  operating under the protection of Chapter 11, including Namco Capital Group, Inc., Dimes, LLC,

27  Namvar, Beshmada, LLC, Beshmada of Delaware, LLC, Namco Financial Exchange, St. Patrick's

28

1  Day Lease, LLC, Wall Street Mart, L.P., Bundy Dimes, LLC, Bunwil Capital, LLC, Mission Real

2  Associates, LLC, Playa Properties, LLC, Rancho Malibu, LLC and Namwest, LLC.

3        2.1.66 "**Namvar Equity Interests**" means the equity interests that Namvar held in

4  the Namvar Related Entities as of the Petition Date.

5        2.1.67 "**Namvar Estate**" means the Chapter 11 estate of Namvar.

6        2.1.68 "**Namvar Related Entities**" means the business entities listed in Exhibit "3"

7  to the Disclosure Statement and any other unknown entities in which Namvar owns and interest or

8  controlled as of the Petition Date,

9        2.1.69 "**Namvar Plan**" means the Plan of Reorganization filed by the Committees

10  in the Namvar Case.

11        2.1.70 "**Namvar Trustee**" means R. Todd Neilson, the duly appointed and acting

12  Chapter 11 Trustee in the Namvar Case.

13        2.1.71 "**Net Collections**" means all Cash held or received by the Estates from the

14  management, recovery, sale or other liquidation of any property of the Estates, less all reasonable

15  costs incurred in collecting, managing, recovering, selling or otherwise disposing such property,

16  including applicable taxes.

17        2.1.72 "**New Board**" means the board of directors of Reorganized Namco after the

18  Effective Date, whose initial members shall be Marc Asheghian, Abraham B. Assil and Benjamin

19  B. Efraim.

20        2.1.73 "**NLTCo**" means the liquidating trust created pursuant to Plan filed by the

21  Committees in the Namvar Case. NLTCo will receive all NLTCo Property (all assets of the

22  Namvar Estate other than Excluded Assets), liquidate these assets over the Plan Period set forth in

23  the Namvar Plan, transfer the Namco Allocation to Reorganized Namco, and make distributions to

24  persons entitled thereto from the Namco Allocation in accordance with the terms of the Namvar

25  Plan and the NLTCo Agreement.

26        2.1.74 "**NLTCo Agreement**" means the liquidating trust agreement governing the

27  affairs of NLTCo, which will be in substantially the form contained in the Plan Supplement.

28

2.1.75 **"NLTCo Beneficiaries"** means (i) the holders of NLTCo Beneficial Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from NTLCo Property in accordance with the terms of the Plan.

2.1.76 **"NLTCo Beneficial Interests"** means, collectively, the interests of the holders of Allowed Unsecured Claims in the NLTCo and in all distributions to be made by the NLTCo on account of Allowed Unsecured Claims. The NLTCo Beneficial Interests (a) shall be noted in the books and records of NLTCo, (b) shall not be evidenced by a writing, and (c) may not be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

2.1.77 **"NLTCo Distribution Account"** means the account into which all Distributable Funds, as that term is defined in the Namvar Plan, shall be deposited and disbursed.

2.1.78 **"NLTCo Property"** means all property of the Namvar Estate other than Excluded Assets.

2.1.79 **"NLTCo Expenses"** means all costs, expenses and obligations incurred by NLTCo, the NLTCo Trustee and NLTCo's Professionals in administering the Trust or in any manner incidental or related thereto.

2.1.80 **"NLTCo Trustee"** means the liquidating trustee(s) of NLTCo, or any successor trustee designated or selected in accordance with the terms of the Plan and the NLTCo Agreement. Reorganized Namco shall be the NLTCo Trustee.

2.1.81 **"Person"** means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, or any other entity.

2.1.82 **"Petition Date"** means December 22, 2008, the date on which an involuntary bankruptcy petition was filed against the Debtor.

2.1.83 **"Plan Proponents"** means the Committees.

2.1.84 **"Plan"** means the "Plan of Reorganization" filed by the Committees in the Namco Case to which the Disclosure Statement refers (including all exhibits and attachments, each of which is hereby incorporated and made part of the Plan), as modified or amended from time to time in accordance with section 1127 of the Bankruptcy Code.

2.1.85 **"Plan Documents"** means, collectively, the Voting Trust Agreement and the other documents attached to the Plan Supplement.

