1  William N. Lobel (State Bar No. 093202)
   Mike D. Neue (State Bar No. 179303)
2  THE LOBEL FIRM, LLP
   840 Newport Center Drive, Suite 750
3  Newport Beach, California  92660
   Telephone:  (949) 999-2860
4  Facsimile:  (949) 999-2870

5  Stuart I. Koenig (State Bar No. 102764)
   CREIM MACIAS KOENIG & FREY LLP
6  633 West Fifth Street, 51st Floor
   Los Angeles, CA  90071
7  Telephone:  (213) 614-1944
   Facsimile:  (213) 614-1961

8
   Attorneys for the Official Committee of
9  Unsecured Creditors for NAMCO CAPITAL GROUP, INC.

10 Leonard M. Shulman (State Bar No. 126349)
   Melissa Davis (State Bar No. 245521)
11 SHULMAN, HODGES & BASTIAN, LLP
   8105 Irvine Center Drive, Suite 600
12 Irvine, CA  92618
   Telephone:  (949) 340-3400
13 Facsimile:  (949) 340-3000

14 Attorneys for the Official Committee of
   Unsecured Creditors for EZRI NAMVAR
15

16            UNITED STATES BANKRUPTCY COURT
              CENTRAL DISTRICT OF CALIFORNIA
17               [LOS ANGELES DIVISION]

18 In re                              | CASE NO.: 2:08-bk-32333-BR

19 NAMCO CAPITAL GROUP, INC., a California | Chapter 11 Case
20 corporation,

            Debtor and Debtor in Possession. | PLAN OF REORGANIZATION FILED BY
21                                            | THE OFFICIAL COMMITTEE OF
                                             | UNSECURED CREDITORS FOR NAMCO
22                                            | CAPITAL GROUP, INC. AND OFFICIAL
                                             | COMMITTEE OF UNSECURED
23                                            | CREDITORS FOR EZRI NAMVAR

24                                            | DATE:
                                             | TIME:        [TO BE SET]
25                                            | PLACE:

26

27

28

# TABLE OF CONTENTS

| SECTION | TITLE | PAGE |
|---|---|---|
| ARTICLE  I | INTRODUCTION | 1 |
| ARTICLE  II | DEFINITIONS AND RULES OF CONSTRUCTION | 2 |
| | 2.1    Specific Definitions | 2 |
| | 2.2    Rules of Interpretation | 14 |
| ARTICLE  III | PAYMENT OF ADMINISTRATIVE EXPENSES | |
| | AND TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS | 15 |
| | 3.1    Unclassified Claims Under The Plan | 14 |
| | 3.1.1    Administrative and Gap Claims | 15 |
| | 3.1.2    Bar Date For Administrative Claims | 16 |
| | 3.1.3    Payment of Allowed Administrative Claims of Professionals | 16 |
| | 3.1.4    Payment of Priority Tax Claims | 16 |
| ARTICLE  IV | CLASSIFICATION OF CLAIMS AND INTERESTS | 17 |
| | 4.1    Manner of Classification of Claims | 17 |
| | 4.2    Classification of Claims | 17 |
| ARTICLE  V | TREATMENT OF CLAIMS AND INTEREST | 18 |
| ARTICLE  VI | ACCEPTANCE OR REJECTION OF THE PLAN | 20 |
| | 6.1    Plan Voting Rights | 20 |
| | 6.2    Classes Entitled to Vote | 20 |
| | 6.3    Non-Consensual Confirmation. | 20 |
| | 6.4    Elimination of Vacant Classes | 20 |
| ARTICLE  VII | IMPLEMENTATION OF THE PLAN AND EXECUTION OF ITS TERMS | 20 |
| | 7.1.    Removal of Namco Trustee | 20 |
| | 7.2.    Transfer of Assets | 21 |
| | 7.3.    Corporate Governance | 21 |
| | 7.4    Approval of Inter-estate Settlement | 23 |
| | 7.5.    Plan Distribution System | 24 |
| | 7.6.    Special Litigation Master | 25 |
| | 7.7.    Claims Estimation Rights | 26 |
| | 7.8.    Loans Between Reorganized Namco and NLTCo | 27 |
| | 7.9.    Books and Records | 27 |
| | 7.10.    Limitations on Liability | 28 |
| | 7.11.    Exemption from Certain Transfer Taxes | 28 |
| | 7.12.    Hardship Distributions | 28 |
| ARTICLE  VIII | POST-CONFIRMATION OBJECTIONS; ESTIMATION OF CLAIMS | 30 |
| | 8.1    Objections To Claims | 30 |
| | 8.2    Claim Objection Deadline | 30 |
| | 8.3    Estimation of Disputed Claims. exclusive of one another | 30 |
| ARTICLE  IX | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 31 |
| | 9.1    Executory Contracts and Unexpired Leases to be Assumed. | 31 |
| | 9.2    Cure Amounts. | 31 |

