1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Richard M. Pachulski (CA Bar No. 90073)
Debra I. Grassgreen (CA Bar No. 169978)
Robert B. Orgel (CA Bar No. 101875)
Stanley E. Goldich (CA Bar No. 92659)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: 310-277-6910
Facsimile: 310-201-0760
E-mail:   rpachulski@pszjlaw.com
              dgrassgreen@pszjlaw.com
              rorgel@pszjlaw.com
              sgoldich@pszjlaw.com
              mpagay@pszjlaw.com

Joint Special Counsel for Bradley D. Sharp, Chapter 11
Trustee for Namco Capital Group, Inc. and R. Todd
Neilson, Chapter 11 Trustee for Ezri Namvar

David W. Meadows (CA Bar No. 137052)
LAW OFFICES OF DAVID W. MEADOWS
1801 Century Park East, Suite 1235
Los Angeles, California  90067
Telephone: 310-557-8490
Fax:  310-557-8493
Email:   david@davidwmeadowslaw.com

Bankruptcy Counsel to Beshmada, LLC, Beshmada of
Delaware, LLC, and Dimes, LLC, Debtors and Debtors in
Possession

*(side margin text)* PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>NAMCO CAPITAL GROUP, INC., a California corporation,<br><br>        Debtor.<br><br>In re:<br><br>EZRI NAMVAR, an individual,<br><br>        Debtor. | Case Nos.:   2:08-bk-32333-BR<br>2:08-bk-32349-BR<br>2:09-bk-25510-BR<br>2:09-bk-25523-BR<br>2:09-bk-25517-BR<br><br>**JOINT CHAPTER 11 PLAN FOR NAMCO CAPITAL GROUP, INC., EZRI NAMVAR, BESHMADA, LLC, BESHMADA OF DELAWARE, LLC AND DIMES, LLC PROPOSED BY THE CHAPTER 11 TRUSTEES AND DIP DEBTORS** |

DOCS_SF:77260.6 59701-001

In re:

BESHMADA OF DELAWARE, LLC, a
Delaware limited liability company,

                    Debtor.

In re:

BESHMADA, LLC, a California limited liability
company,

                    Debtor.

In re:

DIMES, LLC, a California limited liability
company,

                    Debtor.

**Disclosure Statement Hearing**
Date:    _____
Time:    _____
Place:   Courtroom 1660
         255 E. Temple Street
         Los Angeles, CA  90012
Judge:  Barry Russell

**Confirmation Hearing**
[To Be Set]

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1
   1.1   Prefatory Statement ............................................................................................. 1
   1.2   Process, Disclosure and Recommendation. ......................................................... 1
       1.2.1   Process. ..................................................................................................... 1
       1.2.2   Disclosure. ................................................................................................ 2

II. DEFINITIONS AND RULES OF INTERPRETATION ............................................ 2
   2.1   Definitions ........................................................................................................... 2
   2.2   Rules of Construction. ......................................................................................... 2

III. PLAN OVERVIEW .................................................................................................... 3
   3.1   Background. ......................................................................................................... 3
   3.2   Overview of the Plan. .......................................................................................... 4
       3.2.1   In General. ................................................................................................ 4
       3.2.2   The Continuation of the Estates and the Creation of the Liquidating Trusts. 5
       3.2.3   Allocations of Proceeds in the Post Confirmation Estates and Liquidating Trusts to Holders of Unsecured Claims. ...................................................... 6
       3.2.4   Employment and Payment of Professionals, Liquidating Trustees and Estate Representatives After the Effective Date. ............................................ 6
       3.2.5   Inter-Debtor Settlement. ........................................................................... 6
       3.2.6   Other Plan Terms. .................................................................................... 6
          (a)   Payment of Administrative Claims, Priority Claims, Priority Tax Claims and Secured Claims. ............................................................... 6
          (b)   Separate Classification of Claims and Interest of Debtors. ............... 7
          (c)   Payment of Small Convenience Claims. ........................................... 7
          (d)   Interests in Debtors. .......................................................................... 7
          (e)   Plan Funding. .................................................................................... 7
          (f)   No Discharge of Ezri. ....................................................................... 7

IV. TREATMENT OF UNCLASSIFIED CLAIMS ........................................................ 8
   4.1   Treatment of Allowed Administrative Claims. ................................................... 8
       4.1.1   Administrative Claims Bar Dates. ............................................................ 9
          (a)   Bar Date for Gap Administrative Claims. ......................................... 9
          (b)   General Administrative Claims Bar Date. .......................................... 9
          (c)   Administrative Tax Claims Bar Date. ............................................... 9
          (d)   Ordinary Course Administrative Claims Bar Date. ......................... 10
          (e)   Professional Fees Bar Date. ............................................................. 10
   4.2   Treatment of Priority Tax Claims. .................................................................... 10

V. CLASSIFICATION OF CLAIMS AND INTERESTS .............................................. 11
   5.1   Classification Generally. ................................................................................... 11
   5.2   Classes of Claims and Interest ......................................................................... 12

VI. TREATMENT OF CLAIMS AND INTERESTS ................................................... 13
   6.1   Classes 1(a) to 1(e) – Secured Real Property Tax Claims. ............................... 14
       6.1.1   Voting and Impairment. .......................................................................... 14
       6.1.2   Liens. ...................................................................................................... 14
       6.1.3   Alternative Treatments ........................................................................... 14
          (a)   Abandonment. .................................................................................. 14
          (b)   Effective Date Payment. .................................................................. 15
          (c)   Quarterly Payments. ........................................................................ 15
       6.1.4   Sources of Payment. ............................................................................... 15
   6.2   Classes 2(a) to 2(e) – Miscellaneous Secured Claims. ..................................... 15
       6.2.1   Voting and Impairment. .......................................................................... 15
       6.2.2   Liens. ...................................................................................................... 16
       6.2.3   Alternative Treatments ........................................................................... 16
          (a)   Surrender or Abandonment. ............................................................. 16
          (b)   Periodic Payments Pursuant to Approved Settlement Agreements. ... 16
          (c)   Periodic Cash Payments. .................................................................. 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.2.4    Sources of Payment.....................................................17
6.2.5    Unsecured Deficiency Claims.....................................17
6.3    Classes 3(a) to 3(e) – Priority Claims.....................................17
6.3.1    Voting and Impairment.....................................17
6.3.2    Treatment.....................................17
6.3.3    Source of Payment.....................................17
6.4    Classes 4(a) to 4(e) – General Unsecured Claims.....................18
6.4.1    Voting and Impairment.....................................18
6.4.2    Treatment.....................................18
6.4.3    Distribution Dates.....................................18
6.4.4    Source of Payment.....................................18
6.5    Class 5(b) – Bank Guaranty Claims.....................................18
6.5.1    Voting and Impairment.....................................18
6.5.2    Treatment.....................................19
(a)    Settlement of Validity and Enforceability Objections.....................19
(b)    Continued Litigation over Validity and Enforceability of Guaranty..20
6.5.3    Distribution Dates.....................................20
6.5.4    Source of Payment.....................................20
6.6    Class 6(b) – Other Guaranty Claims.....................................20
6.6.1    Voting and Impairment.....................................20
6.6.2    Treatment.....................................21
(a)    Settlement of Validity and Enforceability Objection.....................21
(b)    Continued Litigation over Validity and Enforceability of Guaranty..21
6.6.3    Distribution Dates.....................................22
6.6.4    Source of Payment.....................................22
6.7    Classes 7(a) to 7(e) – Small Convenience Claims.....................22
6.7.1    Voting and Impairment.....................................22
6.7.2    Treatment.....................................22
6.7.3    Source of Payment.....................................23
6.8    Classes 8(a) to 8(e) – Interests.....................................23
6.8.1    Voting and Impairment.....................................23
6.8.2    Treatment.....................................23
VII.    ACCEPTANCE OR REJECTION OF THE PLAN.....................24
7.1    Classes Entitled to Vote.....................................24
7.2    Classes Not Entitled to Vote.....................................24
7.3    Nonconsensual Confirmation.....................................24
VIII.    IMPLEMENTATION OF THE PLAN.....................................24
8.1    Funding for the Plan.....................................24
8.2    Effective Date Payments and Inter-Estate Loans.....................25
8.3    The Post Confirmation Estates/Liquidating Trusts.....................25
8.3.1    Assets to be Retained in the Post Confirmation Estates.....................25
8.3.2    Estate Representatives.....................................25
8.3.3    Responsibilities of Estate Representatives.....................26
8.3.4    Powers of Estate Representatives to Employ and Compensate Agents and Professionals.....................26
8.3.5    Indemnification by Post Confirmation Estates.....................27
8.3.6    Use of Plan Proceeds.....................................27
8.4    The Liquidating Trusts.....................................27
8.4.1    Formation of Liquidating Trusts.....................................27
8.4.2    Transfer and Vesting of Assets to and in the Liquidating Trusts.....................27
8.4.3    Beneficial Entitlements to Liquidating Trust Interests.....................28
8.4.4    Liquidating Trustees.....................................28
(a)    Appointment of Liquidating Trustees.....................28
(b)    Responsibilities of Liquidating Trustees.....................28
(c)    Powers of Liquidating Trustees to Employ and Compensate Agents and Professionals.....................29

|  | (d) | Indemnification by Liquidating Trust. | 30 |
|  | (e) | Use of Liquidating Trust Assets and Liquidating Trust Recovery Proceeds. | 30 |
|  | (f) | Tax Matters | 30 |
| 8.4.5 | Good Faith and Compliance With Law Relating to Distributions | 31 |
| 8.5 | Settlement of Inter-Debtor Claims. | 31 |
| 8.6 | Corporate Action. | 32 |
| 8.7 | No Substantive Consolidation. | 32 |
| 8.8 | Tax Indemnification. | 32 |
| 8.9 | Distributions and Related Matters. | 32 |
| 8.9.1 | Distribution Record Date. | 32 |
| 8.9.2 | Distribution Agents. | 33 |
| 8.9.3 | Distribution Dates. | 33 |
| 8.9.4 | Distributions in Cash and Delivery of Distributions | 34 |
| 8.9.5 | Rounding of Payments. | 34 |
| 8.9.6 | De Minimis Distributions. | 34 |
| 8.9.7 | Hardship Distributions. | 35 |
|  | (a) | Rationale. | 35 |
|  | (b) | Mechanics. | 35 |
| 8.9.8 | Disputed Claims. | 36 |
|  | (a) | Distribution Calculations to Be Made as if Disputed Claims Were Allowed. | 36 |
|  | (b) | Temporary or Permanent Resolution of Disputed Claims. | 36 |
|  | (c) | Distribution Reserves. | 37 |
|  | (d) | No Actual Distributions to be Made to Holders of Disputed Claims. | 37 |
|  | (e) | Distributions After Allowance of Initially Disputed Claims. | 38 |
|  | (f) | Disposition of Assets in Distribution Reserves After Disallowance. | 38 |
| 8.9.9 | Undeliverable Distributions. | 38 |
| 8.9.10 | Unclaimed Property. | 39 |
| 8.9.11 | Setoff, Recoupment and Prior Payments. | 40 |
| 8.9.12 | Compliance with Tax Laws. | 40 |
| 8.10 | Litigation Rights, Objection to and Estimation of Claims and Determination of Taxes. | 41 |
| 8.10.1 | Preservation, Pursuit and Resolution of Litigation Rights | 41 |
| 8.10.2 | Objection to Claims and Objection Deadline. | 44 |
| 8.10.3 | Determination of Taxes. | 44 |
| 8.11 | Cancellation of Existing Notes, Securities and Agreements. | 45 |
| 8.12 | Tax Identification Numbers. | 45 |
| 8.13 | Official Committees and Their Dissolution. | 45 |
| 8.14 | Final Decree. | 45 |
| IX. | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 46 |
| 9.1 | Overview. | 46 |
| 9.2 | Assumption and Assignment. | 46 |
| 9.3 | Extension of Time to Assume or Reject | 47 |
| 9.4 | Assumption Obligations. | 48 |
| 9.5 | Rejection. | 49 |
| 9.6 | Rejection Claims Bar Date. | 50 |
| 9.7 | Bar Date for Bankruptcy Code § 365(n) Election. | 50 |
| 9.8 | Retention of Property Rights. | 51 |
| 9.9 | Effect of Confirmation Order as to Contracts, Leases and Insurance. | 51 |
| 9.10 | Post-Order for Relief Agreements. | 53 |
| 9.11 | Modifications to Plan Supplement. | 53 |
| X. | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 53 |
| 10.1 | Conditions to Confirmation. | 53 |
| 10.2 | Conditions to Plan Effectiveness. | 53 |
| XI. | EFFECT OF CONFIRMATION | 54 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | 11.1 | Binding Effect. | 54 |
|---|---|---|---|
| | 11.2 | Property Retained Free and Clear. | 54 |
| | 11.3 | Permanent Injunction. | 55 |
| | 11.4 | Limitation of Liability | 56 |
| | 11.5 | Exculpation. | 56 |
| | 11.6 | Releases By Estate. | 57 |
| | 11.7 | No Third Party Release. | 58 |
| XII. | | RETENTION OF JURISDICTION | 58 |
| XIII. | | AMENDMENT, WITHDRAWAL OF PLAN  AND VACATION OF CONFIRMATION ORDER | 60 |
| | 13.1 | Amendment of the Plan. | 60 |
| | 13.2 | Vacating Confirmation Order if Failure of Conditions to Plan Effectiveness. | 60 |
| | 13.3 | Revocation or Withdrawal of the Plan. | 61 |
| XIV. | | MISCELLANEOUS | 61 |
| | 14.1 | Effectuating Documents; Further Transactions; Timing. | 61 |
| | 14.2 | No Regulated Rate Change Without Government Approval. | 61 |
| | 14.3 | Pension Plans, Other Retiree Benefits and Labor Contracts. | 62 |
| | 14.4 | Exemption From Transfer Taxes. | 62 |
| | 14.5 | Modification of Payment Terms. | 62 |
| | 14.6 | Provisions Enforceable. | 62 |
| | 14.7 | Quarterly Fees to the United States Trustee. | 63 |
| | 14.8 | Post-Confirmation Status Report. | 63 |
| | 14.9 | Successors and Assigns. | 63 |
| | 14.10 | Notices. | 63 |
| | | 14.10.1  Notices of Confirmation and the Effective Date. | 64 |
| | | 14.10.2  Addresses and Change of Addresses. | 64 |
| | | 14.10.3  Persons Entitled to Post-Effective Date Notices. | 65 |
| | 14.11 | Incorporation by Reference. | 66 |
| | 14.12 | Computation of Time. | 66 |
| | 14.13 | Conflict of Terms. | 66 |
| | 14.14 | Headings. | 66 |
| | 14.15 | Severability of Plan Provisions. | 66 |
| | 14.16 | Governing Law. | 67 |
| | 14.17 | Good Faith and Compliance with Laws. | 67 |
| | 14.18 | No Admission. | 67 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **EXHIBIT LIST**

EXHIBIT A  List of Allowed Inter Debtor Claims

EXHIBIT B  Definitions

EXHIBIT C  Bank Guaranty Claims

EXHIBIT D  Namvar Relatives

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I.

# **INTRODUCTION**

### **1.1    Prefatory Statement.**

This *Joint Chapter 11 Plan For Namco Capital Group, Inc., Ezri Namvar, Beshmada, LLC, Beshmada of Delaware, LLC and Dimes, LLC Proposed by the Chapter 11 Trustees and DIP Debtors* (the "Plan") is filed under section 1121(a) of the Bankruptcy Code by the Namco Trustee,[1] the Ezri Trustee, Beshmada, Beshmada of DE, and Dimes (the "Proponents") for the chapter 11 bankruptcy cases of Namco, Ezri Namvar, Beshmada, Beshmada of DE, and Dimes.  The Proponents are pleased to be presenting this Plan jointly.

A separate document, entitled *Disclosure Statement With Respect to Joint Chapter 11 Plan for Namco Capital Group, Inc., Ezri Namvar, Beshmada, LLC, Beshmada of Delaware, LLC and Dimes, LLC Proposed by the Chapter 11 Trustees, Official Committees and DIP Debtors* (the "Disclosure Statement") is being sent as an accompaniment to the Plan, which may be included in the same envelope as this document or under separate cover.

### **1.2    Process, Disclosure and Recommendation.**

#### **1.2.1    Process.**

This Plan is a blueprint of how the Debtors, their Estates and their Assets will be structured and liquidated after or as a result of bankruptcy.  It sets forth the form of entities they will be, who will own them and what Distributions will be made or required.  Among other things, the Plan designates Classes of Claims and Classes of Interests, identifies Unimpaired and Impaired Classes, sets forth a proposal for the satisfaction of all Claims against, and Interests in, the Debtors or their Estates, and provides adequate means for the implementation of the Plan.

Holders of Claims and Interests entitled to vote on the Plan will receive a Ballot for voting on this Plan and the Disclosure Statement.

---

[1]  All capitalized terms are defined as set forth on **Exhibit B**.

### 1.2.2   Disclosure.

The Disclosure Statement is intended to provide Creditors with information sufficient to enable Creditors to vote on the Plan.  The Disclosure Statement has been approved by the Bankruptcy Court as containing sufficient information for that purpose.  The Disclosure Statement includes a summary of the Plan, the Debtors' Estates' assets and liabilities, a summary of what Holders of Allowed Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for confirmation of the Plan.

Each Creditor of the Debtors or their Estates should thoroughly review both the Plan and Disclosure Statement before deciding whether to accept or reject the Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved for solicitation purposes by the Bankruptcy Court, have been authorized for use in soliciting acceptances or rejections of the Plan.  **The Trustees and the DIP Debtors recommend approval of this Plan.**

### II.

### DEFINITIONS AND RULES OF INTERPRETATION

### 2.1   Definitions.

The defined terms set forth in the Glossary of Defined Terms attached as **Exhibit B** hereto are incorporated into the Plan by this reference and shall apply to capitalized terms used in the Plan, provided that any capitalized term that is not defined in the Plan, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### 2.2   Rules of Construction.

For purposes of the Plan and Disclosure Statement, unless otherwise provided in the Plan or in the Disclosure Statement, (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) any reference in the Plan or the Disclosure Statement to a document or to a schedule means such document or schedule as it may have been or may be amended, modified, supplemented or restated

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

pursuant to the Plan or otherwise from time to time; (d) any reference to a Person as a Holder of a Claim or Interest includes that Person's successors and assigns; (e) except as otherwise indicated in the Plan or Disclosure Statement, all references in the Plan or the Disclosure Statement to Sections and Articles are references to Sections and Articles of or to the Plan; (f) unless otherwise indicated, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) unless otherwise provided in the Plan or the Disclosure Statement, any reference in the Plan or the Disclosure Statement to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; (h) "include," "includes," "included," and "including" are not limiting; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of the Plan or the Disclosure Statement or any other provision in this Section.

## III.

## PLAN OVERVIEW

The overview of the Plan in this Article III is not intended to substitute for the Disclosure Statement or for the more specific terms set forth in the Plan.  If there are any discrepancies between this overview, the Disclosure Statement or other provisions of the Plan, the Plan shall control.

### 3.1    Background.

The Debtors are:

- Ezri Namvar ("Ezri");
- Namco Capital Group, Inc. ("Namco");
- Beshmada, LLC ("Beshmada");
- Beshmada of Delaware, LLC ("Beshmada of DE"); and
- Dimes, LLC ("Dimes")

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Each Debtor is a debtor in a separate case pending under chapter 11 of the Bankruptcy Code (collectively, the "Cases").  The Cases are not being jointly administered and their assets and liabilities were not substantively consolidated.

The commencement of the Cases created for each Debtor, by statute (11 U.S.C. § 541), an Estate, consisting of all of the legal and equitable interests of that Debtor in property as of the commencement of the Cases, subject to certain exceptions.  The Estates' Assets, more fully described in the Disclosure Statement, include Cash, Available Real Estate and Litigation Rights (which include Litigation Rights against Namvar Relatives and against third parties, and may include Litigation Rights to recover interests in real property).  Each Debtor's Estate is believed to be insolvent, meaning that the Allowed Claims of Creditors against each Estate are believed to exceed the value of that Estate's interests in Cash, Available Real Estate, Other Assets and Litigation Rights.  This Plan is a chapter 11 plan for each Debtor and each Estate.

For Ezri, R. Todd Neilson was appointed by the Bankruptcy Court as the chapter 11 trustee and controls the Ezri Estate and its Assets.  For Namco, Bradley D. Sharp was appointed by the Bankruptcy Court as the chapter 11 trustee and controls the Namco Estate and its Assets.  Although Beshmada, Beshmada of DE and Dimes remain in possession and control of their Assets as debtors in possession, each DIP Debtor retained Cicalese, for the management and operation of its businesses, who was appointed as the successor manager of each of the DIP Debtors on or about July 2, 2009 (pursuant to a stipulation between Sharp, Neilson and Ezri), which stipulation was approved by the Bankruptcy Court.

### 3.2    Overview of the Plan.

#### 3.2.1    In General.

The Plan's goals are to:

- establish a process for determining which of the Creditors' Claims against the Debtors or their Estates should be Allowed;

- settle the Inter-Debtor Claims;

- provide from available Cash for full satisfaction of those Administrative Claims, Priority Tax Claims and Priority Claims that are Allowed;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- provide fair treatment for any Allowed Secured Claims;

- enable the efficient liquidation of the Estates' Assets, including Litigation Rights and Real Estate Assets;

- cash out certain Small Convenience Claims;

- provide a mechanism for payment to "Hardship" creditors; and

- fairly divide among Holders of Unsecured Claims the proceeds of the Estates' Assets.

### 3.2.2 The Continuation of the Estates and the Creation of the Liquidating Trusts.

Following confirmation of the Plan: (a) the Namco and Ezri Estates will continue and be managed and controlled by the Estate Representatives, and (b) the assets of the DIP Debtors will be transferred to Liquidating Trusts that will be formed for each of the DIP Debtors and managed by the Liquidating Trustees. Besides any residual Cash and Real Estate, the primary value of each Estate's Plan Assets is expected to be found in its Litigation Rights, including Litigation Rights against Namvar Relatives and against third parties. The Litigation Rights may include claims for or result in the recovery of Available Real Estate and Real Estate.

The management structure of the Post Confirmation Estates and the Liquidating Trusts is set forth in Article VIII of the Plan. The Estate Representatives and Liquidating Trustees are collectively referred to as the Control Parties. The goal of the Control Parties will be to liquidate the Post Confirmation Estate Assets and make periodic Pro Rata Distributions of the Available Plan Proceeds to Holders of Allowed Claims of the applicable Debtor or Estate. Allowed Inter-Debtor Claims will be treated the same as any other claim against a Post Confirmation Estate or Liquidating Trust and will result in some of the Plan Proceeds of one Debtor's Post Confirmation Estate or Liquidating Trust being redirected to another Debtor's Post Confirmation Estate or Liquidating Trust.