2.1.86 **"Plan Period"** means the period from the Effective Date to the Plan Termination Date.

2.1.87 **"Plan Supplement"** means the compilation of the Plan Documents to be filed with the Bankruptcy Court.

2.1.88 **"Plan Termination Date"** means the seventh (7th) anniversary date of the Effective Date, unless Reorganized Namco elects to extend this date for up to an additional five (5) years, or such earlier date as may be fixed by Reorganized Namco.

2.1.89 **"Prime Rate"** means the prime rate of interest quoted in the Wall Street Journal.

2.1.90 **"Priority Tax Claim"** means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

2.1.91 **"Pro Rata"** means proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.

2.1.92 **"Professionals"** means those Entities (a) employed in the Case under sections 327 or 1103 of the Bankruptcy Code, and (b) entitled, under sections 330, 503(b), 506(b), 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting or other professional services and the costs and expenses related to such services from the Debtor or the Estate.

2.1.93 **"Recovery Rights"** means any and all manner of causes of action, claims, obligations, suits, debts, judgments and demands whatsoever, whether in law or in equity, including, but not limited to, actions to subordinate Claims under Section 510 of the Bankruptcy Code and to avoidance power actions set forth in Sections 544 through 550, inclusive, of the Bankruptcy Code.

1   2.1.94 **"Rejected Contract List"** means the list attached to the Plan Supplement

2 listing the executory contracts and unexpired leases being rejected under the Plan, as amended up

3 to the Effective Date.

4   2.1.95 **"Rejection Damages Deadline"** means the later of the Claim Deadline, or

5 thirty (30) days after the entry of an order approving the rejection of an executory contract or

6 unexpired lease.

7   2.1.96 **"Reorganized Namco"** means the Namco on and after the Effective Date.

8   2.1.97 **"Schedules"** means the schedules of assets and liabilities, statements of

9 financial affairs, and lists of holders of Claims and Equity Interests filed with the Bankruptcy Court

10 by the Debtor, including any amendments or supplements thereto.

11   2.1.98 **"Secured Claim"** means a Claim secured by a lien on any property of any

12 of the Estate, but only to the extent of the value of the interest of the holder of such Allowed Claim

13 in the interest of the Estate in such property, the calculation of which shall not include any demand

14 for default interest, penalty interest or other similar demands.

15   2.1.99 **"Starpoint Parties"** means Starpoint Properties, LLC, a limited liability

16 company organized under the laws of the State of California; Blackhawk Properties, LLC, a limited

17 liability company, organized under the laws of the State of Delaware; Mill Avenue Properties,

18 LLC, a limited liability company organized under the laws of the State of Delaware; Mill Avenue

19 Properties II, LLC, a limited liability company organized under the laws of the State of Delaware;

20 Mill Avenue Properties III, LLC, a limited liability company organized under the laws of the State

21 of Delaware; Mill Avenue Properties IV, LLC, a limited liability company organized under the

22 laws of the State of Delaware; 450 Roxbury Properties, LLC, a limited liability company organized

23 under the laws of the State of Delaware; 450 Roxbury Properties II, LLC, a limited liability

24 company organized under the laws of the State of Delaware; 450 Roxbury Properties III, LLC, a

25 limited liability company organized under the laws of the State of Delaware; Defendant 450

26 Roxbury Properties IV, LLC, a limited liability company organized under the laws of the State of

27 Delaware; 450 Roxbury Properties V, LLC,, a limited liability company organized under the laws

28 of the State of Delaware; 450 Roxbury Properties VI, LLC, a limited liability company organized

1    under the laws of the State of Delaware; Colfax Properties, LLC, a limited liability company

2    organized under the laws of the State of California; Foothill Ridge Properties, LLC, a limited

3    liability company organized under the laws of the State of California; Virgil Avenue Properties,

4    LLC, a limited liability company organized under the laws of the State of California; and Jennifer

5    Greenhut, an individual residing in the State of California.

6         2.1.100  **"Unclaimed Property"** means any funds or other Property to be

7    distributed to Creditors pursuant to the Plan, which, after an attempted distribution, has not been

8    received by the rightful Creditor.  Unclaimed property shall include checks and any other property

9    that have been returned as undeliverable without a proper forwarding address, or which were not

10   mailed or delivered because of the absence of a proper address to which to mail or deliver such

11   property.  Such Unclaimed Property that remains unclaimed at the end of one (1) year following the

12   date of an attempted distribution shall be reallocated and paid to other holders of Allowed Claims

13   in accordance with the Plan.  After the expiration of one (1) year following the date of an attempted

14   distribution, each Claim with respect to Unclaimed Property shall be treated as if it had been

15   disallowed in its entirety.