i

|  |  |  |  |
|---|---|---|---|
| | 9.3 | Rejection of All Other Executory Contracts. | 31 |
| | 9.4 | No Effect on Insurance | 31 |
| ARTICLE X | CONDITIONS TO CONSUMMATION OF THE PLAN | | 32 |
| | 10.5. | Conditions To Consummation | 32 |
| | 10.1. | Waiver of Conditions | 32 |
| ARTICLE XI | EFFECT OF CONFIRMATION OF THE PLAN | | 32 |
| | 11.1 | Jurisdiction of Bankruptcy Court | 32 |
| | 11.2 | Binding Effect | 32 |
| | 11.3 | Exculpation | 32 |
| ARTICLE XII | JURISDICTION | | 33 |
| | 12.1 | Retention of Jurisdiction | 33 |
| | | 12.1.1  Allowance of Claims or Interests | 33 |
| | | 12.1.2  Executory Contract Proceedings | 33 |
| | | 12.1.3  Plan Interpretation | 33 |
| | | 12.1.4  Plan Implementation | 33 |
| | | 12.1.5  Plan Modification | 33 |
| | | 12.1.6  Adjudication of Controversies | 33 |
| | | 12.1.7  Injunctive Relief | 33 |
| | | 12.1.8  Correct Minor Defects | 33 |
| | | 12.1.9  Post-Confirmation Orders Regarding | 34 |
| | | Confirmation | 34 |
| | 12.2 | Final Decree. | 35 |
| | 12.3 | Failure of the Bankruptcy Court to Exercise Jurisdiction | 35 |
| ARTICLE XIII | MODIFICATION; MISCELLANEOUS | | 35 |
| | 13.1 | Binding Effect of Plan | 35 |
| | 13.2 | Withdrawal of this Plan | 35 |
| | 13.3 | Plan Modification | 35 |
| | 13.4 | Inconsistency | 35 |
| | 13.5 | Headings Do Not Control | 35 |
| | 13.6 | No Transfer Taxes | 35 |
| | 13.7 | Taking Action | 35 |
| | 13.8 | Limitation of Liability | 36 |
| | 13.9 | United States Trustee's Fees | 36 |
| | 13.10 | Governing Law | 37 |
| | 13.11 | Notice | 37 |
| | 13.12 | Filing of Additional Documents | 37 |
| | 13.13 | No Attorneys' Fees | 37 |
| | 13.14 | Successors and Assigns | 37 |
| | 13.15 | Preservation of Rights of Setoff | 37 |
| | 13.16 | Defenses with Respect to Claims | 37 |
| | 13.17 | No Injunctive Relief | 38 |
| | 13.18 | No Admissions | 39 |

The Official Committee of Unsecured Creditors (the "Namco Committee") for Namco Capital Group, Inc., the debtor in this Chapter 11 case ("Namco"), and the Official Committee of Unsecured Creditors (the "Namvar Committee") for Ezri Namvar, the debtor in a related Chapter 11 case ("Namvar") (together the "Committees" or "Plan Proponents"), hereby propose the within Plan of Reorganization pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## INTRODUCTION

On January 29, 2009 the United States Bankruptcy Court for the Central District of California (the "Court") entered an order granting an involuntary Chapter 11 petition filed against Namco on December 22, 2008. On May 8, 2009, the Court entered an order approving the appointment of Bradley D. Sharp as the Chapter 11 trustee in the Namco Case and on February 13, 2009, the Office of the U.S. Trustee appointed the Namco Committee to represent the interests of the holders of unsecured claims in Namco Case, pursuant to 11 U.S.C. § 1102(a)(1).

Namco is wholly owned by Ezri Namvar ("Ezri" or "Namvar"). On January 29, 2009, the Court entered an order granting an involuntary Chapter 11 petition filed against Namvar on December 22, 2008. R. Todd Nielson was appointed as the Chapter 11 trustee in the Namvar Case pursuant to an order entered on March 11, 2009. The Office of the U.S. Trustee has appointed the Namvar Committee to represent the interests of the holders of unsecured claims in the Namvar Case, pursuant to 11 U.S.C. § 1102(a)(1) of the Bankruptcy Code.

The purpose of this document is to set forth the Committees' proposed reorganization plan. This document and the accompanying Disclosure Statement are intended to explain to creditors and interest holders how their claims and interests will be treated under the Plan, and to detail what distributions of money or property will be made to creditors and interest holders hereunder. After the Plan has been confirmed, the Bankruptcy Court will retain jurisdiction to determine the allowance of all Claims and to effectuate and enforce the terms of this Plan. This overview is only a summary. Please read the complete text of the Plan set forth below.

# ARTICLE II

## DEFINITIONS AND RULES OF CONSTRUCTION

2.1    **Specific Definitions.** The definitions provided in this Section shall apply to both the Plan and this Disclosure Statement:

2.1.1    "**Accounts Receivable**" means Recovery Rights based upon loans made by Namco to third parties prior to the Petition Date.

2.1.2    "**Administrative Claim**" means any right to payment constituting a cost or expense of administration of the Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs and expenses of operating the Debtor's business, any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Bankruptcy Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtor' estate under section 1930 of chapter 123 of title 28 of the United States Code and any Claim for goods delivered to the Debtor' within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

2.1.3    "**Allowed Administrative Claim**" means all or that portion of an Administrative Claim which is an Allowed Claim.

2.1.4    "**Allowed Priority Claim**" means all or that portion of a Priority Claim which is an Allowed Claim.

2.1.5    "**Allowed Priority Tax Claim**" means all or that portion of a Priority Tax Claim which is an Allowed Claim.

2.1.6    "**Allowed Secured Claim**" means all or that portion of a Secured Claim which is an Allowed Claim.

1    2.1.7    "**Allowed Unsecured Claim**" means all or that portion of an Unsecured

2  Claim which is an Allowed Claim.

3    2.1.8    "**Allowed**" means, with reference to any Claim, (a) any Claim against the

4  Debtor that has been listed by the Debtor in the Schedules, as such Schedules may be amended by

5  the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount

6  and not disputed or contingent, and with respect to which no contrary proof of claim has been

7  filed, (b) any Claim specifically allowed under the Plan, (c) any Claim that is not a Disputed

8  Claim by the Claims Objection Deadline or (d) any Claim, the amount or existence of which, if it

9  is a Disputed Claim, (i) has been determined by a Final Order of a court of competent jurisdiction

10  other than the Bankruptcy Court, or (ii) has been allowed by Final Order of the Bankruptcy Court;

11  provided, however, that any Claims allowed solely for the purpose of voting to accept or reject the

12  Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims"

13  hereunder.