Following the Effective Date of the Plan, the Control Parties also will have the sole power to object to and resolve Disputed Claims against the respective Estates.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 3.2.3 Allocations of Proceeds in the Post Confirmation Estates and Liquidating Trusts to Holders of Unsecured Claims.

Available Plan Proceeds in each Post Confirmation Estate or Liquidating Trust shall be divided Pro Rata among the Creditors of such Estate holding Allowed General Unsecured Claims, Allowed Bank Guaranty Claims and Allowed Other Guaranty Claims, provided that, in exchange for the Ezri Estate waiving certain defenses to the Other Guaranty Claims, the allowed amount thereof may be reduced and in exchange for such waiver as to the Bank Guaranty Claims, the pay rate for such Claims may be reduced.

### 3.2.4 Employment and Payment of Professionals, Liquidating Trustees and Estate Representatives After the Effective Date.

The Post Confirmation Estates and Liquidating Trusts shall be authorized to employ and pay Professionals after the Effective Date subject to Court approval at certain thresholds set forth in the Plan.

### 3.2.5 Inter-Debtor Settlement.

Certain Estates hold Inter-Debtor Claims against other Estates.  Under the Plan, Inter-Debtor Claims are Allowed in the amounts set forth in **Exhibit A** and shall be treated in the same manner as all other Class 4 General Unsecured Claims.

### 3.2.6 Other Plan Terms.

As more fully set forth in subsequent Sections of the Plan, other required and essential provisions of the Plan include the following.

#### (a) Payment of Administrative Claims, Priority Claims, Priority Tax Claims and Secured Claims.

Under the Plan, proceeds of sales of Real Estate occurring during the Cases and intercompany loans will be used to make payment on the Effective Date of Allowed Secured Claims, Allowed Priority Claims, Allowed Priority Tax Claims and Allowed Administrative Claims.  To enable full and timely payment of such Claims, certain Professionals have agreed to defer payment of their Allowed Administrative Claims until after the Effective Date of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(b)** **Separate Classification of Claims and Interest of Debtors.**

Because the Cases have not been substantively consolidated, the Plan provides for separate treatment for Holders of Claims and Interests against each Estate and, although described together for convenience, classifies separately Claims and Interests against each Estate through the use of subclasses.

**(c)** **Payment of Small Convenience Claims.**

To reduce costs and promote efficiency of the administration of the Post Confirmation Estates, the Plan provides for a 10% Cash payment to cash out certain smaller Claims, the Small Convenience Claims (which, as more fully defined in **Exhibit B**, are Claims with an Allowed Amount under or reduced to $100,000).

**(d)** **Interests in Debtors.**

Upon the Effective Date of the Plan, (i) the Interests in the DIP Debtors will be cancelled; (ii) Ezri will not receive or retain any property on account of his Interest in the Ezri Estate; and (iii) Ezri Estate's interest in Namco will be retained under the Plan, but for administrative convenience and benefit to the Namco Estate only and not on account of the Ezri Estate's present ownership of such Interests.

**(e)** **Plan Funding.**

The primary sources of funding for the Plan are cash on hand, proceeds of real property sales and potential tax refunds. Estimated funding needed on the Effective Date of the Plan is $19.4 million for payment of the following: (i) projected outstanding Administrative Claims of $3.6 million for professional fees (assuming 80% deferral of certain Professional Fees by agreement) and $3.5 million for post-petition inter-debtor loans, (ii) projected Priority Tax Claims of $1.5 million, (iii) funding of the Post Confirmation Estates and Liquidating Trusts in the total amount of $10.0 million, and (iv) funding for payment of Small Convenience Claims in the estimated amount of $0.8 million.

**(f)** **No Discharge of Ezri.**

Ezri will not receive any discharge under section 1141 of the Bankruptcy Code.  Ezri's Postpetition Earnings and Post-Effective Date Earnings are excluded from the Assets of the Post

1    Confirmation Estates under the Plan, but remain subject to any Litigation Rights of Post

2    Confirmation Estates or any Creditors against Ezri.

3                                              **IV.**

4                    **TREATMENT OF UNCLASSIFIED CLAIMS**

5            As required by the Bankruptcy Code, the Plan places Claims and Interests into various

6    Classes according to their right to priority.  However, in accordance with Bankruptcy Code

7    § 1123(a)(1), certain types of Claims are not classified in any Classes under the Plan, and the

8    Proponents have not placed such Claims in a Class.  These Claims are "unclassified."  Allowed

9    Administrative Claims, Allowed Priority Tax Claims, and Allowed Secured Tax Claims are not

10   considered Impaired, and they do not vote on the Plan because they are automatically entitled to

11   specific treatment provided for them in the Bankruptcy Code.  The treatment of these unclassified

12   Claims is as provided below.

13       **4.1    Treatment of Allowed Administrative Claims.**

14           Except to the extent that the Holder of an Allowed Administrative Claim agrees to a different

15   treatment, and subject to the Administrative Claims Bar Dates set forth in the Plan, the Control

16   Parties shall pay each Allowed Administrative Claim in full, in Cash, the later of (i) on the Effective

17   Date, (ii) within fourteen (14) Business Days after the date such Administrative Claim becomes an

18   Allowed Administrative Claim, or (iii) on the date such Allowed Administrative Claim becomes due

19   according to its terms.  Nothing in the Plan shall prohibit the DIP Debtors, Trustees or Control

20   Parties from paying, during or after the Cases, Administrative Claims in the ordinary course of

21   business in accordance with applicable law and the terms of the particular obligation (including,

22   without limitation, Ordinary Course Administrative Claims), but after the Effective Date, the DIP

23   Debtors and Trustees shall have no obligations to pay any Claims, including Administrative Claims,

24   and the Control Parties' obligation to pay Administrative Claims will depend upon the claimant's

25   compliance with this Plan Section and such Administrative Claim being Allowed under the

26   provisions of the Plan.

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 4.1.1    Administrative Claims Bar Dates.

Any Administrative Claim not Filed by the applicable Administrative Claims Bar Date shall

not be Allowed and no Distribution shall be made on account of any such Administrative Claim.

Any Person asserting such an Administrative Claim shall be forever barred from asserting such

Claim against Namco, the DIP Debtors, the Estates, the Post Confirmation Estates, the Liquidating

Trusts, the Control Parties, and their Agents and property.

#### (a)    Bar Date for Gap Administrative Claims.

In accordance with Bankruptcy Code § 502(f), all requests for payment of Gap

Administrative Claims (*e.g.*, Administrative Claims that, among other things, are incurred in the

ordinary course of business or financial affairs in the Cases from or after the applicable Petition Date

and before the Order for Relief Date) shall be or shall have been Filed with the Bankruptcy Court

and served upon the Control Parties no later than the Prepetition Claims Bar Date (which was

November 13, 2009 for Namco and Ezri and November 15, 2010 for the DIP Debtors).

#### (b)    General Administrative Claims Bar Date.

All requests for payment of Administrative Claims incurred before the Effective Date under

Bankruptcy Code §§ 507(a)(2), 507(a)(3) or 507(b) shall be Filed with the Bankruptcy Court and

served upon the Control Parties no later than the General Administrative Claims Bar Date (which is

8 weeks (56 days) after the Effective Date, unless such date is extended by the Bankruptcy Court

after appropriate notice).

#### (c)    Administrative Tax Claims Bar Date.

Notwithstanding the General Administrative Claims Bar Date, all requests for payment of

Administrative Claims by a Governmental Unit for Taxes (and for interest and/or penalties related to

such Taxes) for any Tax year or period, all or any portion of which occurs or falls within the period

from and including the applicable Order for Relief Date and through and including the Effective

Date ("Administrative Tax Claims") must be Filed and served (if after the Effective Date, on the

Control Parties) by the Administrative Tax Claims Bar Date (which is the earlier of:  (a) any Bar

Date applicable to such Claim established by the Bankruptcy Court prior to the Effective Date; or (b)

the first Business Day following the later of (i) the fifty-sixth (56th) day after the Effective Date, or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    (ii) the one-hundred seventy-fifth (175th) day after the filing of the Tax return for such Tax year or

2    period with the applicable Governmental Unit).

3    **(d)** **Ordinary Course Administrative Claims Bar Date.**

4    Notwithstanding the Bar Dates for General Administrative Claims and Administrative Tax

5    Claims, all requests for payment of Ordinary Course Administrative Claims (which are

6    Administrative Claims for ordinary course trade obligations and routine payroll obligations incurred

7    in the ordinary course of an Estate's business on or after the applicable Order for Relief Date and

8    before the Confirmation Date) must be Filed and served (if after the Effective Date, on the Control

9    Parties) by the Ordinary Course Administrative Claims Bar Date (which is the earlier of: (1) any Bar

10   Date applicable to a particular Claim as previously established for such Claim in these Cases; or (2)

11   the first Business Day that is the later of (a) the fifty-sixth (56th) day following the Effective Date,

12   or (b) any other Administrative Claims Bar Date established under this Plan).

13   **(e)** **Professional Fees Bar Date.**

14   Administrative Claims for Professional Fees for services rendered and for reimbursement of

15   expenses incurred on or after the applicable Order for Relief Date and before the Effective Date must

16   be asserted through the Filing of a Fee Application.  Notwithstanding the other Administrative

17   Claims Bar Dates, all such Fee Applications shall be Filed with the Bankruptcy Court and served

18   upon the Control Parties no later than the Professional Fee Bar Date (which is the first Business Day

19   following the fifty-sixth (56th) day (eight (8) weeks) after the Effective Date, unless such date is

20   extended by the Bankruptcy Court after appropriate notice).

21   **4.2** **Treatment of Priority Tax Claims.**

22   Priority Tax Claims are certain unsecured income taxes, employment taxes and other Taxes

23   described by Bankruptcy Code § 507(a)(8).  The Bankruptcy Code requires that each Holder of such

24   a Priority Tax Claim receive the present value of such Claim in deferred Cash payments over a

25   period not exceeding five (5) years from the applicable Order for Relief Date and that such treatment

26   not be less favorable than the treatment accorded to non-priority unsecured creditors.

27   Allowed Priority Tax Claims, if any, shall receive from the respective Post Confirmation

28   Estate or Liquidating Trust (i) equal Cash payments to be made on the last Business Day of each

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

third full-calendar month following the Effective Date, provided that the first payment need not be made any sooner than twenty-eight (28) days following the Effective Date and provided that such periodic payments are to be payable until January 29, 2014 for the Namco and Ezri Cases and July 2, 2014 for the DIP Debtors' Cases,[2] on which date the final payment shall be due, with all such payments totaling 100% of the principal amount of such Claim, plus interest on any unpaid balance from the Effective Date, calculated at the nonbankruptcy interest rate applicable on the Effective Date, if any, or (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim and the applicable Control Party, provided such treatment is on more favorable terms to the applicable Post Confirmation Estate or Liquidating Trust than the treatment set forth in clause (i) hereof; provided that, prepayments shall be permitted, including payment in full, any time on or after the Effective Date.

**V.**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**5.1    Classification Generally.**

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority and other relative rights.  This Plan specifies whether each Class of Claims or Interests is Impaired or Unimpaired, and the Plan sets forth the treatment each Class will receive.  The table below lists the Classes of Claims established under the Plan and the categories of unclassified Claims which were described in Article IV above.  All Classes of Claims and Interests are Impaired.

For voting purposes and to comply with Bankruptcy Code § 1122(a), each Allowed Secured Claim shall be deemed to be in its own subclass even if not expressly designated as such.  Further, in the event that any alleged Secured Claim is not, or is only partially, Allowed as a Secured Claim, the deficiency amount (Unsecured Deficiency Claim) (if Allowed and, where applicable, Filed by the Unsecured Deficiency Claim Bar Date), will constitute a Class 4 Claim or Class 7 Claim against the

---

[2]   For the Namco and Ezri Cases, this date is five years after January 29, 2009, which was the date of the Orders for Relief in the Namco and Ezri Cases.  For the DIP Debtors' Cases, this date is five years after July 2, 2010, which was the date of the Orders for Relief in the DIP Debtors' Cases.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

applicable Estate, as appropriate, and will receive the same treatment as provided to other Claims in Class 4 or Class 7 of such Estate.

The Plan does not intend to and does not provide for substantive consolidation of any of the Debtors for any purpose, e.g., for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code, for treatment of Claims and Interests, or for the obligations created under the Plan with respect to Distributions for Creditors.  Thus, each Allowed Claim in a Class shall be deemed to be in one or more subclasses of the applicable Debtor:

Namco:             Subclass (a);

Namvar:            Subclass (b);

Beshmada:          Subclass (c);

Beshmada of DE:    Subclass (d); and

Dimes:             Subclass (e)

If, at the hearing on Confirmation, the Proponents establish a reasonable good faith belief that a particular Class or subclass contains no Allowed Claims, such Class or subclass shall be disregarded.

THE INVESTIGATION OF CLAIMS AND INTERESTS IS NOT YET COMPLETE, AND THEIR LISTING IN THE PLAN OR IN THE TABLES BELOW SHOULD NOT BE CONSTRUED AS INDICATING OR PROVIDING, FOR ANY PARTICULAR CLAIM, THAT SUCH CLAIM IS ALLOWED UNDER THE PLAN IN ANY RESPECT (WHETHER AS TO AMOUNT OR AS TO STATUS, E.G., AS A SECURED CLAIM, SECURED REAL PROPERTY TAX CLAIM, ETC.), EXCEPT AS EXPRESSLY SET FORTH ELSEWHERE IN THE PLAN.

**5.2    Classes of Claims and Interest**

The Plan contains 7 Classes of Claims and one Class of Interests for each case.  All Classes of Claims are Impaired and entitled to vote on the Plan.  All classes of Interests are Impaired, but are deemed to reject the Plan as they will receive no recovery.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Estimated Allowed Claims by Class and Case[3]**

|  | Namco Classes 1-8(a) | Ezri Classes 1-8(b) | Beshmada Classes 1-8(c) | Beshmada of DE Classes 1-8(d) | Dimes Classes 1-8(e) |
|---|---|---|---|---|---|
| Unclassified Administrative Claims | $10,804,653 | $6,916,214 | $181,277 | $105,745 | $15,106 |
| Unclassified Priority Tax Claims | $617,319 | $847,387 | $3,253 | $3,712 | $12,195 |
| Classes 1: Secured Real Property Tax Claims | $0 | $0 | $0 | $0 | $0 |
| Class 2: Miscellaneous Secured Claims | $2,073,966 | $0 | $1,200,088 | $0 | $0 |
| Class 3: Priority Claims | $0 | $0 | $0 | $0 | $0 |
| Class 4: General Unsecured Claims | $507,680,257 | $202,990,229 | $293,850,782 | $26,983,931 | $13,202,181 |
| Class 5: Bank Guaranty Claims[4] | N/A | $190,308,655 | N/A | N/A | N/A |
| Class 6: Other Guaranty Claims[5] | N/A | $14,921,232 | N/A | N/A | N/A |
| Class 7: Small Convenience Claims | $7,663,469 | $177,083 | $20,713 | $0 | $3,746 |
| Class 8: Interests | N/A | N/A | N/A | N/A | N/A |

## VI.

## TREATMENT OF CLAIMS AND INTERESTS

The following describes the treatment and Distributions, if any, to be made in respect of Allowed Claims and Allowed Interests that are classified.  No Distributions will be made in respect of Claims or Interests that are not Allowed, including those Disallowed or not Filed by the applicable Prepetition Claims Bar Date.

---

[3]  The amounts listed are the Proponents estimates only of what the Allowed Claims will be in each Class following the conclusion of the claim objection process.

[4] These estimates do not take into account defenses/objections to the Bank Guaranty Claims based on the validity and enforceability of the underlying guarantee agreements.

[5]  The estimated amount of Other Guaranty Claims assumes that all Creditors holding Other Guaranty Claims agree to the proposed settlement of guaranty defenses where they agree to reduce their claims to 15% of the otherwise Allowed amount if the guarantees are valid in consideration of the Ezri Trustee's waiver of his defense to the validity and enforcement of the guaranty.  The Ezri Trustee believes that it is likely that the Other Guaranty Claims will be zero if the validity and enforceability of the guaranties is litigated, however, there are risks and uncertainties in the ultimate outcome and the Ezri Estate would incur additional legal fees in litigation. If the Trustee does not prevail in litigation on the validity and enforceability of guaranty defenses the Allowed amounts of the Claims may be substantially higher.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**6.1     Classes 1(a) to 1(e) – Secured Real Property Tax Claims.**

The treatment of any Allowed Secured Real Property Tax Claims in Class 1 under the Plan is as follows:

### 6.1.1    Voting and Impairment.

Class 1 is Impaired under the Plan, and each Holder of an Allowed Secured Real Property Tax Claim, if any, is entitled to vote on the Plan.

### 6.1.2    Liens.

As of the Effective Date, each Holder of an Allowed Secured Real Property Tax Claim in Class 1, on account of such Claim, if any, shall retain its underlying Liens on the applicable collateral pending full payment.

### 6.1.3    Alternative Treatments.

Each Holder of an Allowed Secured Real Property Tax Claim shall receive, on account of and in full and final satisfaction of any such Claim, one of the three alternative treatments identified immediately below.  At any time prior to Confirmation, the Trustee or DIP Debtor of the applicable Estate may elect option (a): Abandonment.  If option (a): Abandonment is not elected, the Holder of each Allowed Secured Real Property Tax Claim shall have the opportunity to elect between treatment (b): Effective Date Payment or treatment (c): Quarterly Payments, below in connection with voting on the Plan.  If such Holder does not return a Ballot or does not otherwise make such election, such Holder will receive treatment (c): Quarterly Payments.

#### (a)     Abandonment.

At the applicable Trustee's or DIP Debtor's election, the property securing such Allowed Secured Real Property Tax Claim shall be abandoned and, as of the Effective Date, the Holder of any such Allowed Secured Real Property Tax Claim in Class 1, on account of such Claim, shall have left unaltered its legal, equitable and contractual rights as a Holder of such Allowed Secured Real Property Tax Claim in Class 1 and shall be free to pursue its rights and remedies, if any, against the underlying collateral under applicable non-bankruptcy law; or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

(b)    **Effective Date Payment.**

2      On the Effective Date or as soon as practicable thereafter, the Holder of the applicable

3  Allowed Secured Real Property Tax Claim shall receive a lump sum payment, equal to the amount

4  of such Allowed Secured Real Property Tax Claim as of the Petition Date, plus interest thereupon

5  from the Petition Date until payment at the rate of five percent (5%) per annum; or

6

(c)    **Quarterly Payments.**

7      Each Holder of an Allowed Secured Real Property Tax Claim shall receive quarterly Cash

8  payments, with interest at the rate applicable under non-bankruptcy law, if any, or, if none, the

9  federal judgment rate applicable as of the Effective Date, with each payment to be made on the last

10  Business Day of each third full-calendar month following the Effective Date by the applicable Estate

11  or Liquidating Trust (provided that the first payment need not be made any sooner than twenty-eight

12  (28) days following the Effective Date).  Payments shall continue until five years following the

13  applicable Order for Relief Date, on which date the final payment shall be due.  Prepayments are

14  permitted any time on or after the Effective Date, including payment in full of the Allowed Amount

15  of the Claim, plus accrued interest as provided in this paragraph.

16

### 6.1.4    Sources of Payment.

17      Any amounts payable to the Holders of Allowed Secured Real Property Tax Claims under

18  the Plan shall be made on the Effective Date or thereafter by the applicable DIP Debtor or Trustee

19  and, after the Effective Date, as its own obligation, by the applicable Post Confirmation Estate or

20  Liquidating Trust that owns the real property serving as collateral for the subject Claim.

21

### 6.2    Classes 2(a) to 2(e) – Miscellaneous Secured Claims.

22      The treatment of any Allowed Miscellaneous Secured Claims in Class 2 under the Plan shall

23  be as follows:

24

### 6.2.1    Voting and Impairment.

25      Class 2 is Impaired under the Plan, and each Holder of an Allowed Miscellaneous Secured

26  Claim in Class 2, if any, is entitled to vote on the Plan.

27

28

### 6.2.2   Liens.

As of the Effective Date, each Holder of an Allowed Miscellaneous Secured Claim in Class 2, if any, on account of such Claim, shall retain its underlying Liens on the applicable collateral pending full payment.

### 6.2.3   Alternative Treatments.

Unless such Holder agrees to a less favorable treatment, each Holder of an Allowed Miscellaneous Secured Claim, if any, will receive, on account of and in full and final satisfaction of any such Allowed Miscellaneous Secured Claim, one of the following treatments which shall be selected by the applicable Trustee or DIP Debtor and communicated to the Holder of such Claim prior to the Voting Deadline:

**(a)**   **Surrender or Abandonment.**

As of the Effective Date, the applicable DIP Debtor or Trustee of the applicable Estate will be deemed to abandon or surrender to the Holder of any Allowed Miscellaneous Secured Claim in Class 2 the property securing such Allowed Miscellaneous Secured Claim in Class 2 as of the Effective Date, and will turn over possession of such collateral to the Holder of such Allowed Miscellaneous Secured Claim as soon as practicable thereafter; or

**(b)**   **Periodic Payments Pursuant to Approved Settlement Agreements.**

The Holder of any Allowed Miscellaneous Secured Claim that is subject to a settlement agreement that is approved by the Bankruptcy Court prior to or in connection with the Plan shall receive periodic payments and such other rights as are set forth in such settlement agreements; or

**(c)**   **Periodic Cash Payments.**

The Holder of a Miscellaneous Secured Claim shall receive twenty (20) equal quarterly Cash payments, with interest at the rate of five percent (5%) per annum, with each payment to be made on the last Business Day of each third full calendar month following the Effective Date by the applicable Post-Confirmation Estate or Liquidating Trust (provided that the first payment need not be made any sooner than twenty-eight (28) days following the Effective Date).  Prepayments are permitted any time on or after the Effective Date, including payment in full of the Allowed Amount of the Claim, plus accrued interest as provided in this paragraph.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 6.2.4    Sources of Payment.

Any amounts payable to the Holders of Allowed Miscellaneous Secured Claims under the Plan shall be made by the applicable Estate, Post-Confirmation Estate or Liquidating Trust.

### 6.2.5    Unsecured Deficiency Claims.

If a Holder of an Allowed Miscellaneous Secured Claim contends it holds or wishes to assert an Unsecured Deficiency Claim related to its Allowed Miscellaneous Secured Claim then, by the Unsecured Deficiency Claims Bar Date (which is no later than the first Business Day that is at least twenty-eight (28) days following the Effective Date) and regardless of any prior Filing of one or more proofs of Claim by such Holder, such Holder must File (and serve upon the Control Parties) an amended proof of Claim (in compliance with Bankruptcy Rule 3001) asserting, inter alia, the amount of such Unsecured Deficiency Claim.  Any such Unsecured Deficiency Claim, if Allowed, shall be treated as a General Unsecured Claim or Small Convenience Claim, as applicable.