16        2.1.101  **"United States Trustee"** means the United States Trustee for the Central

17   District of California.

18        2.1.102  **"Unsecured Claim"** means any Claim against the Debtor that is not an

19   Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

20        2.1.103  **"Voting Deadline"** means [Date To Be Established By The Bankruptcy

21   Court], or such other deadline established by the Bankruptcy Court for parties in interest entitled to

22   vote to submit their ballots accepting or rejecting the Plan.

23        2.1.104  **"Voting Trust"** means the Voting Trust formed pursuant to the Voting

24   Trust Agreement that will have the right to vote all Namco Stock during the Plan Period.

25        2.1.105  **"Voting Trust Agreement"** means the Voting Trust Agreement attached

26   to the Plan Supplement that will control the right to vote the Namco Stock during the Plan Period

27   and that will provide for the election of the Voting Trust Trustees.

28

1   2.1.106 "**Voting Trust Trustees**" means, during the Plan Period, the individuals

2   selected by the Committees to serve in this position. The initial Voting Trust Trustees will be Marc

3   Asheghian, Abraham B. Assil and Benjamin B. Efraim. If any Voting Trust Trustee resigns, or is

4   otherwise unable to serve in this capacity, the Committees will elect a replacement Voting Trust

5   Trustee by a majority vote.

6   2.1.107  "**Wilshire Bundy Proceeds**" means the sales proceeds generated from the

7   sale of the Wilshire Bundy Property, after the payment of closing costs, commissions and allowed

8   secured claims against this property, which is comprised of the $27,127,000 held in a joint account

9   by the Trustees and the sum of $14,796,000 held by the taxing authorities.

10   2.1.108  "**Wilshire Bundy Property**" means all interests in that certain property

11   commonly known as 12121 Wilshire Boulevard, Los Angeles, California.

12   2.1.109  "**Woodman**" means Woodman Partners, LLC.

13   2.2   **Rules of Interpretation**. The following rules of interpretation and construction shall

14   apply to both the Plan and the accompanying Disclosure Statement.

15   2.2.1   Any term used in the Plan that is not defined herein, whether in this Article

16   or elsewhere, or other exhibits hereto, but that is used in the Bankruptcy Code or the Bankruptcy

17   Rules has the meaning ascribed to that term in (and shall be construed in accordance with the rules

18   of construction under) the Bankruptcy Code or the Bankruptcy Rules.

19   2.2.2   Any capitalized term used in the Plan that is not defined herein, or other

20   exhibits hereto, but that is defined and used in the Disclosure Statement has the meaning ascribed

21   to that term in the Disclosure Statement.

22   2.2.3   The words "herein," "hereof," "hereto," "hereunder" and others of similar

23   import refer to the Plan as a whole and not to any particular article, section, subsection or clause

24   contained in the Plan.

25   2.2.4   Unless specified otherwise in a particular reference, a reference to an article

26   or a section is a reference to that article or section of the Plan.

27

28

2.2.5    Any reference in the Plan to a document being in a particular form or on particular terms and conditions means that the document shall be substantially in such form or substantially on such terms and conditions.

2.2.6    Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

2.2.7    Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

2.2.8    The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

2.2.9    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.2.10    All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be part of the Plan.

2.2.11    The provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Final Confirmation Order shall control over the contents of the Plan.

Unless otherwise specified in the Plan, whenever a distribution of property must be made, or an act required on a particular date, the distribution or act shall occur on such date, or as soon as practicable thereafter.

### ARTICLE III

### CONFIRMATION DEADLINES

3.1    **The Purpose of This Document**. This Disclosure Statement describes the Plan filed by the Plan Proponents and it provides certain information relating the process that the Bankruptcy Court will follow in determining whether or not to confirm the Plan.

The Plan sets forth the manner in which the Claims against and Interests in the Debtor will be treated after the Effective Date. This Disclosure Statement also describes certain aspects of the Plan, the Debtor's past operations, including, and other related matters.

1    Chapter 11 allows a debtor, and under some circumstances, creditors and others parties-in-
2    interest, such as the Committees, to propose a plan of reorganization.  The plan may provide for the
3    debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a
4    combination of both.