14    2.1.9    "**Assumed Contract List**" means the list included in the Plan Supplement

15  listing the executory contracts and unexpired leases to be assumed by Reorganized Namco.

16    2.1.10  "**Ballot**" means each of the ballot forms distributed with the Disclosure

17  Statement to each holder of an impaired Claim (other than to holders not entitled to vote on the

18  Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

19    2.1.11  "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C.

20  §§ 101 et seq., as in effect on the date hereof.

21    2.1.12  "**Bankruptcy Court**" means the United States Bankruptcy Court for the

22  Central District of California, Santa Ana Division.

23    2.1.13  "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as

24  promulgated by the United States Supreme Court under section 2075 of title 28 of the United

25  States Code, and local rules of the Bankruptcy Court, as the context may require.

26    2.1.14  "**Bankruptcy Trustees**" means Bradley Sharp as the trustee of the Namco

27  Estate and R. Todd Neilson as the Trustee of the Namvar Estate.

28    2.1.15  "**Beshmada**" means Beshmada LLC, a California limited liability company.

3

1          2.1.16 **"Beshmada Case"** means the Chapter 11 case of Beshmada that is currently

2    pending before the Bankruptcy Court.

3          2.1.17 **"Beshmada Estate"** means the Chapter 11 estate of Beshmada.

4          2.1.18 **"Beshmada of Delaware"** means Beshmada of Delaware, LLC, a Delaware

5    limited liability company.

6          2.1.19 **"Beshmada of Delaware Case"** means the Chapter 11 case of Beshmada of

7    Delaware that is pending before the Bankruptcy Court.

8          2.1.20 **"Beshmada of Delaware Estate"** means the Chapter 11 estate of

9    Beshmada of Delaware.

10         2.1.21 **"Business Day"** means any day other than a Saturday, a Sunday or a "legal

11   holiday" (as defined in Bankruptcy Rule 9006(a)).

12         2.1.22 **"Cash"** means lawful currency of the United States and equivalents thereof,

13   including, but not limited to: bank deposits, wire transfers, checks, and other similar items.

14         2.1.23 **"Claim"** or **"Claims"** as defined in the Bankruptcy Code, section 101(5)(A)

15   and (B), means (a) any right to payment, whether or not such right is reduced to judgment,

16   liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

17   equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance

18   if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is

19   reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or

20   unsecured.

21         2.1.24 **"Claim Deadline"** means November 13, 2009, with respect to all Claims.

22         2.1.25 **"Claim Objection Deadline"** means (a) 240 days after the Effective Date,

23   unless extended by an order of the Bankruptcy Court, or (b) 30 days after the deadline for filing a

24   request for the payment of an Administrative Claim established in Article III.C of the Plan.

25         2.1.26 **"Class"** means a group of Claims or Interests classified together in a class

26   designated in Article IV of the Plan.

27         2.1.27 **"Committees"** means the Namco Committee and the Namvar Committee,

28   the Plan Proponents.

4

2.1.28 **"Confirmation Date"** means the date of entry of the Confirmation Order.

2.1.29 **"Confirmation Hearing"** means the hearing to consider confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

2.1.30 **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

2.1.31 **"Creditor"** means any holder of a Claim, as defined by the Bankruptcy Code, section 101(10).

2.1.32 **"Debtor"** means Namco Capital Group, Inc., the Chapter 11 debtor.

2.1.33 **"Dimes"** means Dimes LLC, a California limited liability company.

2.1.34 **"Dimes Case"** means the Chapter 11 case of Dimes, LLC that is pending before the Bankruptcy Court.

2.1.35 **"Dimes Estate"** means the Chapter 11 estate of Dimes, LLC.

2.1.36 **"Disclosure Statement"** means the "Disclosure Statement To Accompany Plan Of Reorganization Filed By The Official Committee Of Unsecured Creditors For Namco Capital Group, Inc. And Official Committee Of Unsecured Creditors for Ezri Namvar" (and all exhibits and attachments thereto or referenced therein) that relates to the Plan, as such Disclosure Statement may be amended, modified or supplemented.

2.1.37 **"Disputed Claim"** means, with reference to any Claim, (a) any Claim, (i) proof of which was not timely or properly filed by the Claim Deadline and that has been or hereafter is listed on the Schedules as unliquidated, disputed or contingent, or (ii) that is not listed in the Schedules; or (b) any Claim as to which the Debtor or any other party in interest has filed an objection or request for estimation on or before such limitation period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, except to the extent that such objection or request for estimation is withdrawn or determined by a Final Order in favor of the holder of such Claim.

2.1.38 **"Distributable Funds"** means all Cash from the Namco Allocation received in the prior quarter, less payments made to, or reserves set aside for the following: (i)

Allowed Administrative Claims; (ii) Allowed Priority Tax Claims; (iii) Allowed Postpetition Tax Claims; (iv) Allowed Class 1, 2 and 3 Claims (to the extent any such Claims are to be satisfied with Cash rather than a return of the Collateral securing such Claims); (v) Allowed Class 4 Claims; (vi) disputed claims; and (vii) all expenses.

2.1.39 **"Effective Date"** means the first Business Day that is at least sixty (60) days after the Confirmation Date, or such earlier or later date as the Plan Proponents select, but in no event shall such date be later than one year after the Effective Date.