## 6.3    Classes 3(a) to 3(e) – Priority Claims.

The treatment of any Allowed Priority Claims in Class 3 under the Plan shall be as follows:

### 6.3.1    Voting and Impairment.

Class 3 is Unimpaired under the Plan, and each Holder of an Allowed Priority Claim in Class 3 is not entitled to vote on the Plan.

### 6.3.2    Treatment.

Each Holder of an Allowed Priority Claim in Class 3 shall be paid, on account of such Claim, as an obligation of the applicable Estate, Post Confirmation Estate, or Liquidating Trust, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Priority Claim, the full amount of such Allowed Priority Claim in Cash on the later of (i) the Effective Date, or (ii) the date such Allowed Priority Claim becomes payable in accordance with the terms governing such Allowed Priority Claim.

### 6.3.3    Source of Payment.

Distributions to Holders of Allowed Priority Claims shall be paid by the applicable Estate, Post Confirmation Estate, or Liquidating Trust.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**6.4    Classes 4(a) to 4(e) – General Unsecured Claims.**

The treatment of any Allowed General Unsecured Claims in Class 4 under the Plan shall be as follows:

**6.4.1    Voting and Impairment.**

Class 4 is Impaired under the Plan, and each Holder of an Allowed General Unsecured Claim is entitled to vote on the Plan.

**6.4.2    Treatment.**

Each Holder of an Allowed General Unsecured Claim (including an Allowed Inter-Debtor Claim) shall be entitled to receive, on account of such Allowed Claim, Distributions of a Pro Rata share, together with (i) Holders of Other Allowed Class 4 General Unsecured Claims, (ii) as to the Ezri Estate only, Holders of Allowed Bank Guaranty Claims against the Ezri Estate and (iii) as to the Ezri Estate only, Holders of Allowed Other Guaranty Claims against the Ezri Estate, of the Available Plan Proceeds of its applicable Post Confirmation Estate or Liquidating Trust.

**6.4.3    Distribution Dates.**

Distributions of Available Plan Proceeds shall be payable at such times as determined in the sole discretion of the applicable Control Party, considering, inter alia, the amount of funds available for Distribution and the progress in the Claims allowance process.

**6.4.4    Source of Payment.**

Distributions to Holders of Allowed General Unsecured Claims shall be paid by the applicable Estate, Post Confirmation Estate, or Liquidating Trust.

**6.5    Class 5(b) – Bank Guaranty Claims.**

**Class 5 only applies to the Ezri Estate.**  The treatment of any Allowed Bank Guaranty Claims in Class 5(b) under the Plan shall be as follows:

**6.5.1    Voting and Impairment.**

Class 5 is Impaired under the Plan.  Each Holder of a Bank Guaranty Claim is entitled to vote on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 6.5.2    Treatment.

All Class 5 Bank Guaranty Claims are Disputed.  Holders of Bank Guaranty Claims may select one of the following treatments on their Ballot.  If no Ballot is timely returned by a Holder of a Bank Guaranty Claim or if the Holder of a Bank Guaranty Claim does not make a selection of one of the following options, then such Claim will receive the treatment set forth in Section (b) below.

### (a)    Settlement of Validity and Enforceability Objections.

If a Holder of such Claim both (a) elects to settle, to the extent provided below, the dispute regarding the validity and enforceability of its guaranty and (b) votes to accept the Plan on its ballot, then:

(i)    The Ezri Estate will waive as of the Plan's Effective Date its objections to such Bank Guaranty Claim to the extent based on the validity and enforceability of the underlying guaranty agreement, but will not waive any other defenses, setoffs, recoupments or reductions and

(ii)    To the extent of any resulting Allowed Bank Guaranty Claim, the Holder of such Allowed Claim shall receive, on account of such Allowed Claim, Distributions of a Pro Rata share, together with (I) other Holders of Allowed Class 5(b) Bank Guaranty Claims against the Ezri Estate, (II) the Holders of Allowed Class 4(b) General Unsecured Claims against the Ezri Estate and (III) the Holders of Allowed Class 6(b) Other Guaranty Claims against the Ezri Estate of the Available Plan Proceeds of the Ezri Estate, provided that

(iii)    In exchange for the Ezri Estate's objection waiver as provided above in this section, the pay rate for such electing Holders of an Allowed Bank Guaranty Claim against the Ezri Estate shall be reduced relative to the pay rate for Holders of other Allowed Claims sharing in such Available Plan Proceeds, which reduction shall be effectuated by quadrupling for purposes of calculating Distributions, the amount of other Allowed Claims in Class 4(b), Class 5(b) (if non-electing) or Class 6(b) until the amount of Available Plan Proceeds Distributed is 25% of the aggregate of all Allowed Claims in Classes 4(b), 5(b) and 6(b).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(b)    Continued Litigation over Validity and Enforceability of Guaranty.**

If a Holder of a Bank Guaranty Claim against the Ezri Estate does not both (a) vote in favor of the Plan <u>and</u> (b) elect to settle the dispute regarding the validity and enforceability of its guaranty, then:

(i)    Such Holder shall retain its Bank Guaranty Claim against the Ezri Estate and the applicable Control Party shall retain and reserve for assertion all appropriate objections and defenses to such Claim; and

(ii)    In the event such Claim is ultimately Allowed, each Holder of an Allowed Bank Guaranty Claim against the Ezri Estate shall receive on account of such Allowed Claim against the Ezri Estate Distributions of a Pro Rata share, together with (I) the other Holders of Allowed Class 5(b) Bank Guaranty Claims against the Ezri Estate, (II) the Holders of Allowed Class 4(b) General Unsecured Claims against the Ezri Estate, and (III) the Holders of Allowed Class 6(b) Other Guaranty Claims against the Ezri Estate of Available Plan Proceeds of the Ezri Estate.

**6.5.3    Distribution Dates.**

Distributions of Available Plan Proceeds shall be payable at such times as determined in the sole discretion of the applicable Control Party, considering, inter alia, the amount of funds available for Distribution and the progress in the Claims allowance process.

**6.5.4    Source of Payment.**

Distributions to Holders of Allowed Bank Guaranty Claims in shall be paid by the Ezri Post-Confirmation Estate.

**6.6    Class 6(b) – Other Guaranty Claims.**

**Class 6 only applies to the Ezri Estate.**  The treatment of any Allowed Other Guaranty Claims in Class 6(b) under the Plan shall be as follows:

**6.6.1    Voting and Impairment.**

Class 6 is Impaired under the Plan.  Each Holder of an Other Guaranty Claim is entitled to vote on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 6.6.2    <u>Treatment.</u>

All Other Guaranty Claims are Disputed.  Holders of Other Guaranty Claims may select one of the following treatments on their Ballot.  If no Ballot is timely returned by a Holder of an Other Guaranty Claim or if the Holder of an Other Guaranty Claim does not make a selection of one of the following options, then such Claim will receive the treatment set forth in Section (b) below:

**(a)**    <u>Settlement of Validity and Enforceability Objection.</u>

Each Holder of an Other Guaranty Claim will be afforded the opportunity on its ballot to make the following election and receive the following treatment with respect to its Allowed Other Guaranty Claim:

If such Holder both (x) votes in favor of the Plan and (y) makes this election,

(i)    The Ezri Trustee will waive the defense to its Other Guaranty Claim that would be based upon validity and enforceability, but not any other defenses, setoffs, recoupments or reductions; and

(ii)    Such Holder's thereafter Allowed Other Guaranty Claim will be reduced to 15% of the otherwise Allowed amount thereof; and

(iii)    With respect to only such 15% of its Allowed Claim, the Holder of an electing Allowed Other Guaranty Claim will receive on account of its Allowed Other Guaranty Claim Distributions of a Pro Rata share, together with: (I) other Holders of Allowed Class 6(b) Other Guaranty Claims against the Ezri Estate, (II) Holders of Allowed Class 4(b) General Unsecured Claims against the Ezri Estate, and (III) Holders of Allowed 5(b) Bank Guaranty Claims against the Ezri Estate of the Available Plan Proceeds of the Ezri Estate (provided that the Holder of such Other Guaranty Claim will receive nothing with respect to the 85% of its Claim exchanged for the waiver of the Ezri Trustee's defense set forth above); and

**(b)**    <u>Continued Litigation over Validity and Enforceability of Guaranty.</u>

Any Holder of an Other Guaranty Claim that does not both (x) elect to vote in favor of the Plan <u>and</u> (y) elect to settle the dispute regarding the validity and enforceability of its guaranty, shall retain its Other Guaranty Claim and the applicable Control Party may continue to pursue all available objections and defenses to such claim.  In the event a Class 6 Claim is ultimately Allowed,

each Holder of an Allowed Other Guaranty Claim shall receive Distributions of a Pro Rata share, together with (i) other Holders of Allowed Other Guaranty Claims against the Ezri Estate, (ii) Holders of Allowed Class 4(b) General Unsecured Claims against the Ezri Estate and (iii) Holders of Allowed Class 5(b) Bank Guaranty Claims against the Ezri Estate, of the Available Plan Proceeds of the Ezri Estate.

### 6.6.3   Distribution Dates.

Distributions of Available Plan Proceeds shall be payable at such times as determined in the sole discretion of the applicable Control Party, considering, inter alia, the amount of funds available for Distribution and the progress in the Claims allowance process.

### 6.6.4   Source of Payment.

Distributions to Holders of Allowed Other Guaranty Claims shall be paid by the Ezri Post-Confirmation Estate.

### 6.7    Classes 7(a) to 7(e) – Small Convenience Claims.

This Class consists of Small Convenience Claims, which are Claims against any of the Estates that would otherwise be a General Unsecured Claim but for the fact that each Claim is Allowed in an amount that is greater than $0 and less than or equal to $100,000, or for which the Creditor elects to reduce the Allowed amount of its Claim to $100,000; provided, however, that a Claim may not be sub-divided into multiple Claims of $100,000 or less for purposes of receiving treatment as a Small Convenience Claim.

### 6.7.1   Voting and Impairment.

Class 7 is Impaired under the Plan.  Each Holder of a Small Convenience Claim is entitled to vote on the Plan.

### 6.7.2   Treatment.

Each Holder of an Allowed Small Convenience Claim in Class 7 shall be paid, on account of such Allowed Small Convenience Claim, a lump sum payment in an amount equal to ten percent (10%) of such Allowed Small Convenience Claim, on or as soon as practicable following the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 6.7.3    Source of Payment.

Distributions to Holders of Allowed Small Convenience Claims shall be paid, if on the Effective Date, by the applicable DIP Debtor or Trustee, and if after the Effective Date, by the applicable Control Party.

### 6.8    Classes 8(a) to 8(e) – Interests.

#### 6.8.1    Voting and Impairment.

Class 8 is Impaired under the Plan.  Holders of Interests are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote on the Plan.

#### 6.8.2    Treatment.

(a)    **DIP Debtors:**  Existing Interests in the DIP Debtors shall not receive any Distributions or retain any property on account of such Interests and such Interests shall be cancelled as of the Effective Date.

(b)    **Ezri Estate:**  Interests of Ezri in the Ezri Estate shall not receive any Distributions or retain any property under the Plan and shall be extinguished as of the Effective Date.  Ezri shall not be required to relinquish Postpetition Earnings or Post-Effective Date Earnings by virtue of the Plan.  However Ezri will not receive a Discharge and his Postpetition Earnings and Post-Effective Date Earnings shall be subject to claims asserted by the Post Confirmation Estates or by Creditors asserting claims or causes of action against Ezri.

(c)    **Namco Estate:**  The Ezri Estate shall not receive any Distributions or retain any property on account of such interest, but, for administrative convenience and the benefit of creditors of the Namco Estate, the Ezri Estate shall retain its interests in the Namco Estate and if and only if all Allowed Claims of Creditors of the Namco Estate are paid in full, plus interest on such Claims (accruing until payment at the federal judgment rate applicable on the Effective Date), then Distributions of remaining Available Plan Proceeds (none are projected) would be payable to the Ezri Post-Confirmation Estate for the benefit of its Creditors holding Allowed Claims against such Post-Confirmation Estate.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# VII.

## ACCEPTANCE OR REJECTION OF THE PLAN

**7.1**      **Classes Entitled to Vote.**

All Classes of Claims under the Plan are Impaired and entitled to Vote to accept or reject the Plan.

**7.2**      **Classes Not Entitled to Vote.**

Holders of Interests in Classes 8(a) to 8(f) receive nothing under the Plan and, thus, Classes 8(a) to 8(f) are conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).

**7.3**      **Nonconsensual Confirmation.**

Because Classes 8(a) to 8(f) are deemed to have rejected the Plan, and in the event all classes of claims do not accept the plan, the Plan Proponents request that the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code § 1129(b).  In addition, to the extent that a Class of Claims that is Impaired rejects the Plan, the Plan Proponents request that the Bankruptcy Court confirm the Plan, notwithstanding such rejection, in accordance with Bankruptcy Code § 1129(b).

# VIII.

## IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date.  The following sections of this Article describe the principal means for implementation of the Plan.  Other provisions regarding the means of execution of the Plan are set forth elsewhere in the Plan.  As more fully described in the treatment sections of the Plan and below, under the Plan, some Allowed Secured Claims and Allowed Claims entitled to priority under the law are to be paid on the Effective Date and Other Claims, including all General Unsecured Claims, are to be satisfied by Distributions from Plan Proceeds.

**8.1**      **Funding for the Plan.**

Funding for the Plan shall be provided by Cash on hand, including the proceeds from sales of Available Real Estate, Inter-Estate Loans, other dispositions of Assets, Litigation Rights and from other net revenue of the Post Confirmation Estates.

### 8.2    Effective Date Payments and Inter-Estate Loans.

Under the Plan, on the Effective Date, the Trustees and DIP Debtors (and, after the Effective Date, the Control Parties) shall pay Cash (expected to be primarily the proceeds of sales of Real Estate occurring during the Cases and Inter-Estate Loans) to make those payments that may be due on or shortly after the Effective Date with respect to Allowed Secured Tax Claims, Allowed Miscellaneous Secured Claims, Allowed Priority Claims, Allowed Priority Tax Claims, Allowed Administrative Claims or Allowed Small Convenience Claims.  To the extent a particular Estate lacks sufficient Cash to make mandatory payments due for that Estate under the Plan, available Cash from other Estates shall be utilized therefor as an Inter-Estate Loan from each lending Estate, Post Confirmation Estate, or Liquidating Trust to the borrowing Estate, Post Confirmation Estate, or Liquidating Trust.  Such Inter-Estate Loans, with interest thereupon at eight percent (8%) simple interest, shall be repaid by the borrower from the first Cash otherwise available for Distributions after the use of the proceeds of the loan.

### 8.3    The Post Confirmation Estates/Liquidating Trusts.

#### 8.3.1    Assets to be Retained in the Post Confirmation Estates.

Upon the Effective Date, the Assets of the Namco and Ezri Estates, including, without limitation, their Affiliated Interests and Litigation Rights, shall be retained as the property of the corresponding Post Confirmation Estate, free and clear of all Claims, Liens, charges, other Encumbrances and interests, except as set forth in this Plan.

#### 8.3.2    Estate Representatives.

Each of the Post Confirmation Estates shall be managed by the Estate Representatives.  The Namco and Namvar Post Confirmation Estates shall each have two Estate Representatives.  The Estate Representatives shall be deemed appointed for each of the Post Confirmation Estates on the Effective Date of the Plan.  The Estate Representatives shall make decisions regarding the administration of the Post Confirmation Estates collectively, in accordance with the Estate By-laws, which will be filed with the Bankruptcy Court as part of the Plan Supplement.  The By-laws will contain appropriate provisions regarding resolution of any disputes between the Estate Representatives.  The Estate Representatives may employ one or more managers to assist them in

carrying out their duties.  The Estate Representatives shall confer prior to the Effective Date and shall agree on which representative will have principal authority and responsibility for the various assets and Litigation Rights.  In the event an Estate Representative resigns, a successor shall be appointed by the remaining Estate Representative.  The Estate Representatives and their agents shall be entitled to hourly compensation for their personal services as Estate Representative at their regular hourly rates and shall not be entitled to any percentage compensation.

### 8.3.3    Responsibilities of Estate Representatives.

The Estate Representatives shall: (a) liquidate the Post Confirmation Estates for the benefit of Creditors, (b) monitor and enforce the implementation of the Plan, (c) manage, control, prosecute and/or settle objections to General Unsecured Claims, (d) manage, control, prosecute and/or settle Litigation Rights, (e) act as the Distribution Agent for payment of the Plan Proceeds to Creditors, (f) file periodic reports, and (g) pay fees as required by 28 U.S.C. § 1930.

### 8.3.4    Powers of Estate Representatives to Employ and Compensate Agents and Professionals.

On and after the Effective Date, the Estate Representatives may employ and compensate Persons or Professionals from any funds of or borrowed by the applicable Post Confirmation Estates.  The same Professionals may be retained to represent multiple Post Confirmation Estates and Liquidating Trusts except as to matters involving a direct and substantial conflict between the applicable Post Confirmation Estates.  The Estate Representatives shall be authorized to employ and pay Professionals post-confirmation without the need for Court approval, except as follows.  If fees and expenses for a particular Professional are in excess of a $50,000 payment threshold for any month, the Professional shall be paid 80% of their fees and 100% of their costs for such month (or the payment threshold, whichever is greater) and the unpaid balance shall be payable only after fourteen (14) days' notice is afforded thereof to the Notice Parties.  The Notice Parties shall have the right to object to any fees that they do not believe are reasonable or appropriate provided that such objection identifies, with specificity, the fees that are objectionable.  If a timely objection is filed, then the undisputed portion of the monthly fees shall be paid in full and there shall continue a 20% holdback on only the disputed portion of the fees pending resolution of the objection.  The Estate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Representatives shall endeavor in good faith to consensually resolve any such objection.  If the objection is not consensually resolved, the Professional may apply for payment to the Court.

### 8.3.5    Indemnification by Post Confirmation Estates.

Each Post Confirmation Estate shall indemnify and hold harmless the Estate Representatives and their Professionals, except to the extent they agree otherwise, from, inter alia, claims, losses, damages, attorney's fees, expenses or causes of action relating to the Post Confirmation Estates other than for those primarily resulting from a gross negligence or intentional misconduct.  Any such indemnification claims shall be paid prior and in preference to any other Distributions to be made from the Post Confirmation Estates.

### 8.3.6    Use of Plan Proceeds.

The Estate Representatives shall use the applicable Plan Proceeds of each Post Confirmation Estate to pay or reserve for expenses of such Post Confirmation Estates, to make or reserve for Inter-Estate Loans to pay expenses of related Post Confirmation Estates, and, as Distribution Agent therefor, to distribute Plan Proceeds in accordance with the terms of this Plan.  Expenses of the Post Confirmation Estates may include, without limitation, amounts to (i) indemnify the Estate Representatives as provided in Plan Section 8.3.5, (ii)  compensate and reimburse Professionals engaged by the Estate Representatives, (iii) purchase fiduciary insurance covering the Estate Representatives, (iv) fund other of the Post Confirmation Estates' expenses, and (v) otherwise pay amounts in the exercise of the Estate Representatives' powers, duties and obligations.

### 8.4    The Liquidating Trusts

#### 8.4.1    Formation of Liquidating Trusts.

As of the Effective Date, the Liquidation Trusts shall be established and become effective pursuant to, and be governed by, the terms of the Liquidation Trust Agreements, each in a form or substantially the form set forth in the Plan Supplement.

#### 8.4.2    Transfer and Vesting of Assets to and in the Liquidating Trusts.

Upon the Effective Date, the Assets of each DIP Debtor Estate, including, without limitation, its Affiliated Interests and Litigation Rights shall become the property of a corresponding Liquidating Trust, free and clear of all Claims, Liens, charges, other Encumbrances and interests,

except as set forth in this Plan.  The Liquidating Trustees shall have the authority to take any corporate action, including dissolution, on behalf of the applicable DIP Debtor and, in furtherance thereof, on the Effective Date the respective each Liquidating Trustee shall be appointed the attorney in fact for its corresponding DIP Debtor.

### 8.4.3    Beneficial Entitlements to Liquidating Trust Interests.

Upon and after the Effective Date, each Holder of an Allowed General Unsecured Claim shall become a Liquidating Trust Beneficiary of the Liquidating Trust for the Estate against which it holds a Claim and, thereby, shall be afforded Liquidating Trust Interests in the applicable Liquidating Trust.  As more fully set forth in the Liquidating Trust Agreement, each Liquidating Trust shall survive for up to five (5) years, provided that if certain Liquidating Trust Assets remain at such time, extensions can be obtained with Bankruptcy Court approval.  Liquidating Trust Interests are not securities, are not subject to trade or assignment and are subject to the restrictions set forth in the Liquidating Trust Agreements.

### 8.4.4    Liquidating Trustees.

Each Liquidating Trust shall be managed by a Liquidating Trustee, as more fully set forth in each Liquidating Trust Agreement.

#### (a)    Appointment of Liquidating Trustees.

Under the Plan, on the Effective Date, Bradley Sharp shall be the Liquidating Trustee for the Liquidating Trusts.  Successor Liquidating Trustees shall be appointed as set forth in the Liquidation Trust Agreements.  The Liquidating Trustees shall be entitled to hourly compensation for their personal services as Liquidating Trustees at their regular hourly rates, but shall not be entitled to percentage compensation on recoveries in the manner or a similar manner applicable for the period during the Cases.

#### (b)    Responsibilities of Liquidating Trustees.

Each Liquidating Trustee shall be vested with the authorities, duties and obligations set forth in the Liquidating Trust Agreements, including to:  (i) monitor and enforce the implementation of the Plan on behalf of the Holders of General Unsecured Claims of the Estate to which the Liquidating Trustee's Liquidating Trust relates, (ii) manage, control, prosecute and/or settle on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  behalf of the Liquidating Trust objections to General Unsecured Claims, (iii) manage, control,

2  prosecute and/or settle on behalf of the Liquidating Trust its other Litigation Rights, (iv) act as

3  Distribution Agent for payment of the Available Plan Proceeds to the Liquidating Trust

4  Beneficiaries and (v) file periodic reports and pay periodic fees as required by 28 U.S.C. § 1930.

5                    (c)    **Powers of Liquidating Trustees to Employ and Compensate
                            Agents and Professionals.**
6

7         On and after the Effective Date, the Liquidating Trustees may employ and compensate

8  Persons or Professionals from any funds of or borrowed by the applicable Liquidating Trust without

9  Court approval and the same Professionals may be retained to represent multiple Liquidating Trusts

10  and Post Confirmation Estates excepting themselves from handling only those matters both:

11  involving a direct and substantial conflict between the applicable Liquidating Trusts; and as to which

12  the same Person is not making decisions as the Liquidating Trustee for both such Liquidating Trusts.