5    The Plan that the Committees are proposing is being sent to you in the same envelope as
6    this document. Pursuant to the terms of the Plan, all assets that remain in the Namco Estate as of
7    the Effective Date, unless otherwise stated, will vest in the Reorganized Namco on this date.
8    Thereafter, the Reorganized Namco will manage these assets, and, over time, liquidate these assets
9    in the manner that yields the best return to creditors. The distributions provided for in the Plan shall
10    be funded from various sources, including the proceeds generated from the sale of assets and from
11    recoveries obtained through the pursuit of Recovery Rights.

12    **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**
13    **KNOW AMONG OTHER THINGS:**

14    (1)    **WHO CAN VOTE OR OBJECT,**
15    (2)    **HOW YOUR CLAIM WILL BE TREATED (i.e., what your claim will receive**
16    **if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO**
17    **WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**
18    (3)    **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING**
19    **THE BANKRUPTCY CASE,**
20    (4)    **WHAT THINGS THE BANKRUPTCY COURT WILL LOOK AT TO**
21    **DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**
22    (5)    **WHAT IS THE EFFECT OF CONFIRMATION, AND**
23    (6)    **WHETHER THE PLAN IS FEASIBLE.**
24    **FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ**
25    **THIS DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS TO THESE**
26    **DOCUMENTS IN THEIR ENTIRETY.**

27

28

1  This Disclosure Statement cannot tell you everything about your rights. You should

2  consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you

3  and what is the best course of action for you.

4  Among other things, this Disclosure Statement sets forth the assumptions underlying the

5  Plan, describes the process that the Bankruptcy Court will follow when determining whether to

6  confirm the Plan, and describes how the Plan will be implemented if it is confirmed by the

7  Bankruptcy Court.

8  Be sure to read the Plan as well as this Disclosure Statement.  If there are any

9  inconsistencies between the Plan and the Disclosure Statement, the provisions of the Plan will

10  govern. The Code requires a Disclosure Statement to contain "adequate information" concerning

11  the Plan.  The Bankruptcy Court has approved this document as an adequate Disclosure Statement,

12  containing enough information to enable parties affected by the Plan to make an informed

13  judgment about the Plan. Any party can now solicit votes for or against the Plan.

14  THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED

15  IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN

16  ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY COURT

17  LATER CONFIRMS THE PLAN, AND THE EFFECTIVE DATE OCCURS, THEN THE PLAN

18  WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND OTHER PARTIES-

19  IN-INTEREST IN THIS CASE.

20  **3.2    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

21  **Time and Place of the Confirmation Hearing.**

22  3.2.1  Confirmation Hearing. The hearing where the Bankruptcy Court will

23  determine whether or not to confirm the Plan filed by the Debtor will take place on _____ __,

24  **2011 at __:__ __.m.**, in **Courtroom "1668"**, located at **255 Temple Street, Los Angeles,**

25  **California 90012** before the **Honorable Barry Russell**, United States Bankruptcy Judge.

26  3.2.2  Deadline For Voting For or Against the Plan. If you are entitled to vote, it is

27  in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed

28  envelope to:

The Lobel Firm LLP
Attn: Pamela Nelson
840 Newport Center Drive, Suite 750
Newport Beach, CA 92660

Your Ballot must be received by _____ __, **2011** or it will not be counted.

3.2.3   <u>Deadline For Objecting to the Confirmation of the Plan</u>. Objections to the confirmation of the Plan must be filed with the Bankruptcy Court and served upon no later than _____ __, **2011**.

3.2.4   <u>Identity of Person to Contact for More Information Regarding the Plan</u>. Any interested party desiring further information about the Plan should contact: Pamela Nelson at The Lobel Firm LLP, 840 Newport Center Drive, Suite 750, Newport Beach, CA 92660.

3.3   **Disclaimer.** The financial information that the Committees relied upon in formulating the Plan was obtained from the Debtor, the Debtor's books and records, and from the limited amount of information that was made available to the Committees by the Trustees. The financial projection(s) attached to the Disclosure Statement, which were prepared on based upon the foregoing data, are presented on a cash basis.