2.1.40 **"Entity"** means an individual, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any subdivision thereof.

2.1.41 **"Estate"** means the estate created by section 541(a) of the Bankruptcy Code upon the Petition Date.

2.1.42 **"Excluded Assets"** means any assets of the Namvar Estate that are not transferred to NLTCo on the Effective Date.

2.1.43 **"Final Claim Order"** means a Final Order regarding an objection to and/or allowance of a Claim.

2.1.44 **"Final Confirmation Order"** means a Final Order confirming the Plan.

2.1.45 **"Final Order"** means an order or judgment of the Bankruptcy Court other than a Confirmation Order, the operation or effect of which has not been stayed, which has become Final.

2.1.46 **"Final"** means: the later of (i) the date of final affirmance on an appeal of a judgment or order, the expiration of the time for a petition for or a denial of a writ of certiorari to review a judgment or order and, if certiorari is granted, the date of final affirmance of a judgment or order following review pursuant to that grant; or (ii) the date of final dismissal of any appeal from a judgment or order or the final dismissal of any proceeding on certiorari to review a judgment or order; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any appeal from a judgment or order.

1    2.1.47  **"General Unsecured Claims"** means those Claims included in Class 5 of

2  the Plan.

3    2.1.48  **"Governmental Unit"** has the meaning ascribed to such term in section

4  101(27) of the Bankruptcy Code.

5    2.1.49  **"Insider"** as defined in section 101(31) of the Bankruptcy Code, means (a)

6  a relative of the Debtor or of a general partner of the Debtor; (b) a partnership in which the Debtor

7  is a general partner; (c) a general partner of the Debtor; or (d) a corporation of which the Debtor is

8  a director, officer, or person in control.

9    2.1.50  **"Interest Holder"** means the Ezri Namvar, or the Namvar Estate, as the

10  holder of the all of the common stock of Namco.

11    2.1.51  **"Inter-estate Settlement"** means the settlement reached by and between

12  the Namco Committee and the Namvar Committee regarding the allocation of funds obtained from

13  the property of the Estates among the creditors of the Estates.

14    2.1.52  **"Namco"** means Namco Capital Group, Inc., a California corporation and

15  the Debtor in this Chapter 11 case.

16    2.1.53  **"Namco Allocation"** means eighty-five percent (85%) of the Net

17  Collections recovered by Reorganized Namco and eighty-five percent (85%) of the Net

18  Collections recovered by NLTCo.

19    2.1.54  **"Namco Case"** means the Chapter 11 case of Namco pending before the

20  United States Bankruptcy Court for the Central District of California.

21    2.1.55  **"Namco Committee"** means the official committee for unsecured creditors

22  appointed to serve in the Namco Case, whose members are Abraham B. Assil, as Trustee of the

23  Abraham B. Assil Trust, Benjamin B. Efraim, as Trustee of the Far-Hadian Family Trust, and

24  Heide Kurtz, Chapter 7 Trustee for Namco Financial Exchange Corporation.

25    2.1.56  **"Namco Distribution Account"** means the account into which all

26  Distributable Funds will be deposited and disbursed.

27    2.1.57  **"Namco Equity Interests"** means the equity interests that Namco held in

28  the Namco Related Entities as of the Petition Date.

7

1    2.1.58 "**Namco Estate**" means the Chapter 11 estate of Namco.

2    2.1.59 "**Namco Plan**" means the Plan of Reorganization filed by the Committees

3 in the Namco Case.

4    2.1.60 "**Namco Trustee**" means Bradley D. Sharp, the duly appointed and acting

5 Chapter 11 Trustee in the Namco Case.

6    2.1.61 "**Namvar**" means Ezri Namvar, the debtor in the Namvar Case.

7    2.1.62 "**Namvar Allocation**" means fifteen percent (15%) of the Net Collections

8 recovered by NLTCo and fifteen percent (15%) of the Net Collections recovered by Reorganized

9 Namco.

10    2.1.63 "**Namvar Case**" means the Chapter 11 case of Namvar pending in the

11 United States Bankruptcy Court for the Central District of California.

12    2.1.64 "**Namvar Committee**" means the official committee for unsecured

13 creditors appointed in the Namvar Case, whose members are Mansoor Alyeshmerni, Marc

14 Asheghian, Elliot Sharaby, Hersei Babajoni and Cathay Bank.

15    2.1.65 "**Namvar Debtor Entities**" means the Namvar Related Entities who are

16 operating under the protection of Chapter 11, including Namco Capital Group, Inc., Dimes, LLC,

17 Namvar, Beshmada, LLC, Beshmada of Delaware, LLC, Namco Financial Exchange, St. Patrick's

18 Day Lease, LLC, Wall Street Mart, L.P., Bundy Dimes, LLC, Bunwil Capital, LLC, Mission Real

19 Associates, LLC, Playa Properties, LLC, Rancho Malibu, LLC and Namwest, LLC.

20    2.1.66 "**Namvar Equity Interests**" means the equity interests that Namvar held in

21 the Namvar Related Entities as of the Petition Date.

22    2.1.67 "**Namvar Estate**" means the Chapter 11 estate of Namvar.

23    2.1.68 "**Namvar Related Entities**" means the business entities listed in Exhibit

24 "3" to the Disclosure Statement and any other unknown entities in which Namvar owns and

25 interest or controlled as of the Petition Date,

26    2.1.69 "**Namvar Plan**" means the Plan of Reorganization filed by the Committees

27 in the Namvar Case.