13  The Liquidating Trustees may employ one or more managers to assist them in carrying out their

14  duties.

15         Until the applicable Case or Cases are closed, (a) the Liquidating Trustees shall be authorized

16  to employ and pay Professionals post-confirmation without the need for Court approval, except as

17  follows.  If fees and expenses for a particular Professional are in excess of a $50,000 payment

18  threshold for any month, the Professional shall be paid 80% of their fees and 100% of their costs for

19  such month (or the payment threshold, whichever is greater) and the unpaid balance shall be payable

20  only after fourteen (14) days' notice is afforded thereof to the Notice Parties.  The Notice Parties

21  shall have the right to object to any fees that they do not believe are reasonable or appropriate

22  provided that such objection identifies, with specificity, the fees that are objectionable.  If a timely

23  objection is filed, then the undisputed portion of the monthly fees shall be paid in full and there shall

24  continue a 20% holdback on only the disputed portion of the fees pending resolution of the

25  objection.  The Liquidating Trustees shall endeavor in good faith to consensually resolve any such

26  objection.  If the objection is not consensually resolved, the Professional may apply for payment to

27  the Court.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1         **(d)**     **Indemnification by Liquidating Trust.**

2        As more fully set forth in the Liquidating Trust Agreements, each Liquidating Trust shall

3 indemnify and hold harmless its Liquidating Trustee and its Professionals, except to the extent they

4 agree otherwise, from, inter alia, claims, losses, damages, attorney's fees, expenses or causes of

5 action relating to the Liquidating Trust other than for those primarily resulting from a gross

6 negligence or intentional misconduct.  Any such indemnification claims shall be paid prior and in

7 preference to any other Distributions to be made from the Liquidating Trusts.

8         **(e)**     **Use of Liquidating Trust Assets and Liquidating Trust Recovery**
9                  **Proceeds.**

10        Each Liquidating Trustee may use the applicable Plan Proceeds to pay or reserve for

11 expenses of such Liquidating Trust, to make or reserve for Inter-Estate Loans to pay expenses of a

12 related Liquidating Trust or Post Confirmation Estate, and, as Distribution Agent therefor, to pay

13 Plan Proceeds to the applicable Liquidating Trust Beneficiaries.  Expenses of a Liquidating Trust

14 may include, without limitation, amounts to (i) indemnify the Liquidating Trustee as provided above

15 or under the Liquidating Trust Agreement, (ii)  compensate and reimburse professionals engaged by

16 the Liquidating Trustee, (iii) purchase fiduciary insurance covering the Liquidating Trustee,

17 (iv) fund other of the Liquidating Trustee's expenses, and (v) otherwise pay amounts in the exercise

18 of the Liquidating Trustee's powers, duties and obligations.

19         **(f)**     **Tax Matters**

20        For federal income tax purposes, the Liquidating Trusts, the Liquidation Trustees, and the

21 Liquidating Trust Beneficiaries shall treat the Liquidation Trusts as a liquidating trusts within the

22 meaning of Treasury Income Tax Regulation section 301.7701-4(d) and IRS Revenue Procedure 94-

23 45, 1994-2 C.B. 124.  For federal income tax purposes, the transfer of each Estate's Assets to the

24 Liquidating Trusts under the Plan is treated as a deemed transfer to the Holders of Allowed General

25 Unsecured Claims of such Estate in partial satisfaction of their Claims followed by a deemed

26 transfer of such assets by such Holders of Allowed General Unsecured Claims to the applicable

27 Liquidating Trust.  For federal income tax purposes, the Holders of Allowed General Unsecured

28 Claims against each Estate shall be deemed to be the grantors and owners of the Liquidation Trust

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

for that Estate and its assets.  For federal income tax purposes, the Liquidation Trusts shall be taxed as a grantor trust within the meaning of IRC sections 671-677 (a nontaxable pass-through Tax entity) owned by the Holders of Allowed General Unsecured Claims.  The Liquidating Trusts shall file federal income tax returns as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 and report, but not pay Tax on, the Liquidation Trust's Tax items of income, gain, loss deductions and credits ("Tax Items"). The Holders of General Unsecured Claims shall report such Tax Items on their federal income tax returns and pay any resulting federal income tax liability.  The Liquidation Trusts and the Holders of Allowed General Unsecured Claims shall use consistent valuations of the assets transferred to the Liquidation Trusts for all federal income tax purposes, such valuations to be determined by the Liquidating Trustees.

### 8.4.5    Good Faith and Compliance With Law Relating to Distributions.

The Proponents (and each of their respective Agents and members) have, and upon Confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable law with regard to the Distributions under the Plan, and therefore are not, and on account of such Distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions made pursuant to the Plan.  Upon entry of the Confirmation Order, all provisions of the Plan addressing Distributions shall be deemed necessary and proper.

### 8.5    Settlement of Inter-Debtor Claims.

Various of the Debtors' Estates have Claims against other of the Debtors' Estates (Inter-Debtor Claims) for matters including, without limitation, loans, fraudulent transfers, misrepresentation or fraud.  The Trustees undertook diligence with respect to certain of these Claims and their quantification and considered issues of the Claims' impact on Distributions and potential liability disputes.  In light of this review, the Trustees determined that it is appropriate to Allow such Claims in the amounts set forth in **Exhibit A**, with the consequences of such allowance to be as specified under the Plan, and, upon the Effective Date, the Inter-Debtor Claims shall be deemed so

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Allowed.  The DIP Debtors are in the process of reviewing and validating the Trustees' analysis which should be completed by the scheduled hearing on this Disclosure Statement.

As a result of the allowance of the Inter-Debtor Claims, the obligee Post Confirmation Estate will receive from the obligor Post Confirmation Estate a Pro Rata share of the Available Plan Proceeds attributable to such Inter-Debtor Claim, which, in turn, may be available for Distribution to Creditors of the obligee Post Confirmation Estate.

**8.6    Corporate Action.**

On the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated under the Plan with respect to each of the Estates shall be deemed authorized and approved in all respects.  Without limiting the foregoing, on or after the Effective Date, the Trustees and Control Parties are authorized and directed to issue, execute, deliver, file and record any and all agreements, documents, securities, deeds, bills of sale, conveyances, releases and instruments contemplated by the Plan in the name of and on behalf of the respective Estate or Post Confirmation Estate and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**8.7    No Substantive Consolidation.**

Nothing in this Plan is intended to substantively consolidate the Estates.

**8.8    Tax Indemnification**

The Namco Post Confirmation Estate shall indemnify the Ezri Post Confirmation Estate for any out of pocket expenses resulting from pass through taxes from the Namco Post Confirmation Estate to the Ezri Post Confirmation Estate.  This indemnification may, at the election of the Trustees, be memorialized in a written agreement.

**8.9    Distributions and Related Matters.**

**8.9.1    Distribution Record Date.**

On the Distribution Record Date, the Claims Registers shall be closed and any transfer on any Claim therein shall be prohibited.  The Trustees and the DIP Debtors prior to the Effective Date and the Control Parties after the Effective Date shall be authorized and entitled to recognize and deal

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

for all purposes under the Plan with only those record Holders stated on the Claims Registers, as applicable, as of the close of business on the Distribution Record Date.

### 8.9.2 Distribution Agents.

Whenever the Plan provides that a Trustee, DIP Debtor or Control Party shall make a Distribution under the Plan, such Distribution shall be made by the Trustee, DIP Debtor, or Control Party, as applicable, and/or an agent of any of them.  In such instances, the Trustee, DIP Debtor or Control Party, as applicable, shall constitute the "Distribution Agent" under the Plan and shall serve in such capacity without bond.

A Distribution Agent shall have no liability to any Person entitled to receive a Distribution pursuant to the Plan for any losses, damages, claims or causes of action, other than those primarily resulting from such Distribution Agent's action or failure to act arising out of, in connection with or resulting from such Distribution Agent's gross negligence or intentional misconduct, and the Post Confirmation Estate against which the affected Creditor holds its Claim shall indemnify and hold all Distribution Agents harmless from claims for any such losses, damages, claims or causes of action, other than those primarily resulting from a Distribution Agent's action or failure to act arising out of, in connection with or resulting from such Distribution Agent's gross negligence or intentional misconduct.  Any such indemnification claims shall be paid prior and in preference to any other payments or Distributions to be made from the Post Confirmation Estates.

### 8.9.3 Distribution Dates.

The sections of the Plan on treatment of Claims specify the times for Distributions. Whenever any payment or Distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or Distribution shall instead be made, without interest otherwise due under the Plan, if any, on the immediately following Business Day.  Distributions due on the Effective Date will be paid on such date or as soon as practicable thereafter, provided that if other provisions of the Plan require the surrender of securities or establish other conditions precedent to receiving a Distribution, the Distribution may be delayed until such surrender occurs or conditions are satisfied.

If, under the terms of the Plan, the resolution of a particular Disputed Claim (e.g., it is Disallowed) entitles another Holder of a Claim to a further Distribution or payment, subject to other provisions of this Plan, the appropriate Distribution Agent shall make such further Distribution or payment no later than the first Business Day following the earlier of (a) one year after such resolution or (b) the next date at least fourteen (14) days after such resolution on which another Distribution is due to such Holder of a Claim.

### 8.9.4    Distributions in Cash and Delivery of Distributions.

At the option of the Person making the Distribution, (a) Distributions of Cash pursuant to the Plan may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, provided that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction; and (b) Distributions may be delivered by first-class mail or by other equivalent or superior means.

### 8.9.5    Rounding of Payments.

Whenever payment of a fraction of a dollar would otherwise be called for, the actual payment may reflect a rounding down of such fraction to the nearest whole dollar.  To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole dollar, such Cash shall be treated as Unclaimed Property under the Plan.  No consideration shall be provided in lieu of fractional dollars that are rounded down.

### 8.9.6    De Minimis Distributions.

If any Distribution under the Plan to the Holder of an Allowed Claim would be less than $1,000, the applicable payor may withhold such Distribution until the amount payable equals or exceeds $1,000, provided that, for a Cash Distribution, the Distribution Agent shall make the Distribution prior to dissolution of the Post Confirmation Estate or Liquidating Trust if the Distribution to the Creditor would total at least $100.  Any Distribution not payable pursuant to this Section 8.9.6 shall be treated as Unclaimed Property under Plan Section 8.9.10.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 8.9.7    Hardship Distributions.

#### (a)    Rationale.

Many of the victims of Ezri's abusive investment scheme were individuals of limited means who invested their life savings with Namco (the "At-Risk Creditors"). These Creditors invested their funds with Namco, seeking a steady source of income from what they understood to be safe well-managed lending arrangement. Instead of receiving the promised source of income from Namco - an income source that they needed to help them pay for daily necessities such as food, rent and mortgage obligations - these Creditors have been denied both income and access to their principal investment for years. Since a number of the At-Risk Creditors are aged, infirm, or otherwise cannot survive without the funds they invested, they face foreclosure, eviction and poverty.

Under the Plan, the asset-recovery and liquidation process will take time. In the initial years, distributions may be limited. Unfortunately, some of At-Risk Creditors could suffer severe harm before meaningful distributions are forthcoming. They need more immediate financial relief.

Since the Bankruptcy Code requires similarly situated creditors to receive similar treatment, the Trustee's ability to make expedited payments to the At-Risk Creditors who face near-term harm is limited. This relief is only available if the other affected Creditors give their consent. In an effort to design sufficient flexibility into the Plan to meet the needs of those At-Risk Creditors facing time-sensitive harm, the Plan includes the following provisions: Consent By Ballot. If a Creditor submits a ballot voting in favor of the Plan and affirmatively votes to opt-in to the Hardship Distributions ("Consenting Creditors"), such Creditors will be deemed to consent to the hardship provision described below.

#### (b)    Mechanics.

Where the applicable Control Party receives and approves a valid hardship petition from an At-Risk Creditor seeking relief under this provision, the Control Party shall be authorized to make a hardship distribution to the qualifying At-Risk Creditor in an amount up to the lesser of twenty thousand dollars ($20,000) per Creditor, or twenty percent (20%) of a qualifying Creditor's Allowed General Unsecured Claim.

The hardship distributions will be funded from a reserve of up to two and one-half million dollars ($2,500,000) that will be funded by taking seven percent (7%) of the distributions that would otherwise have been paid to the Consenting Creditors by the Post Confirmation Estates or Liquidating Trusts (the "Reallocated Distributions"). The Reallocated Distributions shall be repaid to the Consenting Creditors from the distributions that would subsequently be payable to the At-Risk Creditors (if any) who received expedited distributions from the above-mentioned reserve.

All Consenting Creditors should recognize that the foregoing provision is not without risk. At-Risk Creditors who are overpaid will not disgorge such overpayment. If insufficient recoveries are obtained, after the Reallocated Distributions are paid to the At-Risk Creditors, then Consenting Creditors may receive less than they would otherwise be entitled to recover under the Plan.

### 8.9.8    Disputed Claims.

#### (a)    Distribution Calculations to Be Made as if Disputed Claims Were Allowed.

Notwithstanding all references in the Plan to Claims that are Allowed, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of the amount or number of Distributions due to the Holders of Allowed Claims, each Disputed Claim shall be treated as if it were an Allowed Claim, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (see Plan Section 8.9.8(b)), such amount or number as determined by the Bankruptcy Court shall be used as to calculate such Claim.

#### (b)    Temporary or Permanent Resolution of Disputed Claims.

In order to establish reserves under this Plan and avoid undue delay in the Cases or confirmation of the Plan in the Cases, prior to the Effective Date, the Trustees and the DIP Debtors, and upon and after the Effective Date, the Control Parties, shall have the right to seek an order of the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code estimating the amount of any Claim irrespective of whether such Disputed Claim was the prior subject of objection or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

estimate any contingent or unliquidated Claim (a) if the matter is initiated prior to the Claims

Objection Deadline, or (b) if the matter relates to a Disputed Claim, in which case the matter may be

initiated at any time during the pendency of any timely Filed objection to the Disputed Claim,

including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court

estimates any contingent or unliquidated Claim, that estimated amount would constitute either the

Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the

Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Disputed

Claim, the Control Parties may elect to pursue any supplemental proceedings to object to any

ultimate Distribution on account of such Claim.  All objection, estimation and resolution procedures

are cumulative and not necessarily exclusive of one another.

(c)    <u>**Distribution Reserves.**</u>

Distributions due in respect of Disputed Claims shall be made to and/or held in reserve in one

or more Distribution Reserves by the Control Parties for the Post Confirmation Estate or Liquidating

Trust against which was asserted the applicable Disputed Claim.

Each applicable Liquidating Trust will elect to treat Disputed Claim Reserves associated with

such Liquidating Trust as a "Disputed Ownership Fund," pursuant to  Federal Tax Regulations

Section 1.468B-9(c)(2)(ii).  As outlined in this election, Creditors holding disputed claims are not

treated as transferors of the money or property transferred to the "Disputed Ownership Fund."

For Federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all

assets that it holds.  A "Disputed Ownership Fund" is treated as a C corporation for purposes of the

Internal Revenue Code.  A "Disputed Ownership Fund" must file all required income and

information tax returns and make all tax payments.

(d)    <u>**No Actual Distributions to be Made to Holders of Disputed
Claims.**</u>

Nonetheless and notwithstanding anything herein to the contrary: (a) no Distribution shall be

made with respect to any Disputed Claim until such Claim becomes an Allowed Claim, and

(b) unless determined otherwise by the Control Parties, as applicable, no Distribution shall be made

to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claim(s) have been resolved by withdrawal of the objection to the Claim(s), settlement or Final Order.

**(e)** **Distributions After Allowance of Initially Disputed Claims.**

Within forty-two (42) days of the date that a Disputed Claim becomes an Allowed Claim, e.g., as a result of an objection to a Disputed Claim being withdrawn, resolved by agreement or determined by a Final Order, any Distributions then due and payable on account of any resulting Allowed Claim shall be made by the appropriate Distribution Agent from the Distribution Reserves. No interest shall be due to a Holder of a Disputed Claim based on the delay attendant to determining the allowance of such Claim.  Although the Trustees, DIP Debtors and Control Parties are to endeavor in good faith to maintain adequate reserves, should a finally Allowed Claim otherwise entitle the Holder to a Distribution in an amount or in excess of the amount allocated for such Holder in the Distribution Reserves, such Holder's entitlement shall be limited to any future amounts otherwise available for Distributions from the Plan Proceeds for the applicable Estate, after payment and appropriate reserve for all post-Effective Date expenses.  The Holder of a Disputed Claim that becomes an Allowed Claim shall in no event have any recourse to: (a) any payments or Distributions theretofore made to or for the benefit of any other Holder of a Claim; (b) amounts owing with respect to post-Effective Date expenses of the Post Confirmation Estates; or (c) other assets of the Trustees, Control Parties, or their Agents.

**(f)** **Disposition of Assets in Distribution Reserves After Disallowance.**

After an objection to a Disputed Claim is sustained in whole or in part by a Final Order or by agreement, such that the Disputed Claim is Disallowed in whole or in part, (a) any Cash held in the Distribution Reserve in respect of the particular Disputed Claim (in excess of the Distributions due on account of any resulting Allowed Claim) shall become the property of the applicable Post Confirmation Estate or Liquidating Trust to be used or distributed by the Control Parties in a manner consistent with this Plan.

**8.9.9** **Undeliverable Distributions.**

Prior to the relevant occasion when a Distribution would become Unclaimed Property, if either (i) after a Distribution was sent to the Creditor and is returned as undeliverable, the applicable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

payor is notified in writing of a new address for a Creditor or notified in writing to cause the Distribution to be resent, or (ii) no Distribution was sent to a Creditor because no address was known for such Creditor and such Creditor notifies the applicable payor in writing of an address for such Creditor, then the Distribution shall be re-sent, this time to the newly indicated address, within forty-two (42) days after the later of such notification or the last date that the Distribution otherwise was due under the Plan.  After a Distribution is returned as undeliverable, no further Distribution to such Person needs to be made unless and until either the Distribution is successfully re-sent, such as provided above, or the applicable payor is notified in writing of a new address for the subject Creditor.

### 8.9.10  **Unclaimed Property.**

The Distribution due and any Cash due to a Creditor shall be deemed to be Unclaimed Property if: (i) both such Distribution is returned to the Control Parties or their agents (e.g., as undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty-six (126) days from sending; or (ii) as to Distributions of Cash, the check or other similar instrument or Distribution remains uncashed for one hundred twenty-six (126) days from sending; or (iii) no address is known by the applicable payor for a Creditor for one hundred twenty-six (126) days after the first day such Distribution could have been made; or (iv) the Distribution is de minimis and not distributable in accordance with Plan Section 8.9.6; or (v) the Distribution is a re-sent Distribution, as provided in Plan Section 8.9.9, that either (a) is returned to the Control Parties or their agents as undeliverable or (b) is a check or other similar instrument or Distribution that remains uncashed for twenty-eight (28) days from re-sending.

Unclaimed Property consisting of Cash, shall be added to the Distribution Reserves if the Control Parties decide such additional reserves are necessary or appropriate and, otherwise, Unclaimed Property that is Cash shall vest in the appropriate Post Confirmation Estate for further use or Distribution consistent with the Plan.

Once there becomes Unclaimed Property for a Creditor, no subsequent Distributions for such Creditor which may otherwise be due under the Plan need be accrued or be held for, or paid to, such Creditor; provided that, if the Control Parties are notified in writing of a Creditor's then-current

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

address and status as a Creditor holding an Allowed Claim entitled to undelivered Distributions

under the Plan, thereafter, despite such earlier determination of Unclaimed Property, the Creditor

will become entitled to its share of Distributions, if any, which first become distributable under the

Plan after such notification.

Upon forfeiture of rights under this provision, subject to the terms of this provision, the

Claim of any Creditor with respect to such funds shall be discharged and forever barred as to the

Post Confirmation Estates notwithstanding any federal or state escheat laws to the contrary, and such

Creditors shall have no claim whatsoever against Namco, the DIP Debtors, the Estates, the Post

Confirmation Estates, the Liquidating Trusts or their Agents.  If at the time of making the final

Distribution, Plan Proceeds remain in a Post-Confirmation Estate in a de minimis amount such that

the administrative expense of making a final Distribution would absorb any benefit thereto, the

Control Parties may contribute the remaining Plan Proceeds to a charitable organization of their

choosing that is qualified as tax exempt under Internal Revenue Code section 501(c).

### 8.9.11  Setoff, Recoupment and Prior Payments.

Nothing contained in this Plan shall constitute a waiver or release by the Estates of any right

of setoff or recoupment the Estates may have against any Creditor.  To the extent permitted by

applicable law, after the Effective Date, the Control Parties may set off or recoup against any Claim

and the payments or other Distributions to be made under the Plan in respect of such Claim, claims

of any nature whatsoever that arose before the Petition Date that the Estates or Post Confirmation

Estates may have against the Holder of such Claim or Interest.  Similarly, no term or provision of

this Plan shall prejudice or affect any rights of any Person to assert a right of setoff or recoupment as

a defense to any Litigation Rights.

### 8.9.12  Compliance with Tax Laws.

Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that has

received a Distribution shall have sole and exclusive responsibility for the satisfaction or payment of

any Tax obligation imposed by any Governmental Unit, including income, withholding and other

Tax obligation, on account of such Distribution.  For Tax purposes, Distributions received in respect

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess

2  allocated to unpaid accrued interest, if any.

3       The Post Confirmation Estates and Liquidating Trusts shall be authorized to take all actions

4  necessary to comply with applicable withholding and recording requirements and, specifically,

5  pursuant to section 346(i) of the Bankruptcy Code, the applicable Post Confirmation Estates shall be

6  entitled to deduct any federal, state or local withholding taxes from any Cash payments made with

7  respect to Allowed Claims, as appropriate.  With respect to any Person from whom a tax

8  identification number, certified tax identification number or other Tax information required by law

9  to avoid withholding has not been received by the applicable Post Confirmation Estate or

10  Liquidating Trust, the applicable Control Party may, at its sole option, withhold the amount required

11  and distribute the balance to such Person or decline to make such Distribution until the information

12  is received.

**8.10**   **Litigation Rights, Objection to and Estimation of Claims and Determination of**
13
**Taxes.**
14

15      **8.10.1**  **Preservation, Pursuit and Resolution of Litigation Rights.**

16       In accordance with section 1123(b) of the Bankruptcy Code, all Litigation Rights, including,

17  but not limited to, (1) Avoidance Actions, and (2) any other Litigation Rights, are preserved and, as

18  of the Effective Date, the Control Parties will retain and may exclusively assert, file, settle,

19  compromise, withdraw, litigate to judgment or otherwise enforce Litigation Rights of each

20  respective Post Confirmation Estate or Liquidating Trust, subject only to any express waiver or

21  release thereof in the Plan or in any other contract, instrument, release, indenture or other agreement

22  entered into in connection with the Plan.  Neither the failure to use a Litigation Right to set off

23  against a Claim, nor the allowance of any Claim, will constitute a waiver or release by any Estate,

24  Trustee, Post Confirmation Estate, Liquidating Trust, or Control Party, of any Litigation Rights that

25  any holder thereof may have against such Creditor.