To the best of the Committees' knowledge, all of facts stated in the Disclosure Statement are true. However, all creditors reading this document should recognize that Namco's prior management is the subject of various civil and criminal investigations. Accordingly, some of the facts and assumptions stated herein could later be determined to be in error by these ongoing investigations. Notwithstanding this possibility, the Committees, which can only present the best information available at this point in time, believe that the Plan, as presently formulated, is both viable and in the best interests of creditors. **Accordingly, the Committees urge you to vote to accept the Plan.**

The Bankruptcy Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether you should support or oppose the Plan.

**The statements and information contained in the Plan and Disclosure Statement do not constitute financial or legal advice. You should therefore consult your own advisors if you have questions about the impact of the Plan on your Claims or Interests.**

1   The statements and information relating to the Debtor set forth in this document constitute

2   the only statements and information that the Bankruptcy Court has approved for the purpose of

3   soliciting votes to accept or reject the Plan.  Therefore, statements and information that are

4   inconsistent with anything contained in this Disclosure Statement are not authorized unless

5   otherwise ordered by the Bankruptcy Court.

6   **You may not rely on the Plan and Disclosure Statement for any purpose other than to**

7   **determine whether to vote to accept or reject the Plan.  Nothing contained in the Plan or**

8   **Disclosure Statement constitutes an admission of any fact or liability by any party or may be**

9   **deemed to constitute evidence of the tax or other legal effects that the reorganization set forth**

10  **in the Plan may have on entities holding Claims or Interests.**

11  Unless another time is expressly specified in this Disclosure Statement, all statements

12  contained in this document are made as of  March 15, 2011.  Under no circumstances will the

13  delivery of this Disclosure Statement or the exchange of any rights made in connection with the

14  Plan create an implication or representation that there has been no subsequent change in

15  information included in this document.  The Committees assume no duty to update or supplement

16  any of the information contained in this document and in fact the Committees do not intend to

17  undertake any such update or supplement.

18  ### ARTICLE IV

19  ### BACKGROUND FACTS

20  4.1  **Introduction**. The Debtor in this case, Namco, is the central company in a network

21  of over four hundred entities that were formed, controlled, and in many instances owned, in whole

22  or in part, by Ezri Namvar (collectively the "Namvar Related Entities"). For more than twenty

23  years, Namco solicited loans from third parties (primarily individuals) and loaned these funds to

24  other third parties. During the last ten years, substantially all of Namco's loans were made to the

25  Namvar Related Entities. These funds were then used by the Namvar Related Entities to acquire,

26  directly or indirectly a myriad of residential and commercial real estate assets throughout the

27  United States.

28

Disclosure Statement    - 19 -

1    When Namvar's financial network collapsed in 2008, Namco owed over $650 million to

2 approximately two hundred and thirty creditor-lenders, Unfortunately many of the assets that were

3 acquired with Namco's funds were in the process of being foreclosed upon, or they were in

4 financial distress. A report prepared by the Trustees states that the face value of the assets that have

5 already been foreclosed upon is approximately $424 million and that another $130 million in real

6 property assets will be lost to foreclosure in the near future.

7    Although a confluence of factors brought about the downfall of Ezri Namvar's financial

8 empire, including the severe recession that began in 2008, the evidence suggests that this result was

9 inevitable. Namvar's businesses were built upon a foundation of greed, familial nepotism and

10 investment incompetence that all but assured a future collapse. As of this writing, substantially all

11 of the entities within Namvar's business empire are either in bankruptcy cases (under the control of

12 a trustee), or they are under the control of a third party.

13    The purpose of the Plan filed concurrently herewith is to vest control over Namco (the

14 "Reorganized Namco" after the Effective Date) in a new board of directors. The New Board will be

15 comprised of three Committee members who were selected to serve in this capacity by a vote *of*

16 *both Committees*. Reorganized Namco, under the direction and control over the New Board, will

17 take title to all of Namco's property, and manage, control and liquidate these assets in manner that

18 will yield the highest recovery for Creditors.

19    As more fully explained herein, in order to maximize the return of all creditors, coordinate

20 the recovery efforts of the Estates and to minimize costs, Reorganized Namco will serve as the

21 "trustee" of NLTCo, the liquidation trust that is being formed to take title to all of the assets of the

22 Namvar Estate upon the Effective Date of the Namvar Plan. The Committees believe this unified

23 control structure will result in the highest yield to the creditors of both Estates.