28

1  2.1.70 **"Namvar Trustee"** means R. Todd Neilson, the duly appointed and acting

2  Chapter 11 Trustee in the Namvar Case.

3  2.1.71 **"Net Collections"** means all Cash held or received by the Estates from the

4  management, recovery, sale or other liquidation of any property of the Estates, less all reasonable

5  costs incurred in collecting, managing, recovering, selling or otherwise disposing such property,

6  including applicable taxes.

7  2.1.72 **"New Board"** means the board of directors of Reorganized Namco after the

8  Effective Date, whose initial members shall be Marc Asheghian, Abraham B. Assil and Benjamin

9  B. Efraim.

10  2.1.73 **"NLTCo"** means the liquidating trust created pursuant to Plan filed by the

11  Committees in the Namvar Case. NLTCo will receive all NLTCo Property (all assets of the

12  Namvar Estate other than Excluded Assets), liquidate these assets over the Plan Period set forth in

13  the Namvar Plan, transfer the Namco Allocation to Reorganized Namco, and make distributions to

14  persons entitled thereto from the Namco Allocation in accordance with the terms of the Namvar

15  Plan and the NLTCo Agreement.

16  2.1.74 **"NLTCo Agreement"** means the liquidating trust agreement governing the

17  affairs of NLTCo, which will be in substantially the form contained in the Plan Supplement.

18  2.1.75 **"NLTCo Beneficiaries"** means (i) the holders of NLTCo Beneficial

19  Interests, as of any point in time, and (ii) holders of Allowed Claims that shall be satisfied from

20  NTLCo Property in accordance with the terms of the Plan.

21  2.1.76 **"NLTCo Beneficial Interests"** means, collectively, the interests of the

22  holders of Allowed Unsecured Claims in the NLTCo and in all distributions to be made by the

23  NLTCo on account of Allowed Unsecured Claims. The NLTCo Beneficial Interests (a) shall be

24  noted in the books and records of NLTCo, (b) shall not be evidenced by a writing, and (c) may not

25  be transferred, sold, assigned or transferred by will, intestate succession or operation of law.

26  2.1.77 **"NLTCo Distribution Account"** means the account into which all

27  Distributable Funds, as that term is defined in the Namvar Plan, shall be deposited and disbursed.

28

9

1        2.1.78 **"NLTCo Property"** means all property of the Namvar Estate other than

2   Excluded Assets.

3        2.1.79 **"NLTCo Expenses"** means all costs, expenses and obligations incurred by

4   NLTCo, the NLTCo Trustee and NLTCo's Professionals in administering the Trust or in any

5   manner incidental or related thereto.

6        2.1.80 **"NLTCo Trustee"** means the liquidating trustee(s) of NLTCo, or any

7   successor trustee designated or selected in accordance with the terms of the Plan and the NLTCo

8   Agreement. Reorganized Namco shall be the NLTCo Trustee.

9        2.1.81 **"Person"** means any individual, corporation, partnership, limited liability

10  company, association, indenture trustee, organization, joint stock company, joint venture, estate,

11  trust, governmental unit or any political subdivision thereof, or any other entity.

12       2.1.82 **"Petition Date"** means December 22, 2008, the date on which an

13  involuntary bankruptcy petition was filed against the Debtor.

14       2.1.83 **"Plan Proponents"** means the Committees.

15       2.1.84 **"Plan"** means the "Plan of Reorganization" filed by the Committees in the

16  Namco Case to which the Disclosure Statement refers (including all exhibits and attachments,

17  each of which is hereby incorporated and made part of the Plan), as modified or amended from

18  time to time in accordance with section 1127 of the Bankruptcy Code.

19       2.1.85 **"Plan Documents"** means, collectively, the Voting Trust Agreement and

20  the other documents attached to the Plan Supplement.

21       2.1.86 **"Plan Period"** means the period from the Effective Date to the Plan

22  Termination Date.

23       2.1.87 **"Plan Supplement"** means the compilation of the Plan Documents to be

24  filed with the Bankruptcy Court.

25       2.1.88 **"Plan Termination Date"** means the seventh (7th) anniversary date of the

26  Effective Date, unless Reorganized Namco elects to extend this date for up to an additional five

27  (5) years, or such earlier date as may be fixed by Reorganized Namco.

28

10

2.1.89  **"Prime Rate"** means the prime rate of interest quoted in the Wall Street Journal.

2.1.90  **"Priority Tax Claim"** means a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

2.1.91  **"Pro Rata"** means proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class.

2.1.92  **"Professionals"** means those Entities (a) employed in the Case under sections 327 or 1103 of the Bankruptcy Code, and (b) entitled, under sections 330, 503(b), 506(b), 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting or other professional services and the costs and expenses related to such services from the Debtor or the Estate.

2.1.93  **"Recovery Rights"** means any and all manner of causes of action, claims, obligations, suits, debts, judgments and demands whatsoever, whether in law or in equity, including, but not limited to, actions to subordinate Claims under Section 510 of the Bankruptcy Code and to avoidance power actions set forth in Sections 544 through 550, inclusive, of the Bankruptcy Code.

2.1.94  **"Rejected Contract List"** means the list attached to the Plan Supplement listing the executory contracts and unexpired leases being rejected under the Plan, as amended up to the Effective Date.

2.1.95  **"Rejection Damages Deadline"** means the later of the Claim Deadline, or thirty (30) days after the entry of an order approving the rejection of an executory contract or unexpired lease.

2.1.96  **"Reorganized Namco"** means the Namco on and after the Effective Date.