26       Litigation Rights may include, without limitation, a broad variety of claims, rights or causes

27  of action, such as, by example only, preference actions, fraud, misrepresentation, or other tort

28  actions, contract actions, fraudulent transfer actions, and the right to seek, among other things, to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

have a Claim disallowed if the Control Party, at the appropriate time, determines that a Post Confirmation Estate or Liquidating Trust has a defense under 11 U.S.C. § 502(d), e.g., there exists a Litigation Right for an Avoidance Action against the Holder of such Claim and such Holder after demand refuses to pay the amount due in respect thereto.

As of the time that the Proponents are soliciting votes on the Plan, the Trustees and the DIP Debtors have not completed their analyses of Claims (including Administrative Claims), Interests, or Litigation Rights. Thus, the reservation above of Litigation Rights shall include, without limitation, a reservation by the Estates, the Control Parties, the Post Confirmation Estates, and the Liquidating Trusts, of the Litigation Rights that have already been asserted as well as any other Litigation Rights not specifically identified in the Plan or Disclosure Statement, or of which the Trustees or Cicalese may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Trustees or Cicalese at this time, or facts or circumstances that may change or be different from those that the Trustees or Cicalese now believe to exist. Therefore and notwithstanding the failure to identify all Litigation Rights, absent an express written waiver or release as referenced above, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude any of the Control Parties from utilizing, pursuing, prosecuting or otherwise acting upon all or any of their Litigation Rights, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Litigation Rights upon or after Confirmation, the Effective Date or plan consummation. Specifically, the Litigation Rights may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date and regardless of whether each Litigation Right and the target thereof has been separately listed and identified prior to the Effective Date.

A deadline for filing certain lawsuits in certain of the Cases arose during the Cases and, prior thereto, the Trustees commenced numerous proceedings. Nonetheless, no limitations period yet bars objections to Claims or numerous other Litigation Rights. Thus, for purposes of voting on or objecting to the Plan, any Person who has been in control of or done business with a Debtor or Trustee or with whom a Debtor or Trustee has entered into a transaction or to whom a Debtor or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trustee has incurred an obligation or made a transfer of money or property, prepetition or postpetition, should assume that such obligation, transfer, or transaction or their interactions with the Debtor or Trustee may be reviewed by the Trustees and Control Parties, subsequent to the solicitation of votes on the Plan or after the Effective Date and that such Person may be the subject of an action, proceeding or claim by a Post Confirmation Estate or Liquidating Trust after the solicitation of votes on the Plan or after the Effective Date.

By example only and without limiting the foregoing, the utilization or assertion of a Litigation Right or the initiation of any proceeding with respect thereto against a Person, by any of the Control Parties, shall not be barred (whether by estoppel, collateral estoppel, res judicata or otherwise) as a result of: (a) the solicitation of a vote on the Plan from such Person or such Person's predecessor in interest; (b) the Claim, Interest or Administrative Claim of such Person or such Person's predecessor in interest having been listed in the Debtors' Schedules, List of Equity Security Holders, or in the Plan, Disclosure Statement or any exhibit thereto; (c) prior objection to or allowance of a Claim, Interest or Administrative Claim of the Person or such Person's predecessor in interest; or (d) Confirmation of the Plan.

Without notice or any need to obtain Bankruptcy Court approval, the Control Parties are hereby granted authority to and may evaluate and determine strategy to, prosecute, transfer, settle, release or waive any of their Litigation Rights including objections to Claims if no specific amount was sought by the Post Confirmation Estate/Liquidating Trust or if the amount to be received by the Post Confirmation Estate/Liquidating Trust is within $100,000 of the amount that had been sought (after deduction from such amount sought of 10% of any General Unsecured Claim and 100% of any other Claim waived under the compromise or settlement, to the extent not the subject of an objection thereto), or if the amount of the Disputed Claim is within $100,000 of the Allowed amount under the proposed compromise and settlement.  Otherwise, the applicable Control Party may evaluate and determine strategy as to, prosecution, transfer, settlement, release or waiver of any Litigation Rights or objections to claims with Bankruptcy Court approval.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 8.10.2  Objection to Claims and Objection Deadline.

As of the time that the Proponents are soliciting votes on the Plan, the Trustees and the DIP Debtors have not completed their analyses of Claims (including Administrative Claims) or Interests. All objections to Claims pending as of the Effective Date shall continue and the Control Parties shall have the authority, exclusive of all others, to assert, file, settle, compromise withdraw or litigate to judgment objections to Claims, or to settle or compromise any Disputed Claim against the Post Confirmation Estate(s), except that any party in interest may timely object to applications for Professional Fees incurred prior to the Effective Date.  All objections to Disputed Claims shall be Filed on or before the Claims Objection Deadline.  The Control Parties shall have the right to seek an extension of that date from the Bankruptcy Court, without notice or a hearing, if a complete review of all Claims and action thereupon in not completed by such date.  Settlements of any Claim or Disputed Claim against an Estate may be effectuated by stipulation or signed writing between the applicable Creditor and the Control Parties or by the Creditor amending its claim to reduce its amount to an amount agreed upon by the Control Parties; provided however that such settlements shall be subject to Court Approval pursuant to Section 8.10.1 hereof.

### 8.10.3  Determination of Taxes.

Except as may be expressly provided otherwise in the Plan, the applicable Control Party shall be responsible for the determination of Tax issues and liabilities with respect to the applicable Post Confirmation Estate or Liquidating Trust.  In addition to any other available remedies or procedures with respect to Tax issues or liabilities, the Control Parties, at any time, may utilize (and receive the benefits of) Bankruptcy Code § 505 with respect to: any Tax issue or liability relating to an act or event occurring prior to the Effective Date; or any Tax liability arising prior to the Effective Date.  If the Control Parties utilize Bankruptcy Code § 505(b): (1) the Bankruptcy Court shall determine the amount of the subject Tax liability in the event that the appropriate Governmental Unit timely determines a Tax to be due in excess of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of Tax liability in accordance with Bankruptcy Code § 505(b), the Estates, Trustees, DIP Debtors, Control Parties and their Agents shall be entitled to such discharge which shall apply to any and all Taxes relating to the period covered by such return.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**8.11    Cancellation of Existing Notes, Securities and Agreements.**

As of the Effective Date, all notes, securities and all agreements not assumed as described or provided under the Plan shall be cancelled and deemed null and void and of no further force or effect without any further action on the part of the Bankruptcy Court, the Trustees, the DIP Debtors, the Control Parties, the Estates, the Post Confirmation Estates, the Liquidating Trusts, or any other Person.

**8.12    Tax Identification Numbers.**

The Post Confirmation Estates and the Liquidating Trusts may require any Holders of Allowed Claims to furnish their social security number, employer or taxpayer identification number, and the Control Parties may condition any Distribution due to such Holder upon receipt of such identification number and supporting documentation (including, without limitation, an IRS Form W-9).

**8.13    Official Committees and Their Dissolution.**

On the Effective Date, the Official Committees shall be dissolved and the members of the Official Committees shall be released and discharged from any further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Cases, except that the Official Committees shall continue in existence and have standing and capacity to prepare and prosecute applications for or objections to the payment of Professional Fees incurred prior to the Effective Date.  The Professionals retained by the Official Committees and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred in such capacity after the Effective Date, except for services rendered and expenses incurred in connection with any applications for or objections to the payment of Professional Fees incurred prior to the Effective Date.

**8.14    Final Decree.**

At any time following the Effective Date, the Control Parties shall be authorized to File a motion for the entry of a final decree closing the applicable Case pursuant to section 350 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# IX.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.1    Overview.**

The Plan provides for the rejection or assumption of executory contracts and unexpired leases (except as to a real property lease subject to Bankruptcy Code § 365(d)(4) unless otherwise agreed by the lessor) to occur on or before two possible dates.  First, the Plan provides for assumption or rejection to occur on or before the Effective Date of the Plan.  Second, the Plan provides for a blanket extension of the last day for the Control Parties to assume or reject any unexpired lease, through and including the Deferred Assumption Rejection Deadline.  The provisions below establish the procedures with respect to assumption obligations, rejection damage claims, any election under section 365(n) of the Bankruptcy Code, and other applicable provisions relating to the Plan's treatment of executory contracts and unexpired leases.

**9.2    Assumption and Assignment.**

As of the Effective Date, pursuant to section 1123(b)(2) of the Bankruptcy Code, (a) the executory contracts and unexpired leases of the Estates that have been expressly identified in the Plan Supplement for assumption (together with any additions, deletions, modifications or other revisions to such exhibit as may be made by the Trustees or DIP Debtors prior to the Effective Date) will be deemed automatically assumed by the applicable Post Confirmation Estates or assumed and assigned to the applicable Liquidating Trust.  The Assumption Obligations, if any, for such contracts or leases will be identified in the Plan Supplement.  Any such cure amount shall be paid in accordance with the provisions of Section 9.4 of the Plan, below.  Each executory contract and unexpired lease listed in the Plan Supplement shall include any modifications, amendments and supplements to such agreement, whether or not listed in the Plan Supplement.  There also may be assumed, or assumed and assigned, any executory contract or unexpired lease that is the subject of a motion by a DIP Debtor or Trustee initially heard before confirmation of the Plan, or as to which the motion or any subsequent proceeding in respect thereof is pending, as of the Effective Date, to the extent such motion is granted.  The assignee of an unexpired contract or lease shall be exclusively liable for all obligations thereunder arising after the Effective Date.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 9.3    Extension of Time to Assume or Reject

Except with respect to a real property lease subject to Bankruptcy Code § 365(d)(4) (unless otherwise agreed by the lessor), and except as to any executory contract or unexpired lease previously assumed or rejected on the Effective Date, a DIP Debtor, Post Confirmation Estate or Liquidating Trust may assume or reject any remaining executory contract or unexpired lease until and including the date that is ninety (90) days prior to the Claims Objection Deadline (the "Deferred Assumption Rejection Deadline").  As to any such deferred assumption or rejection, assumption or rejection shall automatically occur within twenty-eight (28) days following: (i) written notice by the Control Parties delivered by U.S. Mail to the last known service address of any party to such executory contract or lease; and (ii) filing a Notice of Assumption or Rejection in the Bankruptcy Court.  Such Notice of Assumption or Rejection shall state the amount of any cure amount in the event of assumption.  In the event a non-Debtor party disputes such cure amount or otherwise disputes the assumption or rejection of such executory contract or unexpired lease, such non-Debtor party shall File an objection to the rejection or to the assumption and cure amount within twenty eight (28) days of the date of service of the Notice of Assumption or Rejection.  In such event, the applicable Control Party shall promptly file a motion in the Bankruptcy Court with service upon such objecting party, to establish the ability of the Control Party to assume such contract or lease, and to establish such cure amount, if any, to be set for hearing in the Bankruptcy Court.  In the event no timely objection is filed by a party to any unexpired lease or executory contract noticed to be assumed, such unexpired lease or executory contract shall conclusively be deemed assumed and the cure amount fixed as stated in the Notice of Assumption or Rejection.

Except with respect to a real property lease subject to Bankruptcy Code § 365(d)(4) (unless otherwise agreed by the lessor), in the event that a Control Party becomes aware after the Effective Date of the existence of an executory contract or unexpired lease that was not included in the Plan Supplement as an unexpired lease or executory contract, the Control Party may move to assume such contract or lease until the date that is twenty-eight (28) days after the date on which the applicable Control Party becomes aware of the existence of such contract or lease.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**9.4    Assumption Obligations.**

(a)    *With respect to those executory contracts or leases assumed on the Effective Date as identified in the Plan Supplement*, the Post Confirmation Estates, or Liquidating Trusts, as applicable shall satisfy each Assumption Obligation, if any (a) by making a Cash payment equal to the amount specified therefor in the Plan Supplement on the later of (i) the Effective Date (or as soon as practicable thereafter), or (ii) the date when due in the ordinary course of business, or (b) in the manner and on such other terms as the non-Debtor party or parties to the applicable executory contract or unexpired lease and the applicable Trustee, DIP Debtor, or Control Party may otherwise agree, unless an objection to such proposed amount is Filed with the Bankruptcy Court and served on counsel to the applicable Trustee, DIP Debtor or Control Party on or prior to the date set by the Bankruptcy Court for Filing objections to Confirmation of the Plan, and the Bankruptcy Court, after notice and hearing, determines that the applicable DIP Debtor, Trustee or Estate is obligated to pay a different amount or provide a different cure, compensation or adequate protection under Bankruptcy Code § 365, in which case, if prior to the Effective Date, Proponents shall have the right to remove such executory contract or lease from the list of contracts to be assumed and assigned pursuant to Section 9.2 of the Plan, or, if following the Effective Date, the Control Party shall File a motion within twenty-eight (28) days after such determination to seek an order of the Bankruptcy Court rejecting such executory contract or unexpired lease.

(b)    *With respect to those executory contracts or unexpired leases assumed pursuant to the Deferred Assumption Rejection Deadline and as identified on the Plan Supplement Exhibit of Deferred Assumptions and Rejections*, the Post Confirmation Estates or Liquidating Trusts shall satisfy each Assumption Obligation, if any (a) by making a Cash payment equal to the amount specified therefor in the Plan Supplement on the later of (i), twenty-eight (28) days after the Deferred Assumption Rejection Deadline (or as soon as practicable thereafter), or (b) in the manner and on such other terms as the non-Debtor party or parties to the applicable executory contract or unexpired lease and the applicable Control Party may otherwise agree, unless an objection to such proposed amount is Filed with the Bankruptcy Court and served on counsel to the applicable Control Party.

Any Person that fails to object to the Assumption Obligation specified in the Plan Supplement (as to an Effective Date assumption or rejection) on or prior to the date set by the Bankruptcy Court for Filing objections to Confirmation of the Plan, or (as to a Deferred Assumption or Rejection) by the date(s) set forth above, shall be forever barred from: (a) asserting any other, additional or different amount on account of such obligation against Namco, the DIP Debtors, the Estates, the Trustees, the Control Parties, the Post Confirmation Estates, the Liquidating Trusts, or their Agents or property, and (b) sharing in any other, additional or different Distribution under the Plan on account of such obligation.

**9.5** **Rejection.**

Except as set forth in this Article, supra, of the Plan, as of the Effective Date, pursuant to section 1123(b)(2) of the Bankruptcy Code:

(a)    the following contracts and leases are rejected:

(i)    those contracts and leases expressly identified for rejection in the Plan Supplement (together with any additions, deletions, modifications or other revisions thereto as may be made by the Trustees or the DIP Debtors prior to the Effective Date);

(ii)    any and all executory contracts and unexpired leases of the Estates (1) not previously assumed in these Cases, including as of the Deferred Assumption Rejection Deadline, and (2) not otherwise identified for assumption and assignment (A) under the Plan, including Article 9.2 and the Plan Supplement, or (B) in a motion to assume, or assume and assign, such contract or lease by a DIP Debtor or Trustee initially heard before, or as to which the motion or any subsequent proceeding in respect thereof is pending, as of the Effective Date, to the extent such motion is granted; and

(b)    all indemnification obligations owed to any Person who was, prior to the applicable Order for Relief, a director, officer, managing member, member, partner, employee, asset manager, attorney, accountant, financial advisor or other agent of a Debtor, are deemed to be, and shall be treated as though they are, executory contracts that are rejected (unless (i) previously assumed by order of the Bankruptcy Court, (ii) assumed under the Plan, *including as of the Deferred Assumption Rejection Deadline*, or (iii) the subject of a motion to assume, or assume and assign, by a DIP Debtor

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  or Trustee initially heard before, or as to which the motion or any subsequent proceeding in respect

2  thereof is pending, as of the Effective Date, to the extent such motion is granted).

3      **9.6      Rejection Claims Bar Date.**

4          Any Person asserting any Claim for damages arising from the rejection under this Plan or

5  after the Effective Date of an executory contract or unexpired lease of the Estates shall File a proof

6  of such Claim (in compliance with Bankruptcy Rule 3001) on or before the Rejection Claims Bar

7  Date (which is defined more specifically in **Exhibit B** and, generally, is twenty-eight (28) days

8  following entry of the later of the Effective Date or order effectuating rejection), or be forever barred

9  from: (a) asserting such Claim against Namco, the DIP Debtors, the Estates, the Post Confirmation

10  Estates, the Liquidating Trusts, the Control Parties, or their Agents or property, and (b) sharing in

11  any Distribution under the Plan.  For Claims other than ones for damages arising from the rejection

12  under this Plan of an executory contract or unexpired lease of the Estates and for matters other than

13  Claims, any otherwise applicable Bar Dates remain applicable and are unaffected by this provision.

14  The Rejection Claims Bar Date is the following date:  (a) if rejection of an executory contract or

15  unexpired lease occurs under the Plan, the first Business Day that is at least twenty-eight (28) days

16  after the Effective Date; and (b) if rejection of an executory contract or unexpired lease occurs after

17  the Effective Date, the first Business Day that is at least twenty-eight (28) days after the later of the

18  date of (i) entry of an order approving such rejection, or (ii) rejection, as provided by the first order

19  approving such rejection.

20      **9.7      Bar Date for Bankruptcy Code § 365(n) Election.**

21          If the rejection of an executory contract gives rise to the right by a non-Debtor party or

22  parties to such contract to make an election under Bankruptcy Code § 365(n) to either treat such

23  contract as terminated or to retain its or their rights under such contract, unless an order of the

24  Bankruptcy Court provides otherwise, such other party or parties to such contract will be deemed to

25  elect to treat such contract as terminated unless, by the Bankruptcy Code § 365(n) Election Bar Date

26  (which is the date no later than the earlier of (i) the Confirmation Date or, as to any executory

27  contract rejected as of the Effective Date, the Effective Date, or (ii) as to any executory contracts

28  rejected as of the Deferred Assumption Rejection Deadline, the first Business Day at least twenty-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  eight (28) days after service of notice of the rejection of such contract or the intent hereunder to

2  reject such contract on the non-Debtor party to the applicable contract), such other party or all such

3  other parties File and serve on the Control Parties a notice of its or their election to retain its or their

4  rights under such contract, in which case such non-Debtor party or parties shall retain its or their

5  rights under such contract.

6    **9.8    Retention of Property Rights.**

7    To the extent that a matter that provides a Debtor, a DIP Debtor, Trustee or Estate with

8  property rights does not constitute an executory contract or unexpired lease, or a DIP Debtor,

9  Trustee or Estate has obtained property rights under the executed portion of an executory contract or

10 unexpired lease, the Effective Date of the Plan and any rejection thereunder shall not cause an

11 abandonment or rescission by the applicable Estate of or as to any such property rights.  The status

12 of any contract or lease identified in the Plan Supplement as not being executory or as being expired

13 shall not be subject to challenge by the non-Debtor, non-Estate party to such contract or lease, absent

14 objection to such status prior to the Confirmation Date.  The status as executory or unexpired of any

15 contract listed in the Plan Supplement for rejection shall not be binding on the Control Parties.

16    **9.9    Effect of Confirmation Order as to Contracts, Leases and Insurance.**

17    Pursuant to Bankruptcy Code §§ 365(a) and 1123(b)(2), the Confirmation Order shall

18 constitute an order of the Bankruptcy Court approving, *as to those unexpired leases and executory*

19 *contracts assumed or rejected as of the Effective Date*, as of the Effective Date, (a) the assumption

20 and assignment of all executory contracts and unexpired leases of the Estates assumed under the

21 Plan, specifically those identified for assumption in the Plan Supplement (as may be amended) and

22 (b) the rejection of such executory contracts and unexpired leases of the Estates specifically

23 identified on the Plan Supplement as to be rejected.  As to all unexpired leases and executory

24 contracts rejected or assumed as the case may be pursuant to the Deferred Assumption Rejection

25 Deadline, the assumption or rejection of such leases or executory contracts *shall be as of* the

26 Effective Date.  The contracts and leases identified in this Plan will be assumed and assigned or

27 rejected, respectively, only to the extent that such contracts or leases constitute executory contracts

28 or unexpired leases of the Estates, and the identification of such agreements under this Plan does not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder.  Specifically, this Plan does not affect whether any executory contracts or unexpired leases are assumed, rejected or terminated to the extent that they: (a) have been assumed, rejected or terminated prior to the Confirmation Date, or (b) are the subject of a pending motion to assume as of the Confirmation Date that is not withdrawn or denied.

Each executory contract and unexpired lease assumed pursuant to the Plan shall remain in full force and effect and be fully enforceable by the applicable Post Confirmation Estate, Liquidating Trustee or Control Party in accordance with its terms under the law, except as modified by the provisions of the Plan, including this Plan Section, or any order of the Bankruptcy Court or applicable law.  To the extent applicable, all executory contracts or unexpired leases assumed pursuant to the Plan shall be deemed modified such that the transactions contemplated by the Plan shall not be a "change of control" or an unauthorized assignment, however such term may be defined in the relevant executory contract or unexpired lease, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Continuing obligations of third parties to the DIP Debtors, Trustees or their Estates under insurance policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on or prior to the Effective Date, including, without limitation, continuing obligations to pay insured claims, to defend against and process claims, to refund premiums or overpayments, to provide indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain confidentiality, or to honor releases, shall continue and shall be binding on such third parties notwithstanding any provision to the contrary in the Plan, unless otherwise specifically terminated by the DIP Debtors, Trustees, Control Parties or by order of Bankruptcy Court.

To the extent a Trustee, DIP Debtor or Control Party hereafter learns that there exists an insurance policy or agreement under which an insurer has a continuing obligation to pay a Debtor, DIP Debtor, Trustee, Estate, Control Party or a third party on behalf of any of them and that it is held by the Bankruptcy Court to be an executory contract and has not otherwise been assumed upon motion by a Final Order, the applicable Control Party may elect by notice to the insurer, specifying

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

any Assumption Obligations, that such insurance policy be treated as though it is an executory

contract that is assumed under the Plan pursuant to Bankruptcy Code § 365.  Thereafter, the

provisions of Plan Section 9.4(b) shall be applicable except that the insurer shall have until fourteen

(14) days after notice to serve its objection to the Assumption Obligations and the applicable Control

Party shall until the twenty-eighth (28th) day after its original notice to elect instead to reject such

contract, which rejection may be effectuated by the serving of the notice thereof.

### 9.10    Post-Order for Relief Agreements.

Unless inconsistent with the provisions of the Plan, all contracts, leases and other agreements

entered into by the DIP Debtors or Trustees on or after entry of an Order for Relief in the respective

Cases, or previously assumed by any of the Estates prior to the Confirmation Date (or the subject of

a pending motion to assume by any of the Estates as of the Confirmation Date that is granted by the

Bankruptcy Court), which have not expired or been terminated in accordance with their terms and

not listed for rejection in the Plan Supplement, shall be performed by the applicable Post

Confirmation Estate, in the ordinary course of business and shall survive and remain in full force and

effect following the Effective Date.