24

25

26

27

28

4.2    **Namco.** Namco was formed in 1983. From the date of its formation through the Petition Date, Namvar was Namco's sole shareholder and he controlled its business affairs as its sole director and chief executive officer (holding the positions of President and Chief Financial Officer). Namvar's brothers and other family members also played various subsidiary roles in Namco's business affairs.

The evidence obtained by the Committees indicates that Namco was initially operated as a traditional "hard money lender." The company would borrow money from individuals (referred to herein individually as a "Namco-Lender")[1], at fixed rates of return, and then Namco would loan these funds to third party borrowers (hereinafter a "Borrower"), at higher rates. In most lending transactions, the funds advanced by the Namco-Lenders were not earmarked for a specific loan or investment. Instead, incoming funds were pooled and loaned or invested by Namco, as opportunities were presented, at Namvar's discretion.

In a typical transaction, the Namco-Lender would receive a written unsecured promissory note from Namco ("Note" or "Notes") in return for the funds advanced. However, in some cases Namco would secure, or attempt to secure, the Notes with one or more forms of collateral such as a percentage interest in a deed of trust recorded against one of the properties that Namco either owned or controlled. Namvar also personally guaranteed a number of the loans that Namco obtained from the Namco-Lenders.

Although Namco's lending business model appears to have been successful, at some point in the late 1990's Namvar began to fundamentally change this model. Instead of merely acting as a lender, Namco began to invest the funds obtained from the Namco-Lenders in real estate projects. When these initial investments were successful, Namco re-allocated substantially all of the growing pool of funds that he was receiving from the Namco-Lenders into real estate assets, by directing the Namvar Related Entities that received these funds to invest in real estate projects throughout the country, or to invest in lower tier entities that owned such assets. As this reallocation continued and

---

[1] A substantial part of Namco's funding was obtained from members of the Persian and Orthodox Jewish communities located in Los Angeles. Namvar appears to have obtained access to the resources of this community by exploiting the contacts and goodwill of his father, Eilel Namvar. The elder Namvar was apparently a well-respected money lender in Tehran who was forced to leave after the revolution that occurred in Iran in 1979.

1  the underlying investments continued to yield favorable returns, Namco solicited and obtained

2  larger sums for more and more Namco Lenders. For example, in 2001, loans from Namco-Lenders

3  totaled $60 million. In contrast, by 2008, this total had increased to $600 million.

4        By 2002, the profits generated from Namco's past investments and the ever growing inflow

5  of funds from existing and new Namco-Lenders left Namco with a vast pool of investible capital.

6  Instead of prudently investing these funds, Namco, under Namvar's leadership, engaged in a

7  buying frenzy, acquiring a huge portfolio of properties without engaging in adequate due diligence.

8  Accordingly, many of the assets that were ultimately acquired with the funds advanced by the

9  Namco-Lenders were overpriced, overleveraged and purchased at the top of the market. When real

10  estate values fell in the latter part of 2007, and in 2008, the devastating effect of Namvar's

11  irresponsible investment course were exposed.

12        Namvar's wrongs were not limited to the realm of investment strategy. Instead of investing

13  the ever growing flow of Namco-Lender dollars through entities that were owned by Namco,

14  Namvar formed hundreds of business entities and vested ownership of Namco-funded entities in

15  family members. Since there is no evidence that any of Namvar's family members contributed any

16  capital or services to these entities that would justify these ownership positions, the Namco

17  Committee believes that substantially all of these ownership interests are avoidable, or subject to

18  subordination. Moreover, the Namco Committee believes that many of the distributions made to the

19  holders of these ownerships interests, within the last four to seven years, may be recoverable as

20  fraudulent transfers or recoverable on some other legal theory.

21        As mentioned above, there are over four hundred Namvar Related Entities. Although the

22  Committees believe that Namco's funds were loaned to substantially all of the Namvar Related

23  Entities, directly or indirectly, this Disclosure Statement does not provide a comprehensive entity-

24  by-entity claim analysis. This analysis is still in process.

25        4.3      **The Namvar Related Entities**. Namvar formed and controlled over four hundred

26  limited liability companies and most of these companies received, directly or indirectly, funds

27  provided by the Namco-Lenders. A list of substantially all of Namvar Related Entities appears in

28  Exhibit "3" hereto.  In the following subparagraphs the Committee has described the material facts

1  relative to Beshmada, Dimes and Beshmada of Delaware, the three limited liability companies

2  through which the largest percentage of Namco funds appears to have flowed, and the three entities

3  that directly or indirectly holds interests in many of the assets within the Namvar financial empire.