1         2.1.97 "**Schedules**" means the schedules of assets and liabilities, statements of

2 financial affairs, and lists of holders of Claims and Equity Interests filed with the Bankruptcy

3 Court by the Debtor, including any amendments or supplements thereto.

4         2.1.98    "**Secured Claim**" means a Claim secured by a lien on any property of any

5 of the Estate, but only to the extent of the value of the interest of the holder of such Allowed

6 Claim in the interest of the Estate in such property, the calculation of which shall not include any

7 demand for default interest, penalty interest or other similar demands.

8         2.1.99    "**Starpoint Parties**" means Starpoint Properties, LLC, a limited liability

9 company organized under the laws of the State of California; Blackhawk Properties, LLC, a

10 limited liability company, organized under the laws of the State of Delaware; Mill Avenue

11 Properties, LLC, a limited liability company organized under the laws of the State of Delaware;

12 Mill Avenue Properties II, LLC, a limited liability company organized under the laws of the State

13 of Delaware; Mill Avenue Properties III, LLC, a limited liability company organized under the

14 laws of the State of Delaware; Mill Avenue Properties IV, LLC, a limited liability company

15 organized under the laws of the State of Delaware; 450 Roxbury Properties, LLC, a limited

16 liability company organized under the laws of the State of Delaware; 450 Roxbury Properties II,

17 LLC, a limited liability company organized under the laws of the State of Delaware; 450 Roxbury

18 Properties III, LLC, a limited liability company organized under the laws of the State of Delaware;

19 Defendant 450 Roxbury Properties IV, LLC, a limited liability company organized under the laws

20 of the State of Delaware;  450 Roxbury Properties V, LLC,, a limited liability company organized

21 under the laws of the State of Delaware; 450 Roxbury Properties VI, LLC, a limited liability

22 company organized under the laws of the State of Delaware; Colfax Properties, LLC, a limited

23 liability company organized under the laws of the State of California; Foothill Ridge Properties,

24 LLC, a limited liability company organized under the laws of the State of California; Virgil

25 Avenue Properties, LLC, a limited liability company organized under the laws of the State of

26 California; and Jennifer Greenhut, an individual residing in the State of California.

27         2.1.100 "**Unclaimed Property**" means any funds or other Property to be

28 distributed to Creditors pursuant to the Plan, which, after an attempted distribution, has not been

1   received by the rightful Creditor. Unclaimed property shall include checks and any other property

2   that have been returned as undeliverable without a proper forwarding address, or which were not

3   mailed or delivered because of the absence of a proper address to which to mail or deliver such

4   property. Such Unclaimed Property that remains unclaimed at the end of one (1) year following

5   the date of an attempted distribution shall be reallocated and paid to other holders of Allowed

6   Claims in accordance with the Plan. After the expiration of one (1) year following the date of an

7   attempted distribution, each Claim with respect to Unclaimed Property shall be treated as if it had

8   been disallowed in its entirety.

9         2.1.101  "**United States Trustee**" means the United States Trustee for the Central

10   District of California.

11         2.1.102  "**Unsecured Claim**" means any Claim against the Debtor that is not an

12   Administrative Claim, Tax Claim, Secured Claim, or Priority Claim.

13         2.1.103  "**Voting Deadline**" means [Date To Be Established By The Bankruptcy

14   Court], or such other deadline established by the Bankruptcy Court for parties in interest entitled

15   to vote to submit their ballots accepting or rejecting the Plan.

16         2.1.104  "**Voting Trust**" means the Voting Trust formed pursuant to the Voting

17   Trust Agreement that will have the right to vote all Namco Stock during the Plan Period.

18         2.1.105  "**Voting Trust Agreement**" means the Voting Trust Agreement attached

19   to the Plan Supplement that will control the right to vote the Namco Stock during the Plan Period

20   and that will provide for the election of the Voting Trust Trustees.

21         2.1.106  "**Voting Trust Trustees**" means, during the Plan Period, the individuals

22   selected by the Committees to serve in this position. The initial Voting Trust Trustees will be

23   Marc Asheghian, Abraham B. Assil and Benjamin B. Efraim. If any Voting Trust Trustee resigns,

24   or is otherwise unable to serve in this capacity, the Committees will elect a replacement Voting

25   Trust Trustee by a majority vote.

26         2.1.107  "**Wilshire Bundy Proceeds**" means the sales proceeds generated from the

27   sale of the Wilshire Bundy Property, after the payment of closing costs, commissions and allowed

28

1   secured claims against this property, which is comprised of the $27,127,000 held in a joint account

2   by the Trustees and the sum of $14,796,000 held by the taxing authorities.

3       2.1.108  "**Wilshire Bundy Property**" means all interests in that certain property

4   commonly known as 12121 Wilshire Boulevard, Los Angeles, California.

5       2.1.109  "**Woodman**" means Woodman Partners, LLC.

6   2.3    **Rules of Interpretation**. The following rules of interpretation and construction

7   shall apply to both the Plan and the accompanying Disclosure Statement.

8       2.2.1    Any term used in the Plan that is not defined herein, whether in this Article

9   or elsewhere, or other exhibits hereto, but that is used in the Bankruptcy Code or the Bankruptcy

10  Rules has the meaning ascribed to that term in (and shall be construed in accordance with the rules

11  of construction under) the Bankruptcy Code or the Bankruptcy Rules.

12      2.2.2    Any capitalized term used in the Plan that is not defined herein, or other

13  exhibits hereto, but that is defined and used in the Disclosure Statement has the meaning ascribed

14  to that term in the Disclosure Statement.

15      2.2.3    The words "herein," "hereof," "hereto," "hereunder" and others of similar

16  import refer to the Plan as a whole and not to any particular article, section, subsection or clause

17  contained in the Plan.

18      2.2.4    Unless specified otherwise in a particular reference, a reference to an article

19  or a section is a reference to that article or section of the Plan.