### 9.11    Modifications to Plan Supplement.

The Trustees, the DIP Debtors or the Control Parties shall have the right, any time prior to

the Effective Date or the Deferred Assumption Rejection Deadline, to make additions, deletions,

modifications and/or other revisions to the identification of executory contracts and leases to be

assumed or rejected by the Estates on notice to the non-Debtor party to such contract or lease.

### X.

### CONDITIONS TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### 10.1    Conditions to Confirmation.

Entry of the Confirmation Order is the condition to Confirmation.

### 10.2    Conditions to Plan Effectiveness.

The Plan will not be consummated and the Effective Date will not occur unless and until

(a) the Confirmation Order shall be a Final Order, (b) the Trustees and the DIP Debtors shall have

received any authorization, consent, regulatory approval, ruling, letter, opinion or other documents

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

that the Trustees, in consultation with the DIP Debtors, believe may be necessary to implement this Plan or believe is required by any law, regulation or order; (c) all actions, documents and agreements that the Trustees believe are necessary to implement the Plan other than the following requirement shall have been effected or executed as determined by the Trustees in their sole and absolute discretion in consultation with the DIP Debtors; and (d) the Trustees have Filed an Effective Date Statement with the Bankruptcy Court indicating that the Confirmation Order is Final and that, upon the Filing of such Effective Date Statement, the conditions to Plan effectiveness all appear to have been met or waived.  (The Trustees may delay the Filing of the Effective Date Statement pending, inter alia, negotiations over the payment of Administrative Claims.)  Any of the foregoing conditions may be waived by the Trustees and DIP Debtors.

**XI.**

**EFFECT OF CONFIRMATION**

### 11.1    Binding Effect.

Confirmation of the Plan shall bind and govern the acts after the Effective Date of the Estates, the Post Confirmation Estates, the Trustees, the DIP Debtors, the Official Committees, the Control Parties, and all Holders of any Claims against, and Interests, in the Debtors or their Estates, whether or not: (i) a proof of Claim or proof of Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest is allowed pursuant to section 502 of the Bankruptcy Code, (iii) a Claim or Interest is Impaired or Unimpaired under the Plan; or (iv) the Holder of a Claim or Interest has accepted the Plan.

### 11.2    Property Retained Free and Clear.

Except as otherwise provided in the Plan, upon the Effective Date, title to the remaining Assets shall be retained in the Estates as Post Confirmation Estates as provided in the Plan for the purposes contemplated under the Plan.  Except as otherwise provided in the Plan, upon the Effective Date, all of the Assets shall be free and clear of all Claims, Liens, charges, other Encumbrances and Interests.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### 11.3    **Permanent Injunction.**

The rights afforded under the Plan and the treatment of all Claims and Interests under the Plan shall be the sole and exclusive remedy on account of such Claims against, and Interests in Debtors as against the Assets and as against Namco, the DIP Debtors, their Estates, the Post Confirmation Estates, the Liquidating Trusts, the Control Parties, or their Agents or property.

*Except as otherwise expressly provided* in the Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, *all Persons who have held, currently hold, or may hold a debt, Claim, or Interest against a Debtor or its Estate* (including but not limited to States and other Governmental Entities, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units, other than as to matters excepted from the automatic stay by Bankruptcy Code § 362(b)(4)) *shall be permanently enjoined from*:

(a)    taking any of the following actions *on account of any such debt, Claim, or Interest*:

(1)    commencing or continuing in any manner any action or other proceeding against the Trustees, Namco, the Estates, the Post Confirmation Estates, the Liquidating Trustee, the Control Parties, their Agents, or their property;

(2)    enforcing, attaching, executing, collecting, or recovering in any manner, including by way of setoff recuperation or right of subrogation, any judgment, award, decree, or order against the Trustees, Namco, the Estates, the Post Confirmation Estates, the Liquidating Trustee, the Control Parties, or their Agents or property; and

(3)    creating, perfecting, or enforcing any Lien or Encumbrance against the Trustees, Namco, the Estates, the Post Confirmation Estates, the Liquidating Trusts, the Control Parties, their Agents or property; and

(b)    challenging the Distributions to be effected by the Plan or the classification of Claims or Interests set forth in the Plan, except as expressly provided in and permitted by the Plan.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.  Nothing contained in the foregoing shall affect the liability of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Ezri for any debt of the Estates or affect the liability, to the full extent provided under section 524(e) of the Bankruptcy Code, of any other Person or their property for any debt of the Estates that is treated under the Plan.

### 11.4 Limitation of Liability.

Under Bankruptcy Code § 1125(e), entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.  Entry of the Confirmation Order shall be a finding that the Trustees, the DIP Debtors, Namco, the Estates, the Post Confirmation Estates, the Liquidating Trusts, the Control Parties, and their Agents, acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code to the extent that they participated in the soliciting of acceptances or rejections of the Plan or participated in the offer, issuance, sale, or purchase of securities offered or sold under the Plan and they and their property shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

### 11.5 Exculpation.

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, as of the Effective Date, neither the Trustees, the DIP Debtors, nor the Control Parties, and their Agents (the "Exculpated Parties") shall have any liability to any Holder of any Claim or Interest or any other Person for, any act or omission, forbearance from action, decision, or exercise of discretion taken at any time after the Petition Dates in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the administration of the Plan, the Cases or the property to be distributed under the Plan, or any contract, instrument, document or other agreement entered into pursuant thereto through and including the Effective Date, except for liability:  (a) for damages proximately

1  caused by (i) intentional misconduct as finally determined by a Final Order of the Bankruptcy Court

2  or (ii) gross negligence in connection with (1) implementing the Distribution provisions of the Plan

3  and (2) the making or withholding of Distributions pursuant to the Plan; (b) other than liability

4  resulting from the order of payment of any such Distributions if such order of payment is not

5  expressly set forth in the Plan (the "Exculpated Claims").  The Exculpated Parties may reasonably

6  rely upon the opinions of their respective counsel, accountants, and other experts and Professionals

7  and such reliance, if reasonable, shall conclusively establish good faith and the absence of gross

8  negligence or intentional misconduct; *provided however*, that a determination that such reliance is

9  unreasonable shall not, by itself, constitute a determination or finding of bad faith, gross negligence

10  or intentional misconduct.

11      **11.6    Releases By Estate.**

12      In addition to the foregoing exoneration, the Estates shall be deemed to unconditionally,

13  irrevocably and generally release, acquit and forever discharge, waive and relinquish the Exculpated

14  Claims against the Exculpated Parties.  **THIS RELEASE INCLUDES AN EXPRESS,**

15  **INFORMED, KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO**

16  **THE FULLEST EXTENT PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF**

17  **THE CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY**

18  **SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:**

19          **A general release does not extend to claims which the creditor does
20          not know or suspect to exist in his or her favor at the time of
            executing the release, which if known by him or her must have
21          materially affected his or her settlement with the debtor.**

22      Each Estate, by this release, waives and relinquishes any right or benefit that such Estate has

23  or may have under section 1542 of the California Civil Code or any similar provision of statutory or

24  non-statutory law of California or any other jurisdiction to the fullest extent that such releasing

25  Estate may lawfully waive such rights and benefits pertaining to the subject matter of the release set

26  forth above.  In that regard, each such releasing Estate, by this release, further acknowledges that

27  such Estate is aware that such Estate or the attorneys of such Estate may hereafter discover claims or

28  facts in addition to or different from those which such Estate or such attorneys now know or believe

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to exist with respect to the subject matter of the release, and that it is each such releasing Estate's intention fully, finally, and forever to settle and release any and all Exculpated Claims against each and every Exculpated Party.  Through the release, each such releasing Estate is expressly acknowledging that it understands that, notwithstanding the discovery or existence of any such additional or different claims or facts, the release shall be and remain in full force and effect as a full and complete general release with respect to any and all Exculpated Claims against each and every Exculpated Party.  Through the release, each such releasing Estate further acknowledges that no Exculpated Party has made any representation of any kind or character whatsoever in order to induce the execution of the release.

The Confirmation Order, without more, shall effectuate the release, waiver and relinquishment described or referenced in this Section for the Exculpated Parties in accordance herewith.

**11.7    No Third Party Release.**

**Nothing in this Plan shall be deemed to release claims held by non-Debtor parties against the Exculpated Parties or any other non-Debtor party.**

**XII.**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall not be limited under the Plan and the Bankruptcy Court shall retain jurisdiction over the Cases and any of the proceedings related to the Cases pursuant to Bankruptcy Code § 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to a Claim;

(b)    Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;

(c)    Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which any Debtor or Estate is a party and to hear, determine and, if necessary, liquidate, any Claims arising from, or cure amounts related to, such assumption or rejection;

(d)    Resolve any matters with respect to the timeliness or amount of Distributions to Holders of Allowed Claims in accordance with the Plan;

(e)    Decide or resolve any motions, adversary proceedings, contested or litigated matters, matters involving Litigation Rights and any other matters and grant or deny any applications or motions involving any Debtor, Trustee or Estate that may be pending on the Effective Date;

(f)    Resolve matters concerning ownership and rights to prosecute Litigation Rights;

(g)    Approve, interpret or enforce any settlements or compromises relating to the Plan or the Estates, including settlements or compromises of Claims;

(h)    Enter such other orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation or consummation of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(i)    Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Person's obligations incurred in connection with the Plan;

(j)    Modify the Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan and the Disclosure Statement, in such manner as may be necessary or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(k)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)     Enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation or enforcement of the Plan, except as otherwise provided in the Plan;

(m)     Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(n)     Enter an order closing the Cases at the appropriate time; and

(o)     Determine such other matters as may be authorized under the provisions of the Bankruptcy Code and exercise such other and further jurisdiction as is authorized or permitted under the Bankruptcy Code.

## XIII.

### AMENDMENT, WITHDRAWAL OF PLAN
### AND VACATION OF CONFIRMATION ORDER

**13.1     Amendment of the Plan.**

Subject to the restrictions set forth in Bankruptcy Code § 1127, the Trustees and the DIP Debtors reserve the right to alter, amend, or modify the Plan before its substantial consummation.

**13.2     Vacating Confirmation Order if Failure of Conditions to Plan Effectiveness.**

If the Confirmation Order is vacated for failure to satisfy a condition to the Effective Date, the Plan shall be deemed null and void in all respects (including, without limitation, (1) the assumptions, assumptions and assignments or rejections of executory contracts and unexpired leases pursuant to the Plan will be deemed null and void, and (2) nothing contained in the Plan will constitute a waiver or release of, or admission or acknowledgment as to, (a) any Litigation Rights,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(b) allowance, disallowance, admission or acknowledgment of or as to any Claim (including an Administrative Claim) or Interest, or (c) prejudice in any manner the rights of a Trustee, DIP Debtor or Estate). Any such motion seeking to have the Bankruptcy Court vacate the Confirmation Order must be made by a party in interest before the time that each condition to the Effective Date described in Article X of the Plan has been satisfied or duly waived and upon notice to the Trustees, DIP Debtors, Official Committees, U.S. Trustee and such other parties in interest as the Bankruptcy Court may direct. Notwithstanding the Filing of such motion, however, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.

### 13.3    Revocation or Withdrawal of the Plan.

The Trustees and the DIP Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date.

### XIV.

### MISCELLANEOUS

### 14.1    Effectuating Documents; Further Transactions; Timing.

The Trustees and the DIP Debtors and, after the Effective Date, the Post Confirmation Estates, Liquidating Trusts, and the Control Parties shall be authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan shall be deemed to have occurred simultaneously.

### 14.2    No Regulated Rate Change Without Government Approval.

From and after the Effective Date, in accordance with Bankruptcy Code § 1129(a)(6), no rate charged by any Debtor over which any governmental regulatory commission would have jurisdiction under applicable non-bankruptcy law will be changed through the Plan without obtaining the approval of such governmental regulatory commission.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**14.3    Pension Plans, Other Retiree Benefits and Labor Contracts.**

From and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Post Confirmation Estates are to continue to pay all "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code), if any, at the level established pursuant to subsection (e)(I)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to Confirmation, for the duration of the period that the applicable Debtor had obligated itself to provide such benefits.  The Debtors were not parties to any prepetition union labor contracts, nor do the DIP Debtors or Trustee's Estates have any obligations to provide any "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code).  Because the DIP Debtors and Trustee's Estates do not owe any such retiree benefits, no payments will be owing or made pursuant to this statutory requirement.

**14.4    Exemption From Transfer Taxes.**

In accordance with section 1146(a) of the Bankruptcy Code, neither (i) the issuance, transfer or exchange of a security, nor (ii) the making, delivery, or recording of a deed or other instrument of transfer under this Plan shall be subject to any stamp tax or similar Tax, fee or assessment, and the appropriate officials or agents of a Governmental Entity are directed to forego the collection of any such Tax, fee or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such Tax, fee or assessment.  The Confirmation Order may reiterate this direction to appropriate officials or agents of Government Entities.

**14.5    Modification of Payment Terms.**

The Control Parties may modify the treatment of any Allowed Claim or Allowed Interest in any manner adverse only to the Holder of such Claim or Interest at any time after the Effective Date upon the prior written consent of the Person whose Allowed Claim or Allowed Interest treatment is being adversely affected.

**14.6    Provisions Enforceable.**

The Confirmation Order shall constitute a judicial determination that each term and provision of this Plan is valid and enforceable in accordance with its terms.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**14.7    Quarterly Fees to the United States Trustee.**

All fees payable under 28 U.S.C. § 1930(a)(6) shall be paid by the DIP Debtors and Trustees for their respective Estates in the amounts and at the times such fees may become due up to and including the Effective Date.  Thereafter, the Control Parties, as applicable, shall pay all fees payable under 28 U.S.C. § 1930(a)(6) based on Distributions by the Post Confirmation Estates or Liquidating Trusts  until the Cases are closed, dismissed or converted.

**14.8    Post-Confirmation Status Report.**

Unless otherwise ordered by the Bankruptcy Court, within 175 days following the entry of the Confirmation Order, a status report for each Post Confirmation Estate or Liquidating Trust shall be Filed with the Bankruptcy Court by the Control Parties(s) explaining what progress has been made toward consummation of the confirmed Plan and, at least annually, setting forth the annual fees, expenses, and other costs incurred, and annual Distributions of Plan Proceeds made.  The status report shall be served on the United States Trustee, and the Notice Parties.  Unless otherwise ordered, further status reports shall be Filed every 175 days and served on the same Persons (or their successors or assigns).

**14.9    Successors and Assigns.**

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person.

**14.10   Notices.**

Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of: (i) the first (1st) calendar day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service; or (ii) the third (3rd) calendar day after deposit in the United States mail, with proper first class postage prepaid.

### 14.10.1 <u>Notices of Confirmation and the Effective Date.</u>

Consistent with Bankruptcy Rule 2002(f), as soon as practicable following Confirmation, the Trustees and the DIP Debtors shall serve a notice on Creditors of the entry of the Confirmation Orders in the Cases. The notice may further identify the Plan's Effective Date, various Bar Dates, and any other deadlines that may be established under the Plan or the Confirmation Order.

As soon as practicable following the Effective Date of the Plan, the Trustees and the DIP Debtors shall File and serve a notice of the occurrence of the Effective Date on the Persons requesting special notice in the Cases, the U.S. Trustee and counsel to the Official Committee.

### 14.10.2 <u>Addresses and Change of Addresses.</u>

Notices to Persons holding a Claim or Interest will be sent to the addresses set forth in such Person's proof of Claim or Interest or, if none was Filed, at the address set forth in the Schedules. If a Person provided a different address, such as through a Filing on the main docket in any of the Cases or a notice to a Trustee or DIP Debtor, such other address also may, but need not, be utilized.

Notices to the Control Parties, and U.S. Trustee shall be addressed as follows:

Estate Representatives    R. Todd Neilson, Trustee
Berkeley Research Group ("BRG")
2049 Century Park East, Suite 2525
Los Angeles, CA 90067
Telephone: (310) 499-4750
Facsimile: (310) 557-8982

with copies to:
Debra Grassgreen, Esq.
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010

Richard K. Diamond, Esq.
Danning, Gill, Diamond & Kollitz, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067
Phone: (310) 277-0077
Fax: (310) 277-5735

Bradley D. Sharp, Trustee
Development Specialists, Inc.
333 S. Grand Avenue, Suite 4070
Los Angeles, CA 90071
Telephone: (213) 617-2717
Facsimile: (213) 617-2718

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

with copies to:
David Poitras, Esq.
Jeffer, Mangels, Butler & Mitchell, LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles CA  90067
Telephone:  (310) 203-8080
Facsimile:  (310) 203-0567

[Liquidating Trustees]  Bradley D. Sharp
Development Specialists, Inc.
333 S. Grand Avenue, Suite 4070
Los Angeles, CA  90071
Telephone:  (213) 617-2717
Facsimile:  (213) 617-2718

U.S. Trustee  Office of The United States Trustee
725 S. Figueroa Street, Suite 2600
Los Angeles, CA  90017
Telephone:  (213) 894-6811
Facsimile:  (213) 894-2603

Any party, including Creditors or the Control Parties, may effectuate a change of address after the Confirmation Date.  The Control Parties shall not be obligated to honor any notice of change of address unless and until it is received by them and, prior to the closing of the applicable Case, unless and until it is Filed with the Court.  The notice is to be in writing, legible, and clearly indicate for such Person the Person's name, contact Person (if any), address, telephone number and facsimile number to which prior notices in the Cases had been sent and the Person's new contact Person (if any), address, telephone number and facsimile number.  Prior to the closing of an applicable Case, any change of address notice by the Control Parties shall be Filed in all of the remaining open Cases.

### 14.10.3  Persons Entitled to Post-Effective Date Notices.

Except as expressly provided otherwise in the Plan, following the Effective Date, notices of pleadings Filed with the Bankruptcy Court only need be served on:  (a) the Person affected (if the matter at issue is a particular, discrete matter such as an objection to that Person's claim); (b) all Control Parties, (c) the Office of the U.S. Trustee (if such type of matter, prior to the Effective Date, would have been required to be served on an Official Committee) and (d) those Persons who, after the Confirmation Date, File with the Bankruptcy Court and serve upon the Control Parties a request that such Person receive notice of post-Effective Date matters (if the request also specifies such Person's name, contact Person, address, telephone number and facsimile number).  Persons not

specified in this Plan Section for service who had previously Filed with the Bankruptcy Court requests for special notice of the proceedings and other Filings in the Cases will not receive notice of post-Effective Date matters unless such Persons File a new request in accordance with this Plan Section.

### 14.11   Incorporation by Reference.

All exhibits, schedules and supplements to the Plan are incorporated and are made a part of the Plan as if set forth in full in the Plan.

### 14.12   Computation of Time.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  Any reference to "day" or "days" shall mean calendar days, unless otherwise specified herein.

### 14.13   Conflict of Terms.

In the event of a conflict between the terms of this Plan and the Disclosure Statement, the terms of this Plan will control.

### 14.14   Headings.

The headings used in the Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan or their meaning.

### 14.15   Severability of Plan Provisions.

If, prior to Confirmation, any non-material term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  In

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

addition, in the event that certain Debtors or Estates are excluded from the scope of the Plan or the Plan is determine to be invalid, void or unenforceable as to such Debtors, the remaining provisions of the Plan shall remain valid and enforceable against the remaining Debtors or Estates.

### 14.16  Governing Law.

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California without giving effect to the principles of conflict of laws thereof.

### 14.17  Good Faith and Compliance with Laws.

Confirmation of the Plan shall constitute findings that:  (i) this Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; (ii) the Trustees, the DIP Debtors, Namco, the Estates, the Post Confirmation Estates, the Control Parties, or their Agents, acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code to the extent that they participated in the soliciting of acceptances or rejections of the Plan or participated in the offer, issuance, sale, or purchase of securities offered or sold under the Plan; and (iii) the Proponents (and each of their respective Agents and members) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code and applicable law with regard to the Distributions in conformance with the Plan.

### 14.18  No Admission.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will:  (a) be deemed to be an admission by any DIP Debtor, Trustee or Estate with respect to any matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgment, or release of any Claims against, or any Interests in, any Debtor or Estate, or of any Litigation Rights of any DIP

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Debtor, Trustee or Estate; or (c) prejudice in any manner the rights in any further proceedings of any

2    DIP Debtor, Trustee, or Estate or any creditors or Interest Holders.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Dated:  July 5, 2011                    BRADLEY D. SHARP,
                                           AS CHAPTER 11 TURSTEE FOR
2                                          NAMCO CAPITAL GROUP, INC.

3
                                           By:      _____/s/_____
4                                                   Trustee

5  Dated:  July 5, 2011                    R. TODD NEILSON,
                                           AS CHAPTER 11 TRUSTEE FOR EZRI NAMVAR
6

7                                          By:      _____/s/_____
                                                    Trustee
8
   Dated:  July 5, 2011                    BESHMADA OF DELAWARE, LLC,
9                                          AS DEBTOR AND DEBTOR IN POSSESSION

10
                                           By:      _____/s/_____
11
   Dated:  July 5, 2011                    BESHMADA, LLC,
12                                         AS DEBTOR AND DEBTOR IN POSSESSION

13
                                           By:      _____/s/_____
14
   Dated:  July 5, 2011                    DIMES, LLC,
15                                         AS DEBTOR AND DEBTOR IN POSSESSION

16
                                           By:      _____/s/_____
17
   Respectfully submitted by,
18
   PACHULSKI STANG ZIEHL
19     & JONES LLP

20
   By:      _/s/ Malhar S. Pagay_____
21         Richard M. Pachulski
           Debra I. Grassgreen
22         Robert B. Orgel
           Stanley E. Goldich
23         Malhar S. Pagay

24         Joint Special Counsel for Namco
           Trustee and Ezri Trustee
25
   LAW OFFICES OF DAVID W. MEADOWS
26

27 By:      _/s/ David W. Meadows_____
           David W. Meadows
28         Counsel for Beshmada of Delaware, LLC,
           debtor and debtor-in-possession

DOCS_SF:77260.6 59701-001

1    LAW OFFICES OF DAVID W. MEADOWS

2

By:    _/s/ David W. Meadows_____
3    David W. Meadows
Counsel for Beshmada LLC,
4    debtor and debtor-in-possession

5    LAW OFFICES OF DAVID W. MEADOWS

6

By:    _/s/ David W. Meadows_____
7    David W. Meadows
Counsel for Dimes, LLC,
8    debtor and debtor-in-possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

## Inter-Debtor Claims

| Claim | Amount | Comments |
|-------|--------|----------|
| **Inter-Debtor Post-Petition Advances** [1] | | |
| Namco Claim in Namvar | $3,266,361 | Per Namco's records of post-petition advances |
| Namco Claim in Beshmada | 149,928 | Per Namco's records of post-petition advances |
| Namco Claim in Beshmada of DE | 79,935 | Per Namco's records of post-petition advances |
| Namco Claim in Dimes | 44,020 | Per Namco's records of post-petition advances |
| **Inter-Debtor General Unsecured Claims - Class 4** | | |
| Namco Claim in Beshmada | $255,000,000 | Per amended proof of claim |
| Namco Claim in Beshmada of DE | 26,983,931 | Per Beshmada of DE Schedule F |
| Namco Claim in Dimes | 8,364,324 | Per Dimes Schedule F |
| Namco Claim in Ezri | 150,000,000 | Per negotiated settlement |
| Beshmada Claim in Dimes | 2,867,868 | Per Dimes Schedule F |
| Beshmada of DE Claim in Beshmada | 11,737,546 | Per Beshmada of DE Filed Claim in Beshmada |
| Dimes Claim in Ezri | 6,500 | Per Dimes Schedule B |

1) Post-petition advances in the Namvar estate primarily relate to advances for professional fees.  Other
   amounts include certain miscellaneous expenses.