4           4.3.1  **Beshmada, LLC**. Beshmada is a California limited liability company that

5  was formed in 1998. Namvar, who was the manager of Beshmada, controlled its business affairs

6  until November 22, 2009, when Louis A. Cicalese, LLC was appointed to serve as its manager,

7  pursuant to an order of the Bankruptcy Court.

8           Beshmada is owned by Namvar's children in the following percentages: Benjamin Namvar

9  – twenty five percent (25%); Malka Namvar - twenty five percent (25%); Daniel Namvar - twenty

10  five percent (25%); and Shirah Namvar - twenty five percent (25%). The Committees are informed

11  and believe that Namco, not Namvar's children, was the actual source of the capital contributed to

12  Beshmada at its formation, and that Beshmada then used Namco's funds to acquire its assets. If the

13  Committees are correct in this regard, then Namvar's children received their ownership interests in

14  Beshmada for no consideration, and as a consequence these ownership interests, and all distribution

15  made on account of the same, were at best wholly gratuitous and at worst fraudulent.

16           Beshmada owns interests in forty-seven (47) limited liability companies, three (3) limited

17  partnerships and stock in one publicly held corporation. Exhibit "4" hereto details the relationship

18  between the ownership interests held by Beshmada and the underlying real property assets.

19           On June 19, 2010, the Namco Trustee filed an involuntary petition against Beshmada

20  seeking an order forcing this entity into a Chapter 11 case. The Bankruptcy Court granted this

21  petition pursuant to an order for relief entered on July 1, 2010.

22           On November 22, 2009, Louis A. Cicalese, LLC was appointed to serve as the manager of

23  the Beshmada in the place and stead of Namvar pursuant to an agreement approved by the Trustees

24  and by the Bankruptcy Court. Mr. Cicalese, who is the principal of Louis A. Cicalese, LLC, is an

25  attorney and an experienced real estate professional.

26           4.3.2  **Dimes LLC**. Dimes is a California limited liability company that was

27  formed in 1998. Namvar, who was the manager of Dimes, controlled its business affairs until

28

1  November 22, 2009, when Louis A. Cicalese, LLC was appointed to serve as manager, pursuant to

2  an order of the Bankruptcy Court.

3       Namvar owns a fifty percent (50%) ownership interest in Dimes. The remaining ownership

4  interests in Dimes are split equally between his children, Daniel Namvar (16.67%), Malka Namvar

5  (16.67) and Shirah Namvar (16.67%). As with Beshmada, the Committees are informed and

6  believe that Namvar's children did not pay any consideration for their ownership interests in Dimes

7  and that Namco's funds were used to capitalize this entity and fund its acquisitions.

8       Dimes owns interests in seventeen (17) limited liability companies and (2) two limited

9  partnerships.  Exhibit "4" hereto details the relationship between the ownership interests held by

10  Dimes and the underlying real property assets.

11       On June 19, 2010, Bradley Sharp, the Trustee in the Namco case, filed an involuntary

12  petition against Dimes seeking an order forcing this entity into a Chapter 11 case. The Bankruptcy

13  Court granted this petition pursuant to an order for relief entered on July 1, 2010.

14       On November 22, 2009, Louis A. Cicalese, LLC was appointed to serve as the manager of

15  the Dimes in the place and stead of Namvar pursuant to an agreement approved by the Trustees and

16  by the Bankruptcy Court.

17       4.3.3    **Beshmada of Delaware**. Beshmada of Delaware is a Delaware limited

18  liability company that was formed in 2005. Namvar, who was the manager of Beshmada of

19  Delaware, controlled its business affairs until November 22, 2009, when Louis A. Cicalese, LLC

20  was appointed to serve as its manager, pursuant to an order of the Bankruptcy Court.

21       Beshmada of Delaware is owned by Namvar's children in the following percentages:

22  Benjamin Namvar – twenty five percent (25%); Malka Namvar - twenty five percent (25%); Daniel

23  Namvar - twenty five percent (25%); and Shirah Namvar - twenty five percent (25%). As with

24  Beshmada of California, the Committees are informed and believe that Namvar's children did not

25  pay any consideration for their ownership interests in Beshmada of Delaware: Namco's funds were

26  used to capitalize this entity.