20      2.2.5    Any reference in the Plan to a document being in a particular form or on

21  particular terms and conditions means that the document shall be substantially in such form or

22  substantially on such terms and conditions.

23      2.2.6    Any reference in the Plan to an existing document means such document, as

24  it may have been amended, modified or supplemented from time to time as of the Effective Date.

25      2.2.7    Whenever from the context it is appropriate, each term stated in either the

26  singular or the plural shall include both the singular and the plural.

27      2.2.8    The rules of construction set forth in section 102 of the Bankruptcy Code

28  shall apply to the Plan.

2.2.9    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.2.10    All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be part of the Plan.

2.2.11    The provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Final Confirmation Order shall control over the contents of the Plan.

2.2.12    Unless otherwise specified in the Plan, whenever a distribution of property must be made, or an act required on a particular date, the distribution or act shall occur on such date, or as soon as practicable thereafter.

# ARTICLE III

## PAYMENT OF ADMINISTRATIVE EXPENSES

## AND TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

3.1    **Unclassified Claims Under The Plan**.  Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Gap Claims, Claims for Professional Fees and Priority Tax claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

3.1.1    <u>Administrative and Gap Claims</u>.  On the later of the Effective Date, or as soon thereafter as practical, or the date on which the Administrative Claim or a Gap Claim is allowed, the Debtor will pay to each Creditor holding an Allowed Administrative Claim or an Allowed Gap Claim, unless that Creditor agrees to different treatment, Cash equal to the unpaid portion of such Allowed Administrative Claim or Allowed Gap Claim; *provided, however,* that Allowed Administrative Claims and Allowed Gap Claims representing obligations incurred in the ordinary course of business or otherwise assumed by the Debtor pursuant to this Plan and unpaid as of the Effective Date, shall be assumed on the Effective Date and paid or performed by the Reorganized Debtor when due in accordance with the terms and conditions of the particular

1  agreements governing such obligations.

2    3.1.5  <u>Bar Date For Administrative Claims</u>. All applications for final

3  compensation of Professionals for services rendered and for reimbursement of expenses incurred

4  on or before the Effective Date, and any other request for compensation by any Entity for making

5  a substantial contribution in the Case, and all other requests for payment of an Administrative

6  Claim incurred before the Effective Date under sections 507(a)(2) or 503(b) of the Bankruptcy

7  Code (except only for Claims under 28 U.S.C. § 1930) shall be filed no later than sixty (60) days

8  after the Effective Date.

9    Any Administrative Claim required to be filed within the foregoing deadlines that

10  is not filed within such deadlines shall be forever barred and the Debtor shall be discharged of any

11  obligation on such Claim.  Any Creditor that is required to file a request for payment of such

12  Claim and who does not file such request by the applicable bar date shall be forever barred from

13  asserting such Claim against the Estate or the Debtor, or their property.

14    3.1.6  <u>Payment of Allowed Administrative Claims of Professionals</u>. The Allowed

15  Administrative Claims of Professionals shall be paid in accordance with section 1129(a)(9)(A) of

16  the Bankruptcy Code by the Debtor. However, as more fully explained in the feasibility section of

17  the Disclosure Statement, if insufficient Cash is available on the Effective Date to pay these

18  claims, which are substantial, the Committees will negotiate longer term pay-outs with the

19  professionals.

20    3.1.7  <u>Payment of Priority Tax Claims</u>. Each holder of an Allowed Priority Tax

21  Claim against the Debtor shall receive, on the Effective Date, in full satisfaction, release, and

22  discharge of such Allowed Priority Tax Claim, at the election of the Debtor, either: (i) Cash

23  payment in the amount of the holder's Allowed Priority Tax Claim; (ii) deferred Cash payments

24  over a period not to exceed five (5) years, from the date of assessment of a value as of the

25  Effective Date, equal to the Allowed amount of such claim; or (iii) such other terms as may be

26  agreed upon by such holder and the Debtor.  The rate of interest to be paid on Priority Tax Claims

27  paid out over five (5) years shall be equal to the underpayment rate specified in 26 U.S.C. § 6621

28  (determined without regard to 26 U.S.C. § 6621(c)) as of the Effective Date.

Holders of Allowed Priority Tax Claims shall not be entitled to receive any payment on account of post-Petition Date interest on, or penalties with respect to or arising in connection with, such Priority Tax Claims, except as allowed by the Court, and all Claims or demands by holders of Priority Tax Claims for post-Petition Date interest or penalties thereon, except as may be allowed by the Court, shall be disallowed by the Plan and the Final Confirmation Order, and the holders of Priority Tax Claims shall not assess or attempt to collect interest or penalties from the Estate or its property.

## ARTICLE IV

### CLASSIFICATION OF CLAIMS AND INTERESTS

4.1    **Manner of Classification of Claims.** Except for Claims of a kind specified in sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Bankruptcy Code, all Claims against the Debtor and with respect to all property of the Debtor and their Estate, are defined and hereinafter designated in respective Classes.  The Plan is intended to deal with all Claims against the Debtor, of whatever character, whether known or unknown, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code.  Only holders of Allowed Claims, however, will receive any distribution under the Plan.  For purposes of determining Pro Rata distributions to holders of Allowed Claims under the Plan, Disputed Claims shall be included in the Class in which such Claims would be included if they were Allowed Claims.

4.2    **Classification of Claims.** Pursuant to section 1122 of the Bankruptcy Code, the classes of Claims against the Debtor are set forth below.  A Claim is placed in a particular Class only to the extent such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled or paid prior to the Effective Date.  Any Claims not described in this Article of the Plan are unclassified, and therefore, are not included in the Classes below.

The classes of secured claims under the Plan are listed in the following table:

| Class | Claimants | Security | Status | Voting Rights |
|-------|-----------|----------|--------|---------------|
| 1 | County of Los Angeles as the holder of a claim for real property taxes against 1929 Pico Blvd., Los Angeles, CA | First priority tax lien against 1929 Pico Blvd., Los Angeles, CA | Unimpaired | Not entitled to vote |

17

| 2 | Maryam Pirian, individually and as agent for the MMP Family Trust, Manoucherhr Pirian, Joseph Pirian and Nahal Pirian as the holders of a single allowed claim in the amount of $990,000 | First priority deed of trust against 1929 Pico Blvd., Los Angeles, CA | Unimpaired | Not entitled to vote |
| 3 | Fereshteh Kohanim and Soleiman Naim as the holders of a single allowed claim in the amount of $600,000 less any payments made on this sum pursuant to the settlement approved by the Bankruptcy Court | Second priority deed of trust against 1929 Pico Blvd., Los Angeles, CA | Unimpaired | Not entitled to vote |

The classes of unsecured claims under the Plan are listed in the following table:

| Class | Claimants | Security | Status | Voting Rights |
|---|---|---|---|---|
| 4 | The holders of allowed Other Priority Claims | Unsecured | Unimpaired | Not entitled to vote |
| 5 | The holders of all unsecured claims that are not entitled to priority | Unsecured | Impaired | Entitled to vote |

The classes of interests under the Plan are listed in the following table:

| Class | Interest Holders | Security | Status | Voting Rights |
|---|---|---|---|---|
| 6 | Ezri Namvar as the holders of all equity interests in Namco | Equity | Impaired | Entitled to vote |

# ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS

5.1 **Treatment of Classified Claims**. Classified claims are treated in the following

manner under the Plan:

A) <u>Class 1</u>. At the option of the Plan Proponents, the Class 1 Claimant's Allowed

Secured Claim shall be treated as follows under the Plan: (i) the claim will be paid in full and in

1  Cash, on the Effective Date; (ii) this claimant shall have recourse to the collateral securing its

2  claim in accordance with applicable law; or (iii) the claim will be treated in any other manner that

3  will leave its class unimpaired.

4          B) Class 2. The Class 2 Claimants' Allowed Secured Claim shall be paid in full in

5  accordance with the terms of the settlement agreement entered into by and among the Class 2

6  Claimants and the Namco Trustee, which was approved by the Bankruptcy Court.

7          C) Class 3. The Class 3 Claimants' Allowed Secured Claim shall be paid in full in

8  accordance with the terms of the settlement agreement entered into by and among the Class 3

9  Claimants and the Namco Trustee, which was  approved by the Bankruptcy Court pursuant to an

10  order entered on September 10, 2010.

11          D) Class 4.  Allowed Unsecured Priority Claims in Class 4 shall be paid in full and

12  in Cash on the Effective Date, unless the holder of such a claim agrees to different treatment.

13          E) Class 5. The Allowed Unsecured Claims of the Class 5 claimants shall have the

14  following distributional rights under the Plan, subject to the Hardship Distribution provisions in

15  Section 6.7 hereof:

16          1.    A quarterly distribution equal to each such creditor's pro rata share

17  of Distributable Funds, up to the amount of each claimant's Allowed Unsecured Claim. Since

18  Distributable Funds may not be available every quarter, particularly during the first year of the

19  Plan Period, it is not only possible, but likely that no distributions will be made during certain

20  quarters due to the unavailability of funds. However, Reorganized Namco's objective will be to

21  pay out funds to Creditors as quickly as possible.

22          2.    Each claimant shall receive a semi-annual and annual report from

23  Reorganized Namco detailing Reorganized Namco's efforts to preserve, maintain and liquidate its

24  assets for the benefit of all creditors holding Allowed Claims. The semi-annual report shall be

25  transmitted to the claimants with forty-five (45) days after the six and twelve month anniversary

26  dates of the Effective Date.

27          3.    The payments to be made to the Class 5 claimants pursuant to the

28  Plan shall be the sole source of distributions payable to such class of claimants.

F) <u>Class 6</u>.  Namvar, or the Namvar Estate (as the case may be), shall retain ownership of the Namco Stock after the Effective. However, during the Plan Period, the right to vote the Namco Stock shall be held by the Voting Trust. On the Effective Date, the Namco Stock certificates shall be affixed with a legend notifying any party that acquires the Namco Stock that the voting rights associated with the stock are held by the Voting Trust during the Plan Period. No distributions or dividends shall be paid to the holder of the Namco Stock until all Allowed Claims against the Namco Estate have been paid in full.

**ARTICLE VI**

**ACCEPTANCE OR REJECTION OF THE PLAN**

6.1    **Plan Voting Rights**. Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan shall be entitled to vote separately to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.  In the event no holder of an Allowed Claim in an impaired Class of Claims submits a Ballot accepting or rejecting the Plan, such Class of Claims shall be deemed to have voted to reject the Plan.

6.2    **Classes Entitled to Vote**. Classes 1, 2, 3 and 4 are not impaired under the Plan. Accordingly these classes are not entitled to vote on the Plan, They are presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Classes 5 and 6 are impaired under the Plan and consequently they are entitled to vote.

6.3    **Non-Consensual Confirmation**. If a Class fails to accept this Plan by the statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Plan Proponent reserves the right to request the Bankruptcy Court to confirm this Plan as to such rejecting Class.

6.4    **Elimination of Vacant Classes**. Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of commencement of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.