# EXHIBIT B

**DEFINITIONS**

As used in this Plan, the following terms have the meanings specified below:[1]

**2.1.1    Administrative Claim.**  Any Claim against a Debtor or Estate thereof, incurred on or after the applicable Petition Date for the applicable Debtor through and including the Effective Date, for any cost or expense of administration of the Case of the applicable Debtor, which Claim is entitled to priority under section 507(a)(2) or (3) of the Bankruptcy Code, including, without limitation, any fee or charge assessed against an Estate of a Debtor under section 1930 of Title 28 of the United States Code and any Gap Administrative Claim.

**2.1.2    Administrative Claims Bar Date(s).**  The General Administrative Claims Bar Date, Administrative Tax Claims Bar Date, Gap Administrative Claims Bar Date, Ordinary Course Administrative Claims Bar Date and Professional Fees Bar Date, individually or collectively.

**2.1.3    Administrative Tax Claims.**  A request for payment of an Administrative Claim by a Governmental Unit for Taxes (or for interest or penalties related to such Taxes) for any Tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Order for Relief Date and through and including the Effective Date.

**2.1.4    Administrative Tax Claims Bar Date.**  The earlier of:  (a) any Bar Date applicable to such Claim established by the Bankruptcy Court prior to the Effective Date; and (b) the first Business Day following the later of (i) the fifty-sixth (56th) day after the Effective Date, or (ii) the one-hundred seventy-fifth (175th) day after the filing of the Tax return for such Tax, for such Tax year or period, with the applicable Governmental Unit.

**2.1.5    Affiliated Interest**.  An ownership interest of an Estate in another Person (other than another Debtor), including, without limitation, membership interests in LLCs affiliated with the Debtors and/or LLCs that may be the subject of Litigation Rights.

**2.1.6    Agent.**  With reference to a described Person:  an individual holding, after December 22, 2008 and not prior thereto, the role of director, officer, employee, asset manager, attorney, accountant, or financial advisor (solely in their respective capacities as such and not in any other

---

[1]  Whenever the context requires, each of the terms defined herein includes the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    capacity); representing a Trustee, an Estate Representative, or Cicalese; provided that such Person

2    did not also previously act as an agent for a Debtor.

3         **2.1.7    Allowed.**  This term is used both separately and in conjunction with other defined

4    terms in the Plan (*e.g.*, Allowed General Unsecured Claims) and means:

5                    a.    with respect to any Administrative Claim:  (1) if the Claim is based

6    upon a Fee Application Filed by the Professional Fees Bar Date, an unsecured Claim in the amount

7    approved by a Final Order of the Bankruptcy Court; (2) if the Holder of such Claim was required to

8    File, and has Filed, proof thereof with the Bankruptcy Court prior to an Administrative Claims Bar

9    Date, (i) in the amount and with the status as secured or unsecured and in the statutory priority as

10   stated in such proof of Administrative Claim if no objection to such proof of Administrative Claim is

11   interposed by the Claims Objection Deadline, or (ii) in the amount and with the status as secured or

12   unsecured and in the statutory priority as fixed by Final Order of the Bankruptcy Court if an

13   objection to such proof was interposed by the Claims Objection Deadline; or (3) if such Claim is

14   contingent or unliquidated, in the estimated amount and with the status as secured or unsecured and

15   in the statutory priority as fixed by Final Order of the Bankruptcy Court; and (4) in the amount of

16   zero, if the Holder of such Claim was required to File and has not Filed proof thereof with the

17   Bankruptcy Court prior to an Administrative Claims Bar Date, in which event no Distribution shall

18   be made on account of such Claim (other than discretionary Distributions on Ordinary Course

19   Administrative Claims); and

20                   b.    with respect to any Claim which is not an Administrative Claim: (1) if

21   no objection to such Claim was interposed by the Claims Objection Deadline, (i) if the Holder of

22   such Claim did not File proof thereof with the Bankruptcy Court on or before the applicable

23   Prepetition Claims Bar Date, if a Scheduled Claim, in the amount thereof, with the status as secured

24   or unsecured thereof and with the statutory priority thereof ,and (ii) if the Holder of such Claim has

25   Filed a Proof of Claim therefor with the Bankruptcy Court on or before the applicable Prepetition

26   Claims Bar Date, in the amount and with the status as secured or unsecured and in the statutory

27   priority as stated in such Proofs of Claim; or (2) if an objection to such Claim was interposed by the

28   Claims Objection Deadline, in the amount or any estimated amount for purposes of allowance and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

with the status as secured or unsecured and in the statutory priority thereof as fixed by Final Order of

the Bankruptcy Court; and (3) if the Holder of such Claim did not File proof thereof with the

Bankruptcy Court on or before the applicable Prepetition Claims Bar Date, the Claim is not a

Scheduled Claim, and the Claim is not deemed Allowed under the terms of this Plan, in the amount

of zero and no Distribution shall be made on account of such Claim; and

     c.  with respect to any Interest, (1) if no objection to such Interest was

interposed by the Claims Objection Deadline, (i) if the Holder of such Interest did not File proof

thereof with the Bankruptcy Court by the applicable Bar Date, in the number, amount or percentage

of such Interest and with the nature thereof as listed in the applicable Debtor's Schedules if listed as

neither disputed, contingent or unliquidated and (ii) if the Holder of such Interest has Filed a proof of

Interest therefor with the Bankruptcy Court by the applicable Bar Date, in the number, amount or

percentage of such Interest and with the nature thereof as stated in such proof of Interest, or (2) if an

objection to such proof was interposed by the Claims Objection Deadline, in the number, amount or

percentage of such Interest and nature thereof as fixed by Final Order of the Bankruptcy Court; but

     d.  with respect to any Administrative Claim, Claim or Interest, the term

"Allowed" does not signify whether or not such Administrative Claim, Claim or Interest has been

subordinated to another Administrative Claim, Claim or Interest or is entitled to the benefits of such

subordination.

  **2.1.8** **Allowed Amount.** The amount in which a Claim or Interest is Allowed.

  **2.1.9** **Asset.** Any property of any Estate, including, without limitation, Cash, Available

Real Estate, Litigation Rights and Other Assets.

  **2.1.10** **Assumption Obligations.** Any monetary amounts payable to the non-Debtor party to

any executory contract or unexpired lease, pursuant to section 365(b)(1) of the Bankruptcy Code, as

a condition to the assumption of such contract or lease.

  **2.1.11** **At-Risk Creditors.** Creditors entitled to receive a Hardship Distribution as described

in section 8.9.7 of the Plan.

  **2.1.12** **Available Plan Proceeds.** The Plan Proceeds that are available, after payment of

expenses of the Post Confirmation Estates and Higher Priority Claims, for Pro Rata distribution to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

holders of Allowed General Unsecured Claims, Allowed Bank Guaranty Claims and Allowed Other

Claims.

    **2.1.13** __Available Real Estate.__  Any Asset identified in **Exhibit B** (the "Identified Available

Real Estate") and any Asset identified by the Proponents in the Plan Supplement as "Available Real

Estate."  (In all cases, such Assets are intended to consist of (1) any Estate's Real Estate and

(2) interests of any Estate in affiliated LLCs that hold Real Estate, directly or indirectly.)

    **2.1.14** __Avoidance Actions.__  All claims, defenses, or causes of action of or accruing to the

Debtors or their Estates under sections 502(d), 506(c), 506(d), 510, 541, 542, 543, 544, 545, 547,

548, 549, 550, 551 and 553 of the Bankruptcy Code, whether or not such actions seek an affirmative

recovery or are raised as a defense to, or offset against, the allowance of a Claim.

    **2.1.15** __Ballot.__  The ballot to vote to accept or reject the Plan.

    **2.1.16** __Bankruptcy Code.__  Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as

amended from time to time and as applicable to the Cases.

    **2.1.17** __Bankruptcy Code § 365(n) Election Bar Date.__  For an executory contract, which, if

rejected, entitles the non-Debtor party or parties thereto to make an election under Bankruptcy Code

§ 365(n) to either treat such contract as terminated or to retain its or their rights under such contract,

the earlier of (i) the Confirmation Date or (ii) the first Business Day at least thirty (30) days after

service on a subject non-Debtor party to such contract of the Plan Supplement reflecting, or other

notice of, the rejection of such contract, or the intent hereunder to reject such contract, by which

date, unless an order of the Bankruptcy Court entered prior to the Confirmation Date provides

otherwise, such non-Debtor party must File and serve on the Trustees, DIP Debtors and Official

Committees a notice of its or their election to retain its or their rights under such contract in order to

elect to retain its or their rights under such contract.

    **2.1.18** __Bankruptcy Court.__  The United States Bankruptcy Court for the Central District of

California, having jurisdiction over the Cases and, to the extent of any withdrawal of the reference

made pursuant to section 157 of Title 28 of the United States Code, the United States District Court

for the Central District of California; or, in the event such courts cease to exercise jurisdiction over

the Cases, such court or unit thereof that exercises jurisdiction over the Cases in lieu thereof.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, California

**2.1.19  Bank Guaranty Claim.**  The General Unsecured Claims listed on **Exhibit C** of the Plan.

**2.1.20  Bankruptcy Rules.**  Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court, as applicable to the Cases.

**2.1.21  Bar Date.**  A deadline fixed by the Bankruptcy Court or under the Plan for a Person to (a) File a proof (or amended proof) of Claim or Interest (*e.g.*, the Prepetition Claims Bar Date, Unsecured Deficiency Claims Bar Date and Administrative Claims Bar Date, including the General Administrative Claims Bar Date, Administrative Tax Claims Bar Date, Ordinary Course Administrative Claims Bar Date and Professional Fees Bar Date) or (b) make an election under Bankruptcy Code § 365(n) (*e.g.*, the Bankruptcy Code § 365(n) Election Bar Date).

**2.1.22  Beshmada.**  Beshmada, LLC, the chapter 11 debtor and debtor in possession in Case No. 2:09-bk-25523 BR.

**2.1.23  Beshmada of DE.**  Beshmada of Delaware, LLC, the chapter 11 debtor and debtor in possession in Case No. 2:09-bk-25510 BR.

**2.1.24  Business Day.**  Any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a); provided that with reference to the date on which something is to be Filed, it shall not include a day on which the applicable court is inaccessible for the purpose of Filing such paper.

**2.1.25  Case.**  The above-captioned chapter 11 case of the applicable Debtor, pending before the Bankruptcy Court.

**2.1.26  Cash.**  Currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

**2.1.27  Cicalese.**  Louis A. Cicalese and/or Louis A. Cicalese LLC, a Delaware limited liability company, the current managing member of each DIP Debtor.

**2.1.28  Claim.**  A claim — as Bankruptcy Code section 101(5) defines the term "claim"— against any Debtor or any Debtor's property, including, without limitation (a) any right to payment

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

from any of the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from any of the Debtors, whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

**2.1.29  Claims Objection Deadline.**  The date that is:

(a) for Professional Fees asserted in a Fee Application, the last date established for objections thereto as established by the Local Rules, Bankruptcy Rules or the Bankruptcy Court; and

(b) for other Claims, the first Business Day following one year after the later of (1) the Effective Date or (2) the applicable Bar Date for the Claim, provided that:

(i) upon application to the Bankruptcy Court, the Estate Representatives may obtain an extension of any such date as the Bankruptcy Court may order for cause shown;

(ii) any such date may be extended by agreement of the potential target of the objection and the Estate Representatives;

(iii) the Filing of a motion to extend such date by an Estate Representative shall automatically extend the date until a Final Order is entered on such motion; and

(iv) in the event a motion to extend the date is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, the date shall be the later of the then current date (as previously extended, if applicable) or forty-five (45)days after entry of a Final Order denying the motion to extend the date.

**2.1.30  Claims Register(s).**  The official Claims Register of the Bankruptcy Court for each of the Cases.

**2.1.31  Class(es).**  Each group of Claims or Interests classified in Article 5 of the Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

**2.1.32  Confirmation.**  Entry of the Confirmation Order by the Bankruptcy Court.

**2.1.33  Confirmation Date.**  The date on which the Bankruptcy Court enters the Confirmation Order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    **2.1.34  Confirmation Hearing.**  The hearing or hearings to consider Confirmation of the

2    Plan under section 1129 of the Bankruptcy Code, as such hearing(s) may be adjourned from time to

3    time.

4    **2.1.35  Confirmation Order.**  The order of the Bankruptcy Court Confirming the Plan.

5    **2.1.36  Consenting Creditors.**  A Creditor that elects to opt-in to the deferral of

6    Distributions in favor of At-Risk Creditors as set forth in section 8.9.7 of the Plan.

7    **2.1.37  Control Parties.**  Collectively, the Estate Representatives and the Liquidating

8    Trustees.

9    **2.1.38  Creditor.**  Any Person who is or asserts to be the Holder of a Claim against any

10    Debtor that arose or accrued or is deemed to have arisen or accrued or to have matured, or otherwise

11    become due, owing, and payable on or before the applicable Debtor's Confirmation Date, including,

12    without limitation, Claims asserted to be of the kind specified in sections 502(g), 502(h) or 502(i) of

13    the Bankruptcy Code.

14    **2.1.39  Debtor[s].**  Namco, Ezri, Behsmada, Beshmada of DE and/or Dimes.

15    **2.1.40  Deferred Assumption Rejection Deadline.**  The Deadline set forth in section 9.3 of

16    the Plan.

17    **2.1.41  Deferred Assumptions and Rejections.**  The executory contracts and unexpired

18    leases listed in the Plan Supplement as "deferred."

19    **2.1.42  Dimes.**  Dimes, LLC, a chapter 11 debtor and debtor in possession in Case No. 2:09-

20    bk-25517 BR.

21    **2.1.43  DIP Debtor(s).**  Beshmada, Beshmada of DE and Dimes.

22    **2.1.44  Disclosure Statement Hearing.**  The first date on which begins or began the hearing

23    to approve the Disclosure Statement as containing information sufficient to enable Creditors to vote

24    on the Plan.

25    **2.1.45  Disclosure Statement.**  The *Disclosure Statement With Respect to Joint Chapter 11*

26    *Plan for Namco Capital Group, Inc., Ezri Namvar, Beshmada, LLC, Beshmada of Delaware, LLC*

27    *and Dimes, LLC Proposed by the Chapter 11 Trustees, Official Committees and DIP Debtors,*

28    including, without limitation, all exhibits and schedules to such Disclosure Statement, in the form

approved by the Bankruptcy Court under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017.

**2.1.46  Disputed Claim.**  All or any part of a Claim that is not Allowed, including, without limitation, all or part of a Claim as to which any one of the following applies: (i) no Proof of Claim has been Filed with respect to such Claim and it is not deemed Allowed under the Plan, and either (a) the Claim is not listed in the Schedules or (b) the Claim is listed in the Schedules as unliquidated, disputed, contingent, unknown or in a zero amount, (ii) the liability for, amount, priority or status of the Claim as secured or status as unsecured (a) is the subject of a pending proceeding, whether arbitration, mediation, litigation, adversary proceeding or otherwise; (b) is subject to offset based upon a filed judgment, filed order, filed stipulation or express provision in an executed agreement that was filed or executed, as appropriate, after the alleged right to offset arose; (c) is the subject of a timely objection; or (d) is the subject of a request for estimation made in accordance with the Bankruptcy Code, the Bankruptcy Rules, any applicable order of the Bankruptcy Court or the Plan, in each case that is filed on or before the Claims Objection Deadline, provided that any such proceeding, objection, or request for estimation has not been dismissed, withdrawn or determined by a Final Order; or (iii) the Claim is otherwise treated as a "Disputed Claim" pursuant to the Plan.

**2.1.47  Distribution.**  Payment of Cash, in accordance with the Plan, to a Holder of an Allowed Claim.

**2.1.48  Distribution Agent.**  A Person with responsibility for making Distributions under the Plan.  Any such Person may make such Distributions through delegation to subagents or other professionals.

**2.1.49  Distribution Date.**  With respect to any Allowed Claim, the date on which a Distribution is required to be made under the Plan or as soon as practicable thereafter.

**2.1.50  Distribution Record Date.**  The last Business Day at least fourteen (14) days prior to the Disclosure Hearing.

**2.1.51  Distribution Reserves.**  The reserve created pursuant to Plan section [8.9.8(c)] of the Plan to hold Cash or property for distribution to holders of General Unsecured Claims pending resolution of Disputed Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2.1.52  Effective Date.**  A date designated by the Trustees that is no earlier than the first day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

**2.1.53  Encumbrance.**  Any Lien (statutory or otherwise), hypothecation, encumbrance, security interest, mortgage, pledge, restriction, charge, instrument, unassumed affirmative obligation under a development agreement or subdivision improvement agreement, license, preference, priority, security agreement, easement, covenant, encroachment, option or other interest in the subject Asset, including any right of recovery, Tax (including foreign, federal, state and local Tax), Order of any governmental authority or other claim there against or therein, of any kind or nature (including (i) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (ii) any assignment or deposit arrangement in the nature of a security device, (iii) any claims based on any theory that the acquirer is a successor, transferee or continuation of the sellers or their business, and (iv) any leasehold interest, license or other right, in favor of a person other than the transferor in connection with a sale or conveyance, to use any portion of the subject Project), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

**2.1.54  Estate Representative(s).**  The Person to manage a Post Confirmation Estate as provided under the Plan and the Estate By-Laws.  As more fully set forth in the Plan, the initial Estate Representatives shall be R. Todd Neilson and Bradley Sharp.

**2.1.55  Estates.**  The bankruptcy estates of the Debtors created pursuant to section 541 of the Bankruptcy Code.

**2.1.56  Estate By-laws.**  The by-laws of each of the Post-Confirmation Estates, which will be filed as part of the Plan Supplement.

**2.1.57  Exonerated Claims.**  Claims against the Exonerated Parties, except Claims (a) for damages proximately caused by (i) intentional misconduct as finally determined by a Final Order of the Bankruptcy Court, or (ii) gross negligence in connection with (1) implementing the Distribution provisions of the Plan, and (2) the making or withholding of Distributions pursuant to the Plan; or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(b) other than liability resulting from the order of payment of any such Distributions if such order of payment is not expressly set forth in the Plan

    **2.1.58** **Exonerated Parties.** the Trustees, the Control Parties, and their Agents.

    **2.1.59** **Ezri.** Ezri Namvar, the chapter 11 debtor in Case No. 2:08-bk-32349 BR.

    **2.1.60** **Ezri Case.** The chapter 11 case of Ezri, pending in the Bankruptcy Court.

    **2.1.61** **Ezri Estate.** The bankruptcy estate of Ezri, created pursuant to section 541 of the Bankruptcy Code.

    **2.1.62** **Ezri Trustee.** R. Todd Neilson, the duly appointed chapter 11 trustee in the Ezri Case (also identified as "Neilson").

    **2.1.63** **Fee Application.** An application of a Professional for fees for services rendered and for reimbursement of expenses incurred on or before the Effective Date.

    **2.1.64** **Filed.** Delivered to, received by and entered upon the legal docket by the Clerk of the Bankruptcy Court. "File" and "Filing" shall have correlative meanings.

    **2.1.65** **Final Order.** An order or judgment of the Bankruptcy Court that has been entered upon the docket in the Case(s) and: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided that*, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order or judgment shall not cause such order or judgment not to be a "Final Order."

    **2.1.66** **Form W-9.** IRS Request for Taxpayer Identification Number and Certification form.

    **2.1.67** **Gap Administrative Claim.** An Administrative Claim under Bankruptcy Code § 502(f) arising (a) in the ordinary course of business or financial affairs in the Cases and (b) after the respective Petition Dates and before the Order for Relief Dates.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2.1.68  Gap Administrative Claim Bar Date.**  The deadline for filing Gap Administrative Claims which was the applicable Prepetition Claims Bar Date.

**2.1.69  General Administrative Claims Bar Date.**  The first Business Day following the fifty-sixth (56th) day after the Effective Date, unless such date is extended by the Bankruptcy Court after appropriate notice, by which date certain entities asserting an Administrative Claim against any of the Estates must have filed a request for payment with the Bankruptcy Court under section 503(a) of the Bankruptcy Code, or be forever barred from asserting an Administrative Claim against the Estates and/or sharing in any Distribution under the Plan.

**2.1.70  General Unsecured Claim.**  A Claim against any Debtor, including Claims arising under section 502(h) of the Bankruptcy Code, that is _not_:

     (a) an Administrative Claim;

     (b) a Priority Tax Claim;

     (c) a Secured Claim;

     (d) a Priority Claim;

     (e) a Bank Guaranty Claim;

     (f) an Other Guaranty Claim. or

     (g) a Small Convenience Claim.

**2.1.71  General Unsecured Creditor(s).**  A Holder of a General Unsecured Claim.

**2.1.72  Governmental Entity.**  Government or associated political subdivision, governmental agency, Governmental Unit or governmental authority.

**2.1.73  Hardship Distributions.**  The Distributions to At-Risk Creditors as set forth in section 8.9.7 of the Plan.

**2.1.74  Higher Priority Claims.**  Collectively, Administrative Claims, Secured Claims and Priority Claims.

**2.1.75  Holder.**  A Person holding a Claim or Interest.

**2.1.76  Impaired.**  Not Unimpaired.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2.1.77  Inter-Debtor Claims.**  A Claim held by any Estate against any other Estate, whether or not a proof of Claim is filed or deemed filed pursuant to section 501 of the Bankruptcy Code in the Cases.

**2.1.78  Inter-Debtor Settlement.**  The Settlement of the Inter-Debtor Claims under the Plan.

**2.1.79  Interest(s).**  (a) Any equity security or interest in any Debtor within the meaning of section 101(16) of the Bankruptcy Code, including, without limitation, any equity ownership interest in any of the Debtors, whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, and all rights arising with respect thereto or any other equity security or interest, and (b) the interest of Ezri in the Ezri Estate under the Bankruptcy Code. .

**2.1.80  Inter-Estate Loan.**  A loan from one Estate to another made by a DIP Debtor or Trustee in connection with the Plan or by one Post Confirmation Estate to another Post Confirmation Estate after the Effective Date.

**2.1.81  IRS.**  Internal Revenue Service.

**2.1.82  Lien.**  A lien as defined in section 101(37) of the Bankruptcy Code, but not including a lien to the extent that it has been avoided in accordance with sections 506(d), 510, 544, 545, 546, 547, 548, 553, or 549 of the Bankruptcy Code.

**2.1.83  Liquidating Trust.**  Each trust to be created on the Effective Date in accordance with the provisions of the applicable Liquidating Trust Agreement for the benefit of each DIP Debtor's Liquidating Trust Beneficiaries.

**2.1.84  Liquidating Trust Agreement.**  Each trust agreement applicable to a particular Estate and the applicable Liquidating Trust Assets and Plan Proceeds, in form and substance satisfactory to the Trustees and agreed to by the other Proponents, and substantially similar to the form thereof to be Filed as part of the Plan Supplement, that, among other things: (a) establishes and governs the applicable Liquidating Trust; (b) sets forth the respective powers, duties and responsibilities of the applicable Liquidating Trustee; and (c) provides for Distribution of Plan Proceeds of the applicable Estate, if any, to the applicable Liquidating Trust Beneficiaries.

**2.1.85  Liquidating Trust Assets.**  As to each DIP Debtor's Estate, all of such Estate's Assets remaining as of the Effective Date, any earnings thereupon and upon any Plan Proceeds.

**2.1.86** **Liquidating Trust Beneficiaries.**  As to each Estate, the Holders of Allowed Class 4,5 and 6 under the Plan.

**2.1.87** **Liquidating Trust Interest.**  The beneficial interest in a Liquidating Trust being afforded to the Liquidating Trust Beneficiary.

**2.1.88** **Liquidating Trustee.**  The Person to manage a Liquidating Trust as provided under the Plan and applicable Liquidating Trust Agreement.  The initial Liquidating Trustees shall be Bradley Sharp.

**2.1.89** **Litigation Rights.**  Any and all interests of the Estates, Post Confirmation Estates Debtors, Estate Representatives, in any and all claims (including Inter-Debtor Claims), rights, causes of action, and objections or defenses (including to Claims or Encumbrances) that have been or may be commenced or asserted by the Estates, Debtors, Estates Representatives, as the case may be (whether or not actually asserted through litigation), including, but not limited to (i) Avoidance Actions; (ii) claims, rights or causes of action for turnover of property to the Estates or Post Confirmation Estates; (iii) claims, rights or causes of action for the recovery of property by, or payment of money to, the Estates or the Post Confirmation Estates; (iv) objections to Claims on any ground, including any set forth in Bankruptcy Code § 502; and (v) the right of the Post Confirmation Estates to damages, recoupment, or setoff.

**2.1.90** **LLCs.**  Limited Liability Companies.

**2.1.91** **Miscellaneous Secured Claims.**  A Secured Claim that is not a Secured Tax Claim.

**2.1.92** **Namco.**  Namco Capital Group, Inc., the Chapter 11 Debtor in Case No. 2:08-bk-32333 BR.

**2.1.93**    **Namco Case.**  The Chapter 11 Case of Namco pending in the Bankruptcy Court.

**2.1.94**    **Namco Committee.**  The Official Committee of Unsecured Creditors in the Namco Case.

**2.1.95** **Namvar Relatives.**  The Persons listed on **Exhibit D** to the Plan.

**2.1.96** **Namco Trustee.**  Bradley D. Sharp, the duly appointed chapter 11 trustee in the Namco Case (also identified as "Sharp").

**2.1.97** **Neilson.**  The Ezri Trustee.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    **2.1.98  NOL.**  Net operating loss.

2    **2.1.99     Notice Parties.**  (a) all Control Parties, (b) the Office of the United States Trustee

3    and (c) those Persons who, after the Confirmation Date, File with the Bankruptcy Court and serve

4    upon the Control Parties a request that such Person receive notice of Post Effective Date matters.

5    **2.1.100     Office of the United States Trustee.**  Office of the United States Trustee for the

6    Central District of California, Los Angeles Division.

7    **2.1.101     Official Committee.**  The Namco Committee or the Ezri Committee.

8    **2.1.102     Order(s) for Relief.**  Orders for relief in the Cases entered by the Bankruptcy Court

9    pursuant to the Bankruptcy Code section 303 on the following dates or deemed to occur on the

10   Petition Dates as follows:

11        Ezri Case:                          January 29, 2009

12        Namco:                             January 29, 2009

13        Beshmada:                          July 1, 2010

14        Beshmada of DE:                    July 2, 2010

15        Dimes:                             July 2, 2010

16   **2.1.103     Order for Relief Date.**  The date of entry of the order for relief applicable to a

17   specific case, as indicated above.

18   **2.1.104     Ordinary Course Administrative Claims.**  Administrative Claims that are for

19   ordinary course trade obligations and routine payroll obligations incurred in the ordinary course of

20   an Estate's business on or after the applicable Order for Relief Date and through and including the

21   Effective Date.

22   **2.1.105     Ordinary Course Administrative Claims Bar Date.**  The date that is the earlier

23   of:  (1) any Bar Date applicable to a particular Claim as previously established for such Claim in

24   these Cases; and (2) the first Business Day that is the later of (a) the fifty-sixth (56th) day following

25   the Effective Date or (b) any other Administrative Claims Bar Date established under this Plan.

26   **2.1.106     Other Asset.**  An Asset other than: Cash; Available Real Estate; or a Litigation

27   Right.

28

**2.1.107  Other Guaranty Claim.**  A General Unsecured Claim against the Ezri Estate, other than a Bank Guaranty claim, based on a guaranty agreement.

**2.1.108  Person.**  An individual, unincorporated association or organization, joint venture, partnership, limited liability company, joint-stock company, corporation, trust, business trust, Governmental Entity, estate, committee or other entity of whatever nature.

**2.1.109  Petition Date(s).**  The December 22, 2008 date involuntary chapter 11 petitions were filed against Namco and Ezri, and the June 19, 2009 date involuntary chapter 7 petitions were filed against Beshmada, Beshmada of DE, and Dimes.

**2.1.110  Plan.**  The *Joint Chapter 11 Plan for Namco Capital Group, Inc., Ezri Namvar, Beshmada, LLC, Beshmada of Delaware, LLC and Dimes, LLC Proposed by the Chapter 11 Trustees, and DIP Debtors*, either in its present form or as it may be amended, supplemented or modified from time to time, including all of its annexed exhibits and schedules**.**

**2.1.111  Plan Assets.**  As to each Estate, all of such Estate's Assets remaining as of the Effective Date, any earnings thereupon, and upon any Plan Proceeds.

**2.1.112  Plan Proceeds.**  All Cash on hand as of the Effective Date and any Cash, interest, profits, dividends, proceeds, products, and rents, including all "proceeds" as defined under section 9102(a)(64) of the California Uniform Commercial Code, earned, accrued, collected, derived, received or recovered on account of the liquidation, sale, collection, transfer, refinancing, enforcement or other disposition of any Plan Asset.

**2.1.113  Plan Supplement.**  A compilation of documents and forms of documents, schedules and exhibits to the Plan, including any exhibits to the Plan that are not Filed contemporaneously with the filing of the Plan, and any amendments to exhibits Filed contemporaneously with the filing of the Plan, to be Filed and served on parties in interest no later than fourteen (14) days prior to the Voting Deadline, which, *inter alia*, include:

    (i)    the list of executory contracts and unexpired leases to be assumed under the Plan and any assignees therefore and Assumption Obligations with respect thereto;

    (ii)    the Estate By-laws;

    (iii)    the Liquidating Trust Agreements; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    (iv)    documents appointing each Liquidation Trustees as attorney in fact for each

2    corresponding DIP Debtor after the Effective Date.

3    **2.1.114    Post Confirmation Estate(s).**  Each Estate following the Effective Date.

4    **2.1.115    Post-Effective Date Earnings.**  Earnings of Ezri from or after the Effective Date

5    from personal services or other than in connection with the Assets.

6    **2.1.116    Postpetition.**  After the dates of the Involuntary Petitions in the respective Cases of

7    the Debtors.

8    **2.1.117    Postpetition Earnings.**  The portion of earnings of Ezri from or after the Ezri

9    Petition Date and prior to the Effective Date from personal services or other than in connection with

10    the Assets that Ezri is permitted to retain pursuant to the *Order Approving Trustee's Motion for*

11    *Approval of Stipulation With Debtor Regarding the Handling of the Debtor's Post-Petition Earnings*

12    *and the Dismissal of the Debtor's Appeal of the Denial of His Motion to Convert*.

13    **2.1.118    Prepetition Claims Bar Date.**  The following Bar Dates for any Claim, including a

14    Gap Administrative Claim (but not including other Administrative Claims):  (a) for Claims for

15    damages arising from the rejection of executory contracts or unexpired leases, the earlier of: (i) any

16    otherwise applicable Bar Date established by the Bankruptcy Court at any time during the Cases or

17    (ii) the Rejection Claims Bar Date; (b) for Claims resulting from the successful prosecution or

18    settlement of Avoidance Actions, the later of (i) any otherwise applicable Bar Date, including under

19    other clauses of this definition or (ii) forty-five (45) days following entry of the Final Order

20    determining such Avoidance Action; (c) for Claims of Governmental Units, the later of:  (i) any

21    otherwise applicable Bar Date, including under other clauses of this definition or (ii) 180 days after

22    the date of the applicable order for relief under Bankruptcy Code §§ 301 or 303, as applicable; and

23    (d) for other Claims, November 13, 2009 for Claims against Ezri and Namco, November 15, 2010

24    for Claims against Beshmada, Beshmada of DE, and Dimes, as were established by orders of the

25    Bankruptcy Court.

26    **2.1.119    Priority Claim.**  Any Claim, other than an Administrative Claim or a Priority Tax

27    Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2.1.120   Priority Tax Claims.**  A Claim (or portion of such Claim) of a Governmental Unit entitled to priority under section 507(a)(8) of the Bankruptcy Code.

**2.1.121   Pro Rata.**  With respect to any Distribution in respect of any Allowed Claim, proportionately, so that the ratio of (i) (1) the amount of property distributed on account of such Allowed Claim to (2) the amount of such Allowed Claim, is the same as the ratio of (ii) (1) the amount of property distributed on account of all Allowed Claims of the Class or Classes of the applicable Estate sharing in such Distribution to (2) the amount of all Allowed Claims in such Class or Classes of the applicable Estate.

**2.1.122   Professional.**  Each Person: (a) employed in accordance with an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code, or a Trustee, and to be compensated for services under sections 327, 328, 329, 330, 331 and 504 of the Bankruptcy Code, and for which compensation or reimbursement is requested under section 503(b)(2)-(b)(6) of the Bankruptcy Code; (b) who is employed after confirmation by an Estate Representative or Post Confirmation Estate if payment of such Person employed in such capacity by a trustee, debtor in possession or committee during a chapter 11 case would require, *inter alia*, employment under sections 327 or 1103 of the Bankruptcy Code; (c) who is a member of an Official Committee; or (d) is an Estate Representative.

**2.1.123   Professional Fees.**  Amounts asserted by a Professional for compensation for services rendered or reimbursement of expenses, or by a member of an Official Committee submitted for reimbursement of expenses, either (a) in accordance with sections 330, 331, or 503(b) of the Bankruptcy Code for fees and expenses incurred on or after the Order for Relief Date and through and including the Effective Date, or (b) under the Plan for services or expenses incurred by a Professional for a Post Confirmation Estate.

**2.1.124   Professional Fees Bar Date.**  The first Business Day following the fifty-sixth (56th) day after the Effective Date, unless such date is extended by the Bankruptcy Court after appropriate notice, by which date any Professional seeking an award of Professional Fees incurred prior to the Effective Date must have filed an application with the Bankruptcy Court under section 330(a) of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  Bankruptcy Code, or be forever barred from an award of Professional Fees incurred prior to the

2  Effective Date.

3     **2.1.125   Proof of Claim.**  A proof of claim as referenced in Bankruptcy Code section

4  501(a).

5     **2.1.126   Proof of Interest.**  A proof of interest as referenced in Bankruptcy Code section

6  501(a).

7     **2.1.127   Proponents.**  Sharp, Neilson, and the DIP Debtors.

8     **2.1.128   Real Estate.**  Real estate, real property, or a direct ownership or other interest (*e.g.*,

9  Encumbrance) therein.

10    **2.1.129   Rejection Claims Bar Date.**  The following dates: (a) if rejection of an executory

11  contract or unexpired lease occurs under the Plan, the first Business Day that is at least twenty-eight

12  (28) days after the Effective Date; and (b) if rejection of an executory contract or unexpired lease

13  occurs after the Effective Date, the first Business Day that is at least thirty (30) days after the later of

14  the date of (i) entry of an order approving such rejection or (ii) rejection, as provided by the first

15  order approving such rejection.

16    **2.1.130   SEC.**  Securities and Exchange Commission.

17    **2.1.131   Scheduled Claim.**  A Claim or Interest listed in a Debtor's Schedules, if listed as

18  neither disputed, contingent or unliquidated, (a) for a Claim: in the amount for such Claim, with the

19  status as secured or unsecured for such Claim and with the statutory priority for such Claim, as listed

20  in the applicable Debtor's Schedules; and (b) for an Interest: in the number, amount or percentage of

21  such Interest and with the nature thereof as listed in the applicable Debtor's Schedules.

22    **2.1.132   Schedules.**  The schedules of assets and liabilities, the lists of holders of Interests,

23  and the statements of financial affairs Filed in the Cases under section 521 of the Bankruptcy Code

24  and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be

25  supplemented or amended from time to time.

26    **2.1.133   Secured Claim.**  Any Claim, including interest, fees, costs, and charges to the

27  extent allowable pursuant to Bankruptcy Code section 506, to the extent that it is secured by a valid

28  and unavoidable Lien on an Asset or Assets of one or more Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**2.1.134  Secured Real Property Tax Claim.**  Any Claim, for real property taxes including interest, fees, costs, and charges to the extent allowable pursuant to Bankruptcy Code section 506, to the extent that it is secured by a valid and unavoidable Lien on an Asset or Assets of one or more Debtors.

**2.1.135  Sharp.**  The Namco Trustee.

**2.1.136  Small Convenience Claim.**  Any Claim against any of the Estates that would otherwise be a General Unsecured Claim but for the fact that the Claim is Allowed in an amount that is greater than $0 and less than or equal to $100,000 or for which the Creditor elects to reduce the Allowed amount of its Claim to $100,000; *provided, however*, that a Claim may not be sub-divided into multiple Claims of $100,000 or less for purposes of receiving treatment as a Small Convenience Claim.

**2.1.137  Tax or Taxes.**  Any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding taxes.  "Tax" shall include any interest or additions attributable to, or imposed on or with respect to such assessments.

**2.1.138  Trustees.**  Collectively, the Namco Trustee (Sharp) and the Ezri Trustee (Neilson).

**2.1.139  Unclaimed Property.**  The Distribution due and any Cash due to a Creditor under this Plan if: (1) both such Distribution is returned to Post Confirmation Estate or its agents (e.g., as undeliverable) and the check or other similar instrument or Distribution remains unclaimed for one hundred twenty (120) days from sending; or (2) as to Distributions of Cash, the check or other similar instrument or Distribution remains uncashed for one hundred twenty-four (124) days from sending; or (3) no address is known by the applicable payor for a Creditor for one hundred twenty (120) days after the first day such Distribution could have been made under the Plan; or (4) the Distribution is *de minimis* and not distributable in accordance with Plan section 8.9.6.

**2.1.140  Unimpaired.**  When used with reference to a Claim, subclass or Class, as more specifically set forth in various sections of the Plan, the circumstance where such Claim, subclass or Class is treated in a manner comporting with the requirements of Bankruptcy Code § 1124,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  providing, with certain exceptions, that the treatment has left unaltered the legal, equitable, and

2  contractual rights to which such particular Claim entitles the Holder of such Claim.  In accordance

3  with, by example, Bankruptcy Code §§ 365 or 1123(a)(5)(G), unless expressly specified otherwise,

4  such treatment includes the waiver or curing of defaults and the reinstatement of maturity of such

5  Claim, without payment of penalties or other default-related amounts.

6        **2.1.141  Unsecured Deficiency Claim.**  A Claim by a Person holding a Secured Claim to

7  the extent the value of such Creditor's collateral, as determined in accordance with sections 506(a)

8  and 1111 of the Bankruptcy Code, is less than the Allowed amount of such Creditor's Claim, after

9  taking into account any election made pursuant to section 1111(b) of the Bankruptcy Code.

10        **2.1.142  Unsecured Deficiency Claim Bar Date.**  The date that is the first Business Day

11  that is at least thirty (30) days following the Effective Date, by which, <u>regardless of any prior Filing

12  by such Holder of one or more proofs of Claim,</u> a Holder of an Allowed Miscellaneous Secured

13  Claim that contends it holds or wishes to assert an Unsecured Deficiency Claim related to its

14  Allowed Miscellaneous Secured Claim must File (and serve upon the applicable Estate

15  Representatives) an amended proof of Claim (in compliance with Bankruptcy Rule 3001) asserting,

16  inter alia, the amount of such Unsecured Deficiency Claim.

17        **2.1.143  U.S. Trustee.**  The Office of the United States Trustee.

18        **2.1.144  Voting Deadline.**  _____ at 4:00 P.M. prevailing Pacific Time, the date ordered by

19  the Bankruptcy Court to serve as the voting deadline for submission of ballots in respect of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT C

## EXHIBIT C

Bank Guaranty Claims

| Creditor Name | POC# | Filed Amount |
|---|---|---|
| Arbor Participation Realty, LLC | #13 | 38,000,000 |
| Bank First | #12 | 18,934,246 |
| Bank Midwest | #148 | 15,392,795 |
| Bank of Nevada | #91 | 2,347,942 |
| BH Commercial Capital I, Inc | #162 | 2,526,310 |
| Burbank LLC, A Nevada Limited Liability Company | #37 | 9,342,716 |
| Canyon Springs Shopping Center, LLC | #141 | 6,368,611 |
| Cathay Bank | #22 | 36,850,733 |
| Cathay Bank | #20 | 4,750,000 |
| Cathay Bank | #21 | 1,968,029 |
| Center Bank | #120 | 1,000,129 |
| Community Bank of Nevada | #40 | 14,907,565 |
| East West Bank, a California Corporation | #234 | 10,250,000 |
| Garrison Credit Investment | #64 | 30,000,000 |
| General Electric Capital Corp. | #19 | 26,027,712 |
| Midfirst Bank | #9 | 41,603,475 |
| Pacific Capital Bank, N.A. | #236 | 5,041,975 |
| United Commercial Bank | #122 | 10,109,821 |
| United Commercial Bank | #121 | 4,583,447 |
| Wells Fargo | #90 | 67,071,912 |
| Wells Fargo | #48 | 20,295,472 |
| Wilshire State Bank as assignee of Mirae Bank | #139 | 2,305,926 |

# EXHIBIT D

# EXHIBIT D

Namvar Relatives

## Ezri Namvar
## Namvar Family Members and Relatives

| Name | Relation to Ezri Namvar |
| --- | --- |
| Aaron/Ahaorn Shirazi | Uncle |
| Aghajan Namvar | Uncle |
| Alex Haroonian | Cousin-in-law (Ilana's cousin) |
| Alexi Namvar | Tony's Child |
| Arash Esmailzadeh | Cousin |
| Ariel Namvar | Mousa's Child |
| Avishai Shraga | Lida's Child |
| Avishai Shraga | Nephew |
| Benjamin Namvar | Son |
| Daniel Namvar | Son |
| Danielle Namvar | Mousa's Child |
| David Namvar | Cousin |
| David Shadi | Helen's Child |
| Davina Namvar | Mousa's Child |
| Davoud Namvar | Cousin |
| Desiree Shadi | Helen's Child |
| Dina Shadi | Helen's Child |
| Djahangir Shadi | Brother-in-law (Helen's Husband) |
| Dudi Shirazi | Cousin |
| Edward Lavi | Ilana's cousin |
| Eilel Namvar | Father |
| Eliana Namvar | Ramin's Child |
| Eliora Namvar | Mousa's Child |
| Ezra Namvar | Cousin |
| Faramarz Raban | Mousa's Brother-in-law |
| Farnaz Namvar (Maiden Raban) | Sister-in-law (Mousa's Wife) |
| Gabriella Namvar | Mousa's Child |
| George Harounian | Cousin-in-law (Ilana's cousin) |
| Guity Namvar | Cousin-in-law (David's Wife) |
| Helen Shadi | Sister |
| Hilda Bayanfar | Sister |
| Homayoun Bayanfar | Brother-in-law (Hilda's Husband) |
| Homayoun 'Tony" Namvar | Brother |
| Hooshang "Sean" Namvar | Brother |
| Ilana Namvar (Maiden Harounian) | Wife |
| Jack Shadi | Helen Shadi's brother-in-law |
| Jacques Moussa | Cousin-in-law (Ilana's cousin) |

| Name | Relation to Ezri Namvar |
|---|---|
| John Harounian | Brother-in-law |
| Katie Namvar | Sister-in-law (Tony's Wife) |
| Leora Namvar | Sister-in-law (Ramin's Wife) |
| Lida Shraga | Sister |
| Madeleine Moussa Lavi | Ilana's aunt |
| Madeline Moussa | Aunt-in-law |
| Malka Namvar | Daughter |
| Messian Shadi | Unknown |
| Mousa Namvar | Brother |
| Nassim Bayanfar | Hilda's Child |
| Natalie Namvar (Maiden Harounian) | Sister-in-law (Sean's Wife) |
| Navid Bayanfar | Hilda's Child |
| Noah Namvar | Tony's Child |
| Nosrat Esmailzadeh | Mother |
| Omid Bayanfar | Hilda's Child |
| Parvin Esmailzadeh | Aunt |
| Parviz Lavi | Father of Edward Lavi (Ilana's cousin) |
| Rachel Namvar | Tony's Child |
| Ramin Namvar | Brother |
| Rouhollah Esmailzadeh | Uncle |
| Said Esmailzadeh | Cousin |
| Sarah Harounian | Mother-in-law |
| Shabab Namvar | Cousin |
| Shahram Elyaszadeh | Cousin |
| Sheyda Harounian | Sister-in-law |
| Shirah Namvar | Daughter |
| Yadid Shraga | Brother-in-law (Lida's Husband) |
| Yael Shraga | Lida's Child |
| Yanathon Shraga | Nephew |
| Yeaerl Shraga | Niece |
| Yedida Shraga | Brother-in-law |
| Yochanna Namvar | Tony's Child |
| Yoni Shraga | Lida's Child |