27

28

1    Beshmada of Delaware owns interests in twelve (12) limited liability companies. Exhibit

2   "4" hereto details the relationship between the ownership interests held by Beshmada of Delaware

3   and the underlying real property assets.

4        4.3.4   **Other Namvar Related Entities**. As explained above, funds provided by

5   Namco flowed into hundreds of other Namvar Related Entities, either directly, or through one or

6   more entities. In order to recover the remaining assets that were acquired with these funds, Namco,

7   in cooperation with NLTCo, intends to file Chapter 11 plans in all of the bankruptcy cases filed by

8   the Namvar Debtor Entities. If these plans are confirmed, Namco will be installed as the managing

9   entity of each Namvar Related Entity. In this capacity, Namco will appoint a manager to operate

10  these entities who will be charged with  managing and liquidating, over time, the assets of these

11  entities and pay the claims of creditors from the resulting proceeds. The identity background and

12  compensation that will be paid to this manager will be set forth in the plans and disclosure

13  statements that the Committees file in the cases of the Namvar Debtor Entities.

14       In the cases of the other Namvar Related Entities that are not in bankruptcy cases, Namco

15  and NLTCo will actively pursue all Recovery Rights held by the Namco Estate and the Namvar

16  Estate against these entities.

17       4.4    **Namco's Assets**. Namco's assets can be placed in four basic categories: Cash;

18  ownership interests in real property; ownership interests in personal property, excluding Recovery

19  Rights; and Recovery Rights. Each category of assets is summarized in the following

20  subparagraphs. (See, Exhibit "1").

21       4.4.1   **Cash**. The Namvar Trustee and the Namco Trustees are jointly holding the

22  approximate sum of $27.1 million, in a restricted account. This cash is a part of the sales proceeds

23  derived from the sale of the office building commonly known as 12121 Wilshire Blvd., Los

24  Angeles, California (the "Wilshire Bundy Proceeds"). The balance of the Wilshire Bundy

25  Proceeds, in the approximate amount of $14.8 million, was reserved by the Internal Revenue

26  Service and the Franchise Tax Board, when the Namvar brothers, who claimed an interest in the

27  sales proceeds, refused to sign a form acknowledging their United States citizenship.

28

1    The relative rights in the above cash proceeds, as between the Namco Estate and the

2  Namvar Estate, will be resolved through the settlement reached by the Committees, which appears

3  in Section 4.8 hereof, if the Namco Plan and the Namvar Plan are confirmed by the Bankruptcy

4  Court. In sum, these proceeds will be divided between the estates – 85% to the Namco Estate and

5  15% of the Namvar Estate, after the payment of all Allowed Administrative Claims incurred by

6  the two estates. The claims being made by other parties to the funds, including members of

7  Namvar's family, will either be resolved by litigation or through settlement.

8    In addition to the cash related to the Wilshire Bundy Proceeds, as of January of

9  2011, Namco also held approximately $3.3 million of restricted and unrestricted cash.

10    4.4.2    **Real Property Interests**. As of the Petition Date, Namco owned direct

11  interests in two parcels of real estate: A 100% fee simple interest in 1929 Pico Blvd., Los Angeles,

12  California and a 60% interest in 9920 La Cienega, Los Angeles, California. The 1929 Pico Blvd.

13  property, which is an office building with approximately 25,000 square feet of space, is in the

14  process of being sold for the sum of $3.1 million. This property is subject to two settled secured

15  claims, other than property taxes. The senior of these two settled claims, which is held by Maryam

16  Pirian, as agent for a group of related parties, is in the amount of $990,000. The second claim,

17  which is held by Fereshteh Kohanim and Soleiman Naim, is in the amount of $600,000 (less any

18  payments made on the same pursuant to a court approved settlement agreement).

19    The 9920 La Cienega property is an office building with approximately 239,000 square

20  feet of space. The Debtor's rights in this property, which were the subject of a dispute, were settled

21  for a cash payment in the amount of $1.0 million. The order approving this settlement was entered

22  on June 2, 2010.

23    Namco also owns a back-end profit participation in an Arizona property owned by Tempe

24  Town Lakes I, LLC. This interest was obtained pursuant to a settlement that was approved by the

25  Bankruptcy Court in November of 2009. The value of this interest is contingent and consequently

26  no value has been placed on it.

27    4.4.3    **Personal Property Interests**. Namco owns the following material personal

28  property assets: